UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MOHAMED LY,

Plaintiff,

v.

EBSCO INDUSTRIES, INC., TIM COLLINS, ANNIE CALLANAN, GARY SYDNOR, and TIM LULL,

Defendants.

Civil Action No. 24-30161-MGM

MEMORANDUM AND ORDER DEFENDANTS' MOTION TO DISMISS
(Dkt. No. 16)
December 12, 2025

MASTROIANNI, U.S.D.J.

## I. INTRODUCTION

Plaintiff, Mohamed Ly, proceeding pro se, initiated this action against his former employer EBSCO Industries, Inc. and EBSCO Information Services (collectively "EBSCO"),[1] and four individuals he identifies as current or former employees of EBSCO (together "Defendants"). His Amended Complaint claims Defendants violated the Family and Medical Leave Act ("FMLA") (Count I), violated the Americans with Disabilities Act ("ADA") (Count II), wrongfully terminated his employment in violation of public policy (Count III), and retaliated against him for "whistleblowing and exercising his rights under FMLA" (Count IV). (Am. Comp., Dkt. No. 11.) Defendants concede

[1] Plaintiff's operative complaint, Dkt. No. 11, named only EBSCO Industries, Inc., as a defendant. The court granted his motion to amend to add EBSCO Information Services as a defendant on December 10, 2025, without requiring Plaintiff to file a superseding amended complaint. (Dkt. No. 67). Defendants contend Plaintiff's employer was EBSCO Publishing, Inc., a subsidiary of EBSCO Information Services. Plaintiff bears the ultimate burden of proving the identity of his employer, but at this early stage of litigation, the court credits his well-pleaded factual allegations.

the operative complaint adequately states a claim against EBSCO for retaliation under the FMLA, but have moved to dismiss the remaining claims asserted against EBSCO and all claims asserted against the individual defendants pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, the court will grant in part and deny in part Defendants' motion to dismiss.

## II. MOTION TO DISMISS

The Amended Complaint[2] is subject to dismissal unless it alleges facts that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations in the complaint must "nudge[] [the] claims across the line from conceivable to plausible." *Id.* at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Courts are not required to accept as true legal conclusions presented as factual allegations. *Id.* Additionally, the First Circuit instructs that "some allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross 'the line between the conclusory and the factual.'" *Peñalbert-Rosa v. Fortuño-Burest*, 631 F.3d 592, 595 (1st Cir. 2012) (quoting *Twombly*, 550 U.S. at 557 n. 5). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. In assessing a claim's plausibility, the court must construe the complaint in the plaintiff's favor, accept all non-conclusory allegations as true, and draw any reasonable inferences in favor of the plaintiff. *See San Gerónimo Caribe Project, Inc. v. Acevedo-Vilá*, 687 F.3d 465, 471 (1st Cir. 2012). "Determining whether a complaint states a plausible claim for relief" is a context-specific task

[2] An amended complaint "replace[s] the original complaint lock, stock, and barrel," becoming the operative complaint. *Connectu LLC v. Zuckerberg*, 522 F.3d 82, 91 (1st Cir. 2008).

that requires "the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## III. Special Considerations Applicable to Complaints Filed By Pro Se Plaintiffs

"Our judicial system zealously guards the attempts of pro se litigants on their own behalf." *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997). Recognizing the difficulties pro se plaintiffs face, the courts construe pro se complaints liberally. *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 75 (1st Cir. 2014). "However, pro se status does not insulate a party from complying with procedural and substantive law." *Ahmed*, 118 F.3d at 890. Like other plaintiffs, "a pro se plaintiff is required 'to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Adams v. Stephenson*, 116 F.3d 464 (1st Cir. 1997) (unpublished table decision) (quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988). Holding all plaintiffs, including pro se plaintiffs, to this standard is necessary to ensure every defendant is "afforded both adequate notice of any claims asserted against him and a meaningful opportunity to mount a defense." *Díaz-Rivera v. Rivera-Rodríguez*, 377 F.3d 119, 123 (1st Cir. 2004) (internal quotations omitted).

## IV. Factual Allegations

The factual allegations set forth in the Amended Complaint are limited. In the first of just four paragraphs, Plaintiff alleges he was hired by EBSCO as Global Product Management Principal on November 1, 2021 and went on to perform at a high level. He next alleges that he was terminated on May 25, 2023 and that he was on FMLA leave at the time. The Amended Complaint does not allege any facts related to the date Plaintiff commenced his FMLA leave, the reasons for the leave or the process by which the leave was approved by EBSCO. In conclusory fashion and without providing

any details, Plaintiff alleges the termination violated his rights under FMLA and was a retaliatory response to Plaintiff's "efforts to address mismanagement, cost-cutting measures, and discriminatory practices" by his employer. The third paragraph, headed "Retaliation and Discrimination," states that Plaintiff "filed complaints regarding the failure of senior leadership to fund critical projects and the obstruction of international usability efforts," and that he was terminated in retaliation for those complaints. (Am. Compl., Dkt. No. 11, Part III, ¶ 3.) Without providing supporting facts, he claims he was "terminated under false pretenses" and "denied due process." (*Id.*) Finally, without identifying any specific actions allegedly taken by any individual defendant, Plaintiff claims they each "played direct roles in violation of [his] rights," "failed to take corrective actions in response to [his] grievances and participated in the retaliatory actions that lead to the wrongful termination." (*Id.* at ¶ 4.)

