| | |
|---|---|
| **UNITED STATES DISTRICT COURT**<br>**DISTRICT OF MASSACHUSETTS — WESTERN DIVISION**<br><br><br>**MOHAMED SOULEYMAN LY,**<br>*Plaintiff, Pro Se,*<br>v.<br>**EBSCO INDUSTRIES, INC.; EBSCO INFORMATION SERVICES, LLC; EBSCO PUBLISHING, INC.; TIM LULL; and TIM COLLINS,**<br>*Defendants.* | **Civil Action No. 3:24-cv-30161-MGM**<br><br><br>Referred to Magistrate Judge Christopher L. Morgan<br>Full Pretrial Management (Dkt. 119)<br>Hon. Mark G. Mastroianni, USDJ<br>Western Division — Springfield |

## PLAINTIFF'S MOTION FOR SPOLIATION SANCTIONS,

*ADVERSE INFERENCE INSTRUCTIONS, AND EVIDENTIARY PRECLUSION Pursuant to Fed. R. Civ. P. 37(e) and the Court's Inherent Authority Motion No. 2 — Filed Pursuant to Dkt. 118 and Dkt. 119 Referral*

*THRESHOLD NOTE: This Motion is the second instrument in Plaintiff's consolidated enforcement package before Magistrate Judge Morgan. Unlike Motion No. 1 (Dkt. 120, discovery compel), the relief sought here arises from documented, completed conduct — affirmative suppression of ESI after the preservation duty arose, after three formal written notices, without any remediation. No discovery ruling is required. This Court may rule immediately on the record already before it.*

*CONFERRAL CERTIFICATION (Rule 37(a)(1)): Plaintiff certifies good-faith conferral. Spoliation issues were first raised in Plaintiff's Forensic Preservation Notice v.1.3.3 (January 26, 2026, acknowledged by counsel) and reiterated in Plaintiff's May 18, 2026 transmission and May 19, 2026 Final Compliance Demand. As of filing, no URL has been restored, no server logs produced, no litigation hold documentation provided, and no response made to any of the eight preservation demands served from December 26, 2024 through June 18, 2026.*

## I.  INTRODUCTION

This Motion presents three independently sufficient categories of post-litigation-hold ESI spoliation. Each satisfies every required element of Rule 37(e)(2) without reference to the others. Together, they establish a systematic, content-aware suppression campaign targeting precisely the evidence that most directly contradicts Defendants' central defense narratives.

The core spoliation is visible in a single comparison: Plaintiff's professional article and executive biography — publicly accessible on EBSCO's own corporate website through at least October 7, 2025 (nine months into active litigation) — now return HTTP 403 server-side authorization barriers. Meanwhile, the executive biographies of Rob Smith, Ashleigh Faith (MLIS, PhD), Kim Lindskog, Tamir Borensztajn, and dozens of additional former EBSCO employees remain fully accessible on the identical domain. The only variable that predicts suppression across this entire population is litigation status. That selectivity is not inference — it is factual conclusion.

Two additional independent spoliation categories compound the record: (1) multi-language biography suppression with surgically selective German-language preservation, establishing a capacity-plus-choice inference that eliminates every innocent explanation; and (2) SAP SuccessFactors payroll record alteration presenting a temporal impossibility — a Massachusetts address appearing on records for pay periods during which Plaintiff resided in New Jersey and had not yet acquired Massachusetts property.

## II.  LEGAL FRAMEWORK

## A.  Rule 37(e)(2): The Intent-to-Deprive Standard

Rule 37(e)(2) authorizes adverse inference instructions, defense preclusion, and dismissal upon a finding that a party 'acted with the intent to deprive another party of the information's use in the litigation.' The Advisory Committee Notes (2015) confirm that: (1) intent may be inferred from circumstantial evidence; and (2) an intent-to-deprive finding 'dispenses with a separate finding of prejudice' — the Court need not quantify harm once intent is found.

