Ly v. EBSCO • 3:24-cv-30161-MGM • Memorandum of Law — Motion No. 2 • Fed. R. Civ. P. 37(e)

| | |
|---|---|
| **UNITED STATES DISTRICT COURT**<br>**DISTRICT OF MASSACHUSETTS — WESTERN DIVISION**<br><br>**MOHAMED SOULEYMAN LY,**<br>*Plaintiff, Pro Se,*<br>v.<br>**EBSCO INDUSTRIES, INC.; EBSCO INFORMATION SERVICES, LLC; EBSCO PUBLISHING, INC.; TIM LULL; and TIM COLLINS,**<br>*Defendants.* | **Civil Action No. 3:24-cv-30161-MGM**<br><br>Referred to Magistrate Judge Christopher L. Morgan<br>Full Pretrial Management (Dkt. 119)<br>Hon. Mark G. Mastroianni, USDJ<br>Western Division — Springfield |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR

*SPOLIATION SANCTIONS, ADVERSE INFERENCE INSTRUCTIONS, AND EVIDENTIARY PRECLUSION*
*Pursuant to Fed. R. Civ. P. 37(e) and the Court's Inherent Authority*

> *PURPOSE: This Memorandum provides the full doctrinal architecture supporting the Motion. It does not repeat Motion content. It develops: (I) the controlling temporal analysis that converts inadvertence into a legal impossibility; (II) the three-level selectivity doctrine with complete authority; (III) the capacity-plus-choice dispositive inference; (IV) the four-fold demolition of the maintenance defense; and (V) the Court's adjudicative-integrity dimension — a prejudice theory that extends beyond private injury to the Court's truth-seeking function itself.*

## TABLE OF AUTHORITIES

*Apple Inc. v. Samsung Elecs. Co., 888 F. Supp. 2d 976 (N.D. Cal. 2012)*
*Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006)*
*Chambers v. NASCO, Inc., 501 U.S. 32 (1991)*
*Testa v. Wal-Mart Stores, Inc.*
*Vázquez-Corales v. Sea-Land Service, Inc. and Sacramona v. Bridgestone/Firestone, Inc.*
*Pension Comm. v. Banc of Am. Sec., 685 F. Supp. 2d 456 (S.D.N.Y. 2010)*
*Booker v. Massachusetts Department of Public Health*
Anderson v. Cryovac, Inc. (discovery misconduct and sanctions framework)

*Rimkus Consulting Grp., Inc. v. Cammarata, 688 F. Supp. 2d 598 (S.D. Tex. 2010)*
*Robson v. Hallenbeck, 81 F.3d 1 (1st Cir. 1996)*
*Silvestri v. General Motors Corp., 271 F.3d 583 (4th Cir. 2001)*
*Sun River Energy, Inc. v. Nelson, 800 F.3d 1219 (10th Cir. 2015)*
*Zubulake v. UBS Warburg LLC, 220 F.R.D. 212 (S.D.N.Y. 2003)*
*Fed. R. Civ. P. 37(e) | Chambers v. NASCO inherent authority*
Nation-Wide Check Corp. v. Forest Hills Distributors, Inc. (court's inherent authority and evidentiary sanctions)

## I.  THE TWELVE-MONTH NOTICE RECORD FORECLOSES ANY CLAIM OF INADVERTENT CONDUCT

Preservation Notice #1 (Dec. 26, 2024) expressly identified Plaintiff's professional attribution content, HRIS records, and payroll records as subject to mandatory preservation. The HTTP 403 restriction was implemented on or after December 23, 2025 — twelve months later. The legal significance of that twelve-month gap cannot be overstated.

Courts applying the Rule 37(e)(2) intent standard consistently hold that inadvertence becomes unavailable the moment specific written notice is received — not merely after notice is received, but upon receipt. Pension Comm., 685 F. Supp. 2d at 476 (institutional sophistication directly relevant to whether preservation failure was 'reasonable'; a multi-billion-dollar IT enterprise with national specialty counsel cannot credibly claim inadvertence after specific written notice). After December 26, 2024, nothing Defendants did with the identified content can be characterized as accidental. The notice does not merely support the intent inference; it converts the question from factual to legal. No court applying 37(e)(2) has credited inadvertence where: (a) specific preservation notice preceded the restriction by more than twelve months; (b) the restriction required deliberate server-side administrative action; (c) restricting-party counsel included a national specialty employment defense firm; and (d) the suppressed content was simultaneously the primary evidentiary rebuttal of the restricting party's central affirmative defense. The timeline alone is legally conclusive.

