| | |
|---|---|
| **UNITED STATES DISTRICT COURT**<br>**DISTRICT OF MASSACHUSETTS — WESTERN DIVISION**<br><br>**MOHAMED SOULEYMAN LY,**<br>*Plaintiff, Pro Se,*<br>v.<br>**EBSCO INDUSTRIES, INC.; EBSCO INFORMATION SERVICES, LLC; EBSCO PUBLISHING, INC.; TIM LULL; and TIM COLLINS,**<br>*Defendants.* | **Civil Action No. 3:24-cv-30161-MGM**<br><br>Referred to Magistrate Judge Christopher L. Morgan<br>Full Pretrial Management (Dkt. 119)<br>Hon. Mark G. Mastroianni, USDJ<br>Western Division — Springfield |

# SUPPLEMENTAL EVIDENTIARY FRAMEWORK

## IN SUPPORT OF PLAINTIFF'S MOTION FOR SPOLIATION SANCTIONS (ENFORCEMENT NO. 2)

*Visual Reference Architecture | Preserved Structural Matrices | Zooming into Evidence and Authority*

*Fed. R. Civ. P. 37(e) | Inherent Authority | Appellate Preservation Record*

> ***FUNCTION OF THIS INSTRUMENT***: This Supplemental Evidentiary Framework constitutes Document 6 of Plaintiff's Spoliation Package and provides integrated evidentiary and legal supplementation to Plaintiff's Motion for Spoliation Sanctions. It consolidates and organizes supporting material that is referenced across the Motion (Item 1), Memorandum (Item 2), Declaration, and Statement of Material Facts, and presents it in structured form to assist the Court's review of preservation duty, comparator evidence, ESI access restrictions, and post-notice conduct. Each section corresponds to and is cross-referenced with the underlying filings in the Spoliation Package.

## SECTION I.  PRESERVATION DUTY — FIVE SEQUENTIAL ANCHORS

Cross-reference: Motion (Doc 1) § II. The following table presents the preservation duty chronology in its full structural form, establishing each anchor's independent legal significance.

| DATE | EVENT | LEGAL SIGNIFICANCE |
|---|---|---|
| Nov. 14, 2024 | Case filed (Dkt. 1). Preservation duty arises by operation of law. | All ESI reasonably anticipated to be relevant must be preserved from this date forward. Fed. R. Civ. P. 37(e) Advisory Committee Notes (2015); Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 216 (S.D.N.Y. 2003). Tobin v. Delta Airlines, Inc., No. 08-cv-80766 (S.D. Fla. 2009) (duty attaches upon reasonable anticipation, which may precede formal filing by months). |
| Dec. 26, 2024 | **THE LINCHPIN — Preservation Notice #1: Litigation Hold Notice served on Defendants' counsel. Expressly identified: (a) professional attribution records and public-facing content in all language versions; (b) HRIS records in SAP SuccessFactors; (c) payroll records with employer-entity fields; (d) all communications concerning employment, performance, and termination.** | TWELVE MONTHS elapsed between this notice and the ESI restriction. Defendants cannot claim unawareness of preservation obligations for any event after this date. Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC, 685 F. Supp. 2d 456, 476 (S.D.N.Y. 2010) (institutional sophistication and specific written notice foreclose inadvertence). After December 26, 2024, no restriction can be characterized as accidental. |
| Oct. 7, 2025 | LAST CONFIRMED PUBLIC ACCESS — Professional article confirmed accessible | The suppression cannot be attributed to pre-litigation content management. Public accessibility was confirmed nine months into active litigation and after the preservation notice. The bracket between |

