PLAINTIFF'S COMMON EVIDENTIARY APPENDIX

**Discovery Conferrals, Preservation Notices, Deposition Scheduling Communications, Supplemental Discovery Transmittals, and Defendants' Responses and Non-Responses (June-July 2026)**

**Submitted in Support of Plaintiff's Discovery Enforcement Motion Package (M-1 through M-6)**

**PROFFER**

This **Common Evidentiary Appendix** contains the **principal written communications exchanged between Plaintiff and Defendants' counsel concerning discovery, preservation, deposition scheduling, Rule 37.1 conferrals, supplemental discovery productions, Requests for Admission, damages supplementation, and related discovery obligations during June and July 2026**.

The communications document, among other things:

- Plaintiff's repeated good-faith conferral efforts under Local Rule 37.1;

- service, renewal, and scheduling requests relating to the Rule 30 and Rule 30(b)(6) deposition notices;

- Plaintiff's repeated requests for mutually agreeable deposition dates for all noticed witnesses;

- Plaintiff's preservation notices, forensic notices, and supplemental discovery productions;

- Plaintiff's continuing supplementation pursuant to Fed. R. Civ. P. 26(a) and 26(e);

- Defendants' responses, objections, unilateral discovery conditions, and stated discovery positions;

- repeated periods of non-response following Plaintiff's written requests for discovery compliance;

- the chronology of communications immediately preceding the July 22, 2026 discovery deadline and the filing of Plaintiff's Discovery Enforcement Motion Package.

The Appendix further establishes that Defendants sought and obtained a thirty-day extension of the discovery schedule, which the Court granted pursuant to ECF Nos. 138 and 139 primarily to permit completion of the remaining depositions then identified by the parties. During that extended discovery period, Plaintiff repeatedly made himself available for deposition, first during Window A (June 25-July 5, 2026) and thereafter during Window B (July 15-July 22, 2026), while repeatedly requesting reciprocal availability for Tim Collins, Patricia Carroll, Tim Lull, David Hobbs, and Defendants' Rule 30(b)(6) designee(s). Despite obtaining the extension for that very purpose, Defendants did not confirm a single deposition date, produce a single noticed witness, identify a Rule 30(b)(6) designee, or substantively engage Plaintiff's repeated scheduling requests before the Court's July 22, 2026 discovery deadline.

**Plaintiff further advised Defendants in advance that the intervening period was reserved for a previously scheduled medical procedure on July 6, 2026, followed by approximately one week of post-procedure recovery during which Plaintiff's litigation capacity would be materially limited, while confirming his availability both before and immediately following that recovery period.**

The docket likewise reflects that Defendants' Motion to Extend included proposed dispositive-motion deadlines extending approximately six months beyond the existing schedule, although the motion itself sought and briefed only a thirty-day discovery extension and did not present a corresponding request or supporting showing for such additional dispositive-motion relief. In ECF No. 138, the Court identified that proposed extension as an apparent error and limited the relief granted to a thirty-day extension of the discovery schedule and corresponding deadlines. That thirty-day extension was sought by Defendants as necessary to complete remaining discovery, including the depositions then outstanding. The resulting chronology demonstrates that Defendants obtained the additional discovery period they requested, yet failed to utilize the time afforded by the Court to complete the very discovery activities that formed the basis for their extension request.

These communications are offered solely to establish the chronology of the parties' discovery conduct, Plaintiff's repeated compliance and conferral efforts, Defendants' responses, objections, unilateral positions, and prolonged non-responsiveness, and the factual basis supporting the relief requested in Motions M-1/DKT. 142 through M-6/DKT. 148.

This Appendix is incorporated by reference into each motion comprising Plaintiff's Discovery Enforcement Motion Package. It is submitted as a common evidentiary record to avoid unnecessary duplication of exhibits while permitting each motion to remain independently supported by the same contemporaneous documentary record.

The following communications and attachments comprise the documentary record referenced above and are submitted as part of this Common Evidentiary Appendix in chronological order.

# APPENDIX A

**Discovery Conferral, Deposition Scheduling, Preservation, and Compliance Communications**

**DOCUMENTARY COMMUNICATIONS APPENDIX**
**June–July 2026**

 Gmail

**Mohamed Ly <mmmly7@gmail.com>**

---

## Ly v. EBSCO/Response to Deposition Notices & Motion to Compel
2 messages

---

**Lynch, Matt** <MLynch@littler.com>                                   Thu, Jun 25, 2026 at 3:30 PM
To: Mohamed Ly <mmmly7@gmail.com>
Cc: "McDonagh, Melissa" <MMcDonagh@littler.com>, "Foley, Moira" <MFoley@littler.com>, BC Law Clinic <bclawclinic@bc.edu>

Mr. Ly:

Attached please find correspondence on behalf of Defendants regarding the "Deposition Notice No. 5 Rule 30(b)(6) Corporate Representative(s)" that you recently served. Additionally, I want to briefly address some other issues arising out of your "Omnibus" deposition notices:

• In Deposition Notices 1-4, you seek depositions of the following individuals: Tim Collins, Tim Lull, David Hobbs and Patricia Carroll. For those notices, you also include numbered topics of testimony, as well as a reference to Rule 30(b)(6). For each of these individuals, please identify which, if any, topics you contend are 30(b)(6) topics, not the personal knowledge of that individual witness.

• There is no basis for a deposition of David Hobbs. Please advise if Plaintiff agrees to withdraw this notice. If not, Defendants intend to move for a protective order to preclude this deposition.

• It is unclear whether the last page of your notice, entitled "Exhibit and Document Identification Notice," seeks the production of documents or merely identifies documents you intend to use as exhibits at a deposition. Please affirmatively state whether you seek the production of any of these documents. If so, Defendants will treat this notice as a Rule 34 document request, pursuant to applicable rules and case law, and respond accordingly. If any of the items in your notice are the same as your prior Rule 34 requests, then Defendants have already responded.

• Defendants believe that all depositions, including yours, should be conducted pursuant to the usual stipulations, meaning the parties reserve all objections except as to form and all motions to strike until the time of trial. If you do not agree to these usual stipulations, please let me know so that I can raise this issue to the court, as may be appropriate.

• We intend to notice your deposition for 7/13. If this date does not work for you, please provide other dates during that week when you are available. We will notice your deposition for a location in Springfield, in accordance with Local Rule 30.1 because you reside in Hampden County, and any depositions of any EBSCO witnesses will also be conducted in places deemed "convenient" for that witness, pursuant to Local Rule 30.1.

I also want to briefly address the correspondence you sent on Monday, 6/22, regarding the Rule 37.1 conference that I held on 6/18. In your correspondence, you reference subpoenas to third parties, though it is unclear if you have already served or attempted to serve any such third-party subpoenas. If you have served or attempted to serve any such subpoenas, you did not provide us with the prior notice required pursuant to Rule 45(a)(4), and we therefore request that you promptly provide us with copies of any such subpoenas.

Lastly, we expect to receive, by end of day tomorrow, your supplementation of any response or issue that Defendants identified in their 5/12/26 letter and that I discussed during the Rule 37.1 conferences held on 6/4 on 6/18. For any item that you do not supplement or do not properly supplement, we will proceed with a motion to compel. Thank you.

**Matt Lynch**
**Attorney at Law**
+1 617.378.6020 direct, +1 617.356.9749 mobile
1 International Pl, Suite 2700, Boston, MA 02110
MLynch@littler.com

Pronouns: He/Him



**Littler**
Labor & Employment Law Solutions
LOCAL EVERYWHERE

-------------------------
This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message.

Littler Mendelson, P.C. is part of the international legal practice Littler Global, which operates worldwide through a number of separate legal entities.

 **2026.6.25 EBSCO-Ly - Defs.' Objections to Pl.'s Deposition Notices 4925-0056-6456 1.pdf**
208K

---

**Mohamed Ly** <mmmly7@gmail.com>                                        Thu, Jun 25, 2026 at 10:44 PM
To: "Lynch, Matt" <MLynch@littler.com>
Cc: "McDonagh, Melissa" <MMcDonagh@littler.com>, "Foley, Moira" <MFoley@littler.com>, BC Law Clinic <bclawclinic@bc.edu>

Mr. Lynch,

As the Court did in denying Defendants' attempt to obtain what would have amounted to an approximately five-month extension of the dispositive-motion deadline by treating the request as having been made in error rather than as an intentional effort to alter the schedule, Plaintiff will likewise presume that your request for copies of subpoenas previously noticed and provided is similarly the product of oversight rather than design.

Nevertheless, copies will be provided again under separate forthcoming transmission.

Should Defendants persist in maintaining objections that Plaintiff believes lack a sufficient legal or factual basis after completion of the Rule 37.1 process, Plaintiff will have no alternative but to present those issues to the Court for resolution, at which point Defendants may explain their positions to Judge Mastroianni and Judge Morgan.

Best,

Mohamed Ly

[Quoted text hidden]

 **Gmail**

## Damage Framework + Multi-Engine System
4 messages

---

**Mohamed Ly** <mmmly7@gmail.com>           Fri, Jun 26, 2026 at 2:29 AM
To: "Lynch, Matt" <MLynch@littler.com>, "McDonagh, Melissa" <MMcDonagh@littler.com>, BC Law Clinic <bclawclinic@bc.edu>, "Foley, Moira" <mfoley@littler.com>

Dear Mr. Lynch,

This was scheduled to go out tomorrow, but to align with your expectations, I am sending it now.

Attached are Plaintiff's supplemental responses addressing the damages information requested during our Rule 37.1 conferral, including damage-specific supplements to Interrogatory Nos. 3, 4, and 5.

Also, as agreed, additional supplementation will follow over the coming weeks in stages, expanding on what I noted on June 18: "**I'll give you everything you want**." That remains the framework for continued production, with the expectation of reciprocal parity and consistent supplementation on both sides, consistent with your Deficiency Ledger requirements and the ongoing obligations governing supplementation.

Plaintiff is proceeding in this manner to avoid unnecessary motion practice and to conserve judicial resources.

Also enclosed is Plaintiff's First Set of Requests for Admission. Defendants have until July 26, 2026.

Thanks, and good day,
Mohamed Souleyman Ly

***Pro Se Plaintiff & Whistleblower***

---

**2 attachments**

📄 **Rule37_1_Supplemental_Conferral_Response_June25_2026___.pdf**
266K

📄 **Ly_v_EBSCO_Plaintiffs_First_RFAs_25_cut_002833hndtALA_XM_Ly_v.EBSCO Industries Inc__.pdf**
340K

---

**Mohamed Ly** <mmmly7@gmail.com>           Wed, Jul 1, 2026 at 12:12 AM
To: "Lynch, Matt" <MLynch@littler.com>, "McDonagh, Melissa" <MMcDonagh@littler.com>, BC Law Clinic <bclawclinic@bc.edu>, "Foley, Moira" <mfoley@littler.com>

**Dear Mr. Lynch & Ms. McDonagh:**

As demanded by Defense Counsel during the June 4, 2026 and June 18, 2026 conferrals, and as committed to by Plaintiff in response to Defense Counsel's express request to supplement Interrogatories Nos. 3, 4, and 5, attached is Plaintiff's **Master Integrated Damages Framework (Version 5.0), setting forth Plaintiff's supplemental computation, quantification, qualification, and supporting analysis of damages** resulting from Defendants' conduct and actions -- which remain active, expanding, and continuing, including through and by Defendants' legal representation.

In further fulfillment of Plaintiff's continuing obligations under Rules 26(a) and 26(e) of the Federal Rules of Civil Procedure, and in full compliance with Defense Counsel **Lynch's five-part framework** during the June 4 and June 18, 2026 documented conferrals ( which, as subsequently memorialized by Plaintiff, were documented as proceedings that did not satisfy the bilateral conferral requirements of Local Rule 37.1, but instead functioned as unilateral demand sessions directed at Plaintiff), this supplementation is provided, and additional supplementation responsive to Defendants' interrogatories and requests for production will follow as **further information is identified and compiled**.

**Attachments:**

1. **Plaintiff's 6/29-Week Supplemental Discovery Transmittal Package (June 30–July 1, 2026)**
2. **Plaintiff's Master Integrated Damages Framework (Version 5.0) — Pillars I–V**

**Respectfully submitted,**
Mohamed Ly
Pro Se Plaintiff & Whistleblower
###

[Quoted text hidden]

---

**2 attachments**

📄 **MASTER INTEGRATED DAMAGES FRAMEWORK  V5.0 PILLARS 1-5_vsm_cs__.pdf**
19002K

📄 **Ly_v_EBSCO_Monday_Package_Transmittal_June30_2026_post_cmps.v2.1__.pdf**
2807K

---

**McDonagh, Melissa** <MMcDonagh@littler.com>           Thu, Jul 9, 2026 at 7:54 PM

To: Mohamed Ly <mmmly7@gmail.com>, "Lynch, Matt" <MLynch@littler.com>, BC Law Clinic <bclawclinic@bc.edu>, "Foley, Moira" <MFoley@littler.com>

Hi Mr. Ly,

Our firm has strict policies in place that restrict our ability to access links. We typically use our Titanfile site – which is a secure site for transferring documents. This is a common practice between law firms and is easy to use. If our paralegal sends you a link tomorrow, would you be agreeable to uploading the files to that site?

If not, we'll need you to send attachments rather than links.

Melissa

**Melissa McDonagh**
**Shareholder**
+1 617.378.6003 direct, +1 617.507.6428 fax
1 International Pl, Suite 2700, Boston, MA 02110
MMcDonagh@littler.com



---

**From:** Mohamed Ly <mmmly7@gmail.com>
**Sent:** Wednesday, July 1, 2026 12:12 AM
**To:** Lynch, Matt <MLynch@littler.com>; McDonagh, Melissa <MMcDonagh@littler.com>; BC Law Clinic <bclawclinic@bc.edu>; Foley, Moira <MFoley@littler.com>
**Subject:** Re: Damage Framework + Multi-Engine System

**[EXTERNAL E-MAIL]**

[Quoted text hidden]

------------------------
This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message.

Littler Mendelson, P.C. is part of the international legal practice Littler Global, which operates worldwide through a number of separate legal entities.

---

**Mohamed Ly** <mmmly7@gmail.com>                                    Fri, Jul 10, 2026 at 12:46 PM
To: "McDonagh, Melissa" <MMcDonagh@littler.com>
Cc: "Lynch, Matt" <MLynch@littler.com>, BC Law Clinic <bclawclinic@bc.edu>, "Foley, Moira" <MFoley@littler.com>

**Dear Ms. McDonagh:**

Thank you for your email.

The documents referenced in my July 1, 2026 email were actually attached to that email. The links were provided strictly as a supplemental convenience, not as the primary means of delivery. My attachments are completely accessible and have been available to your firm since July 1, 2026.

Nevertheless, to avoid any further procedural friction/delay, the same files are, again, here-attached (links only suplemental). I will also upload the same documents to your Titanfile site if provided with a link from your paralegal. I would have done the same 13 days ago, had it been asked.

While I appreciate the message, the breaking of a 13-day radio silence to address file-transfer procedures rather than substantive matters is profoundly concerning given the urgency of the moment. Plaintiff notes that this transmittal package was delivered on July 1,

exactly 13 days ago`the identical timeframe governing your response to Defendants' own discovery deficiency ledger. With only 14 days remaining before the close of discovery on July 22, 2026, pursuant to Dkts. 138 and 139, the record does not reflect bilateral cooperation or equitable engagement from the defense. While Plaintiff has gone out of his way to follow the detailed specifications imposed by Defendants and to accommodate structural restrictions unilaterally prescribed by the defense, the same cannot be said of Defendants.

Furthermore, as advised on June 25, Plaintiff remains in ongoing medical recovery with a reduced capacity to litigate at this time. Even in this moment of continuing physical recovery, I am resolved to capture any moments of strength to address these matters. I have therefore re-attached the requested files directly to this email for your immediate convenience, in the hope of shifting attention to the true substance of the moment: the outstanding obligations and imminent deadlines that must take precedence over file-transfer protocols.

There are significant, substantive discovery obligations that have now remained pending for more than thirteen days, and several critical deadlines are rapidly approaching:

**1. Deposition Scheduling:** I requested availability dates for Mr. Collins, Ms. Carroll, Mr. Lull, Mr. Hobbs, and Defendants' Rule 30(b)(6) corporate designee by **June 30, 2026**. That deadline has now passed without response. At the same time, Plaintiff has likewise already made himself available for deposition during the previously proposed Window A and Window B, including the July 16–22, 2026 period. Accordingly, Plaintiff again requests that Defendants immediately provide the availability of each requested witness so that depositions may proceed reciprocally during the remaining discovery period, as contemplated by the Court's scheduling order.

**2. 127 GB of ESI Withheld:** I am told that COunsel represented in Dkt. 140 that Defendants are processing approximately **127 GB of ESI** from six custodians. I understand this production remains withheld. Please confirm immediately:

- Whether Defendants intend to produce the referenced 127 GB of ESI and, if so, on what date. Each additional day compounds the duration of continuing withholding, contrary to Defendants' discovery obligations.

- Whether Defendants intend to produce the insurance agreements and related disclosures required under Rule 26 without conditioning production upon a protective order that Defendants have neither sought nor obtained.

- The identities of the six custodians whose ESI is being withheld, as required by Rule 26(a)(1)(A)(i).

**3. Deficiency Ledger Response:** The July 12, 2026 deadline for Defendants' substantive response to Plaintiff's Deficiency Ledger is rapidly approaching. Please confirm that Defendants will meet that deadline.