The individual defendants and their alleged roles are described in the first section of the Amended Complaint. Plaintiff alleges Tim Collins ("Collins") was the Chief Executive Officer ("CEO") of EBSCO when Plaintiff was terminated, was aware of the termination, and was "responsible for the policies, decisions, and actions that resulted in Plaintiff's unlawful termination." (Am. Compl., Dkt. No. 11, Part I, ¶ 3.) Annie Callanan ("Callanan") is EBSCO's current CEO and is not alleged to have played any role in the decision to terminate Plaintiff. He contends only that she later failed "to address and reverse/correct" actions by her predecessors. (*Id.* at ¶ 4.) Tim Lull ("Lull") is identified "the Vice President of Product at EBSCO during the time of Plaintiff's employment," and he is described as "directly responsible for implementing the unlawful termination of the Plaintiff." (*Id.* at ¶ 5.) Finally, Gary Sydnor ("Snydor") was allegedly "involved in overseeing decisions regarding Plaintiff's employment" and "influencing the Plaintiff's wrongful termination." (*Id.* at ¶ 6.)

## V. DISCUSSION

A. Violation of the ADA (Count II)

As an initial matter, Plaintiff's ADA claim is dismissed to the extent Plaintiff seeks to assert it against the individual defendants because there is no individual liability under the ADA. *Ventura v. Hanitchak*, 719 F. Supp. 2d 132, 137 (D. Mass. 2010). Title I of the ADA prohibits discrimination against a "qualified individual on the basis of disability in regard to ... [the] terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "To state a claim of disability discrimination under Title I of the ADA, [Plaintiff] need[s] to allege facts showing that (1) he was disabled within the meaning of the Act; (2) he could perform the essential functions of his job, with or without reasonable accommodation, and (3) the employer took adverse action against him, in whole or in part, because of his disability." *Román-Oliveras v. Puerto Rico Elec. Power Auth.*, 655 F.3d 43, 48 (1st Cir. 2011). "An individual is disabled for purposes of the ADA if he (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment." (*Id.*) Even construed generously, Plaintiff's operative complaint contains no facts from which the court can reasonably infer that he was disabled under any of the three definitions applicable to claims brought under the ADA. Without such facts, Plaintiff's ADA claim against EBSCO is dismissed because it lacks facial plausibility.

B. FMLA Violation and Retaliation (Counts I and IV)

Plaintiff asserts both an FMLA interference claim (Count I) and an FMLA retaliation claim (Count IV) against EBSCO and the individual defendants. Under the FMLA, employers are prohibited from interfering with an eligible employee's exercise of the substantive rights granted under FMLA, specifically, the right to take up to 12 work weeks of leave when medically necessary

and to be reinstated into the same position upon returning from a qualified leave. *Colburn v. Parker Hannifin/Nichols Portland Div.*, 429 F.3d 325, 330 (1st Cir. 2005). The First Circuit has also been clear that the FMLA bars employers from retaliating against an employee who exercises the right to take leave under the FMLA. *Id.* at 331. Employers include "any person who acts, directly or indirectly, in the interest of an employer to any of the employees." 29 U.S.C. §§ 2611(4)(A)(ii)(l), 2615(a)(1)-(2). Applying a similar definition contained in the Fair Labor Standards Act ("FLSA"), the First Circuit determined that an individual may be personally liable for alleged FLSA violations if the plaintiff establishes the individual had control over the decisions and policies that violated the FLSA. *Baystate Alternative Staffing Inc. v. Herman*, 163 F.3d 668, 678-79 (1st Cir. 1998). In the absence of contrary authority, the court concludes individuals may also be personally liable for FMLA violations, provided they exercised sufficient control over the relevant decisions. *See Boadi v. Center for Human Development, Inc.*, 239 F. Supp. 3d 333, 348 (D. Mass. 2017) (discussing *Baystate* and borrowing analysis to determine individual liability under the FMLA).