The most probative circumstantial evidence of intent is selective destruction: targeting a litigant's records while preserving equivalent records for non-litigants. Kronisch v. United States, 150 F.3d 112, 126 (2d Cir. 1998); Sun River Energy, Inc. v. Nelson, 800 F.3d 1219, 1227 (10th Cir. 2015); Rimkus Consulting Grp., Inc. v. Cammarata, 688 F. Supp. 2d 598, 614 (S.D. Tex. 2010).

An HTTP 403 'Forbidden' response is affirmative suppression, not passive content loss. It requires a deliberate administrative act — someone with CDN or web-server authority must intentionally change the access control configuration. HTTP 403 is more probative of intent than deletion because deletion might conceivably be accidental; an authorization barrier cannot. Silvestri v. General Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001); Apple Inc. v. Samsung Electronics Co., 888 F. Supp. 2d 976, 991 (N.D. Cal. 2012).

## B.  Rule 37(e)(1): Curative Measures

Independent of the intent finding, Rule 37(e)(1) authorizes curative measures upon finding that a party failed to take reasonable steps to preserve ESI causing prejudice. Prejudice is established on three independent grounds documented below. Rule 37(e)(1) relief — restoration, derivative ESI production, monetary sanctions — is available regardless of whether the Court reaches 37(e)(2).

## III.  THREE INDEPENDENTLY SUFFICIENT SPOLIATION CATEGORIES

## A.  Category 1: HTTP 403 Suppression of Professional Attribution Content

On December 26, 2024 — the eve of federal filing — Plaintiff served a Litigation Hold Notice expressly identifying his professional attribution content as subject to mandatory preservation. Nine months later, on October 7, 2025, the Wayback Machine (Internet Archive) records the subject URLs as publicly accessible (HTTP 200). At some point thereafter — on or after December 23, 2025 — Defendants implemented HTTP 403 authorization barriers to both the professional article (about.ebsco.com/blogs/ebscopost/2277250/) and the English-language executive biography (about.ebsco.com/ebscopost/bio/mo-ly). Both URLs remain HTTP 403 as of filing.

EBSCO's own published corporate attribution of Plaintiff as 'EBSCO's Head of Globalization — wielding two decades of domain thought leadership, consistently entrusted by tech startups and Fortune 500s, including JPMorgan Chase and General Motors, to devise effective global growth strategies' — is the single most credible rebuttal evidence of Defendants' PIP-based underperformance tale. No internal document produced in discovery can substitute for what was suppressed: the employer's own voluntary, pre-litigation, public-domain attribution.

## B.  Category 2: Multi-Language Suppression with Selective German Preservation

Plaintiff's English, French, Spanish, Portuguese, and other language biography variants are suppressed (HTTP 403 or removed). The German-language variant remains fully accessible. This asymmetry is technically impossible to produce through automated processes — content management systems operate on content objects, not language variants. Language- level suppression requires a human decision, a communication of that decision, and a variant-level access-control change. Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 108 (2d Cir. 2002).

Plaintiff declares under penalty of perjury (Declaration ¶¶ 8-10): German-market partners were among the most actively engaged advocates for EBSCO's international user experience commitments during his tenure; records of that advocacy exist within Defendants' systems; the German variant documents Plaintiff's achievement of the first genuine, scalable multilingual localization in EBSCO's history — accomplished within 18 months after 13 years of unsuccessful pursuit. The German profile was preserved because EBSCO had a commercial reason to preserve it. That capacity-plus-choice inference eliminates every innocent explanation.

## C. Category 3: SAP SuccessFactors Record Alteration — Temporal Impossibility

Plaintiff's contemporaneous payroll statements (in his personal possession, Declaration ¶ 16) reflect his New Jersey residential address for the November 2021 – May 2023 employment period. Defendants' produced payroll records for the identical pay periods reflect a Massachusetts address. Plaintiff did not acquire his Massachusetts property (485 Glendale Road, Wilbraham, MA) until after employment ended. Payroll systems cannot insert a future address into a historical pay record absent retroactive alteration. This is arithmetic, not argument. Pending Subpoena No. 5 to SAP America, Inc. will return the independent field-level audit log establishing who made the change and when.