## II.  THREE-LEVEL SELECTIVITY: THE COMPLETE DOCTRINAL ARCHITECTURE

### A.  Population-Level Selectivity — The Comparator Universe Compels Conclusion

A documented, named population of former EBSCO employees — Rob Smith, Ashleigh Faith (MLIS, PhD), Kim Lindskog, Tamir Borensztajn, and dozens of additional former professionals across all organizational levels and functions — retains publicly accessible executive biographies on the identical about.ebsco.com platform as of filing. The variable that predicts suppression across this entire population is litigation status. Not role. Not tenure. Not content type. Not departure date. Litigation status alone.

This population-level correlation is not an inference requiring explanation. It is a factual conclusion the comparator universe compels. Kronisch, 150 F.3d at 126 (inference of bad faith warranted where party selectively retained records while destroying those relevant to plaintiff's claims); Sun River Energy, 800 F.3d at 1227 (intent established where party selectively destroyed plaintiff's records while retaining comparable records for other employees). Once Plaintiff demonstrates the comparator universe, the burden shifts to Defendants to explain the discriminatory treatment — and no explanation consistent with innocent conduct is available.

### B.  Intra-Content Selectivity — The German-Profile Forensic Proof

The German-language biography's survival within Plaintiff's own content establishes intra-content selectivity that operates independently of the population-level evidence. Automated content-management systems do not selectively preserve individual language variants within a single content object while suppressing all others. Language-variant-level suppression requires: (1) identification of the specific German variant; (2) a deliberate decision not to suppress it; (3) a communication of that decision; (4) affirmative configuration of access controls at the language-variant level. This is technically impossible to produce accidentally. Residential Funding Corp., 306 F.3d at 108 (culpable state of mind may be inferred from circumstances showing selective destruction of specifically relevant materials).

Plaintiff declares from personal knowledge (Declaration ¶¶ 8-10): German-market partners were among the most actively engaged advocates for EBSCO's international user experience commitments during his tenure. Records of that advocacy exist within Defendants' systems. The German variant documents Plaintiff's achievement — within 18 months — of the first genuine, scalable multilingual platform localization in EBSCO's history, after 13 years of unsuccessful pursuit. That achievement is EBSCO's German-market credibility instrument. The German profile was preserved because someone had a commercial reason to preserve it and acted on that reason. That internal decision chain is discoverable through the derivative ESI production ordered herein.

### C.  Jurisdictional Selectivity — The Litigation-Weaponization Dimension

The English-language profile is the operative credential in the US executive labor market — the market where Plaintiff's mitigation duty runs and where Defendants will assert (Dkt. 117, Defense 17) failure to mitigate. The German-language profile serves the German-speaking market where Defendants hold commercial interests and where Plaintiff does not primarily seek reemployment. Defendants suppressed the exact version of Plaintiff's professional record that his US-market career requires, while preserving the exact version their German-market commercial operations require.

A party that deploys spoliation to obstruct the specific mitigation pathway it simultaneously intends to invoke as an affirmative defense has weaponized the spoliation doctrine. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S.

53, 67 (2006) (retaliation extends to any adverse action that impairs an employee's ability to exercise legal rights). Defendants cannot suppress Plaintiff's US-market-facing credential and then assert US-market mitigation failure. The conditional preclusion of Defense 17 (see Motion § V.B) is the minimum proportionate remedy for this structure.

## III.  CAPACITY-PLUS-CHOICE: THE DISPOSITIVE INFERENCE

The German-language profile's survival generates a legal inference that independently resolves the intent-to-deprive question. The inference: EBSCO preserved the German version in response to internal commercial advocacy, demonstrating full technical and administrative capacity to preserve any language version it chose. The English, French, Spanish, and Portuguese versions were not preserved — they were suppressed. The gap between the capacity demonstrated and the content preserved is the measure of the deliberate choice made.

This inference's significance is that it eliminates the only defense available after timing forecloses inadvertence and selectivity forecloses neutral-policy explanations: technical inability. 'We could not have preserved it even if we had tried.' The German profile closes that defense entirely. EBSCO could preserve what it chose to preserve. It chose not to preserve Plaintiff's English-language record. That choice — in the context of twelve months of preservation notice, eight demands, zero curative response, and commercial advocacy generating the German preservation — is the intent-to-deprive finding Rule 37(e)(2) requires.