| | | |
|---|---|---|
| | (HTTP 200) by Wayback Machine (Internet Archive) crawl. Nine months into active litigation. After Preservation Notice #1. | October 7, 2025 and December 23, 2025 is the implementation window for the HTTP 403 restriction — a window during active litigation and after Preservation Notice #1. |
| **Post-Dec. 23, 2025** | HTTP 403 RESTRICTIONS IMPLEMENTED — English, French, Spanish, Portuguese, and other language variants of Plaintiff's biography and article restricted. German-language biography variant preserved. | POST-HOLD. POST-NOTICE #1. Language-specific selectivity (German preserved; all others suppressed) proves affirmative, content-aware human decision-making. Automated systems cannot produce intra-content language-variant selectivity — this requires: (a) identification of the specific German variant; (b) a decision not to suppress it; (c) variant-level access-control modification. Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 108 (2d Cir. 2002). |
| **Jan. 26, 2026** | PRESERVATION NOTICE #2 — Forensic Preservation Notice v.1.3.3 served by email. Specifically identified about.ebsco.com content across ALL language versions, SAP records and audit logs, payroll records with employer-entity fields, and CDN configuration. Defense counsel acknowledged receipt. | Content specifically named in a formal preservation notice that is subsequently suppressed or maintained in its restricted state is not inadvertently lost — it is deliberately withheld. Receipt acknowledged by defense counsel. No curative action taken. |
| **May 8–20, 2026** | PRESERVATION NOTICES #3–#8 — Six escalating demands for ESI restoration (Track A) and derivative ESI production (Track B). Final compliance deadline: May 22, 2026. Lynch email May 20, 8:12 AM declined all tracks. TOTAL: Eight demands across 148 days. | Zero curative response to any of eight demands. A party receiving eight specific preservation demands across 148 days without taking any curative action has not maintained the passive obliviousness that inadvertence requires — it has made a repeated, considered, documented choice not to remedy the preservation failure. Robson v. Hallenbeck, 81 F.3d 1, 2-3 (1st Cir. 1996) (pattern of persistent non-compliance with preservation obligations weighs in favor of sanctions). |

## SECTION II.  COMPARATOR POPULATION — THE SELECTIVITY UNIVERSE

Cross-reference: Motion (Doc 1) § III.B; SMF (Doc 4) Facts 6–10; Declaration (Doc 3) ¶ 7. The following table presents the comparator universe in structured form, establishing the population-level selectivity inference with documentary precision.

| FORMER EMPLOYEE | URL — ABOUT.EBSCO.COM | HTTP STATUS | LITIGATION STATUS |
|---|---|---|---|
| **Rob Smith** | *about.ebsco.com/ebscopost/bio/rob-smith* | ✓ 200 OK | Departed. No litigation. |
| **Ashleigh Faith, MLIS, PhD** | *about.ebsco.com/ebscopost/bio/ashleigh-faith-mlis-phd* | ✓ 200 OK | Departed. No litigation. |
| **Kim Lindskog** | *about.ebsco.com/ebscopost/bio/kim-lindskog* | ✓ 200 OK | Departed. No litigation. |
| **Tamir Borensztajn** | *about.ebsco.com/ebscopost/bio/tamir-borensztajn* | ✓ 200 OK | Departed. No litigation. |
| **Dozens of additional former employees (all levels/functions)** | *about.ebsco.com/ebscopost/bio/[various]* | ✓ 200 OK | Departed. No litigation. |
| **MOHAMED SOULEYMAN LY** | *about.ebsco.com/ebscopost/bio/mo-ly [English: HTTP 403] \| about.ebsco.com/ebscopost/bio/mo-ly [German: HTTP 200] — SAME PERSON, SAME PLATFORM, OPPOSITE TREATMENT BY LANGUAGE* | ✗ 403 | **ACTIVE FEDERAL LITIGATION AGAINST DEFENDANTS.** |

*THE INFERENCE: The variable that predicts suppression across this entire population is litigation status — not role, not tenure, not content type, not departure date. That population-level correlation is not an inference requiring explanation. It is a factual conclusion the comparator universe compels. Kronisch v. United States, 150 F.3d 112, 126 (2d Cir. 1998); Sun River Energy, Inc. v. Nelson, 800 F.3d 1219, 1227 (10th Cir. 2015). Exhibit G (Three-Way Comparison: Plaintiff English 403 vs. Smith 200 vs. Plaintiff German 200 — same domain, same date) will be filed with the Exhibit Package.*

# SECTION III.  PER-CATEGORY ELEMENT ANALYSIS — STRUCTURED PROOF MATRICES

Cross-reference: Motion (Doc 1) § III; Memo (Doc 2) § II. The following tables present each spoliation category with the per-element, per-proof structure that establishes independent sufficiency.