**4. Requests for Admission:** Defendants' responses to Plaintiff's First Requests for Admission remain due on **July 26, 2026**.

**5. Privilege Logs and Insurance Disclosures:** Please immediately produce a complete privilege log together with all insurance agreements and policies required under Rule 26.

This is not intended to be a comprehensive recitation of every outstanding matter. It reflects only what I am able to convey in this moment. My prior correspondence remains incorporated by reference and continues to await substantive engagement and response.

Meanwhile, even as I continue recovering from my medical procedure, I have made every reasonable effort to comply with my discovery obligations, supplement my productions, accommodate Defendants' requests, and remain available for reciprocal discovery. One would reasonably expect Littler Mendelson to meet the same standard. Emerging from thirteen days of silence (in the face of an approaching July 22 discovery deadline, after obtaining a 30-day extension expressly intended to facilitate completion of discovery and deposition scheduling) only to address a Titanfile transfer protocol concerning materials already transmitted nearly two weeks earlier speaks for itself.

I therefore look forward to Defendants' immediate substantive responses concerning the outstanding deposition scheduling, the withheld ESI production, the identities of the six custodians, insurance disclosures, privilege log, and the remaining outstanding discovery obligations.

If you still require submission of these same materials through TitanFile, I will gladly accommodate that request upon receipt of your paralegal's link.

Respectfully,

**Mohamed Ly**
*Pro Se Plaintiff & Whistleblower*

**P.S.:** This represents only a snapshot of Plaintiff's damages as they presently exist. Plaintiff continues to identify, quantify, and consolidate additional losses arising from Defendants' conduct; including, without limitation, the underlying FMLA interference, wrongful termination, wage-related claims, compensation paid by the entity now denying employer status, relocation-induced losses associated with the entity likewise denying employer status, and all continuing and consequential damages. Plaintiff will further supplement these disclosures as additional records, quotations, expert assessments, and supporting documentation become available, consistent with Rules 26(a) and 26(e).

[Quoted text hidden]

**2 attachments**

**Ly_v_EBSCO_Monday_Package_Transmittal_June30_2026_post_cmps.v2.1__ (1).pdf**
2807K

**MASTER INTEGRATED DAMAGES FRAMEWORK  V5.0 PILLARS 1-5_vsm_cs__ (1).pdf**
19002K

**Ly_v_EBSCO_Monday_Package_Transmittal_June30_2026_post_cmps.v2.1__ (1).pdf**

**MASTER INTEGRATED DAMAGES FRAMEWORK  V5.0 PILLARS 1-5_vsm_cs__ (1).pdf**

Case 3:24-cv-30161-MGM    Document 140    Filed 07/14/26    Page 10 of 65

 **Gmail**

**Mohamed Ly <mmmly7@gmail.com>**

## Renewed Rule 30 and Rule 30(b)(6) Deposition Notices; Mandatory Scheduling Pursuant to ECF Nos. 138 and 139; Demand for Immediate Deposition Dates Prior to Discovery Closure

1 message

**Mohamed Ly** <mmmly7@gmail.com>                                                                    Thu, Jun 25, 2026 at 10:45 PM
To: "Lynch, Matt" <MLynch@littler.com>, "McDonagh, Melissa" <MMcDonagh@littler.com>, BC Law Clinic <bclawclinic@bc.edu>, "Foley, Moira"
<mfoley@littler.com>

Greetings, Counsel:

Notwithstanding prior disputes, delays, or disagreements that have arisen during the course of discovery, Plaintiff continues to operate
under the same good-faith assumptions reflected in the Court's management of these proceedings; namely, that deviations from
procedural expectations may often be attributable to misunderstanding, oversight, or genuine error rather than intent. Consistent with
that approach (also exhibited by the COurt in denying the 5-month unspoken extension of dispositive deadlines), Plaintiff provides this
level of advance transparency in the hope that it will facilitate meaningful preparation, substantial engagement with the facts and records
at issue, and the efficient development of a complete evidentiary record in Ly v. EBSCO Industries, Inc., et al.

Renewed notices are attached, along with detailed binders for each deponent.

Respectfully submitted,
Mohamed Ly
Plaintiff & Whistleblower

---

**2 attachments**

📄 **RENEWED NOTICES RULE 30 + FORMAL DEPOSITION SCHEDULING TRANSMITTAL_06252026__.pdf**
245K

📄 **Ly_v_EBSCO_Deposition_Binder_Package__.pdf**
338K

*CONFIDENTIAL — LITIGATION CORRESPONDENCE — ATTORNEY-CLIENT COMMUNICATION PRIVILEGE CLAIMED AS APPLICABLE*

| TO: | Matthew J. Lynch, Esq. (mlynch@littler.com) and Melissa L. McDonagh, Esq. (mmcdonagh@littler.com), Littler Mendelson, P.C. |
|---|---|
| CC: | Boston College Law School Federal Court Clinic (bclawclinic@bc.edu) |
| FROM: | Mohamed S. Ly, Plaintiff, Pro Se |
| DATE: | June 25, 2026 |
| RE: | **Renewed Rule 30 and Rule 30(b)(6) Deposition Notices; Mandatory Scheduling Pursuant to ECF Nos. 138 and 139; Demand for Immediate Deposition Dates Prior to Discovery Closure** |

**FORMAL DEPOSITION SCHEDULING TRANSMITTAL**
(VIA ELECTRONIC MAIL — READY FOR ECF RECORD)

**Without waiver of any rights, privileges, defenses, or objections, and without any admission of fact or law, and strictly for purposes of facilitating counsel's preparation and the orderly conduct of depositions, Plaintiff provides the following general notice of anticipated deposition topics and subject matter areas.**

This notice is intended to reduce the risk of surprise, promote efficient examination, and support full preparation by all parties in advance of the noticed depositions. It is further intended to maximize the efficiency, clarity, and completeness of the deposition process, in a manner consistent with the Federal Rules of Civil Procedure and the Court's expectations for orderly, proportionate, and well-prepared discovery proceedings. The scope descriptions below are provided as a good-faith overview of the general subject areas expected to be addressed for each deponent.

**Counsel:**

Pursuant to Federal Rules of Civil Procedure 30 and 30(b)(6), and in direct alignment with Magistrate Judge Morgan's June 24, 2026 Electronic Order (ECF No. 138) and Amended Scheduling Order (ECF No. 139), Plaintiff hereby renews, serves, and demands the immediate scheduling of the five deposition tracks identified below.

As the Court explicitly noted in ECF No. 138, these five depositions were timely noticed prior to the previous discovery deadline. The Court granted Defendants' extension specifically to allow time for their completion. The discovery period now closes on July 22, 2026. That date is fixed.

**I. GOVERNING FRAMEWORK**

ECF No. 138 identifies the depositions of four current or former EBSCO employees and one Rule 30(b)(6) corporate representative as the operative discovery remaining in this case. The extension was granted in part because these depositions had not yet been scheduled or completed. Defendants cannot now use the extension they obtained — for the express purpose of completing this discovery — to resist or delay the depositions that justified the extension.

The Court's order further provides that parties with specific discovery disputes "may file a motion seeking relief from the court." ECF No. 138. Plaintiff is not filing such a motion at this time. Plaintiff is extending the professional courtesy of scheduling coordination before resorting to the procedural remedy the Court has explicitly authorized. That offer has a hard deadline, stated below.

**II. THE FIVE DEPOSITION TRACKS — SUBJECTS, SCOPE, AND SEQUENCING**

**DEPOSITION 1: TIM COLLINS**

**Role:** Chief Executive Officer (or equivalent senior executive), EBSCO Industries, Inc.

**Examination Scope:**

Mr. Collins is the most senior executive with direct knowledge of the following matters and will be examined accordingly:

**A. Employer Identity and Corporate Structure** The merger announcement of May 22, 2013 dissolving EBSCO Publishing, Inc. into EBSCO Information Services — Mr. Collins's knowledge of, participation in, and authority over that transaction; the continued use of EBSCO Publishing, Inc. as the employer designee on Plaintiff's paystubs following that dissolution; the simultaneous designation of three distinct EBSCO entities across Plaintiff's payroll instruments; and the basis for Defendants' Affirmative Defense No. 23 denying EBSCO Industries, Inc.'s employer status notwithstanding its role as the issuing account holder for all 43 of Plaintiff's wage payments.

**B. Executive Actions and Restructuring Governance** The deponent's direct involvement in, personal knowledge of, and specific executive authorizations regarding the structural changes, asset allocations, or corporate dissolutions of the entities named in this action, including any directives issued by the deponent regarding operational control or employment continuity across those entities.

**C. Direct Authorization of Plaintiff's Work and Expanded Mandate** Mr. Collins's direct knowledge of and role in authorizing Plaintiff's initiatives, funding requests, and strategic globalization and accessibility programs; the promotion and expanded mandate conferred upon Plaintiff approximately six months before his termination — designating Plaintiff as head of both Localization and Accessibility for EBSCO Enterprises — and the performance record that supported that expansion; the capability maturity advancement Plaintiff drove across both domains during his tenure.

**D. Direct Notice and Whistleblower Communications** The deponent's receipt, personal review, and subsequent handling of internal complaints, whistleblower notifications, or operational alerts regarding human resource irregularities, FMLA compliance protocols, or payroll systemic issues, including the identities of all personnel to whom the deponent delegated the investigation or resolution of such matters.

## DEPOSITION 2: PATRICIA CARROLL

**Role:** General Counsel, EBSCO Industries, Inc.

**Examination Scope:**

**A. Mechanical Execution of Discovery Certifications --** The specific factual steps, data repositories searched, and non-privileged corporate records reviewed or relied upon by the deponent to verify the accuracy of the responses, disclosures, and entity classifications certified under Federal Rule of Civil Procedure 33(b)(5).

**B. Litigation Hold — Implementation and Compliance** Ms. Carroll's receipt of and response to the December 26, 2024 litigation hold notice; the specific preservation measures implemented; her knowledge of the HTTP 403 content restriction relative to the hold notice date; and the SAP SuccessFactors record management protocols in effect during the litigation period.

**C. Factual Foundation of Pleaded Affirmative Defenses** The existence, location, and identity of non-privileged corporate records, database logs, and operational events that constitute the factual basis for the Affirmative Defenses asserted in the Answer, excluding any mental impressions, legal theories, or strategic advice of counsel.

**D. W-2C Correction Request** Ms. Carroll's awareness of and response to Plaintiff's written demand for a corrected Form W-2C; the legal and business basis for Defendants' refusal to provide corrective tax documentation.

## DEPOSITION 3: TIM LULL

**Role:** Direct Supervisor of Plaintiff; EBSCO Information Services

**Examination Scope:**

**A. The FMLA-to-PIP-to-Termination Sequence** Mr. Lull's knowledge of Plaintiff's FMLA leave request in early May 2023; his role in initiating the Performance Improvement Plan approximately 20 days after that request; his role in the termination decision approximately 30 days after that request; and the absence of any documented prior performance concerns in Plaintiff's 18-month employment record.

**B. Plaintiff's Performance Record and Expanded Mandate** Mr. Lull's direct knowledge of and involvement in the promotion and expanded mandate conferred upon Plaintiff approximately six months before termination — adding Accessibility to

Plaintiff's Localization portfolio at the enterprise level; the specific performance basis for that expansion; and the absence of any documented performance concerns during the period between the expanded mandate and the FMLA request.

**C. PIP Origination** The specific events, communications, and decision processes that resulted in the initiation of the PIP within 20 days of the FMLA request; the identity of all individuals who participated in or authorized the PIP; and whether the PIP was drafted before or after the FMLA request was received.

**D. Termination Decision** Mr. Lull's role in and documentation supporting the termination decision; his communications with Carroll, Collins, and HR during the termination process; and the specific performance basis asserted for the termination.

**E. Digital Suppression of Plaintiff's Professional Attribution** Mr. Lull's knowledge of and authority over the decision to restrict English-language access to Plaintiff's professional biography and attributed work product on EBSCO's public platforms (HTTP 403 status) while simultaneously preserving identical content in German and other non-English language variants; the identity of the decision-maker(s) involved; the timeline of that restriction relative to the litigation hold notice served on December 26, 2024; and the commercial rationale, if any, offered for the selective restriction.

**F. Whistleblower Dimension** Mr. Lull's awareness of Plaintiff's communications raising employer identity discrepancies, EIN irregularities, and related concerns; any responsive action taken or deliberately not taken at the executive level following those communications.

## DEPOSITION 4: DAVID HOBBS (CFO OR EQUIVALENT)

**Role:** Chief Financial Officer (or equivalent financial officer), EBSCO Industries, Inc.

**Examination Scope:**

**A.1. Technical Configuration of Banking Instruments and Payroll Routing** The technical criteria, system configurations, and routing protocols used to generate payroll checks, including the selection, assignment, and inclusion of specific employer identification numbers (EINs), MICR line data, bank account designations, and entity names printed on payroll distributions to personnel.

**A.2. Payroll Authorization and Regions Bank Account** Mr. Hobbs's authority over and knowledge of EBSCO Industries, Inc.'s Regions Bank account number 3330091198; his authorization of payroll disbursements to Plaintiff from that account; his knowledge of the check numbering scheme used across all 43 wage payments — specifically the designation of the account number as the "Check No." field in violation of applicable banking, GAAP, and MICR standards.

**B.1. W-9 Certifications** The W-9 certifications executed by Michael Rice on July 21, 2025 and Tracey Ballard on July 6, 2021 — the authority under which those certifications were made; the entity designated as employer in those certifications; and their consistency with contemporaneous payroll records and litigation positions.

**B.2. Inter-Entity Capital Flows and Cash Management**

The operational accounting mechanisms, ledger entries, and funding pathways governing cash transfers, expense allocations, and payroll cross-subsidization between the named defendants and any associated or dissolved entities.

**C. Cross-Entity Financial Controls** The financial relationship between EBSCO Industries, Inc., EBSCO Information Services, and EBSCO Publishing, Inc. with respect to payroll, benefits funding, and related disbursements during Plaintiff's employment period; and the entity or entities that bear financial responsibility for Plaintiff's compensation under Defendants' own internal accounting.

**D. Government Filings Under Penalty of Perjury** Mr. Hobbs's knowledge of and responsibility for the federal, state, and government filings made under EIN 63-6014186 during Plaintiff's employment period; the entity identified as employer on those filings; and the relationship between those filings and Defendants' litigation positions.

## DEPOSITION 5: RULE 30(b)(6) CORPORATE DESIGNEE — EBSCO INDUSTRIES, INC.

**Designated Matters of Examination:**

The following matters are designated for Rule 30(b)(6) corporate testimony. Defendants must designate one or more persons who are competent to testify on each matter and must prepare the designee(s) to testify fully and completely.

**Matter 1.1. Architecture, Access Controls, and Audit Logs of the Human Capital Management System** The structural architecture, data schema, field definitions, and tracking features of the SAP SuccessFactors system (or successor systems) utilized during the relevant period. This includes the automated generation, retention, and extraction policies for system audit logs, modification histories, and metadata reflecting user interactions with plaintiff's employment, leave, performance, and termination records.

**Matter 1.2.:** The structural, operational, and financial relationship between EBSCO Industries, Inc., EBSCO Information Services, and EBSCO Publishing, Inc. during the period November 2021 through May 2023, including the effect of the May 2013 merger on EPI's corporate existence and authority.

**Matter 2:** The management, authorization, account ownership, and signatory authority for the Regions Bank account number 3330091198 used to issue all 43 payroll payments to Plaintiff; the check numbering system used for those payments; and the standard by which account numbers were designated as check numbers across EBSCO's payroll instruments.

**Matter 3:** The preparation, review, authorization, and filing of all federal, state, and government submissions made under EIN 63-6014186 during Plaintiff's employment period, including Forms W-2, Forms 941, and state employer registration filings.

**Matter 4.1.: Corporate Knowledge of Factual Prerequisites for Affirmative Defenses** The identity of all business records, operational workflows, electronic communications, and corporate events that the organization relies upon to support its pleaded affirmative defenses, including the corporate policies governing the handling of FMLA leave requests in relation to performance improvement interventions.

**Matter 4.2.:** The factual and legal basis for Affirmative Defense No. 23 denying EBSCO Industries, Inc.'s employer status, including all documents reviewed and all persons consulted in preparing that defense.

**Matter 5:** The SAP SuccessFactors system configuration for employer designation in Plaintiff's employee record; the audit log history for any modifications to that record during or after Plaintiff's employment; and the identity of any personnel who accessed or modified that record after November 14, 2024.

**Matter 6:** The decision to restrict English-language access to Plaintiff's professional biography and attribution content on EBSCO's public platforms; the identity of the decision-maker(s); the date the restriction was implemented; and EBSCO's policy, if any, governing the restriction or preservation of former employee attribution content during litigation.

**Note on Sequencing:** The four individual depositions identified above must precede the Rule 30(b)(6) deposition. The individual testimony gathered regarding direct operational knowledge, the Regions Bank payroll structure, and the corporate entity relationships is foundational to locking the final corporate position under Rule 30(b)(6). This sequencing is not a condition but a logical prerequisite for efficient and complete corporate examination.

## III. PLAINTIFF'S AVAILABILITY AND SCHEDULING COORDINATION

To eliminate any unnecessary scheduling disputes and to ensure completion of all remaining oral discovery within the Court's amended schedule, Plaintiff addresses his own availability and deposition coordination.

Plaintiff remains willing to appear for deposition and intends to cooperate fully in scheduling all oral discovery consistent with ECF Nos. 138 and 139.