In the operative complaint, Plaintiff has alleged that he was able to take FMLA leave and was terminated during his period of FMLA leave. He has also asserted the termination was, at least in part, retaliation because he exercised his right to take FMLA leave.[3] Plaintiff also alleged that Lull was "directly responsible for implementing" his termination and that Collins had responsibility for the termination in his role as CEO. (Am. Compl., Dkt. No. 11, Part I, ¶ 5.) He attributed less control to Sydnor, describing him as "influencing" the termination, rather than being a decisionmaker. (*Id.* at ¶ 6.) Finally, as to Callanan, Plaintiff has not alleged that she played any role in

---

[3] Plaintiff also claims his termination was wrongful because it was retaliation after he engaged in whistleblowing regarding "the failure of senior leadership to fund critical projects and the obstruction of international usability efforts," *Dealogic, LLC*, 390 F. Supp. 3d 233, 240 (D. Mass. 2019), and the federal Whistleblower Protection Act of 1989 applies only to federal employers, 5 U.S.C. § 2302(b)(8)-(9). (Am. Compl., Dkt. No. 11, Part III, ¶ 3.) Other statutes, including the ADA and FMLA, bar private employers from retaliating against employees engaging in protected activities, but such protections do not typically protect employees who challenge business decisions unrelated to the rights protected by statute.

the decision to terminate Plaintiff. Defendants contend these allegations are insufficient to state claims against the individual defendants. At this early stage of the litigation, the court finds Plaintiff has sufficiently alleged Lull and Collins had the required control to be individually liable for FMLA violations, but that the allegations are insufficient to support inferences that Sydnor or Callanan were Plaintiff's employers for purposes of the FMLA at the time of his termination.

Defendants separately contend the operative complaint fails to state an FMLA interference claim as to all Defendants. "To withstand a motion to dismiss on [an] interference claim, a plaintiff need only plausibly state that [they are] entitled to the disputed leave." *Carrero-Ojeda v. Autoridad de Energía Eléctrica*, 755 F.3d 711, 722 (1st Cir. 2014). The court finds Plaintiff's allegation that he was terminated while taking FMLA is sufficient to support the inferences that he was entitled to take FMLA leave and that his employer interfered with his right to be reinstated to his prior position upon his return from FMLA leave by terminating him during his period of FMLA leave. Defendants' motion to dismiss Count I is, therefore, denied as to EBSCO, Collins, and Lull.

"To make out a *prima facie* case of FMLA retaliation, an employee must show: (1) she availed herself of a protected FMLA right; (2) she was adversely affected by an employment decision; and (3) there was a causal connection between [her] protected conduct and the adverse employment action." *Carrero-Ojeda*, 755 F.3d at 719 (internal quotations omitted). Defendants concede that Plaintiff's allegations, though limited, are sufficient to state a plausible FMLA retaliation claim against his employer, and they seek dismissal of Count IV only to the extent it states such a claim against the individual defendants. Having already concluded the operative complaint sufficiently alleges Collins and Lull were Plaintiff's employers for purposes of the FMLA, the court denies Defendants' motion to dismiss Count IV as to Collins and Lull.

C. Count III – Wrongful Termination in Violation of Public Policy

In Massachusetts, the general rule is that an at-will employee[4] "can be terminated at any time with or without cause" unless "the termination violates a clearly established public policy." *King v. Driscoll*, 638 N.E.2d 488, 492 (Mass. 1994); *see also Meehan v. Med. Info. Tech., Inc.*, 177 N.E.3d 917, 920 (Mass. 2021). Plaintiff contends his termination violated public policy in two ways: (1) his employer intended to retaliate against him because he exercised his right to take FMLA leave, and (2) his employer intended to retaliate against him for criticizing EBSCO management. The Massachusetts Supreme Judicial Court interprets the public policy exception narrowly to avoid converting the general rule for at-will employees to one requiring just cause for termination. *King*, 638 N.E.2d at 492. "[R]edress is available for employees who are terminated for asserting a legally guaranteed right, for doing what the law requires, or for refusing to do that which the law forbids," but not for those who are terminated because they disagreed with their employer's decisions. *Kun v. KinderCare Educ. LLC*, 258 F. Supp. 3d 221, 226 (D. Mass. 2017). However, "'the common law public policy is not called into play'" where there is already a statutory remedy for employees discharged for exercising their statutory rights. *Meehan*, 177 N.E.3d at 923 (quoting *King*, 638 N.E.2d at 493)). As the public policy exception does not apply to Plaintiff's termination to the extent it was retaliation for his criticisms of business practices at EBSCO or for his exercise of his rights under the FMLA, Count III is dismissed.

## VI. CONCLUSION

For the foregoing reasons, the court hereby ALLOWS Defendants' Motion to Dismiss (Dkt. No. 26) as to Counts II and Count III and as to the claims asserted against Sydnor and Callanan in

[4] The court infers Plaintiff was an at-will employee since he has not alleged that a contract governed the terms of his employment with EBSCO.

Counts I and IV. The FMLA interference and retaliation claims asserted in Counts I and IV against EBSCO, Collins, and Lull survive. Defendants shall serve their answer to the surviving claims within 14 days of the date of this order, and a separate order setting a scheduling conference will issue.

It is So Ordered.

_/s/ Mark G. Mastroianni_
MARK G. MASTROIANNI
United States District Judge