The altered field — residential address, state of employment, tax jurisdiction — is not neutral: it bears directly on Massachusetts Wage Act applicability (G.L. c. 149, §§ 148, 150) and the employer-identity analysis prescribed in Dkt. 110. Post-litigation alteration of employment records in active proceedings invokes the Court's inherent authority. Chambers v. NASCO, Inc., 501 U.S. 32, 44-46 (1991).

## IV.  THE FIVE-ELEMENT RULE 37(e)(2) ANALYSIS

| ELEMENT | GOVERNING STANDARD | PROOF — ALL THREE CATEGORIES |
|---|---|---|
| **1. ESI subject to preservation obligation** | ESI relevant to pending litigation. Zubulake, 220 F.R.D. at 218. | Professional attribution pages directly rebut PIP defense (Dkt. 117). SAP records bear on employer identity (Dkt. 110). Both categories expressly identified in December 26, 2024 Notice. |
| **2. Preservation duty arose before loss** | Duty arises when litigation is reasonably anticipated. Zubulake, 220 F.R.D. at 216. | Duty arose November 14, 2024 (case filing); confirmed in writing December 26, 2024. HTTP 403 restriction and SAP alteration both occurred after that date. 12-month gap forecloses inadvertence. |
| **3. Loss occurred (ESI not preserved)** | Loss includes functional inaccessibility. Silvestri, 271 F.3d at 590; Apple, 888 F. Supp. 2d at 991. | HTTP 403 renders ESI functionally inaccessible and unauthenticated as public-domain employer attribution. SAP alteration retroactively falsifies historical employment record. |
| **4. Failure to take reasonable steps** | Institutional sophistication of party and counsel is relevant. Pension Comm., 685 F. Supp. 2d at 476. | Littler Mendelson representation + multi-billion-dollar IT enterprise + 8 documented demands across 148 days + zero curative response = no basis for 'reasonable steps' defense. |
| **5. Intent to deprive (37(e)(2))** | Inferred from circumstantial evidence: timing, selectivity, targeting. Advisory Committee Notes (2015); Kronisch, 150 F.3d at 126. | FOUR INDEPENDENT PROOFS: (1) 12-month notice-to-restriction timeline; (2) three-level selectivity (population, intra-content, jurisdictional); (3) capacity-plus-choice from German preservation; (4) 8 demands, 148 days, zero remediation. Any single proof sufficient; all four present. |

## V.  RELIEF REQUESTED

### A.  Tier I — Curative Measures (Rule 37(e)(1))

(1) RESTORATION ORDER: Within ten (10) days, Defendants shall restore full public access to all suppressed Plaintiff-attributed URLs in all language variants (English, French, Spanish, Portuguese, and others) in the form and content as they existed on December 23, 2025. The German-language version's continued accessibility does not constitute compliance. Failure to restore all versions within ten days automatically triggers Tier II conditional preclusion.

(2) DERIVATIVE ESI PRODUCTION: Within twenty-one (21) days, Defendants shall produce all server logs, CMS records, IT change orders, and CDN access-control configuration logs for all Plaintiff-attributed language-variant URLs, including all internal communications relating to preservation or suppression decisions after December 26, 2024.

(3) SAP AUDIT LOG PRODUCTION: Within twenty-one (21) days, Defendants shall produce the complete SAP SuccessFactors field-level audit log for Plaintiff's employee record for all changes after December 26, 2024, including prior field values, new field values, User ID, and timestamp, specifically including the home address, state/province, tax jurisdiction, and employer-entity fields.

(4) PRESERVATION CERTIFICATION: Within seven (7) days, Defendants' designated IT representative shall file a sworn § 1746 certification confirming current preservation status of all identified ESI, current HTTP status of every language-variant URL, and existence of any internal communications relating to the German-language preservation decision.