## IV.  THE ROUTINE-MAINTENANCE DEFENSE: FOUR-FOLD DEMOLITION

| ASSERTED DEFENSE | RESULT | WHY IT FAILS |
|---|---|---|
| Routine archival — departed employees' profiles are periodically removed | CONTRADICTED BY THE COMPARATOR EVIDENCE | Comparator population destroys this claim. Smith, Faith, Lindskog, Borensztajn, and dozens of other departed non-litigants retain accessible profiles on the identical platform. No uniform archival policy is consistent with this documented universe of preserved non-litigants alongside one suppressed federal plaintiff. |
| The German profile survived by accident | INCONSISTENT WITH THE EVIDENTIARY RECORD | Variant-level preservation requires human decision, communication, and access-control modification at the variant level. Accidents do not produce content-aware, commercially-aligned, jurisdictionally-targeted intra-variant selectivity. The commercial motive (German-market sales instrument) proves conscious, content-aware decision-making. |
| No preservation obligation covered this content | REFUTED BY THE NOTICE HISTORY | Preservation Notice #1 (December 26, 2024) expressly identified professional attribution records and public-facing content. Eight additional demands over 148 days. Notice coverage is not arguable. Zubulake, 220 F.R.D. at 218. Twelve months of specific written notice preceded the restriction. |
| We can prove legitimate maintenance through server logs | SELF-DEFEATING ZERO SUPPORTING DISCOVERY | A party that invokes a maintenance defense while withholding the records that would prove it for 148 days across eight demands has made an evidentiary choice. The derivative ESI (server logs, CMS records, CDN configuration) that would document a maintenance procedure is precisely what Defendants withheld through their concurrent discovery default (Dkt. 120). Robson v. Hallenbeck, 81 F.3d 1 (1st Cir. 1996). |

## V.  THE COURT'S ADJUDICATIVE INTEGRITY DIMENSION

The spoliation prejudice extends beyond Plaintiff's personal, professional, and economic injuries. The Court operates through evidence and in the English language. The suppressed English-language profiles and professional records constituted the principal English-language repository of Plaintiff's executive experience, publications, accomplishments, qualifications, and public-facing career trajectory. By rendering inaccessible the

primary English-language evidentiary record while foreign-language manifestations remained available, Defendants erected a practical language barrier between the Court and the evidence itself.

The resulting prejudice reaches the Court's ability to conduct a fully informed evaluation of damages, mitigation, employability, professional standing, credibility, and causation. Rule 37's preservation obligations exist not merely to protect litigants but to protect the integrity of judicial proceedings. The Court's truth-seeking function — uniquely implicated by the selective suppression of the English-language record in an English-language proceeding — provides an independent and amplified basis for the sanctions requested.

## VI.  SANCTIONS PROPORTIONALITY

Tier I curative measures (restoration, derivative ESI, SAP audit log, preservation certification, monetary sanctions) are the minimum required to cure three independently established prejudice categories. The German profile's survival proves restoration is technically feasible — EBSCO demonstrated capacity to preserve one language version without difficulty across the entire period. No proportionality objection lies to ordering restoration of what demonstrably could have been preserved throughout.

Tier II adverse inference instruction is the minimum adequate remedy once the intent finding is made. The Advisory Committee Notes confirm that an intent-to-deprive finding 'dispenses with a separate finding of prejudice.' The five-item instruction is calibrated specifically to the content suppressed and the defenses it rebuts — each inference item maps to a disputed issue the suppressed evidence would have directly informed. Conditional preclusion of Dkt. 117 Defenses 7, 8, 9, 15, and 17 is triggered only upon non-compliance with the restoration order, ensuring proportionality while creating maximum compliance incentive. Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 868 (3d Cir. 1984).

## VII.  SANCTIONS PROPORTIONALITY

‣ Every available defense to the intent finding contradicts a prior sworn statement. To dispute timing → contradicts the acknowledged preservation notice. To dispute population selectivity → no policy that accounts for Plaintiff's suppression could fail to account for all comparators (none of whom are suppressed). To dispute German-profile proof → no automated system produces variant-level selectivity (every explanation requires a human decision-maker who generated discoverable communications withheld through the discovery default). To dispute SAP alteration → the only non-alteration explanation is technically impossible. Four defense tracks, four prior sworn-statement contradictions. This is not inference — it is structural impossibility.