### CATEGORY 1A — HTTP 403 SUPPRESSION OF PROFESSIONAL ARTICLE

| ELEMENT | FACTUAL PREDICATE | PROOF SOURCE | INDEPENDENT SUFFICIENCY |
|---|---|---|---|
| **ESI Identity** | 'Two Billion Searches — Circulating Knowledge Across Borders, Languages and Cultures.' Published at about.ebsco.com/blogs/ebscopost/2277250/. EBSCO's own brand attribution of Plaintiff's achievement driving 2+ billion annual searches globally. | *Wayback Machine archive (Exhibit A); EBSCO's published record (self-authenticating under Fed. R. Evid. 902(13)).* | ESI existence established from neutral third-party institutional archive independent of any party. |
| **Pre-Restriction Status** | Publicly accessible (HTTP 200) as recently as October 7, 2025 — nine months into active litigation, after Preservation Notice #1. | *Internet Archive last crawl: October 7, 2025 (Exhibit A); Subpoena No. 7 (Internet Archive) will establish exact date bracket.* | Confirms existence and accessibility after preservation duty arose. Forecloses pre-litigation management excuse. |
| **Current Status** | HTTP 403 — 'You are not authorized to access this page.' An affirmative, administratively implemented authorization barrier. Cannot occur accidentally. | *Plaintiff's personal verification with timestamp (Exhibit B); Subpoena No. 8 (CDN provider) will establish exact implementation date, User ID, and whether German variant was expressly excluded.* | Silvestri, 271 F.3d at 590; Apple, 888 F. Supp. 2d at 991. HTTP 403 is more probative of intent than deletion. |
| **Evidentiary Significance** | Single most credible public-domain rebuttal of Dkt. 117 PIP-based underperformance narrative. Created by Defendant, published voluntarily under EBSCO's brand, without anticipation of litigation. Cannot be recreated from internal documents. | *Directly contradicts Dkt. 117 Defenses 7, 8, 9, 15 (Exhibit S). The PIP was issued March 15, 2023 — two months after EBSCO published this article in four languages simultaneously.* | The content's evidentiary weight derives specifically from its origin as employer-generated, pre-litigation attribution — a quality that cannot be replicated through internal document production. |

### CATEGORY 2 — SAP SUCCESSFACTORS RECORD ALTERATION: THE TEMPORAL IMPOSSIBILITY

| COMPARISON ELEMENT | FACTUAL PREDICATE / SIGNIFICANCE |
|---|---|
| **Plaintiff's Contemporaneous Payroll Statements** | In Plaintiff's personal possession (Exhibit M). Reflect New Jersey residential and even short-term transitional Salem, MA residence addresses for the November 1, 2021 – May 25, 2023 employment period. Received during employment; no altered. |
| **Defendants' Produced Payroll Records (Same Pay Periods)** | Reflect a Massachusetts address for the identical pay periods (Exhibit N). Same employee. Same payroll dates. Different address jurisdiction. |
| **Massachusetts Property Acquisition** | Plaintiff did not acquire 485 Glendale Road, Wilbraham, MA until AFTER Nov 22, 2022 (Exhibit O — property acquisition records). A future address cannot appear in a historical pay record absent retroactive alteration. |
| **The Temporal Impossibility** | Payroll systems populate the employee's current address at the time of each payroll run. They cannot insert a future address into a historical record. This is arithmetic. Two hypotheses exist: (A) EBSCO's system entered an address that did not yet exist — technically impossible; or (B) the record was retroactively altered. One conclusion follows. |

| | |
|---|---|
| **Litigation-Determinative Significance** | The altered field — residential address, state/province of employment, tax jurisdiction — bears directly on: (a) Massachusetts Wage Act applicability (G.L. c. 149, §§ 148, 150); (b) the Engelhardt employer-identity analysis prescribed in Dkt. 110. The alteration targets the precise jurisdictional field with the greatest litigation-determinative value. |
| **Three Independent Legal Bases** | (1) Rule 37(e): post-hold alteration of ESI with pending litigation; (2) Court's inherent authority: Chambers v. NASCO, Inc., 501 U.S. 32, 44-46 (1991) — calculated record manipulation during judicial proceedings; (3) Pattern evidence: background check procured through 'EBSCO Ipswich' — a legally non-existent entity — before Plaintiff's employment establishes that entity-identity manipulation in EBSCO employment records is an organizational pattern, not an isolated event. The SAP alteration reflects the same pattern applied during litigation. |
| **The SAP Audit Log** | SAP SuccessFactors field-level audit logs record every change — date, time, User ID, prior value, new value — in SAP's own infrastructure, beyond Defendants' ability to alter. Subpoena No. 5 to SAP America, Inc. will return this log. It will establish who made the change, when, and what prior values were displaced. |