**Plaintiff confirms readiness availability for deposition during the following periods:**

**Window A:** June 26, 2026 through July 5, 2026

**Window B:** July 16, 2026 through July 22, 2026

**Plaintiff will not be available between July 6, 2026 and July 15, 2026** due to a previously scheduled medical procedure and associated treatment-related preparation and recovery arising from the same underlying medical conditions that formed the basis of the protected leave at issue in this litigation.

Plaintiff confirms that he is likewise available to conduct the depositions of Defendants' noticed witnesses during either of the above windows.

Accordingly, Plaintiff proposes that the parties coordinate all remaining depositions — including Plaintiff's own deposition and all five Defendants' witness depositions — within one or both of the availability windows identified above, so that all oral discovery is completed before the Court's July 22, 2026 deadline, per the Court July 24, 2026 Scheduling Order.

Plaintiff does not seek to impose any sequencing requirements on Defendants and will not override the Federal Rules of Civil Procedure or the Court's orders. Plaintiff remains willing to confer cooperatively regarding the order of depositions. Plaintiff's sole requirement is that all noticed depositions be completed within the discovery period established by ECF Nos. 138 and 139.

Nothing in this transmittal constitutes agreement that any deposition is contingent upon the prior completion of any other deposition. Consistent with Federal Rule of Civil Procedure 26(d)(3), Plaintiff does not agree that any party may unilaterally impose a sequencing rule that is not contained within the Federal Rules of Civil Procedure, the Local Rules, or Court-ordered.

## IV. CONFIRMATION DEADLINE AND CONSEQUENCES OF NON-RESPONSE

**Defendants must provide written confirmation of specific, committed dates for each of the five depositions identified above no later than June 30, 2026 at 5:00 PM Eastern.**

Given that the Court's discovery window closes July 22, 2026, and that deposition notices require reasonable advance coordination, Defendants have no grounds to seek additional time to identify and confirm deponent availability. The witnesses were identified in Plaintiff's original deposition notices. The extension was granted for exactly this purpose.

If Defendants fail to provide committed deposition dates by June 30, 2026, or if Defendants attempt to condition the production of any noticed witness on the prior completion of Plaintiff's deposition or any other discovery event not required by the Federal Rules or the Court's orders, Plaintiff will proceed directly to the procedural remedy explicitly authorized by ECF No. 138 — a specific, targeted Motion to Compel under Federal Rule 37 with a request for cost-shifting sanctions — without further notice or meet-and-confer delay beyond that already satisfied by this transmittal.

Plaintiff will simultaneously note in any such motion that the extension Defendants obtained from this Court was granted specifically to permit the completion of these depositions — and that Defendants thereafter refused to schedule them.

## V. RECORD NOTICE

This transmittal constitutes Plaintiff's formal record of having provided committed availability across two windows totaling seventeen available days, having offered to conduct all remaining depositions within either window, having accommodated Plaintiff's own medical obligations transparently and without prejudice to the schedule, having rejected only scheduling conditions that do not exist in the Federal Rules or the Court's orders, and having sought cooperative completion of all oral discovery within the Court's deadline rather than motion practice.

A copy of this transmittal will be maintained as a litigation exhibit and referenced in any future discovery motion practice as necessary.

Govern yourselves accordingly.

Respectfully,

**Mohamed S. Ly**

Plaintiff, Pro Se and Whistleblower                                                                                         Dated: June 25, 2026

*cc: File / BC Law Clinic / ECF-Ready*

**UNITED STATES DISTRICT COURT · DISTRICT OF MASSACHUSETTS**
Civil Action No. 3:24-cv-30161-MGM
**Mohamed Souleyman Ly  v.  EBSCO Industries, Inc. et al.**

# DEPOSITION PREPARATION BINDER PACKAGE

FIVE WITNESSES  ·  FRCP 30 / 30(b)(6) COMPLIANT

Deponent 1:  Tim Collins  ·  Chief Executive Officer
Deponent 2:  Patricia Carroll  ·  General Counsel
Deponent 3:  Tim Lull  ·  Direct Supervisor
Deponent 4:  David Hobbs  ·  Chief Financial Officer
Deponent 5:  Rule 30(b)(6) Corporate Designee  ·  EBSCO Industries, Inc.

Transmitted by:  Mohamed S. Ly,  Plaintiff Pro Se
June 25, 2026

> **GOVERNING INTRODUCTORY STATEMENT — ALL FIVE BINDERS**
> Without waiver of any rights, privileges, domains, topics, or admission of any kind, and strictly for assistance in defense counsel and defendants' need for preparation and for the effective conduct of these proceedings and their positions, and for the avoidance of any surprises or false sense of ambush, Plaintiff hereby extends the courtesy of sharing the general topics and scopes of what each deponent will be questioned about. This binder package is a preparation instrument governed by Federal Rules of Civil Procedure 26, 30, and 30(b)(6). Nothing herein constitutes a limitation of the examination scope, a waiver of any evidentiary right, or an agreement to restrict examination to the topics identified. This transmittal is made in the spirit of professional cooperation and does not constitute testimony, argument, or an admission of any kind.

Discovery Closure: July 22, 2026 · Governing Orders: ECF Nos. 138 and 139 · Case: Ly v. EBSCO Industries, Inc. et al., No. 3:24-cv-30161-MGM

## Note Regarding Potential Overlap and Interrelationship of Deponent Testimony

The topics designated for examination of the respective deponents may involve areas of factual overlap, crossover, and interrelationship due to the nature of corporate structure, operational workflows, and recordkeeping systems. Such overlap is anticipated where multiple witnesses possess knowledge of related events, decisions, or documents from differing institutional perspectives (including executive, legal, managerial, financial, and corporate record systems).

Nothing in the organization of these topics is intended to limit, duplicate, or improperly expand the scope of any witness's testimony. Rather, the designation of overlapping subject areas reflects the integrated nature of corporate decision-making and the necessity of obtaining complete and accurate testimony from all custodians and knowledgeable representatives. Each deponent is expected to testify consistent with their personal knowledge, role, and responsibilities, and any apparent intersections in testimony are intended to assist in the clarification, reconciliation, and completeness of the evidentiary record.

## § PROGRESS  Production Status — All Five Binders

| Binder | Round 1 | Round 2 | Round 3 | Doc Targets | Status |
|---|---|---|---|---|---|
| Binder 1 — Tim Collins | | | | | |
| Binder 2 — Patricia Carroll | | | | | |
| Binder 3 — Tim Lull | | | | | |
| Binder 4 — David Hobbs | | | | | |
| Binder 5 — Rule 30(b)(6) | | | | | |

**DEPOSITION PREPARATION BINDER**
Deponent 1 of 5

# TIM COLLINS

**Chief Executive Officer**

EBSCO Industries, Inc.

Ly v. EBSCO Industries, Inc. et al.  ·  No. 3:24-cv-30161-MGM
U.S. District Court, District of Massachusetts

## § 1.0  Binder 1 — Purpose and Governing Scope

**BINDER PURPOSE**

This binder facilitates full and accurate preparation of Tim Collins for examination pursuant to Federal Rule of Civil Procedure 30. It identifies subject areas, documents, and organizational knowledge reasonably relevant to his examination. It does not limit the scope of the deposition notice, modify any party's rights, or constitute an admission of any kind.

Governing deposition rules: FRCP 30 (individual deposition). Witness role: Most senior executive with oversight of corporate governance, enterprise structure, and executive-level operational and employment decisions. The examination will address matters within his personal knowledge and matters reasonably available through preparation.

## § 1.1  Round 1 — Foundational Facts: Role, Authority, and Organizational Structure

### A. Role and Executive Authority

1. State your current title and your title during the period November 2021 through May 2023.
2. Describe your responsibilities with respect to EBSCO Industries, Inc. during that period.
3. Describe your responsibilities, if any, with respect to EBSCO Information Services during that period.
4. Identify the individuals or departments that reported directly to you on employment matters during that period.
5. Identify any employment-related decision-making authority you delegated during November 2021 through May 2023, and to whom.

### B. Corporate and Subsidiary Structure

6. Describe your understanding of the legal relationship between EBSCO Industries, Inc. and EBSCO Information Services during November 2021 through May 2023.
7. State whether any entity known as EBSCO Publishing, Inc. was a legally active corporation during November 2021 through May 2023.

8. Describe any restructuring, merger, or dissolution events affecting EBSCO-affiliated entities between January 2013 and May 2023 that you are aware of.
9. Identify who, at the executive level, is responsible for maintaining accurate corporate structure documentation.

## C. Employment Governance at the Executive Level

10. Describe the process by which senior employment decisions — including role expansions, performance improvement actions, and terminations — are elevated to executive leadership.
11. Identify whether CEO-level approval or notification is required for termination decisions involving employees at the director level or above.
12. State whether you were aware of Plaintiff's employment at EBSCO during the period November 2021 through May 2023.
13. Identify whether you had any personal involvement in hiring, role-assignment, or termination decisions affecting Plaintiff.

## D. Enterprise-Level Initiative Oversight

14. Describe your awareness, if any, of enterprise-level globalization, localization, or accessibility initiatives during November 2021 through May 2023.
15. Identify whether you reviewed, approved, or received reports on those initiatives.
16. State whether you were informed of any changes in the scope of responsibility assigned to Plaintiff during his employment.

## E. Document and Record Baseline

17. Identify categories of documents you would expect to exist reflecting your involvement, if any, in Plaintiff's employment.
18. Identify categories of documents you would expect to exist reflecting corporate structure decisions during November 2021 through May 2023.

## § 1.2  Round 2 — Systems, Records, and Decision Mechanics

## A. Corporate Decision-Making Structure

19. Describe the formal approval process for expanding an employee's functional responsibilities at the enterprise level during 2021 through 2023.
20. Identify whether that process required CEO review, business unit leadership review, or HR concurrence.
21. Describe how executive decisions regarding role changes or terminations are communicated to HR and recorded in organizational systems.
22. State whether any committee or governance body reviewed employment decisions at the director level or above during the relevant period.

## B. HR and Payroll Systems — Executive Visibility

23. Identify the HR management systems in use at EBSCO Industries, Inc. during November 2021 through May 2023.

24. Describe the level of access or visibility you had to employee records within those systems.

25. Identify who is responsible for maintaining the accuracy of employer entity designations within HR systems.

26. Describe how the company ensures that HR system employer designations are consistent with legal entity structure and payroll records.

## C. Financial and Payroll Oversight at the Executive Level

27. Describe your understanding of how payroll costs are allocated across EBSCO Industries, Inc. and its affiliated entities.

28. Identify whether executive leadership receives reporting on payroll expenditures or inter-entity compensation allocations.

29. Identify who is responsible at the executive level for oversight of payroll accounts and banking relationships used for compensation disbursements.

## D. Entity Naming and Internal Classification Governance

30. Identify whether the designation 'EBSCO Ipswich' refers to a legally registered corporate entity under any jurisdiction.

31. State whether 'EBSCO Ipswich' is used as a trade name, business unit designation, geographic identifier, or system-generated label within EBSCO's HR, payroll, or vendor systems.

32. Identify who at the executive or corporate governance level is responsible for approving internal entity naming conventions across HR, payroll, finance, and legal systems.

33. State whether 'EBSCO Ipswich' appears in HRIS employee classification fields, payroll cost center structures, organizational charts, or vendor onboarding systems during 2021 through 2023.

34. Describe how the company ensures that internal naming conventions are consistent with legal entity registrations.

## E. Background Screening Governance

35. Identify the company's approved background screening vendor or vendors in use during 2021.

36. Describe the executive-level policy governing background screening, including whether written authorization from the subject is required prior to initiating a screening.

37. Identify who within EBSCO Industries, Inc. is responsible for ensuring compliance with applicable federal and state law governing background screenings.

38. State whether background screening requests are linked to specific business unit designations, entity identifiers, or HR workflow records in any auditable system.

## F. Public and Digital Content Governance

39. Describe the company's policy governing digital attribution content associated with current or former employees on EBSCO's public platforms.

40. Identify who has authority to restrict, modify, or remove employee attribution content from EBSCO's public-facing digital systems.

41. State whether any such restrictions applied to Plaintiff's professional biography or attributed work product on EBSCO's platforms at any time after his employment ended.

42. Identify the date, if known, when any restriction on Plaintiff's digital attribution content was implemented and the decision-maker responsible.

43. State whether the company's litigation hold notice issued in this matter addressed preservation of public-facing digital content associated with current or former employees.

## G. Document Custodianship and Litigation Hold

44. Identify when you first received notice of any obligation to preserve documents related to this matter.

45. Describe the steps taken at the executive level to implement document preservation following that notice.

46. State whether you are aware of any changes made to employee records, digital content, or corporate systems after litigation was reasonably anticipated.

## § 1.3  Round 3 — Event Integration, Employment Timeline, and Record Consistency

## A. Employment Timeline — Executive Knowledge

47. State whether you are aware of any expansion of Plaintiff's job responsibilities occurring during the six months preceding his termination.

48. State whether you were informed of that expansion by HR, legal, or business unit leadership at the time it occurred.

49. Identify whether any documented performance concerns regarding Plaintiff were escalated to executive leadership at any point before termination.

50. State whether you reviewed or were briefed on any performance improvement plan initiated for Plaintiff.

## B. Termination Decision Architecture

51. Identify who participated in the decision to terminate Plaintiff's employment.

52. State whether you were involved in, informed of, or provided approval for the termination decision.

53. Describe the approval chain for termination decisions affecting employees at the director level during the relevant period.

54. State whether legal and HR review was completed before the termination was executed.

55. State whether any written documentation supports the performance basis for the termination decision, and identify the custodian of that documentation.

## C. Corporate Structure and Employer Identity — Executive Confirmation

56. State which entity you understand to have been Plaintiff's employer for payroll, tax, and HR purposes during November 2021 through May 2023.

57. State whether that understanding is consistent with Affirmative Defense No. 23 as filed in this litigation.

58. State whether you reviewed or approved the factual basis for Affirmative Defense No. 23 prior to its filing.

59. Describe how the company reconciles differences, if any, between the entity designated as employer in payroll records, HR systems, and tax filings.

## D. Litigation Awareness and Preservation Actions

60. State when you first became aware of the present litigation.

61. Describe any executive-level decisions made regarding document preservation, system access, or content restriction after you became aware of the litigation.

62. State whether any employee records, digital content, or HR system entries related to Plaintiff were modified after you became aware of litigation in this matter.

63. Identify who directed or authorized any such modifications.

## E. Whistleblower Awareness

64. State whether any communications from Plaintiff regarding employer identity discrepancies, EIN irregularities, or compensation-record concerns were brought to your attention during or after his employment.

65. Identify any responsive action taken at the executive level following any such communications.

## § 1.4  Binder 1 — Key Document Targets

| Document Category | Likely Custodian | System / Source |
|---|---|---|
| Organizational charts — EBSCO Industries, Inc. (2021–2023) | Collins / HR | Corporate records system |
| Executive communications re: Plaintiff's role expansion | Collins / HR leadership | Email archive / document management |
| Executive communications re: Plaintiff's termination | Collins / HR / Legal | Email archive |
| Litigation hold notice — date of issuance and scope | Carroll / Legal | Legal records |
| Background screening policy documents (2021) | HR / Compliance | HR policy system |
| Records showing restriction of Plaintiff's digital attribution content | IT / Marketing | CDN / website logs |
| Corporate structure documentation — 2013 merger and dissolution records | Legal / Corporate Secretary | Corporate governance files |
| 'EBSCO Ipswich' records in HR/payroll/vendor systems | HR / Finance / IT | HRIS / payroll / vendor portals |
| Executive approvals for role expansion (Plaintiff's added mandate) | HR / Collins | HRIS / approval workflow |
| Affirmative Defense No. 23 — internal drafting communications | Legal (Carroll) | Legal file |

## § 1.5  Binder 1 — Cross-Witness Overlap Map

| Issue | This Witness | Overlapping Witnesses | Corroboration Needed |
|---|---|---|---|
| **Termination decision authorization** | Collins | Carroll (legal review); Lull (initiation) | Confirm decision chain and who had final authority |
| **Role expansion — employer awareness** | Collins | Lull (direct supervisor); 30(b)(6) (system records) | Confirm executive-level awareness and approval |
| **Affirmative Defense No. 23 factual basis** | Collins | Carroll (preparer); Hobbs (financial records); 30(b)(6) | Who reviewed underlying records before filing defense |
| **Digital attribution content restriction** | Collins | Carroll (litigation hold); 30(b)(6) (IT governance) | Identify decision-maker and timing relative to hold notice |
| **'EBSCO Ipswich' designation — governance** | Collins | Carroll (legal); Hobbs (finance); 30(b)(6) (systems) | Establish whether it is a legal entity or system label |
| **Background screening authorization** | Collins | Carroll (policy oversight); 30(b)(6) (vendor records) | Identify who authorized screening and under what entity designation |
| **Corporate structure — 2013 dissolution effect** | Collins | Carroll (legal governance); 30(b)(6) (HR/system classification) | Confirm whether dissolved entity was used operationally post-2013 |

**DEPOSITION PREPARATION BINDER**
Deponent 2 of 5

# PATRICIA CARROLL

**General Counsel**

EBSCO Industries, Inc.