(5) MONETARY SANCTIONS: All reasonable expenses incurred from December 26, 2024 in identifying, documenting, and litigating the preservation failures. Plaintiff shall submit a supporting declaration within fourteen (14) days.

### B.  Tier II — Intent-Based Relief (Rule 37(e)(2))

(6) ADVERSE INFERENCE INSTRUCTION: Upon finding of intent to deprive, the jury shall be instructed substantially as follows:

> *"You have heard evidence that during this litigation, after Plaintiff formally requested preservation, Defendants restricted public access to content on their corporate website. Plaintiff's executive biography and professional article were suppressed in English, French, Spanish, Portuguese, and other language versions — while the German-language version was preserved. You may presume that the suppressed content, had it been preserved, would have been unfavorable to Defendants and favorable to Plaintiff on: (1) whether Plaintiff's professional performance materially exceeded the PIP characterization; (2) whether the PIP was pretextual, given the 18-month multilingual achievement; (3) whether EBSCO Industries, Inc. functioned as the operational employer of record; (4) whether Defendants' suppression impaired Plaintiff's US-market career recovery and mitigation capacity."*

(7) In the alternative to or in addition to the jury instruction, an Order pursuant to Fed. R. Civ. P. 37(e)(2)(A) presuming as established that: (a) Plaintiff's professional performance materially exceeded the PIP characterization;

(b) Plaintiff achieved the 18-month multilingual milestone; (c) EBSCO Industries, Inc. was the operational employer of record; and (d) Defendants' English-language suppression impaired Plaintiff's US-market mitigation capacity.

(8) CONDITIONAL DEFENSE PRECLUSION: Conditioned upon non-compliance with Paragraph 1 (restoration order) within ten days, Defendants are precluded from: (a) asserting Dkt. 117 Defenses 7, 8, 9, 15 (PIP/underperformance); and (b) asserting Dkt. 117 Defense 17 (failure to mitigate), because Defendants suppressed the US-market-facing professional credential whose absence they intend to invoke as mitigation failure.

## C. Tier III — Legal Presumption 37(e)(2)(A)

(9) *(8) TIER II — LEGAL PRESUMPTION (ALTERNATIVE). In the alternative to or in addition to the adverse inference jury instruction, an Order pursuant to Fed. R. Civ. P. 37(e)(2)(A) presuming as established that:*

   a) *Plaintiff's professional performance during his employment materially exceeded the characterization reflected in Defendants' Performance Improvement Plan;*
   b) *Plaintiff achieved, within approximately eighteen months, a scalable multilingual platform localization — the first in EBSCO's history — that Defendants had pursued unsuccessfully for approximately thirteen years;*
   c) *EBSCO Industries, Inc. functioned as the operational and statutory employer of record; and*
   d) *Defendants' suppression of Plaintiff's English-language professional attribution impaired his career recovery and US-market mitigation capacity during his active job search. Authority: Fed. R. Civ. P. 37(e)(2)(A); Advisory Committee Notes (2015) (Court 'may presume that the lost information was unfavorable to the party' — judicial presumption, not jury instruction). This alternative relief is available as an immediate, non-jury-dependent remedy that resolves the prejudice from the ESI loss without awaiting trial.*

# VI.  CONCLUSION

Three independent categories of spoliation, each satisfying every Rule 37(e)(2) element without reference to the others. Four independent proofs of intent, each sufficient alone. Eight preservation demands across 148 days, zero curative response. The German-language profile exposed the commercial logic: Defendants preserved what generates revenue and suppressed what generates liability. Capacity-plus-choice closes the last innocent explanation. The requested adverse inference instruction is the minimum adequate remedy the Rule authorizes.

Respectfully submitted,

**/s/ Mohamed Souleyman Ly**

Mohamed Souleyman Ly | Pro Se Plaintiff and Whistleblower

485 Glendale Road, Wilbraham, MA 01095 | (202) 641-2322 | mmmly7@gmail.com

Dated: June 5, 2026