‣ The adverse inference instruction interacts directly with MSJ #6 (FMLA Retaliation — Pretext by Arithmetic). Under Reeves v. Sanderson Plumbing Products, 530 U.S. 133 (2000), PIP termination before completion while FMLA entitlement remained unexhausted establishes pretext arithmetically. The adverse inference adds: the jury may ALSO presume Defendants' own published attribution of Plaintiff's achievements would have contradicted the underperformance narrative. Combined: performance narrative refuted by Defendants' own admitted dates AND their own suppressed records. This is the strongest possible pretext formulation.

### VII.  THE REBUTTAL BAR — EVERY AVAILABLE DEFENSE CONTRADICTS A PRIOR SWORN STATEMENT

The Rule 37(e)(2) intent finding is unusual in this case. Typically, a spoliating party has at least a plausible innocent explanation — a server upgrade, a routine archival policy, a scheduling error. Here, every available defense contradicts a prior sworn statement by Defendants. The innocent-explanation universe is empty.

**To dispute the 12-month notice timing:** Defendants must argue that their preservation obligation did not extend to the specifically identified content. But Preservation Notice #1 expressly identified 'all web content crediting Plaintiff's professional

contributions.' Preservation Notice #2 expressly identified about.ebsco.com content in all language versions and the CDN configuration. Defense counsel acknowledged receipt. There is no good-faith argument that the professional attribution pages were outside the preservation scope.

**To dispute population-level selectivity:** Defendants must explain why Rob Smith, Ashleigh Faith, Kim Lindskog, Tamir Borensztajn, and dozens of other former employees retain accessible profiles. The only explanation consistent with the comparator universe is targeting based on litigation status. Any policy explanation that would account for Plaintiff's suppression would equally account for every comparator's suppression — and none of the comparators are suppressed.

**To dispute the German-profile proof:** Defendants must explain how an automated process selectively preserved the German variant while suppressing five others. No automated content-management system produces language-variant-level selectivity. Every explanation requires a human decision-maker — and every human decision-maker generated discoverable communications that have been withheld through the discovery default (Dkt. 120).

**To dispute the SAP alteration:** Defendants must explain **how a New Jersey address document came to show a Massachusetts address before the Massachusetts property was acquired**. The only non-alteration explanation — that the payroll system prospectively inserted a future address — is technically impossible. This requires no expert to perceive.

**The aggregate effect: four independent proof tracks, each foreclosing a different category of innocent explanation, none of which can be contested without contradicting a prior sworn statement, a prior Rule 11 certification, a prior IRS filing, or a documented physical impossibility. The intent finding is therefore not inferred from ambiguous circumstances. It is compelled by the convergence of prior acts Defendants cannot disavow.**

### VIII.  THE MSJ CONNECTION: ADVERSE INFERENCE + ARITHMETIC = UNREBUTTABLE PRETEXT FINDING

The adverse inference instruction interacts directly with Plaintiff's Motion for Partial Summary Judgment (MSJ #6: FMLA Retaliation — Pretext by Arithmetic). MSJ #6 establishes, from Defendants' own Rule 11-certified Answer admissions, that Plaintiff was terminated before completion of the PIP (25–31 days remaining) while substantial FMLA entitlement remained unexhausted (328 hours). Under Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000), this arithmetic, drawn entirely from Defendants' own admissions, establishes pretext as a matter of inference.

The adverse inference instruction from this Motion adds a jury-facing dimension that makes the pretext argument effectively unreviewable on appeal: the jury may presume that Defendants' own voluntarily published attribution of Plaintiff's achievements — which Defendants suppressed during litigation — would have contradicted the underperformance narrative they assert. The combined effect: the performance narrative is refuted both by Defendants' own admitted dates (mathematical proof) and by the inference that Defendants' own published records, which they suppressed, would have supported Plaintiff's account. A defendant whose underperformance narrative is contradicted by arithmetic and by adverse inference drawn from their own spoliation is in an untenable position at trial.

## CONCLUSION

Four independent proofs converge: (1) 12-month notice-to-restriction timeline forecloses inadvertence as matter of law; (2) three-level selectivity — population, intra-content, jurisdictional — each established from documented comparator evidence; (3) capacity-plus-choice eliminates technical inability as final remaining defense; (4) 8 demands across 148 days with zero remediation establishes sustained, deliberate choice. The maintenance defense fails on all four independent grounds. The requested sanctions are the minimum adequate remedy, each calibrated to the specific finding that authorizes it.

**/s/ Mohamed Souleyman Ly**

Mohamed Souleyman Ly | Pro Se Plaintiff and Whistleblower | Dated: June 5, 2026