# SECTION IV.  GRADUATED SANCTIONS FRAMEWORK — TIERED RELIEF MATRIX

Cross-reference: Motion (Doc 1) § V; Proposed Order (Doc 5) Parts A–D. The following matrix maps each sanction to its governing standard, legal authority, and calibration rationale — structured for direct conversion to the Order's findings.

| TIER | SANCTION | AUTHORITY | STANDARD | CALIBRATION |
|---|---|---|---|---|
| I | RESTORATION ORDER: Full public access to ALL Plaintiff-attributed URLs — all language variants — within 10 days. German accessibility is not compliance; it is evidence of capacity. | *Rule 37(e)(1)* | Prejudice — 3 independent categories. | Technically feasible: German profile's survival proves capacity. 148 days of non-restoration was a deliberate choice, not a technical limitation. |
| I | DERIVATIVE ESI PRODUCTION: All server logs, CMS records, IT change orders, CDN access-control configuration logs for all language-variant URLs, and internal communications — specifically including German-market-partner advocacy communications — within 21 days. | *Rule 37(e)(1)* | Prejudice. | German profile's survival requires these internal communications to exist. They establish who advocated for what, when, and why — the commercial motive underlying the commercial preservation. |
| I | SAP AUDIT LOG PRODUCTION: Complete field-level audit log for Plaintiff's employee record, all changes after December 26, 2024, including prior and new values, User ID, and timestamp, specifically including home address, state/province, tax jurisdiction, and employer-entity fields — within 21 days. | *Rule 37(e)(1)* | Prejudice. | Only mechanism for reconstructing pre-alteration employment record. SAP's independent custody places these logs beyond EBSCO's control — they cannot be altered retroactively. |
| I | PRESERVATION CERTIFICATION: Sworn § 1746 certification by Defendants' IT representative confirming current preservation status, URL accessibility, and existence of internal communications relating to the German-profile preservation decision — within 7 days. | *Rule 37(e)(1); Inherent Authority.* | Prejudice. | Eight demands. Zero certification. Prophylactic against further destruction. Defendants' continued silence across 148 demands is itself probative of deliberate choice. |
| I | MONETARY SANCTIONS: All reasonable expenses from December 26, 2024. Plaintiff's expense declaration within 14 days; Defendants' response within 7 days. | *Rule 37(e)(1); 28 U.S.C. § 1927.* | Prejudice + post-notice conduct. | 148 days of non-remediation across eight demands. Post-notice conduct elevates from carelessness to knowing violation under § 1927. |

| | | | | |
|---|---|---|---|---|
| **II** | ADVERSE INFERENCE INSTRUCTION (5 items): Per the instruction in Section VI of this Framework and Section VII of the Motion. | *Rule 37(e)(2)(B).* | Intent to deprive — four independent pillars. Advisory Committee Notes: no separate prejudice finding required. | Five-item instruction calibrated specifically to the content suppressed and the defenses it rebuts. Each item maps to a specific disputed issue the suppressed evidence would have directly informed. |
| **II** | LEGAL PRESUMPTION (ALTERNATIVE): Court presumes as established that: (a) Plaintiff's performance materially exceeded PIP characterization; (b) Plaintiff achieved the 18-month multilingual milestone; (c) unaltered HRIS identified EII as employer of record; (d) English-language suppression impaired US-market mitigation capacity. | *Rule 37(e)(2)(A).* | Intent to deprive. | Alternative to or in addition to jury instruction. 37(e)(2)(A) presumption avoids the 'may presume' discretionary language of jury instruction — the Court presumes the fact as established. |
| **II (Cond.)** | PERFORMANCE DEFENSE PRECLUSION (Dkt. 117 Defenses 7, 8, 9, 15): Conditioned on Tier I restoration non-compliance within 10 days. Automatic, without further motion. | *Rule 37(e)(2); Inherent Authority.* | Intent + Tier I non-compliance. | EBSCO published the rebuttal evidence of its own underperformance narrative. Preclusion upon non-restoration is proportionate to the deliberate suppression of that very evidence. |
| **II (Cond.)** | MITIGATION DEFENSE PRECLUSION (Dkt. 117 Defense 17): Conditioned on Tier I restoration non-compliance. Defendants precluded from asserting US-market mitigation failure after suppressing US-market-facing professional credential while preserving German-market-facing version for own commercial use. | *Rule 37(e)(2); Burlington N., 548 U.S. at 67.* | Intent + jurisdictional targeting proof. | The jurisdictional-targeting proof is uniquely compelling: Defendants engineered the US-market obstruction and then seek to invoke its consequences. The circular structure warrants preclusion. |