Ly v. EBSCO Industries, Inc. et al. · No. 3:24-cv-30161-MGM
U.S. District Court, District of Massachusetts

## § 2.0  Binder 2 — Purpose and Governing Scope

**BINDER PURPOSE**
This binder facilitates full and accurate preparation of Patricia Carroll for examination pursuant to Federal Rule of Civil Procedure 30. Ms. Carroll is examined in her capacity as General Counsel of EBSCO Industries, Inc. Her examination addresses her legal oversight responsibilities, sworn certifications, litigation hold implementation, and employer identity governance — not privileged communications or litigation strategy, which remain subject to applicable privileges.

Governing rules: FRCP 30 (individual deposition). Witness role: General Counsel responsible for litigation oversight, employment law compliance, sworn discovery certifications, and corporate legal governance. Examination addresses factual knowledge and governance actions, not privileged attorney-client communications or work product.

## § 2.1  Round 1 — Foundational Legal Authority, Role, and Certification Basis

### A. Role, Title, and Legal Authority

66. State your current title and your title during the period November 2021 through May 2023.
67. Describe your responsibilities as General Counsel with respect to EBSCO Industries, Inc.
68. Describe your responsibilities, if any, with respect to EBSCO Information Services.
69. Identify the individuals or departments that report to your office on employment law compliance matters.
70. Identify the individuals or departments that report to your office on litigation matters.

### B. Corporate Legal Structure Understanding

71. Describe your understanding of the legal relationship between EBSCO Industries, Inc. and EBSCO Information Services.
72. State whether any entity known as EBSCO Publishing, Inc. was a legally active corporation during November 2021 through May 2023.

73. Identify whether your office maintains official corporate structure documentation and where that documentation is kept.

## C. Employment Law Oversight Functions

74. Describe your office's role in reviewing termination decisions prior to execution.

75. Describe your office's role in reviewing or approving Performance Improvement Plans.

76. Describe your office's role in ensuring FMLA compliance across EBSCO entities during the relevant period.

77. Identify whether employment classification determinations — including the legal designation of which entity is an employee's employer — are reviewed by your office.

## D. Discovery Certifications and Sworn Submissions

78. Describe your role in preparing or certifying interrogatory responses under FRCP Rule 33.

79. State whether you reviewed the factual basis for Defendants' interrogatory responses before certifying them under Rule 33(b)(5).

80. Identify who supplied the underlying factual information relied upon before each Rule 33 certification.

81. Identify what documents and systems were reviewed prior to each certification.

82. State your understanding that Rule 33 certifications are made under penalty of perjury and may be relied upon by the Court.

## E. Litigation Hold — Baseline Awareness

83. State whether you are aware of the company's litigation hold policies applicable to this matter.

84. State when the litigation hold related to this action was first issued.

85. Identify the departments, systems, and individuals included within the scope of the litigation hold.

86. Describe how compliance with the litigation hold is monitored.

## § 2.2  Round 2 — Certifications, Litigation Hold, and Employer Identity Governance

## A. Rule 33 Certification Process — Verification Detail

87. Confirm your specific involvement in certifying Defendants' interrogatory responses in this matter.

88. For each certification, identify who supplied the underlying factual information that was verified.

89. State what systems were consulted to verify information before certification, including HR systems, payroll systems, and tax filing records.

90. State whether any inconsistencies were identified between different information sources before certification, and if so, how they were resolved.

91. State whether you remain satisfied that all certified responses accurately reflect information available to the company as of each certification date.

## B. Employer Identity — Legal Analysis and Determination

92. Describe the legal and factual basis relied upon by your office to determine which entity is Plaintiff's employer for litigation purposes.

93. State whether HR records, payroll records, tax filings, and corporate structure documents were all reviewed before forming the litigation position on employer identity.

94. State whether any internal inconsistencies were identified between HR records, payroll records, and tax filings regarding employer identity.

95. Identify how those inconsistencies, if any, were resolved for purposes of the litigation position.

## C. Rule 7.1 Corporate Disclosure Statements

96. Describe your role in preparing or approving Rule 7.1 disclosures filed in this action.

97. Identify the verification process used to ensure the accuracy of corporate structure representations in those disclosures.

98. State whether any corrections or amendments to Rule 7.1 disclosures have been filed or are under consideration.

## D. Litigation Hold — Implementation and Compliance

99. State the specific date the litigation hold notice was issued in connection with this matter.

100. Describe the steps taken to implement the hold, identifying each system and department included.

101. State whether HR systems, payroll systems, finance systems, email archives, document management systems, and digital content platforms were all included within the litigation hold scope.

102. Identify who was responsible for confirming compliance with the hold within each department.

103. State whether any data preservation failures, gaps, or exceptions were identified after the hold was issued.

## E. Post-Hold System Changes

104. State whether any changes were made to employee records after the litigation hold was issued.

105. State whether any changes were made to public-facing or internal digital content related to Plaintiff after the litigation hold was issued.

106. State whether any changes were made to HR system configurations, payroll system settings, or employer designation fields after the litigation hold was issued.

107. Identify whether legal reviewed or approved any such changes before they were made.

## F. W-2C and Tax Record Correction Requests

108. State whether Plaintiff submitted any written request for a corrected Form W-2 or W-2C at any point during or after his employment.

109. Identify the legal and business basis for any decision by the company not to issue a corrected Form W-2C.

110. State whether your office was consulted before any decision was made regarding Plaintiff's request for corrected tax documentation.

## G. Background Screening Governance and FCRA Compliance

111.      Identify the company's background screening vendors in use during 2021.

112.      Describe the company's written policy governing written authorization requirements before initiating a background screening.

113.      Describe the company's policy for issuing pre-adverse action and adverse action notices under the Fair Credit Reporting Act.

114.      Identify who within your office is responsible for ensuring FCRA compliance in connection with background screening practices.

115.      State whether background screening records from 2021 are subject to the litigation hold in this matter.

## H. Entity Designation — 'EBSCO Ipswich'

116.      State whether 'EBSCO Ipswich' is a legally registered corporate entity under any jurisdiction as of the date of your examination.

117.      State whether 'EBSCO Ipswich' was a legally registered corporate entity during November 2021 through May 2023.

118.      Identify whether 'EBSCO Ipswich' appears as an employer designation in any HR, payroll, tax, or vendor background screening system.

119.      Identify who is responsible for ensuring consistency between internal entity designations and legal entity registrations.

## § 2.3  Round 3 — Litigation Integration, Termination Review, and Compliance Consistency

## A. Termination Legal Review

120.      State whether your office reviewed the decision to terminate Plaintiff's employment before it was executed.

121.      Identify who requested that legal review, and on what date.

122.      Identify what documentation was provided to your office for that review.

123.      State whether your office identified any legal risks associated with the timing or basis of the termination, including FMLA-related risks or retaliation exposure.

124.      State whether your office recommended any modification, delay, or further documentation before the termination was executed.

## B. Legal Involvement in the PIP and Termination Sequence

125.      State when your office first became aware of any Performance Improvement Plan being initiated for Plaintiff.

126.      State whether your office reviewed the PIP before it was issued.

127.      State whether your office was consulted on the timing of the PIP relative to any known FMLA request or medical leave.

128.      Identify the sequence — as understood by your office — between Plaintiff's FMLA request, the PIP initiation, and the termination decision.

## C. Consistency Between Legal Position and Operational Records

129.        State whether your office has confirmed consistency between the litigation position on employer identity and the following: HR system records, payroll records, tax filings under EIN 63-6014186, and financial accounting allocations.

130.        Identify any known inconsistencies between those sources that have not been resolved.

131.        State whether any internal discussions occurred regarding differences between the financial or tax treatment of employment and the litigation position on employer identity.

## D. Corporate Structure and Litigation Position Reconciliation

132.        Explain how your office reconciles, if applicable, differences between the legal entity structure, the operational reporting structure, and the employer identity asserted in litigation.

133.        State whether your office has ever changed its legal position on which entity was Plaintiff's employer, and if so, identify the basis for that change.

## E. System Integrity and Recordkeeping Reliance

134.        State whether your office relies on HR, payroll, and finance systems as accurate and complete reflections of employment history for purposes of litigation positions.

135.        State whether your office has identified any such system as incomplete, inaccurate, or inconsistent with another system for purposes relevant to this litigation.

## F. Final Certification Awareness

136.        Confirm that all Rule 33 certifications you provided in this matter were submitted to a federal court.

137.        Confirm that each certification was made under penalty of perjury.

138.        State whether you believe any correction or supplementation of any prior certification is required as of the date of your examination.

## § 2.4  Binder 2 — Key Document Targets

| Document Category | Custodian | System / Source |
|---|---|---|
| All Rule 33 certifications — this litigation (with verification process records) | Carroll / Legal | Legal file |
| Internal communications regarding employer identity determination before litigation | Carroll / Legal | Email archive / legal file |
| Litigation hold notice — original issuance documents and compliance confirmations | Carroll / Legal | Legal records |
| Internal legal review records for Plaintiff's termination (non-privileged factual layer) | Carroll / Legal | Legal file |
| Internal communications regarding PIP timing and FMLA awareness | Carroll / HR | Email archive |
| W-2C request and response documentation | Carroll / HR / Finance | HR and legal files |
| FCRA background screening policy — 2021 version | Carroll / HR Compliance | HR policy archive |
| Records of any post-hold changes to employee records or digital content | Carroll / IT | IT change logs / legal file |
| Affirmative Defense No. 23 — drafting history and factual review records | Carroll / Legal | Legal file |
| Rule 7.1 disclosure preparation records | Carroll / Legal | Legal file |

## § 2.5  Binder 2 — Cross-Witness Overlap Map

| Issue | This Witness | Overlapping Witnesses |
|---|---|---|
| **Employer identity legal determination** | Carroll | Collins (executive approval); Hobbs (tax records); 30(b)(6) (system records) |
| **Litigation hold implementation** | Carroll | Collins (executive level); 30(b)(6) (IT/systems compliance) |
| **Termination legal review** | Carroll | Lull (initiation); Collins (approval chain); 30(b)(6) (documentation) |
| **PIP timing relative to FMLA** | Carroll | Lull (direct supervisor); 30(b)(6) (HR system records) |
| **Rule 33 verification process** | Carroll | Hobbs (financial data supplier); HR leadership (HR data supplier) |
| **W-2C request handling** | Carroll | Hobbs (tax oversight); HR leadership |
| **Background screening — FCRA compliance** | Carroll | Collins (policy governance); 30(b)(6) (vendor records) |

**DEPOSITION PREPARATION BINDER**
Deponent 3 of 5

# TIM LULL

**Direct Supervisor**

EBSCO Information Services

Ly v. EBSCO Industries, Inc. et al.  ·  No. 3:24-cv-30161-MGM
U.S. District Court, District of Massachusetts

## § 3.0  Binder 3 — Purpose and Governing Scope

**BINDER PURPOSE**
This binder facilitates full and accurate preparation of Tim Lull for examination pursuant to Federal Rule of Civil Procedure 30. Mr. Lull served as Plaintiff's direct supervisor. His examination addresses his supervisory relationship with Plaintiff, his role in performance management and the initiation of any Performance Improvement Plan, the timeline and basis for the termination decision, and the sequence of events relative to Plaintiff's FMLA request.

Governing rules: FRCP 30 (individual deposition). Witness role: Direct supervisor with personal knowledge of employment events, performance baseline, and the PIP-to-termination sequence.

## § 3.1  Round 1 — Foundational Facts: Supervisory Role, Timeline, and Performance Baseline

### A. Role, Title, and Supervisory Relationship

139. State your title and role during the period November 2021 through May 2023.
140. Describe your direct supervisory responsibilities with respect to Plaintiff during that period.
141. Identify the organizational unit in which Plaintiff worked under your supervision.
142. Describe your authority over Plaintiff's assignments, performance evaluations, and day-to-day work.

### B. Employment Timeline and Role Changes

143. State the approximate date on which Plaintiff began reporting to you.
144. Identify any changes in Plaintiff's job title during the period he reported to you.
145. Identify any changes in Plaintiff's functional responsibilities during the period he reported to you.
146. State whether Plaintiff's scope of responsibility was expanded at any point during his employment, and if so, describe the nature of that expansion.

147.        State who authorized or communicated any expansion in Plaintiff's responsibilities.

## C. Performance Baseline and Documentation

148.        Describe your understanding of Plaintiff's core job duties at the time he began reporting to you.

149.        State whether you provided any written performance evaluations of Plaintiff during his employment.

150.        State whether you provided any written or documented informal feedback regarding Plaintiff's performance during his employment.

151.        Identify any performance concerns you documented in writing prior to May 2023.

152.        State whether Plaintiff's performance was ever formally evaluated as satisfactory during the period he reported to you.

## D. Communication and Supervision Practices

153.        Describe the typical frequency and method of your work-related communications with Plaintiff.

154.        Identify the systems or tools used to track Plaintiff's work assignments and deliverables.

## E. Document Identification — Baseline

155.        Identify categories of documents that would reflect your supervision of Plaintiff, including performance evaluations, work assignment records, and communications.

156.        Identify where those documents are maintained and who has access to them.

## § 3.2   Round 2 — Systems, Performance Documentation, and Decision Records

## A. HR Systems and Employee Records — Supervisory Access

157.        Identify the HR or personnel system used to manage Plaintiff's employee record during his employment.

158.        Describe what categories of information in that system you could view as Plaintiff's supervisor.

159.        Describe what categories of information in that system you could modify or request modification of.

160.        State whether changes to an employee's job title, role scope, or employer designation required your approval, your request, or both.

## B. Performance Tracking and Documentation

161.        Identify how Plaintiff's performance was tracked during his employment, identifying any specific tools or systems used.

162.        State whether you created any formal performance evaluations for Plaintiff.

163.        State whether you created any informal written performance notes or feedback records for Plaintiff.

164.    State whether you created any Performance Improvement Plan or contributed to drafting any PIP for Plaintiff.

165.    Identify where those records, if any, are stored and who has access to them.

## C. PIP Initiation Process — Procedural Requirements

166.    Describe the standard process within your organization for initiating a Performance Improvement Plan.

167.    Identify who is authorized to propose a PIP for an employee.

168.    Identify whose approval is required before a PIP is issued.

169.    State whether HR review is required before a PIP is issued.

170.    Describe what prior written documentation is typically required before a PIP is initiated.

## D. Termination Process — Procedural Requirements

171.    Describe the standard process for initiating and approving termination decisions for employees at Plaintiff's level.

172.    Identify all individuals who must participate in or approve a termination decision for an employee at Plaintiff's level.

173.    State whether legal review and HR approval are required before a termination is executed.

174.    State whether executive leadership approval is required for terminations at Plaintiff's level.

175.    Describe how termination decisions are recorded in HR systems and what documentation is generated.

## E. Communication and Decision Trails

176.    Identify how communications regarding Plaintiff's performance, PIP status, or employment disposition were recorded.

177.    State whether HR system audit logs exist showing when performance records for Plaintiff were created or modified.

178.    State whether you know of any audit log showing when and by whom Plaintiff's employment record was last modified.

## F. Record Preservation Awareness

179.    State when you first became aware of any obligation to preserve records related to Plaintiff's employment.

180.    Describe the specific steps you took to preserve performance documentation and employment-related communications after becoming aware of that obligation.

## § 3.3  Round 3 — FMLA Timeline, PIP Sequence, and Termination Decision

## A. FMLA Request — Receipt and Supervisory Response

181.    State the date on which you first became aware that Plaintiff had submitted or intended to submit an FMLA leave request.

182.    Describe how that awareness was communicated to you — whether through Plaintiff directly, HR notification, or another source.

183.    State whether you took any action after learning of the FMLA request, and if so, describe each action.

184.    State whether you communicated with HR or with any member of leadership about Plaintiff's employment status after learning of the FMLA request.

185.    State whether any discussions took place after the FMLA request was received that addressed Plaintiff's performance, employment status, or future role.

## B. PIP Initiation — Timing and Basis

186.    State the date on which the Performance Improvement Plan for Plaintiff was first discussed internally.

187.    State the date on which the Performance Improvement Plan was issued to Plaintiff.

188.    Identify who first proposed initiating the PIP for Plaintiff.

189.    Identify who approved the PIP before it was issued.

190.    State whether HR reviewed and approved the PIP before it was issued to Plaintiff.

191.    Identify the specific documented performance basis used to support the initiation of the PIP.

192.    State whether any written performance concerns existed and were documented prior to the date the FMLA request was received.

## C. Sequence of Key Events — Temporal Ordering

193.    Identify the date of Plaintiff's FMLA request.

194.    Identify the date the PIP was issued.

195.    Identify the date the termination decision was made.

196.    Identify the date the termination was executed.

197.    State whether the sequence of those events was affected by any external factor, business consideration, or input from HR or legal.

## D. Termination Decision — Participation and Authorization

198.    Describe your specific role in the decision to terminate Plaintiff's employment.

199.    Identify all individuals involved in the termination decision, including HR, legal, and executive leadership.

200.    State whether legal review was completed before the termination was executed.

201.    State the specific documented performance basis used to support the termination decision.

202.    State whether any alternative to termination was considered and, if so, why it was not adopted.

## E. Supporting Documentation

203.    Identify all documents supporting the termination decision, including HR termination forms, internal communications, PIP materials, and performance records.

204.    State whether any documents memorializing the termination decision were created after the termination was executed.

205.    State whether you are aware of any audit log entry reflecting changes to Plaintiff's employment record in HR systems.

## F. Post-Employment Awareness

206.    State when you first became aware that Plaintiff might pursue legal action regarding his employment.

207.    Identify any communications you had after the termination with HR, legal, or executive leadership regarding Plaintiff's employment history, PIP justification, or termination rationale.