## SECTION V.  INDEPENDENT AUTHENTICATION ARCHITECTURE — THREE NEUTRAL SUBPOENAS

Cross-reference: Motion (Doc 1) passim; SMF (Doc 4) Facts 4–5. Three pending subpoenas target neutral institutional sources whose records are beyond Defendants' ability to alter. The spoliation record is threshold-sufficient now. It will be forensically complete when these subpoenas are returned.

| SUBPOENA | TARGET | RECORDS SOUGHT | WHAT IT ESTABLISHES |
|---|---|---|---|
| **No. 5** | SAP America, Inc. (SAP SuccessFactors field-level audit log infrastructure — independent of EBSCO's instance) | Complete field-level audit log for Plaintiff's employee record, all changes after December 26, 2024: prior field value; new field value; date; time; User ID — specifically for home address, state/province, tax jurisdiction, and employer-entity designation fields. | Who made the SAP alteration, when, and what prior values were displaced. SAP's independent infrastructure places these records beyond Defendants' ability to alter — the audit log is forensically reliable regardless of EBSCO's litigation conduct. |
| **No. 7** | Internet Archive (Wayback Machine) — neutral third-party institutional archive of public web content | All crawl records for Plaintiff-attributed URLs (all language variants): exact date of last successful crawl (HTTP 200); exact date range of HTTP 403 implementation. Self-authenticating under Fed. R. Evid. 902(13). | Precise date bracket for when the HTTP 403 restriction was implemented — establishing whether it occurred before or after specific preservation notices; whether all language variants were restricted in a single session (coordinated suppression) or individually. |
| **No. 8** | EBSCO's CDN provider (Akamai Technologies, Inc. or equivalent) — independent network infrastructure | Complete access-control configuration logs for about.ebsco.com (all language-variant URLs) after December 26, 2024: timestamp of each configuration change; User ID or API key used; prior access setting (HTTP 200); new access setting (HTTP 403); whether the German variant was expressly excluded from a restriction order. | Who implemented the HTTP 403 restriction, when, under what authorization, and — critically — whether the German variant was expressly and deliberately excluded from the restriction order that suppressed all other variants. The German exclusion, if confirmed as deliberate, is direct evidence of intent. |

*TWO MOTIONS, ONE CONVERGENT AIM:* Dkt. 120 (Motion No. 1) addresses Defendants' failure to produce what Plaintiff requested — withhold what exists. This Motion (No. 2) addresses Defendants' affirmative suppression of what cannot be withheld forever — suppress what cannot be hidden internally. The architecture of both violations is identical: (1) ESI relevant to Plaintiff's claims; (2) post-hold; (3) selective against comparators; (4) affirmative act required; (5) zero curative response to eight demands. The compound effect is not additive — it is multiplicative. Each motion amplifies the other.

# SECTION VI.  THE FIVE-ITEM ADVERSE INFERENCE INSTRUCTION

Cross-reference: Motion (Doc 1) § V.B.6; Proposed Order (Doc 5) § Tier II Paragraph 6. The following is the complete proposed instruction, including the fifth item that was compressed in the filed Motion. The fifth item addresses the commercial motive inference — asking the jury to consider whether the decision to preserve the German version while suppressing all others was a deliberate, commercially motivated act.

### PROPOSED ADVERSE INFERENCE INSTRUCTION

*Fed. R. Civ. P. 37(e)(2)(B)*

'You have heard evidence that during the pendency of this litigation, after Plaintiff formally requested in writing that certain materials be preserved, Defendants restricted public access to content on their own corporate platform — specifically, Plaintiff's executive biography across English, French, Spanish, Portuguese, and other language versions (while the German-language version was preserved), and a professional article Plaintiff authored documenting his work driving more than two billion annual searches globally. You have also heard that employment records in Defendants' systems reflect a residential address for Plaintiff that could not have been accurate for the period those records purport to describe, given the timeline of his property acquisition.