## § 3.4  Binder 3 — Key Document Targets

| Document Category | Custodian | System / Source |
|---|---|---|
| Written performance evaluations — Plaintiff — all periods | Lull / HR | HRIS / HR file |
| PIP document — initial draft, approved version, and any revisions | Lull / HR | HRIS / HR file |
| All written communications between Lull and HR regarding Plaintiff from Jan 2023 to May 2023 | Lull / HR | Email archive |
| All written communications between Lull and Carroll or legal regarding Plaintiff | Lull / Carroll | Email archive |
| HR system audit log for Plaintiff's employee record — all modifications | HR / IT | HRIS audit trail |
| FMLA certification and designation notice records | HR | HR file |
| Email communications from Lull to Plaintiff on FMLA leave dates (early morning emails — Apr/May 2023) | Lull | Email archive |
| Termination approval chain documents | HR / Legal | HR file / legal file |
| Any performance documentation predating the FMLA request | Lull / HR | HRIS / email archive |
| Organizational chart showing Plaintiff's reporting line and role scope changes | HR | HRIS / org chart system |

## § 3.5  Binder 3 — Cross-Witness Overlap Map

| Issue | This Witness | Overlapping Witnesses |
|---|---|---|
| **FMLA request — date and supervisory awareness** | Lull | Carroll (legal review); 30(b)(6) (HR system records) |
| **PIP authorization and approval chain** | Lull | Carroll (legal review); Collins (executive approval); 30(b)(6) (system records) |
| **Termination decision — participants** | Lull | Carroll (legal review); Collins (executive approval); 30(b)(6) |
| **Plaintiff's role expansion — Lull's awareness and authorization** | Lull | Collins (executive authorization); 30(b)(6) (system records) |
| **Absence of prior written performance concerns** | Lull | HR leadership; 30(b)(6) (HRIS audit trail) |
| **Early-morning emails on FMLA use dates** | Lull | HR (notification records); Carroll (litigation hold) |

**DEPOSITION PREPARATION BINDER**
Deponent 4 of 5

# DAVID HOBBS

### Chief Financial Officer (or Equivalent Financial Officer)
EBSCO Industries, Inc.

Ly v. EBSCO Industries, Inc. et al.  ·  No. 3:24-cv-30161-MGM
U.S. District Court, District of Massachusetts

## § 4.0  Binder 4 — Purpose and Governing Scope

**BINDER PURPOSE**

This binder facilitates full and accurate preparation of David Hobbs for examination pursuant to Federal Rule of Civil Procedure 30. Mr. Hobbs is examined regarding financial governance, payroll account structure, inter-entity funding mechanics, and the consistency between financial records and government filings. His examination is factual and documentary — it addresses systems, records, and decision pathways, not legal conclusions.

Governing rules: FRCP 30 (individual deposition). Witness role: Chief Financial Officer or equivalent financial officer with knowledge of payroll authorization, inter-entity funding, government filings under EIN 63-6014186, and W-9 certifications.

## § 4.1  Round 1 — Financial Authority, Payroll Structure, and Accounting Baseline

### A. Role, Title, and Financial Authority

208.    State your title and role during the period November 2021 through May 2023.

209.    Describe your responsibilities with respect to EBSCO Industries, Inc.'s financial operations during that period.

210.    Describe your responsibilities, if any, with respect to the financial operations of EBSCO Information Services during that period.

211.    State whether you had direct or indirect authority over payroll accounts during the relevant period.

212.    State whether you had direct or indirect authority over the corporate bank accounts used for payroll disbursements.

### B. Payroll Funding Structure

213.    Identify the financial institution used for payroll disbursement to employees during the period November 2021 through May 2023.

214.    Identify the bank account or accounts used for payroll disbursements during that period.

215.    Describe the approval chain for authorizing payroll disbursements.

216.    State who has authority to designate or modify the bank accounts used for payroll.

## C. Corporate Financial Structure — Inter-Entity Relationships

217.    Describe the financial relationship between EBSCO Industries, Inc. and EBSCO Information Services during the relevant period.

218.    State whether those entities maintain separate accounting books or a shared-services financial structure.

219.    State whether any entity operated a centralized treasury or cash management function.

## D. Payroll Records and Documentation

220.    Describe the records generated by each payroll cycle, including payroll registers, bank disbursement records, internal accounting entries, and tax reporting outputs.

221.    Identify which financial systems capture those records.

## E. Tax Reporting and Employer Identification

222.    Identify the entity or entities responsible for filing Forms W-2 for employees during the relevant period.

223.    Identify the entity or entities responsible for filing Forms 941 for the relevant period.

224.    Identify the Employer Identification Number or numbers used on those filings.

225.    Describe how the employer of record is determined for tax reporting purposes within the company's financial systems.

## F. W-9 Certifications

226.    Describe your understanding of the W-9 certifications executed on behalf of EBSCO entities during the relevant period.

227.    Identify the entity designated as employer or payee on any W-9 certifications executed in connection with Plaintiff's employment or compensation.

228.    State whether those certifications are consistent with the employer designation used in payroll records and tax filings.

## § 4.2   Round 2 — Payroll Execution, Account Controls, and Inter-Entity Funding Mechanics

## A. Payroll Execution — Operational Flow

229.    Describe the step-by-step process by which payroll is executed from initial approval through employee payment.

230.    Identify who initiates payroll processing runs.

231.    Identify who approves final payroll batches before disbursement.

232.    Identify who transmits payroll instructions to the banking institution.

233.    Describe the reconciliation process following each payroll disbursement.

## B. Bank Account Structure and Controls

234.　　Identify whether a single payroll account or multiple accounts are used across EBSCO entities.

235.　　Identify who holds signatory authority on the payroll accounts used for Plaintiff's compensation.

236.　　Identify who has authority to approve modifications to account designations used in payroll processing.

237.　　Describe how account identifiers are used in payroll documentation and whether they appear in employee-facing payment records.

## C. Check Instrument Identification and Numbering

238.　　Describe the standard for assigning check numbers to payroll instruments issued to employees.

239.　　State whether the Regions Bank account number 0010000135 appears as a check number on any payroll instruments issued to employees during the relevant period.

240.　　Identify the system or process responsible for assigning check numbers to payroll instruments.

241.　　State whether the MICR encoding on payroll instruments is generated separately from the visible face of the check, and if so, identify who controls each.

## D. Inter-Entity Funding and Cost Allocation

242.　　Describe how payroll costs are allocated among EBSCO Industries, Inc., EBSCO Information Services, and any related entities.

243.　　State whether intercompany transfers are used to fund or reimburse payroll obligations.

244.　　Identify who approves intercompany funding transfers and what documentation is required.

## E. Payroll Records and Audit Trail

245.　　Identify the systems that maintain the official record of payroll disbursements.

246.　　Describe the audit trail for payroll transactions, including who can view and modify entries and whether changes are logged.

247.　　State whether modifications to payroll records are time-stamped and attributed to the individual making the change.

## F. Employer Identification and Tax Reporting Consistency

248.　　Describe how payroll data is mapped to Employer Identification Numbers and legal entities.

249.　　Identify who is responsible for ensuring consistency between payroll records, W-2 filings, and Forms 941.

250.　　State whether EIN 63-6014186 is consistently used across all tax reporting, payroll systems, and HR records for Plaintiff's compensation period.

## § 4.3  Round 3 — Tax Filings, Employer Attribution, and Litigation Consistency

### A. Employer Identification in Government Filings

251.    Identify the entity listed as employer on the Forms W-2 issued to Plaintiff for each year of his employment.

252.    Identify the EIN used on those Forms W-2.

253.    State whether the same entity and EIN are used on Forms 941 filed for the same period.

254.    State whether the same entity and EIN are used on state unemployment and wage reporting filings for the same period.

### B. EIN Usage and Attribution Controls

255.    Identify all Employer Identification Numbers associated with EBSCO Industries, Inc. and its affiliated entities as of November 2021.

256.    State which EIN corresponds to EBSCO Industries, Inc. as the parent entity.

257.    State which EIN, if any, corresponds to EBSCO Publishing, Inc.

258.    State which EIN, if any, corresponds to EBSCO Information Services.

259.    State whether EIN 63-1105270 was used on any documents associated with Plaintiff's employment or compensation.

### C. W-9 Certifications — Verification and Authorization

260.    Identify the W-9 certification executed by Michael Rice on July 21, 2025, and describe the entity designated as employer or payee on that certification.

261.    Identify the W-9 certification executed by Tracey Ballard on July 6, 2021, and describe the entity designated on that certification.

262.    State whether those certifications are consistent with one another and with the payroll records for Plaintiff.

263.    State who authorized Michael Rice and Tracey Ballard to execute those certifications on behalf of the company.

### D. Consistency Between Financial Records and Litigation Position

264.    State whether the employer designation used in tax filings is consistent with the employer identity asserted in Defendants' litigation pleadings.

265.    Identify who is responsible for ensuring consistency between tax reporting positions and litigation positions regarding employer identity.

266.    State whether any internal discussions occurred regarding differences between the financial or tax treatment of employment and the litigation position.

### E. Record Integrity and Audit Controls

267.    Describe the internal audit procedures used to ensure that payroll tax filings match payroll system data.

268.    State whether audit logs exist showing changes to employer designation fields in payroll or tax reporting systems.

269.    State whether any such changes occurred during the litigation period.

## F. Final Financial Attribution

270.    State whether, based on financial systems and tax reporting, a single entity is responsible for Plaintiff's compensation reporting.

271.    State whether multiple entities share or distribute that reporting responsibility.

272.    State whether the financial reporting structure reflects centralized employer control or decentralized attribution across entities.

## § 4.4  Binder 4 — Key Document

| Document Category | Custodian | System / Source |
|---|---|---|
| All 43 payroll instruments issued to Plaintiff (checks, stubs, and accompanying payroll registers) | Hobbs / Finance | Payroll system / bank records |
| Regions Bank account 0010000135 — account registration documents and signatory authority | Hobbs / Finance | Bank records / treasury system |
| Forms W-2 for Plaintiff — all tax years of employment | Finance / Payroll | Payroll tax filing records |
| Forms 941 — all quarters during Plaintiff's employment | Finance / Payroll | Payroll tax filing records |
| W-9 certifications executed by Michael Rice (Jul 21, 2025) and Tracey Ballard (Jul 6, 2021) | Finance / Legal | Vendor records / HR file |
| Intercompany payroll allocation records — EBSCO Industries / EBSCO Information Services | Finance / Accounting | ERP / accounting system |
| Payroll system audit logs showing employer designation entries for Plaintiff | Finance / IT | Payroll system audit trail |
| MICR encoding records — check issuance configuration for payroll instruments | Finance / IT | Payroll system / bank integration |
| EIN registration records for all EBSCO entities | Finance / Legal | IRS filings / corporate records |
| Any Form W-2C filed or requested in connection with Plaintiff's employment | Finance / Payroll | Payroll tax records |

## § 4.5  Binder 4 — Cross-Witness Overlap Map

| Issue | This Witness | Overlapping Witnesses |
|---|---|---|
| EIN usage on tax filings vs. HR/payroll records | Hobbs | Carroll (legal consistency review); 30(b)(6) (system configuration) |
| Payroll account authorization — Regions Bank 0010000135 | Hobbs | Collins (executive authority); 30(b)(6) (account governance) |
| W-9 certification consistency | Hobbs | Carroll (legal review); 30(b)(6) (corporate records) |
| Inter-entity payroll allocation | Hobbs | Carroll (legal structure); 30(b)(6) (system configuration) |
| Check numbering standard — account number as check number | Hobbs | 30(b)(6) (payroll system configuration); Carroll (litigation position) |
| Employer designation consistency across W-2, 941, payroll stubs | Hobbs | Carroll (litigation position); 30(b)(6) (system design) |

**DEPOSITION PREPARATION BINDER**
Deponent 5 of 5

# RULE 30(b)(6) CORPORATE DESIGNEE
**EBSCO Industries, Inc.**
Corporate Representative — All Matters Identified in Deposition Notice

Ly v. EBSCO Industries, Inc. et al.  ·  No. 3:24-cv-30161-MGM
U.S. District Court, District of Massachusetts

## § 5.0  Binder 5 — Purpose, Governing Scope, and Preparation Obligations

**BINDER PURPOSE — RULE 30(b)(6) SPECIFIC**
This binder governs the preparation of one or more corporate designees for examination pursuant to Federal Rule of Civil Procedure 30(b)(6). Under Rule 30(b)(6), the organization must designate one or more persons who consent to testify on behalf of the organization and must prepare those persons to testify about information known or reasonably available to the organization — not limited to the personal knowledge of the designee. The designee's testimony binds the organization. Preparation obligations are therefore broader than for individual witnesses.

**SEQUENCING NOTE**
The four individual depositions (Collins, Carroll, Lull, Hobbs) are intended to precede the Rule 30(b)(6) deposition. Individual testimony regarding operational knowledge, payroll structure, and entity relationships is foundational context. The corporate designee examination then locks the organizational positions on each designated matter.

Governing rules: FRCP 30(b)(6) — organizational deposition. Preparation obligation: The organization must prepare designees on all information reasonably available to the organization on each designated matter, not merely the designee's personal knowledge.

## § 5.1  Round 1 — Corporate Structure, Entity Relationships, and Employer Designation Framework

**MATTER 1 — CORPORATE STRUCTURE**
Structural, operational, and financial relationship between EBSCO Industries, Inc., EBSCO Information Services, and EBSCO Publishing, Inc. during November 2021 through May 2023, including the effect of the May 2013 merger on EPI's corporate existence and authority.

### A. Corporate Structure — Organizational Baseline

273.     Describe the organizational structure of EBSCO Industries, Inc. during November 2021 through May 2023.

274.        Identify all subsidiaries or affiliated entities involved in information services operations during that period.

275.        Describe the legal relationship between EBSCO Industries, Inc. and EBSCO Information Services.

276.        State whether EBSCO Publishing, Inc. was a legally active corporation during November 2021 through May 2023.

277.        Describe any restructuring, merger, or dissolution events affecting EBSCO entities between 2013 and 2023.

278.        Identify where official corporate structure documentation is maintained.

## B. Employer Designation Framework

279.        Describe the criteria used by the company to determine which entity is designated as the employer of record for payroll purposes.

280.        Describe how the employer of record is determined for tax reporting purposes, including Forms W-2 and 941.

281.        Describe how the employer of record is designated in HR personnel records.

282.        State whether multiple entities can appear simultaneously in different systems as the employer for a single employee.

283.        Identify who has final authority to resolve inconsistencies between employer designations across different systems.

## C. HR and Payroll Systems Architecture

284.        Identify the HR management system or systems used during November 2021 through May 2023.

285.        Describe how those systems assign an employer entity to each employee record.

286.        Describe how those systems record changes to employer designation over time.

287.        State whether changes to employer designation in those systems generate audit logs, and if so, describe their content.

288.        Identify who is responsible for maintaining the accuracy of entity mapping within those systems.

## D. Financial Structure — Shared Services and Cost Allocation

289.        Describe whether payroll, HR, legal, and accounting functions are centralized under EBSCO Industries, Inc. or distributed across subsidiaries.

290.        Describe how payroll costs are allocated across EBSCO entities.

291.        State whether intercompany transfers are used to fund or reimburse payroll obligations between EBSCO Industries, Inc. and EBSCO Information Services.

## § 5.2  Round 2 — Payroll Allocation, Account Governance, and System Mechanics

**MATTER 2 — PAYROLL ACCOUNT AND CHECK NUMBERING**
Management, authorization, account ownership, and signatory authority for the Regions Bank account used to issue all 43 payroll payments to Plaintiff; the check numbering system used; and the standard by which account numbers were designated as check numbers across EBSCO payroll instruments.

## A. Payroll Account Governance — MATTER 2

292.     Identify the entity that owns the Regions Bank account used to issue payroll payments to Plaintiff.

293.     Identify all individuals with signatory authority on that account during November 2021 through May 2023.

294.     Describe the approval process for authorizing payroll disbursements from that account.

295.     Describe how account identifiers from that account appear in payroll instruments issued to employees.

296.     Describe the standard used to assign check numbers to payroll instruments issued from that account.

297.     State whether the Regions Bank account number 0010000135 appears in the check number field on payroll instruments issued to employees.

298.     State whether there is a documented policy governing how check numbers are assigned to payroll instruments, and if so, identify the custodian of that policy.

299.     Describe the system or process used to generate MICR encoding on payroll instruments and whether that encoding is generated separately from the visible face of the check.

> **MATTER 3 — GOVERNMENT FILINGS UNDER EIN 63-6014186**
> Preparation, review, authorization, and filing of all federal, state, and government submissions made under EIN 63-6014186 during Plaintiff's employment period.

## B. EIN 63-6014186 — MATTER 3

300.     Identify the legal entity to which EIN 63-6014186 is assigned.

301.     Identify all government filings made under EIN 63-6014186 during November 2021 through May 2023, including W-2s, Forms 941, and state filings.

302.     State whether the entity designated on those filings is consistent with the entity designated in payroll records and HR systems.

303.     Identify who reviewed and authorized those filings before they were submitted.

304.     State whether EIN 63-1105270 was used on any government filing associated with Plaintiff's employment during the same period.

## C. HR System Configuration — Employer Attribution

305.     Describe how the company's HR system assigns a legal employer entity to each employee record.

306.     State whether the HR system permits an employee to be assigned to a dissolved or inactive entity.

307.     State whether Plaintiff's employee record in the HR system designates EBSCO Publishing, Inc. as his employer.

308.     Identify who created or modified the employer designation in Plaintiff's HR record.

309.     State whether an audit log exists showing when and by whom that designation was set or changed.

## D. SAP SuccessFactors — MATTER 5

**MATTER 5 — SAP SUCCESSFACTORS RECORD**

SAP SuccessFactors system configuration for employer designation in Plaintiff's employee record; the audit log history for any modifications to that record during or after employment; the identity of personnel who accessed or modified that record after November 14, 2024.