**I instruct you that you may presume that the restricted, suppressed, and altered content, had it been preserved and presented in this proceeding, would have been unfavorable to Defendants and favorable to Plaintiff on the following questions:**

**(1)** Whether Plaintiff's professional performance during his employment materially exceeded the characterization reflected in Defendants' Performance Improvement Plan;

**(2)** Whether Defendants' PIP-based underperformance rationale was a pretext — particularly in light of evidence that Plaintiff achieved, within approximately eighteen months, a multilingual platform capability that Defendants had pursued unsuccessfully for approximately thirteen years, and that this achievement coincides with the benchmark period Defendants retroactively selected for their underperformance claim;

**(3)** Whether EBSCO Industries, Inc. functioned as the operational employer of record, as reflected in unaltered employment records;

**(4)** Whether Plaintiff's career-market discoverability in the US executive labor market was materially impaired by Defendants' suppression of his English-language professional attribution during his active job search — and whether Defendants, having blocked the US-market-facing version while preserving the German-market-facing version for their own commercial use, may assert that Plaintiff failed to obtain comparable employment in the US market; and

**(5)** Whether the decision to preserve the German-language version while suppressing all other language versions was a deliberate, commercially motivated act reflecting Defendants' awareness of those achievements' value and their corresponding awareness that the same materials were damaging to their underperformance defense.

*You are not required to draw any of these presumptions, but you may do so as to any or all of them if you find it reasonable in light of all the evidence presented.'*

## SECTION VII.  APPELLATE PRESERVATION ARCHITECTURE

Cross-reference: Memo (Doc 2) passim. This section preserves the First Circuit appellate review architecture, ensuring the record below satisfies de novo and clear error standards at every level of the analysis.

| APPELLATE ISSUE | FIRST CIRCUIT STANDARD | RECORD BELOW IS ENGINEERED TO SATISFY |
|---|---|---|
| **Overall sanctions order** | *Abuse of discretion. Lohman v. Duryea Borough, 574 F.3d 163, 166 (3d Cir. 2009).* | The four-pillar intent analysis, three-level selectivity doctrine, and capacity-plus-choice inference collectively create an intent record that no reasonable court could find insufficient under abuse-of-discretion review. |
| **Factual findings underlying intent determination** | *Clear error review.* | The intent finding derives from undisputed documentary evidence — a Wayback Machine timestamp, an HTTP status code, a payroll record date vs. a property acquisition date. No contested credibility determinations. The factual predicate is effectively unreviewable on appeal. |
| **Preservation duty finding** | *De novo as matter of law.* | Duty arose by operation of law on November 14, 2024 (case filing). Confirmed in writing on December 26, 2024. Tobin v. Delta Airlines, No. 08-cv-80766 (S.D. Fla. 2009). No ambiguity; no factual dispute. |
| **Cannot-be-restored element** | *Abuse of discretion.* | The content's evidentiary weight derives specifically from its origin as employer-generated, voluntary, pre-litigation, public-domain attribution. No internal document produced in discovery can replicate this origin quality. This is a legal conclusion about evidence quality, not a factual determination about data availability. |
| **Proportionality of sanctions** | *Abuse of discretion.* | Tier I (curative) is proportionate because the German profile proves technical feasibility of restoration. Tier II (intent-based) is the minimum adequate remedy — the five-item instruction does not preclude defenses outright. Conditional preclusion activates only upon non-compliance with restoration. Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 868 (3d Cir. 1984). |
| **Pattern/forensic imaging** | *Inherent authority; clear abuse of discretion to deny.* | Three independent instances across three technical systems sharing identical architectural profile — ESI corroborates Plaintiff's claims; post-hold; selective; comparators preserved; affirmative act required. United States v. Suarez, 820 F.3d 35, 41 (1st Cir. 2016). Tiversa Holding Corp. v. LabMD Inc., No. 2:15-cv-02157 (W.D. Pa. 2016). |

## SECTION VIII.  COMPLETE EXHIBIT INDEX — ALL PACKAGE DOCUMENTS

The following Exhibit Index covers all exhibits referenced across all five filed instruments and this Supplemental Framework. Exhibits are lettered consistently across the package.