310. Identify whether SAP SuccessFactors was in use as the HR management system during Plaintiff's employment.

311. Describe how SAP SuccessFactors assigns and records employer designation for each employee.

312. Describe the audit log functionality within SAP SuccessFactors, including what events are logged, what information is captured, and who can access the logs.

313. State whether Plaintiff's SAP SuccessFactors record was accessed, modified, or deleted after November 14, 2024.

314. Identify each instance, if any, in which Plaintiff's record was accessed or modified after November 14, 2024, including the date, the user, and the nature of the change.

315. State whether litigation hold instructions covered SAP SuccessFactors records.

## § 5.3   Round 3 — Digital Content, Affirmative Defense No. 23, and Final Corporate Positioning

**MATTER 4 — AFFIRMATIVE DEFENSE No. 23**

Factual and legal basis for Affirmative Defense No. 23 denying EBSCO Industries, Inc.'s employer status, including all documents reviewed and all persons consulted in preparing that defense.

## A. Affirmative Defense No. 23 — Factual Basis — MATTER 4

316. Identify the factual basis for Affirmative Defense No. 23 asserting that EBSCO Industries, Inc. was not Plaintiff's employer.

317. Identify who drafted that defense.

318. Identify who reviewed that defense before it was filed.

319. Identify who approved the final version for submission to the Court.

320. Identify all HR records reviewed in preparing that defense.

321. Identify all payroll records reviewed in preparing that defense.

322. Identify all tax filings reviewed in preparing that defense.

323. Identify all corporate structure documents reviewed in preparing that defense.

324. State whether the records reviewed in preparing the defense are consistent with the factual position asserted.

**MATTER 6 — DIGITAL ATTRIBUTION CONTENT RESTRICTION**

Decision to restrict English-language access to Plaintiff's professional biography and attribution content on EBSCO's public platforms; identity of the decision-maker; date of restriction; and EBSCO's policy governing restriction or preservation of former employee attribution content during litigation.

## B. Digital Attribution Content — MATTER 6

325. State whether English-language access to Plaintiff's professional biography or attributed work product on EBSCO's public platforms was restricted at any time after his employment ended.

326. Identify the date on which any such restriction was implemented.

327. Identify the individual or individuals who made the decision to implement the restriction.

328. Describe the basis for that decision.

329. State whether access to the equivalent content in other languages was maintained after the English restriction was implemented.

330. Identify the company's policy, if any, governing restriction or preservation of former employee attribution content during litigation.

331. State whether the restriction was reviewed or approved by legal before implementation.

332. State whether the litigation hold notice issued in this matter was considered before the restriction was implemented.

## C. Litigation Hold Compliance — Corporate Level

333. State when the litigation hold related to Plaintiff's claims was first issued by legal.

334. Describe the categories of information placed under the litigation hold, identifying each system and department included.

335. State whether HR records, payroll records, SAP SuccessFactors data, email archives, digital content platforms, and finance records were all included.

336. Identify who was responsible for ensuring compliance with the hold across each department.

337. State whether compliance with the hold was monitored and, if so, how.

338. State whether any data preservation failures or gaps were identified after the hold was issued.

## D. Post-Hold System Changes

339. State whether any changes were made to HR records after the litigation hold was issued.

340. State whether any changes were made to payroll system entries after the litigation hold was issued.

341. State whether any changes were made to employer attribution settings in any system after the litigation hold was issued.

342. State whether any changes were made to Plaintiff's SAP SuccessFactors record after the litigation hold was issued.

343. Identify whether audit logs confirm or track each of those changes.

## E. Corporate Position Consistency — Final Lock

344. Confirm whether the company's internal records reflect Plaintiff's role assignments over time, including any expansion of responsibilities during the six months preceding termination.

345. State whether those records were considered when forming the litigation positions asserted in this action.

346. State which entity the company designates as Plaintiff's employer in each of the following: HR system, payroll system, Forms W-2, Forms 941, and litigation pleadings.

347. If those designations are not identical across all systems, identify how the company reconciles those differences for litigation purposes.

348. Identify which executives were involved in approving the litigation strategy on employer identity, including **Affirmative Defense No. 23**.

## § 5.4  Binder 5 — Key Document (non-exhaustive)

| Document Category | Custodian | System / Source |
|---|---|---|
| SAP SuccessFactors audit logs — Plaintiff's record — all modifications, from Nov 2021, post-Nov 14, 2024, to present | IT / HR | SAP SuccessFactors audit system |
| Payroll system configuration records — employer entity mapping | Finance / IT | Payroll system backend |
| All instruments showing Regions Bank account 0010000135 as 'Check No.' (43 instruments) | Finance | Payroll records / bank statements |
| EIN 63-6014186 — government filing index for 2021–2023 | Finance / Legal | IRS / state tax records |
| EIN 63-1105270 — any usage post-dissolution (July 1, 2013) | Finance / Legal | IRS records / payroll system |
| Internal deliberation records for Affirmative Defense No. 23 | Legal | Legal file |
| Digital content restriction records — CDN or web management logs for Plaintiff's pages | IT / Marketing | CDN access logs / CMS logs |
| Litigation hold notice — original document and scope definition | Legal | Legal records |
| Intercompany allocation records — payroll funding between EII and EIS | Finance / Accounting | ERP / accounting system |
| SAP SuccessFactors profile deletion records or audit entries for Plaintiff (post-termination) | HR / IT | SAP SuccessFactors |
| Corporate dissolution records — EBSCO Publishing, Inc. — July 2013 | Legal / Corporate Secretary | Corporate governance files |
| Background screening vendor records — 2021 — entity designation used for request | HR / Compliance / Vendor | Vendor audit logs |

## DEPOSITION BINDER PACKAGE
### COMPLETE — ALL FIVE BINDERS

Collins  ·  Carroll  ·  Lull  ·  Hobbs  ·  Rule 30(b)(6) Corporate Designee

Transmitted by: Mohamed S. Ly, Plaintiff Pro Se and Whistleblower
485 Glendale Road, Wilbraham, Massachusetts 01095  ·  mmmly7@gmail.com
June 25, 2026

Ly v. EBSCO Industries, Inc. et al.  ·  No. 3:24-cv-30161-MGM
U.S. District Court, District of Massachusetts, Western Division

Without waiver of any rights, privileges, domains, topics, or admission of any kind.

Case 3:24-cv-30161-MGM   Document 149   Filed 07/14/26   Page 46 of 65

 Gmail

Mohamed Ly <mmmly7@gmail.com>

## Service of Plaintiff's Omnibus Notices of Deposition (Ly v. EBSCO Industries, Inc. et al., No. 3:24-cv-30161-MGM)

5 messages

---

**Mohamed Ly** <mmmly7@gmail.com>                                               Mon, Jun 15, 2026 at 8:15 AM
To: "Lynch, Matt" <MLynch@littler.com>, "McDonagh, Melissa" <MMcDonagh@littler.com>, "Foley, Moira" <mfoley@littler.com>, BC Law Clinic <bclawclinic@bc.edu>, "Gorman, Melissa J." <MGorman@littler.com>

Counsel,

Attached please find Plaintiff's Omnibus Notices of Deposition in the matter of LY v. EBSCO INDUSTRIES, INC. et. al., covering the depositions of:

- **Tim Collins**

- **Patricia Carroll**

- **David Hobbs** (or Defendants' designated senior executive financial-control custodian, as applicable)

- **Tim Lull**

- **Defendants' Rule** 30(b)(6) Corporate Representative(s) (designated by Defendants)

The notices conform to the Federal Rules of Civil Procedure, including Rule 30(d)(1), and contemplate that each deposition will be conducted within the presumptive one-day, seven-hour limit unless otherwise stipulated by the parties or ordered by the Court.

Plaintiff has elected to provide a comprehensive notice identifying the witnesses, subject matters for examination, governing rules, and principal categories of documents likely to be addressed. This approach is intended to facilitate adequate witness preparation, minimize unnecessary disputes, narrow areas of uncertainty, and promote the most efficient and productive deposition sessions possible. By providing substantial advance notice of the subjects to be examined, Plaintiff seeks to ensure that the parties can focus the depositions on the merits of the case and the factual issues genuinely in dispute.

To facilitate orderly completion of discovery, Plaintiff requests that Defendants identify and provide available deposition dates for the noticed witnesses during the period of June 16, 2026 through June 22, 2026. Plaintiff is prepared to work cooperatively with Defendants regarding scheduling logistics and sequencing of witnesses within that window.

If no mutually agreeable date within that period is available, Plaintiff requests that counsel promptly confer in good faith regarding alternative dates consistent with the Federal Rules, the Court's scheduling orders, and the Court's supervision of discovery.

In addition, please identify any Rule 30(b)(6) designee(s) Defendants intend to produce, together with the subject areas for which each designee will testify, sufficiently in advance of the depositions to permit orderly examination and preparation.

Please advise of Defendants' proposed dates and witness availability at your earliest convenience.

Thank you in advance for your professional cooperation.

Respectfully,

Mohamed Ly
Plaintiff, Pro Se

P.S.: As previously stated, while delays are inherently prejudicial, **Plaintiff remains willing to accommodate reasonable scheduling flexibility and good-faith extensions** where warranted. As counsel has been aware for more than six months, Plaintiff continues to suffer material and compounding damages with the passage of time. Plaintiff's concerns regarding the preservation, integrity, and availability of relevant evidence remain ongoing and have been previously documented and communicated. Accordingly, Plaintiff will balance reasonable accommodation of legitimate scheduling needs with the timely advancement of discovery and preservation-related efforts necessary to protect the evidentiary record, while minimizing unnecessary motion practice, avoidable disruption, and undue delays.

---

 **06122026_Aya_B1X812_Plaintiffs_Deposition_Notices_FINAL__.pdf**
18647K

---

**Lynch, Matt** <MLynch@littler.com>                                               Tue, Jun 16, 2026 at 5:37 PM
To: Mohamed Ly <mmmly7@gmail.com>, "McDonagh, Melissa" <MMcDonagh@littler.com>, "Foley, Moira" <MFoley@littler.com>, BC Law Clinic <bclawclinic@bc.edu>, "Gorman, Melissa J." <MGorman@littler.com>

Mr. Ly:

I have not heard from you or the Clinic since our Rule 37.1 conference on June 4, 2026, when we provided you with an additional two weeks to discuss with the Clinic the issues raised in our May 12, 2026 letter regarding your discovery responses. I intend to call you at 10 a.m. on June 18, 2026 to complete Defendants' Rule 37.1 conference. If you are not available then, or if you expect the Clinic to participate but they are not available then, please provide another time on June 18 when we can complete the Rule 37.1 conference.

Separately, we intend to file a motion this week to extend discovery and other deadlines by 30 days. Last week, you stated that you opposed our motion seeking a longer extension, but please let me know your position regarding the 30-day extension, particularly given the deposition notices you recently served.

Lastly, we will respond substantively to your deposition notices in the coming days. In terms of scheduling, the dates you suggest of 6/16-6/22 are not feasible for any depositions, and we should confer about dates in July. Further, please note that Defendants will not produce any EBSCO witnesses for depositions until after Plaintiff's deposition, given that we noticed your deposition first and there are outstanding discovery matters to be resolved. As such, please provide dates in July on or after 7/13/26 when you are available for depositions in this matter, beginning with your deposition. Thank you.

Matt

---

**From:** Mohamed Ly <mmmly7@gmail.com>
**Sent:** Monday, June 15, 2026 8:15 AM
**To:** Lynch, Matt <MLynch@littler.com>; McDonagh, Melissa <MMcDonagh@littler.com>; Foley, Moira <MFoley@littler.com>; BC Law Clinic <bclawclinic@bc.edu>; Gorman, Melissa J. <MGorman@littler.com>
**Subject:** Service of Plaintiff's Omnibus Notices of Deposition (Ly v. EBSCO Industries, Inc. et al., No. 3:24-cv-30161-MGM)

**[EXTERNAL E-MAIL]**

[Quoted text hidden]

------------------------
This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message.

Littler Mendelson, P.C. is part of the international legal practice Littler Global, which operates worldwide through a number of separate legal entities.

---

**Mohamed Ly** <mmmly7@gmail.com>        Tue, Jun 16, 2026 at 11:55 PM
To: "Lynch, Matt" <MLynch@littler.com>
Cc: "McDonagh, Melissa" <MMcDonagh@littler.com>, "Foley, Moira" <MFoley@littler.com>, BC Law Clinic <bclawclinic@bc.edu>, "Gorman, Melissa J." <MGorman@littler.com>

Sir, respectfully, you know better than to proclaim:
*Defendants will not produce any EBSCO witnesses for depositions until after Plaintiff's deposition, given that we noticed your deposition first.*

Neither the Rules nor Professional standards permit this.

Plaintiff must, yet again, reject Counsel's unilateral and improper discovery precondition, just as your prior improper deposition notice was rejected. Per governing rules, The Court will not be receptive to this, either.

Response attached.

Thanks,
M/
[Quoted text hidden]

 **Ly_v_EBSCO_Response_Lynch_June16_2026_3301130_06182026.pdf**
343K

---

**Lynch, Matt** <MLynch@littler.com>        Wed, Jun 17, 2026 at 12:22 PM
To: Mohamed Ly <mmmly7@gmail.com>
Cc: "McDonagh, Melissa" <MMcDonagh@littler.com>, "Foley, Moira" <MFoley@littler.com>, BC Law Clinic <bclawclinic@bc.edu>, "Gorman, Melissa J." <MGorman@littler.com>

Mr. Ly:

7/14/26, 8:33 AM Gmail - Service of Plaintiff's Omnibus Notices of Deposition (Ly v. EBSCO Industries, Inc. et al., No. 3:24-cv-30161-MGM)

Case 3:24-cv-30161-MGM Document 149 Filed 07/14/26 Page 48 of 65

I will call you at 11:30 a.m. tomorrow. The purpose of this call will be to address the insufficiencies identified in our May 12, 2026 letter, which are the same issues for which we provided you with additional time to confer with the BC Law Clinic following the Rule 37.1 Conference that I initiated on June 4, 2026.

Can you please provide dates during the week of 7/13-7/17 when you are available for your deposition, which will be held at our office in Boston? Thank you.

[Quoted text hidden]
[Quoted text hidden]

---

**Mohamed Ly** <mmmly7@gmail.com>                                           Thu, Jun 18, 2026 at 8:15 AM
To: "Lynch, Matt" <MLynch@littler.com>
Cc: "McDonagh, Melissa" <MMcDonagh@littler.com>, "Foley, Moira" <mfoley@littler.com>, BC Law Clinic <bclawclinic@bc.edu>, "Gorman, Melissa J."
<MGorman@littler.com>

Plaintiff has been forced to reason with a party who is determined to willfully and repeatedly violate the FRCP and Court rules.

Plaintiff has fulfilled all conferral obligations under Local Rule 37.1, while Defendants' current discovery posture stands wholly inconsistent with Fed. R. Civ. P. 26(d)(3) and the governing scheduling order.

Now, you may operate by the governing rules, or do as you please.

As of now, Plaintiff will rely on the Court to resolve any disputes that Defendants inject in the proceedings, through compliance with the Federal Rules.

**Respectfully,**

**/s/ Mohamed S. Ly**
**Plaintiff & Whistleblower**

[Quoted text hidden]

---

📄 **Ly_v_EBSCO_Response_Lynch_June17_2026_uInilateral persistent repeated capricious procedural abuses.pdf**
351K

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS
### SPRINGFIELD DIVISION

| | |
|---|---|
| MOHAMED LY,<br><br>Plaintiff,<br><br>v.<br><br>EBSCO INDUSTRIES, INC.; EBSCO INFORMATION SERVICES; EBSCO PUBLISHING, INC.; TIM COLLINS; and TIM LULL,<br><br>Defendants. | **Civil Action**<br><br>No. 3:24-cv-30161-MGM |

## PLAINTIFF'S OMNIBUS NOTICES OF DEPOSITION

(Tim Collins; Patricia Carroll; David Hobbs / Senior Financial Control Custodian; Tim Lull; and Rule 30(b)(6) Corporate Representative)

TO: Matthew J. Lynch, Esq. and Melissa L. McDonagh, Esq.

Littler Mendelson, P.C.

One International Place, Suite 2700, Boston, MA 02110

mlynch@littler.com | mmcdonagh@littler.com

PLEASE TAKE NOTICE that, pursuant to Rules 30(a), 30(b)(1), and 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiff Mohamed Ly will take the oral depositions of the following individuals and organizational representative(s) at a time and place to be agreed upon by the parties or, absent agreement, as ordered by the Court.

Each deponent shall appear before a notary public or other officer authorized to administer oaths. Each deposition will be recorded by stenographic means and may additionally be recorded by audio and/or video means.

Consistent with Fed. R. Civ. P. 30(d)(1), each deposition is expected to be completed within one day of seven (7) hours on the record unless otherwise stipulated by the parties or ordered by the Court.

The noticed depositions are to be scheduled on dates selected by Defendants between June 16, 2026 and June 22, 2026. If no mutually agreeable date within that period is available, the parties shall meet and confer in good faith to identify alternative dates consistent with the Federal Rules of Civil Procedure, the Court's scheduling orders, and the Court's supervision of discovery.