| EX. | DESCRIPTION | AUTHENTICATION / RECORD CITATION |
|---|---|---|
| A | Wayback Machine archive capture — Article URL (about.ebsco.com/blogs/ebscopost/2277250/) — confirming public access October 7, 2025 (HTTP 200). | *Self-authenticating under Fed. R. Evid. 902(13).* |
| B | Current HTTP 403 screenshot — Article URL — with timestamp (May 28, 2026 or later). | *Plaintiff's personal verification.* |
| C | Wayback Machine captures — Biography URL — confirming public access through December 23, 2025. | *Self-authenticating under Fed. R. Evid. 902(13).* |
| D | Current HTTP 403 screenshot — English-language Biography URL — with timestamp. | *Plaintiff's personal verification.* |
| E | Named comparator screenshots: Smith, Faith, Lindskog, Borensztajn, and representative additional former employees — all HTTP 200 accessible as of filing. | *Plaintiff's personal verification; SMF Facts 6–10.* |
| F | Multi-language comparison: German biography (HTTP 200 accessible); English, French, Spanish, Portuguese (HTTP 403 or removed) — same domain, same date, same content object. | *Plaintiff's personal verification; Declaration ¶ 8.* |
| G | Three-way comparison: Plaintiff English biography (HTTP 403) vs. Smith biography (HTTP 200) vs. Plaintiff German biography (HTTP 200) — same | *Plaintiff's personal verification. Forensic signature of selectivity.* |

| | | |
|---|---|---|
| | domain, same date. Establishes population-level and intra-content selectivity simultaneously in a single exhibit. | |
| H | Litigation Hold Notice — December 26, 2024 (Preservation Notice #1). | *Docketed correspondence; Declaration ¶ 2.* |
| I | Forensic Preservation Notice v.1.3.3 — January 26, 2026 (Preservation Notice #2) with acknowledgment by defense counsel. | *Declaration ¶ 3.* |
| J | May 18, 2026 formal conferral transmission (8:30 AM EDT) — ESI restoration as Track A; derivative ESI as Track B. | *Rule 37(a)(1) conferral documentation.* |
| K | May 19, 2026 Final Compliance Demand — identifying ESI restoration deadline of May 22, 2026. | *Rule 37(a)(1) conferral documentation.* |
| L | May 20, 2026 Lynch email (8:12 AM) — declining all ESI compliance tracks. Establishes post-conferral deliberate choice not to remediate. | *Direct evidence of Defendants' knowledge and intent post-conferral.* |
| M | Plaintiff's contemporaneous payroll statements — New Jersey address — November 2021 – May 2023 employment period (in Plaintiff's personal possession). | *Declaration ¶ 12; SMF Fact 16.* |
| N | Defendants' produced payroll records — Massachusetts address — same pay periods. Side-by-side comparison establishing temporal impossibility. | *Defendants' document production; Declaration ¶ 12; SMF Fact 17.* |
| O | Property acquisition records — Massachusetts property (485 Glendale Road, Wilbraham, MA) — acquisition date AFTER Nov 22, 2022. | *Declaration ¶ 12; SMF Fact 18.* |
| P | Subpoena No. 5 — SAP America, Inc. — field-level audit log for Plaintiff's employee record. | *Declaration ¶ 13; Authentication Architecture Section V.* |
| Q | Subpoena No. 7 — Internet Archive / Wayback Machine — crawl records for all Plaintiff-attributed URLs. | *Authentication Architecture Section V.* |
| R | Subpoena No. 8 — CDN provider (Akamai Technologies, Inc.) — language-variant-level access-control configuration change records. | *Authentication Architecture Section V.* |
| S | Dkt. 117 (Defendants' Answer) — Affirmative Defenses 7, 8, 9, 15 (underperformance) and 17 (mitigation failure) — asserted while Plaintiff's US-market-facing attribution was suppressed and German-market-facing attribution was preserved for Defendants' commercial use. | *SMF Fact 20; Proposed Order Finding (A-5).* |

## PACKAGE SELF-AUDIT CERTIFICATION

*This Supplemental Evidentiary Framework consolidates material necessary to complete the evidentiary and legal record supporting Plaintiff's Motion for Sanctions under Fed. R. Civ. P. 37(e). It addresses discrete areas of factual, legal, and evidentiary underdevelopment in the previously filed motion package, including: preservation-duty chronology; comparator analysis with access-status evidence; sanctions and proportionality structure; category-specific evidentiary matrices; independent authentication mechanisms; adverse inference and alternative presumption under Rule 37(e)(2); subpoena-based forensic sources; First Circuit appellate standards; and pattern evidence relevant to intent, selectivity, and post-preservation conduct.*

*This Framework is intended to ensure a complete and reviewable record for judicial determination under Rule 37(e), including both curative and intent-based sanctions analysis, and to consolidate evidentiary foundations across the motion package for clarity of adjudication.*

**/s/ Mohamed Souleyman Ly**

Mohamed Souleyman Ly | Pro Se Plaintiff and Whistleblower
Executed on June 5, 2026, at Wilbraham, Massachusetts

8