Be advised, the deposition venue shall be located in Springfield, Massachusetts, utilizing a service provider facility suitable for in-person stenographic deposition services. The location and deposition setting shall be confirmed and communicated to Defense Counsel upon determination of Defendants' elected dates and times.

Accordingly, coordination of the facility booking will proceed based upon Defendants' elected schedule, in order to ensure timely reservation and availability of the deposition venue.

It is crucial therefore that Defendants communicate their elected deposition dates as early as practicable to facilitate timely coordination of court reporter availability and secure reservation of an appropriate in-person stenographic facility.

The depositions noticed herein are:

- **Tim Collins** -- Individual Deposition (Fed. R. Civ. P. 30(b)(1))
- **Patricia Carroll** -- Individual Deposition (Fed. R. Civ. P. 30(b)(1))
- **David Hobbs**, Chief Financial Officer, or Defendants' designated senior executive financial control custodian -- Individual and/or Rule 30(b)(6) Deposition (Fed. R. Civ. P. 30(a); 30(b)(6))
- **Tim Lull** -- Individual Deposition (Fed. R. Civ. P. 30(b)(1))
- **Defendants' Rule 30(b)(6) Corporate Representative(s)** -- Enterprise Systems, Operations, Publication Controls, Complaint Handling, and Records Management

Defendants are reminded of their obligations under Fed. R. Civ. P. 30(b)(6), as set forth in the Notice Regarding Corporate Designee Obligations below, which applies to Deposition Notice No. 3 (to the extent a Rule 30(b)(6) designee is produced in lieu of or in addition to David Hobbs) and to Deposition Notice No. 5.

**Dated: June 13, 2026**

Respectfully submitted,

**/s/ Mohamed Ly**

Mohamed Ly, Pro Se Plaintiff

485 Glendale Road, Wilbraham, MA 01095

(202) 641-2322 | mmmly7@gmail.com

## CERTIFICATE OF SERVICE

I, Mohamed Ly, hereby certify that on June 13, 2026, a true and accurate copy of the foregoing Omnibus Notices of Deposition was served via electronic mail upon counsel for Defendants, Matthew J. Lynch, Esq. (mlynch@littler.com) and Melissa L. McDonagh, Esq. (mmcdonagh@littler.com), Littler Mendelson, P.C.

/s/ Mohamed Ly        June 13, 2026

## DEFINITIONS

1. "EII" means EBSCO Industries, Inc., EIN 63-6014186, including its officers, directors, agents, employees, predecessors, successors, and all persons acting on its behalf.

2. "EPI" means EBSCO Publishing, Inc., EIN 63-1105270, including its officers, directors, agents, employees, predecessors, successors, and all persons acting on its behalf.

3. "EIS" means EBSCO Information Services (in any legal form), EIN 86-3370771, including its officers, directors, agents, employees, predecessors, successors, and all persons acting on its behalf.

4. "EBSCO Ipswich" shall be used as the specific and controlling reference to that entity wherever applicable, and shall be treated as distinct from any other entity using the "EBSCO" name, consistent with the identification conventions applied to all EBSCO entities in this action.

5. "Defendants" means EII, EIS, EPI, Tim Collins, and Tim Lull, collectively and individually, as context requires.

6. "Plaintiff" means Mohamed Ly.

7. "Relevant Period" means January 1, 2013 through the date of the deposition, unless otherwise specified for a particular topic.

8. "Document" means any document or electronically stored information as defined by Fed. R. Civ. P. 34(a), in whatever form maintained.

9. "Communication" means any transmittal of information in any form, including but not limited to email, written correspondence, text message, instant message, voicemail, and electronic messaging or chat.

10. "Corporate Records" means articles of incorporation or organization, operating agreements, bylaws, resolutions, minutes, annual reports, certificates, filings with any state or federal agency, and related documents.

11. "Payroll Instrument" or "Payroll Record" means any record reflecting compensation paid or payable to an employee, including paychecks, pay stubs, direct-deposit advices, payroll registers, earnings statements, wage reports, and tax withholding records.

12. "EBSCO," standing alone and without further identification of a specific entity defined above, is not a legal-entity designation. Where any document, record, or testimony refers to "EBSCO" without specifying EII, EPI, or EIS, the witness shall identify, to the extent known, which entity or entities the reference is intended to denote.

## INSTRUCTIONS

13. Each topic identified in this Notice is to be addressed fully and completely by the designated witness(es).

14. Where a topic references a document, the witness shall be prepared to identify, describe, and testify regarding that document to the extent known or reasonably available to the organization.

15. If any topic is believed to be ambiguous, Defendants shall so advise Plaintiff promptly and in good faith so that clarification may be provided before the deposition.

16. Documents responsive to the Exhibit and Document Identification Notice below, to the extent in a deponent's possession, custody, or control, shall be made available for review no later than seven (7) calendar days prior to the scheduled deposition date.

17. If any document is withheld on the basis of privilege or other protection, the withholding party shall provide a written statement identifying the document and the basis for withholding, sufficient to permit assessment of the claim, pursuant to Fed. R. Civ. P. 26(b)(5).

18. Plaintiff reserves the right to seek additional depositions, or to reopen any deposition, to the extent a witness is insufficiently prepared on a noticed topic, additional information becomes available, or leave of Court is obtained.

## NOTICE REGARDING RULE 30(b)(6) DESIGNATION OBLIGATIONS

Pursuant to Fed. R. Civ. P. 30(b)(6), Defendants are hereby notified that, with respect to each deposition noticed herein for which a Rule 30(b)(6) designee may be produced (including Deposition Notice No. 3, to the extent applicable, and Deposition Notice No. 5), Defendants shall designate one or more officers, directors, managing agents, or other persons who consent to testify on Defendants' behalf concerning the matters described in the applicable Notice. Defendants may designate more than one such person, and shall, for each matter, identify in advance of the deposition the name and position of each person so designated and the matters on which each will testify.

Defendants are further advised of the following obligations:

### 1. Duty to Designate

Defendants must designate one or more persons who consent to testify and who are prepared to provide complete, knowledgeable, and binding testimony on each subject matter identified in the applicable Notice. Fed. R. Civ. P. 30(b)(6).

### 2. Duty to Prepare

Defendants have an affirmative obligation to educate and prepare each designated witness so that the witness can provide complete and non-evasive testimony concerning all noticed subjects. This obligation extends beyond the personal knowledge of the individual designated and includes review of documents, electronically stored information, databases, corporate records, policies, procedures, communications, prior testimony, and investigative materials reasonably available to the organization. Fed. R. Civ. P. 26(e); Fed. R. Civ. P. 30(b)(6).

### 3. Organizational Knowledge

Each designated witness shall testify to information known or reasonably available to the organization, including information obtainable through reasonable inquiry, review of records, and consultation with current or former employees. Personal knowledge of the designee alone is insufficient. Fed. R. Civ. P. 30(b)(6).

### 4. Multiple Witness Requirement

If no single individual possesses sufficient knowledge to address all noticed subjects, Defendants must designate additional witnesses as necessary so that all topics are fully covered. Fed. R. Civ. P. 30(b)(6).

### 5. Scope of Preparation

Defendants' preparation obligations include, without limitation, review of documents, electronically stored information, databases, corporate records, policies, procedures, communications, prior testimony, investigative materials, and other information reasonably available to the organization. Fed. R. Civ. P. 26(e); Fed. R. Civ. P. 30(b)(6).

### 6. Binding Nature of Testimony

Testimony provided by a Rule 30(b)(6) designee constitutes the testimony of the organization itself and may be used against the organization in this action to the extent permitted by Fed. R. Civ. P. 32(a)(3).

### 7. Identification of Testimony Areas

Where multiple designees are designated, Defendants shall identify the matters on which each designee will testify sufficiently in advance of the deposition to permit orderly examination. Fed. R. Civ. P. 30(b)(6).

### 8. Duty to Confer in Good Faith

The parties are required to confer in good faith regarding the matters for examination before or promptly after service of this Notice. Any objections or claimed ambiguities concerning the noticed topics shall be raised promptly and in good faith. Fed. R. Civ. P. 30(b)(6).

### 9. Duty to Supplement

Defendants remain under a continuing obligation to supplement or correct discovery responses and deposition testimony when prior responses are incomplete or incorrect in any material respect. Fed. R. Civ. P. 26(e).

### 10. Consequences of Noncompliance

Failure to designate adequately prepared witness(es), failure to prepare designated witness(es), or production of a witness or witnesses unable to testify concerning the noticed subjects may be treated as a failure to appear for purposes of Fed. R. Civ. P. 37 and may subject Defendants to appropriate relief, including costs, attorney's fees,

evidentiary sanctions, issue sanctions, adverse inferences, or other relief the Court deems appropriate. Fed. R. Civ. P. 37(a); Fed. R. Civ. P. 37(b); Fed. R. Civ. P. 37(d).

**Federal Rules Governing These Depositions**

The following provisions of the Federal Rules of Civil Procedure apply to the depositions noticed herein:

- Fed. R. Civ. P. 26(b)(1) -- Scope of Discovery
- Fed. R. Civ. P. 26(e) -- Duty to Supplement
- Fed. R. Civ. P. 26(g) -- Signing Disclosures and Discovery Requests
- Fed. R. Civ. P. 30(a) -- When a Deposition May Be Taken
- Fed. R. Civ. P. 30(b)(1) -- Notice of Deposition; Other Formal Requirements
- Fed. R. Civ. P. 30(b)(6) -- Notice or Subpoena Directed to an Organization
- Fed. R. Civ. P. 30(c) -- Examination and Cross-Examination
- Fed. R. Civ. P. 30(d) -- Duration; Sanction; Motion to Terminate or Limit
- Fed. R. Civ. P. 32(a)(3) -- Use of a Party's or Organizational Representative's Deposition
- Fed. R. Civ. P. 37(a) -- Motion for an Order Compelling Disclosure or Discovery
- Fed. R. Civ. P. 37(b) -- Failure to Comply with a Court Order
- Fed. R. Civ. P. 37(d) -- Party's Failure to Attend Its Own Deposition or Serve Answers to Interrogatories

This Notice is provided so that Defendants may identify, prepare, and produce the appropriate designee(s) for each Rule 30(b)(6) topic in advance of the scheduled deposition.

5 of 17

## DEPOSITION NOTICE NO. 1
## TIM COLLINS

*Capacity: Individual fact witness; Named Defendant*
*Role: Senior officer of EBSCO entities during the Relevant Period, as reflected in corporate filings and public communications*

PLEASE TAKE NOTICE that, pursuant to Fed. R. Civ. P. 30(a) and 30(b)(1) (and 30(b)(6) where applicable), Plaintiff Mohamed Ly will take the oral deposition of the above-named individual or organizational representative(s) at a time and place to be agreed upon by the parties or, absent agreement, as ordered by the Court. The deposition will be taken before a notary public or other officer authorized to administer oaths, will be recorded by stenographic means and may additionally be recorded by audio and/or video means, and shall continue from day to day, and across sessions if necessary, until completed.

**TOPICS FOR EXAMINATION**

**A. Corporate Structure and Entity Relationships**

19. The organizational structure of EII, EPI, and EIS during the period January 2021 through May 2023.

20. The relationships among EII, EPI, and EIS during that period, including ownership, control, and operational integration.

21. The formation, merger, succession, or dissolution of any EBSCO entity during the period January 2010 through December 2024, including any transaction effective on or about July 1, 2013.

22. The identity of the entity or entities authorized to employ personnel, including Plaintiff, during the period January 2021 through May 2023.

23. The identity of the entity or entities that administered compensation, payroll, benefits, and employment for Plaintiff during that period.

**B. Executive Authority and Decision-Making**

24. Collins's authority over employment decisions affecting Plaintiff, including hiring, compensation, performance management, and termination.

25. Collins's communications with other executives, officers, managers, or human-resources personnel regarding Plaintiff's employment, performance, leave, or termination.

26. Collins's knowledge of and involvement in decisions affecting Plaintiff's employment status, work assignments, organizational role, and compensation.

27. The chain of authority for employment decisions affecting Plaintiff, including identification of persons with authority to approve or direct such decisions.

**C. Plaintiff's Employment, Performance, and Separation**

28. Plaintiff's employment history, including start date, role, responsibilities, compensation, and reporting structure.

29. The performance-management process applied to Plaintiff, including any performance improvement plan, its timeline, and the persons involved in its design, implementation, and review.

30. The timeline of events leading to Plaintiff's separation, including the persons involved in the separation decision and the basis for that decision.

31. The entity identified as Plaintiff's employer in internal records, payroll records, and human-resources systems during Plaintiff's employment.

32. Collins's knowledge of any project or initiative involving multilingual content or globalization of EBSCO platforms in which Plaintiff was involved, and the relationship, if any, between that project and the timeline described above.

**D. Leave and Post-Leave Events**

33. Collins's knowledge of any leave taken by Plaintiff during his employment, including the nature, duration, and timing of such leave.

6 of 17

34. Any communications Collins received or sent concerning Plaintiff's leave and any subsequent employment actions.

35. The sequence of events between Plaintiff's leave and any employment actions affecting Plaintiff following that leave.

### E. Professional Attribution and Published Content

36. Collins's knowledge of any EBSCO-affiliated content, publications, or digital materials that referenced Plaintiff by name during or after Plaintiff's employment, including content located at or under the path /about/our-team on the ebsco.com domain and any language-variant versions thereof.

37. Any decisions, communications, or directives regarding the modification, restriction, or removal of content referencing Plaintiff, including the timing of any such action relative to the period January 1, 2024 through the present.

38. The persons responsible for, and the basis of, any such decisions.

### F. Internal Complaints and Escalations

39. Collins's knowledge of any complaints, concerns, or escalations raised by Plaintiff during his employment regarding employment practices, financial allocation, program administration, or organizational operations.

40. Any communications Collins received or sent in response to such complaints or concerns.

41. Any actions taken following Plaintiff's complaints or concerns.

### G. Corporate Representations, Records, and Preservation

42. Collins's personal knowledge of representations made to any governmental entity, federal agency, or state authority concerning the identity, status, or capacity of EII, EPI, or EIS.

43. Collins's knowledge of the basis for the identification of Plaintiff's employer in Defendants' Answer, Affirmative Defenses, and Rule 7.1 Disclosure Statement filed in this action.

44. The documents, records, and communications Collins reviewed or relied upon in connection with decisions affecting Plaintiff.

45. Collins's knowledge of any litigation hold or document-preservation directive issued in connection with this action.

## DEPOSITION NOTICE NO. 2
## PATRICIA CARROLL

*Capacity: Individual fact witness; General Counsel or equivalent corporate-governance officer*
*Role: Corporate officer responsible for governance, legal compliance, and corporate certifications, including certification of Defendants' interrogatory responses under Fed. R. Civ. P. 33(b)(5)*

PLEASE TAKE NOTICE that, pursuant to Fed. R. Civ. P. 30(a) and 30(b)(1) (and 30(b)(6) where applicable), Plaintiff Mohamed Ly will take the oral deposition of the above-named individual or organizational representative(s) at a time and place to be agreed upon by the parties or, absent agreement, as ordered by the Court. The deposition will be taken before a notary public or other officer authorized to administer oaths, will be recorded by stenographic means and may additionally be recorded by audio and/or video means, and shall continue from day to day, and across sessions if necessary, until completed.

### TOPICS FOR EXAMINATION

### A. Corporate Governance and Entity Structure

46. Carroll's role and responsibilities as General Counsel or equivalent officer of the EBSCO entities during the Relevant Period.

47. The legal and governance relationships among EII, EPI, and EIS, including boards of directors, officers, and delegations of authority.

48. The legal status of EPI as of July 1, 2013 and at all times through the present, including any merger, dissolution, or succession involving that entity.

49. The formation date, organizational structure, and legal classification of EIS.

50. The entity or entities identified as Plaintiff's employer in corporate records and legal filings.

### B. Corporate Disclosures and Certifications

51. The basis for Defendants' Rule 7.1 Corporate Disclosure Statement filed in this action, including the documents and persons consulted in preparing it.

52. The investigation, review, and information relied upon in preparing and certifying Defendants' interrogatory responses served on or about June 3, 2026, pursuant to Fed. R. Civ. P. 33(b)(5), including Carroll's personal review of those responses prior to certification.

53. Carroll's personal knowledge of the facts set forth in the certified interrogatory responses, including any facts concerning employer-entity designations for Plaintiff.

54. Any Certificates of Good Standing, Certificates of Existence, or equivalent status certifications obtained for any EBSCO entity in Alabama, Massachusetts, New Jersey, or Florida during the Relevant Period, including the application process and the information submitted in connection with each.

### C. Entity Registrations and Filings

55. All corporate filings made by or on behalf of any EBSCO entity with the Secretary of State or equivalent authority of Alabama, Massachusetts, New Jersey, or Florida during the period January 2010 through December 2024, including formation, amendment, merger, conversion, dissolution, and withdrawal filings.

56. The persons responsible for preparing, reviewing, and submitting such filings.

57. Carroll's knowledge of any representations made to state agencies regarding the status, existence, or good standing of any EBSCO entity.

### D. Employer Designations and W-9/W-2 Reconciliation

58. Carroll's knowledge of the employer-entity designations used in payroll records, human-resources records, and tax filings during Plaintiff's employment.

59. The relationship, if any, between the entity identified as employer in the Rule 7.1 Disclosure Statement and the entity or entities identified on IRS Form W-9 certifications associated with Plaintiff's payroll or vendor accounts, including W-9 certifications dated in 2021 and 2025.

60. Carroll's knowledge of the IRS classification of EIS as a disregarded entity or otherwise, as reflected in W-9 forms and tax filings, and the basis for that classification.

### E. Internal Compliance, Complaint Handling, and Preservation

61. Carroll's knowledge of any internal complaints, escalations, or concerns raised by Plaintiff during his employment regarding employment classification, payroll, entity designations, or organizational practices.

62. Any legal review, investigation, or response provided in connection with Plaintiff's complaints or concerns.

63. The litigation hold or document-preservation directive issued in connection with this action, including its date of issuance, scope, recipients, and implementation.

64. Carroll's knowledge of any modification, deletion, or alteration of records relating to Plaintiff occurring after the commencement of this action.

## DEPOSITION NOTICE NO. 3
## DAVID HOBBS, CHIEF FINANCIAL OFFICER

*(or Defendants' designated senior executive financial control custodian)*
*Capacity: Individual fact witness, and/or Rule 30(b)(6) organizational representative on the financial-control topics identified below*

PLEASE TAKE NOTICE that, pursuant to Fed. R. Civ. P. 30(a) and 30(b)(1) (and 30(b)(6) where applicable), Plaintiff Mohamed Ly will take the oral deposition of the above-named individual or organizational representative(s) at a time and place to be agreed upon by the parties or, absent agreement, as ordered by the Court. The deposition will be taken before a notary public or other officer authorized to administer oaths, will be recorded by stenographic means and may additionally be recorded by audio and/or video means, and shall continue from day to day, and across sessions if necessary, until completed.

### Designation Notice

If David Hobbs is not the individual most knowledgeable concerning the subjects identified below, Defendants shall designate, pursuant to Fed. R. Civ. P. 30(b)(6), one or more individuals capable of providing complete, knowledgeable, and binding testimony on behalf of Defendants concerning all subjects identified in this Notice. If Hobbs is designated, he shall be deposed both in his individual capacity, to the extent applicable, and in his capacity as a Rule 30(b)(6) designee, to the extent so designated.

### Rule 30(b)(6) Anti-Evasion Provision

Defendants may not limit or avoid testimony on any noticed subject through the designation of an underprepared or partial-knowledge witness. The designation obligation requires Defendants to present a witness or witnesses prepared to provide complete organizational testimony concerning each subject identified below, including information obtained through reasonable inquiry across payroll, treasury, accounting, tax, and financial systems. Fed. R. Civ. P. 30(b)(6); see also the Notice Regarding Rule 30(b)(6) Designation Obligations, above.

### TOPICS FOR EXAMINATION

#### A. Payroll Architecture and Wage Payment

65. The payroll systems, processes, and vendors used to administer compensation for EBSCO employees, including Plaintiff, during the period January 2021 through May 2023.

66. The entity or entities that funded payroll disbursements to Plaintiff during that period, including identification of the bank account(s) from which wages were paid.

67. The entity name and account holder identified on the bank account(s) from which Plaintiff's wages were disbursed.

68. The persons with authority to approve payroll disbursements to Plaintiff.

69. The process by which payroll instruments issued to Plaintiff were generated, including the systems and data sources used.

70. The employer name and employer identification number reflected on payroll instruments issued to Plaintiff, and the basis for the selection of that name and number, including the configuration of the SAP SuccessFactors system, or any successor or related payroll or human-resources information system, with respect to the field(s) used to record employer-entity, company-code, or legal-entity designation for Plaintiff's payroll record, and any change to such field(s) during the period January 1, 2024 through the present, including the date of each change and the identity of the person or account that made it.

#### B. Bank Accounts and Treasury Operations

71. All bank accounts held by or in the name of any EBSCO entity from which employee wages were paid during the period January 2021 through May 2023, including account-holder names and financial institutions.

72. The persons with signature authority or disbursement authority over those accounts.

73. The entity on whose behalf payroll disbursements were authorized and executed.

74. Any intercompany transfers made in connection with payroll funding during the Relevant Period.

## C. Tax Reporting and EIN Usage

75. The employer identification number(s) used to report wages paid to Plaintiff on IRS Forms W-2, W-3, 941, and 940 for tax years 2021 to current year.

76. The entity or entities identified as employer on those forms.

77. The entity or entities identified as taxpayer on IRS Form W-9 certifications executed by or on behalf of any EBSCO entity during the Relevant Period, including any such certifications dated in 2021 and 2025.

78. The persons who prepared, reviewed, and executed those W-9 certifications, and the basis for the representations made therein.

79. The IRS classification of EIS as a disregarded entity or otherwise, and the basis for that classification.

## D. Entity Attribution and Financial Allocation

80. The method by which payroll costs were allocated among EII, EPI, and EIS in the general ledger and financial records during the Relevant Period.

81. The entity or entities to which Plaintiff's compensation was attributed in financial records, cost centers, and accounting systems during his employment.

82. Any intercompany agreements or arrangements governing the allocation of payroll costs among the EBSCO entities.

83. The financial relationship among EII, EPI, and EIS with respect to compensation administration and payroll funding.

84. Budgeting or funding decisions during the Relevant Period affecting any project, program, or position associated with Plaintiff.

## E. Benefits Administration

85. The entity or entities identified as plan sponsor on employee-benefit plans in which Plaintiff participated during his employment.

86. The employer identification number used on IRS Form 5500 filings for any such plan.

87. The entity or entities that made employer contributions to those plans on Plaintiff's behalf.

## F. Financial Records, Discrepancies, and Documentation

88. The financial, accounting, and payroll records maintained in connection with Plaintiff's compensation during his employment, and the systems and data sources used to generate those records.

89. The document-retention and preservation procedures applicable to those records.

90. The witness's or designee's knowledge of any discrepancy among the entity identified as employer on payroll instruments issued to Plaintiff, the entity identified as employer on tax filings described in Section C, and the entity identified as employer in corporate records, and any internal review, reconciliation, or correction of such discrepancy.

11 of 17

## DEPOSITION NOTICE NO. 4
## TIM LULL

*Capacity: Individual fact witness; Named Defendant*

*Role: Direct supervisory officer or manager with day-to-day oversight of Plaintiff's work during the Relevant Period*

PLEASE TAKE NOTICE that, pursuant to Fed. R. Civ. P. 30(a) and 30(b)(1) (and 30(b)(6) where applicable), Plaintiff Mohamed Ly will take the oral deposition of the above-named individual or organizational representative(s) at a time and place to be agreed upon by the parties or, absent agreement, as ordered by the Court. The deposition will be taken before a notary public or other officer authorized to administer oaths, will be recorded by stenographic means and may additionally be recorded by audio and/or video means, and shall continue from day to day, and across sessions if necessary, until completed.

## TOPICS FOR EXAMINATION

### A. Supervisory Relationship and Employer Identity

91. Lull's role, title, and responsibilities during the period January 2021 through May 2023.

92. Lull's supervisory relationship with Plaintiff, including the nature and extent of day-to-day oversight, task assignment, and performance management.

93. The reporting structure applicable to Plaintiff during his employment, including the chain of authority above and alongside Lull.

94. The entity or entities identified as Plaintiff's employer in Lull's communications, records, and systems during Plaintiff's employment, and Lull's understanding of the relationships among EII, EPI, and EIS.

### B. Performance Management

95. The performance-management process applied to Plaintiff during his employment, including the initiation, design, implementation, and review of any performance improvement plan.

96. The persons involved in designing, approving, and implementing any performance improvement plan applicable to Plaintiff.

97. The factual basis for any performance concerns identified in connection with Plaintiff.

98. The timeline of performance-management actions taken with respect to Plaintiff, and the relationship of those actions to other events occurring during that period, including any period of leave.

99. Communications between Lull and other executives, managers, or human-resources personnel regarding Plaintiff's performance.

### C. Leave and Post-Leave Events

100. Lull's knowledge of any leave taken by Plaintiff, including the nature, duration, and timing of that leave, and the date Lull became aware of any request for such leave.

101. Communications Lull received or sent concerning Plaintiff's leave.

102. The sequence of events during and following Plaintiff's leave, including any employment actions taken during or after that period and the persons involved in those actions.

### D. Termination Decision

103. The persons involved in the decision to separate Plaintiff's employment.

104. The stated and factual basis for the separation decision.

105. The entity identified as the separating employer in connection with Plaintiff's termination.

106. The communications exchanged among Lull, Collins, human-resources personnel, and other executives in the period leading up to and following Plaintiff's termination.

### E. Work Assignments, Projects, and Published Content

12 of 17

107. The work assignments, projects, and responsibilities held by Plaintiff during his employment, including any multilingual or globalization-related projects, and Lull's knowledge of the achievements and deliverables produced by Plaintiff in connection with such projects.

108. Any changes to Plaintiff's work assignments, responsibilities, or organizational role during his employment, and the persons who directed or approved any such changes.

109. Lull's knowledge of, and any communications concerning, any change in or restriction on access to web content located at or under the path /about/our-team on the ebsco.com domain, including any language-variant versions of such content, during the period January 1, 2024 through the present.

## F. Internal Complaints and Escalations

110. Lull's knowledge of any complaints, concerns, or escalations raised by Plaintiff during his employment.

111. Communications Lull received or sent in response to any such complaints or concerns.

112. Any actions taken following Plaintiff's complaints or concerns.

## G. Records and Preservation

113. The records and communications Lull maintains or maintained concerning Plaintiff's employment, performance, leave, and termination.

114. Lull's knowledge of any litigation hold or document-preservation directive issued in connection with this action.

13 of 17

## DEPOSITION NOTICE NO. 5
## RULE 30(b)(6) CORPORATE REPRESENTATIVE(S)

*Topics: Enterprise Systems, Operations, Publication Controls, Complaint Handling, Records Management, and Litigation Positions*
*Capacity: Rule 30(b)(6) organizational representative(s)*

PLEASE TAKE NOTICE that, pursuant to Fed. R. Civ. P. 30(a) and 30(b)(1) (and 30(b)(6) where applicable), Plaintiff Mohamed Ly will take the oral deposition of the above-named individual or organizational representative(s) at a time and place to be agreed upon by the parties or, absent agreement, as ordered by the Court. The deposition will be taken before a notary public or other officer authorized to administer oaths, will be recorded by stenographic means and may additionally be recorded by audio and/or video means, and shall continue from day to day, and across sessions if necessary, until completed.

**Designation Requirement**

Defendants shall designate one or more representatives prepared to testify completely and bindingly on behalf of the organization regarding all subject matters identified below. Plaintiff does not identify the individual(s) to be produced; Defendants bear the burden of identifying, preparing, and producing the appropriate designee(s). If multiple witnesses are required, Defendants shall identify in advance the topics each witness will address, consistent with the Notice Regarding Rule 30(b)(6) Designation Obligations set forth above. Defendants may not satisfy this Notice by producing a witness or witnesses unprepared to address the full scope of the noticed topics.

**TOPICS FOR EXAMINATION**

**A. Enterprise Systems and Human Resources Information Systems**

115. The enterprise systems, including SAP SuccessFactors or any successor system, used to manage employment records, human-resources data, payroll data, and personnel information for EBSCO employees, including Plaintiff, during the period January 2021 through May 2023.

116. The employer-entity designation fields maintained in those systems, including how employer-entity names and employer identification numbers are entered, modified, and controlled, and the field(s) used to record work-location and home-address designations.

117. The persons or roles with authority to configure, modify, or override employer-entity, company-code, work-location, or home-address designation fields in human-resources and payroll systems.

118. The audit-log or change-control records maintained for those systems, including the identity of user accounts that accessed or modified Plaintiff's record during the period January 1, 2024 through the present.

119. The data sources used to populate employer-entity fields on payroll instruments issued to Plaintiff.

120. The integration among enterprise systems governing employment records, payroll records, and tax-reporting records.

**B. Content Management, Publication, and Digital Controls**

121. The content-management system(s) and publication workflows used to create, publish, modify, and manage content on the domain ebsco.com and its subdomains during the Relevant Period, including any third-party content-delivery or access-control provider.

122. The workflow and approval processes governing publication, modification, restriction, or removal of content on ebsco.com, including content located at or under the path /about/our-team and any language-variant versions thereof.

123. Any change to the access-control configuration of ebsco.com or any path thereof resulting in an HTTP 403 (forbidden) response, made during the period January 1, 2024 through the present, including the date of each change, the identity of the user account or credential used, and the prior and new configuration values.

124. Any difference in access-control configuration applied to different language-variant versions of the same path on ebsco.com during the period January 1, 2024 through the present, and the basis for any such difference.

14 of 17

125. The audit logs or version-control records maintained for content modifications, restrictions, or removals on ebsco.com.

126. Any content on ebsco.com that referenced Plaintiff by name, including the creation, publication, modification, restriction, or removal of such content, the timeline of any such action, and the persons who authorized, directed, or executed it.

## C. Operational Decision-Making and Project Administration

127. The operational processes governing project funding, budget allocation, and program administration for the projects and programs in which Plaintiff was involved during his employment.

128. The persons or roles with authority to approve, modify, or terminate project funding or program activities associated with Plaintiff's responsibilities.

129. Any changes to funding, staffing, or operational scope of projects or programs associated with Plaintiff during, or in the period following, his employment, and the approval chains and documentation associated with any such changes.

## D. Employee Complaint and Escalation Processes

130. The processes, systems, and workflows governing receipt, routing, review, and handling of communications from employees concerning concerns about financial allocation, program administration, entity- or identity-related records, or organizational operations during the Relevant Period.

131. The persons or roles responsible for receiving, reviewing, and responding to such communications.

132. Any communication received from Plaintiff during the Relevant Period concerning the matters described above, and any response, review, investigation, or resolution undertaken with respect to such communication.

133. Any internal communications generated following receipt of any communication from Plaintiff described above.

## E. Employment Action Implementation

134. The systems and workflows used to implement personnel actions, including performance-improvement plans, work reassignments, and employment terminations.

135. The records generated in connection with employment actions affecting Plaintiff, including records in human-resources systems, payroll systems, and correspondence systems, and the documentation supporting implementation of those actions.

## F. Record Retention, Preservation, and Audit Controls

136. The document- and data-retention policies applicable during the Relevant Period to the systems identified in Sections A and B above, including any change to such policies during the period January 1, 2024 through the present.

137. The implementation of any litigation hold or preservation notice applicable to records concerning Plaintiff, including the date of implementation, the systems and custodians to which it was applied, and any change to the scope of such hold during the period January 1, 2024 through the present.

138. Any modification, deletion, or alteration of records relating to Plaintiff occurring after the initiation of this litigation, including the nature, date, and authorization for any such action.

## G. Protected Activity and Internal Reporting Processes

139. The organizational policies and procedures, during the Relevant Period, governing receipt and handling of reports from employees concerning potential regulatory, financial, or operational irregularities, including the systems or channels available to employees to raise such concerns.

140. Any report or concern raised by Plaintiff through such systems or channels during his employment, and any organizational response, including investigation, escalation, or follow-up action.

141. The sequence of events relating to any such report, any period of leave taken by Plaintiff, and any subsequent employment action affecting Plaintiff.

## H. Bases for Discovery and Pleading Positions

142. The factual basis for the identification of Plaintiff's employer in Defendants' Answer, Affirmative Defenses, and Rule 7.1 Corporate Disclosure Statement filed in this action.

143. The investigation undertaken, and documents reviewed, in connection with Defendants' interrogatory responses served on or about June 3, 2026.

144. Any documents reviewed, and persons consulted, in connection with the preparation of Defendants' discovery responses and disclosures concerning employer-entity identity, payroll records, and entity-status filings.

16 of 17

## EXHIBIT AND DOCUMENT IDENTIFICATION NOTICE

Plaintiff identifies the following categories of documents as likely to be used in connection with the depositions noticed above. Defendants and the respective deponents are advised to be familiar with, and prepared to testify concerning, documents in these categories. For ease of reference, Plaintiff has previously served a Rule 45 Third-Party Subpoena Notice identifying related third-party discovery sought from non-party sources; the categories below pertain to records within Defendants' possession, custody, or control.

145. Payroll instruments issued to Plaintiff during the period January 2021 through May 2023, including paychecks and payroll statements.

146. IRS Forms W-2 issued to Plaintiff for tax years 2021 to current year.

147. IRS Form W-9 certifications executed by or on behalf of any EBSCO entity, including any such certifications dated in 2021 and 2025.

148. IRS Form 941 quarterly returns filed under EIN 63-6014186 and EIN 86-3370771 for the period January 2021 through June 2023.

149. Corporate filings with the Secretary of State or equivalent authority of Alabama, Massachusetts, New Jersey, and Florida for EII, EPI, and EIS, including any merger, conversion, or dissolution filings.

150. Certificates of Good Standing, Certificates of Existence, or equivalent status certifications obtained for any EBSCO entity, together with corresponding applications.

151. Defendants' Rule 7.1 Corporate Disclosure Statement.

152. Defendants' answers to interrogatories served in this action, including those served on or about June 3, 2026.

153. Defendants' document productions in this action.

154. Corporate organizational charts, governance documents, and entity-relationship records.

155. Employment records pertaining to Plaintiff, including offer letters, human-resources system records, performance-improvement-plan documents, and separation documents.

156. Banking records reflecting payroll disbursements to Plaintiff.

157. Records, audit logs, and version-control records for content on ebsco.com referencing Plaintiff, including content located at or under the path /about/our-team and any language-variant versions thereof.

158. Record-retention policies, litigation-hold notices, and preservation records applicable to the systems and records identified above.