**UNITED STATES DISTRICT COURT**

**DISTRICT OF MASSACHUSETTS -- WESTERN DIVISION**

| | |
|---|---|
| **MOHAMED SOULEYMAN LY,**<br>*Plaintiff, Pro Se and Whistleblower*<br>v.<br>**EBSCO INDUSTRIES, INC.; EBSCO INFORMATION SERVICES, LLC; EBSCO PUBLISHING, INC.; TIM COLLINS; and TIM LULL,**<br>*Defendants.* | **Civil Action No. 3:24-cv-30161-MGM**<br>Judge Mark G. Mastroianni<br>Magistrate Judge Christopher L. Morgan<br>**In Support of Dkt. 132 Spoliation Motion**<br>Supplemental to Reply to Dkt. 140 |

## EXHIBIT D

### PLAINTIFF'S FORENSIC SPOLIATION CHRONOLOGY

### AND FIVE-VECTOR EVIDENCE SUBMISSION

### IN FURTHER SUPPORT OF DKT. 132 AND IN REPLY TO DKT. 140

*A Structured Judicial Reference Document Mapping Five Legally Distinct Spoliation Events, Their Evidentiary Foundation, and the Relief Each Commands <u>under Law</u>*

Submitted pursuant to Fed. R. Civ. P. 37(e), L.R. 7.1(b)(3), and the Court's inherent authority

---

### CRITICAL PREFATORY NOTICE

This document presents **five legally distinct spoliation vectors**. Each vector is a separate and independent spoliation event with its own ESI category, alteration act, temporal boundary, governing statute, and required relief. No vector may be conflated with any other. Each is analytically and legally self-sufficient. The five vectors, taken together, constitute a unified systematic campaign -- but each must first be evaluated on its own terms as a standalone spoliation event before the aggregate pattern is assessed.

---

**WHAT FOLLOWS EXPOSES AND ESTABLISHES FIVE VECTORS OF SPOLIATION AND FRAUD.**

1

## I. MASTER FIVE-VECTOR MATRIX -- OVERVIEW OF ALL SPOLIATION EVENTS

| Vector | Name | ESI Category | Alteration Period | Governing Law | Primary Relief |
|---|---|---|---|---|---|
| V-1 | **Temporal Impossibility** | Payroll stubs: address field | Nov 1, 2021 → Nov 22, 2022 (**371 days**) | FRCP 37(e)(1)/(2); 26 U.S.C. § 6051; 29 C.F.R. § 516.2(a) | SAP audit log compelled; designated facts: address was modified post-Nov 22, 2022 |
| V-2 | **Two-Version Disparity** | **Same payroll stub**: two irreconcilable versions exist in Defendants' production, reflecting different addresses and tax jurisdictions, with resulting inconsistent tax rates and deductions from the state swap. | Dec 2025 production and Jun 3, 2026 production vs. contemporaneous SAP portal version | FRCP 37(e)(2); FRE 1003; 18 U.S.C. § 1001 (false records) -- predicate act | Adverse inference: altered version is fraudulent; compel production of native SAP records in all versions |
| V-3 | **Three-EOR Facial Void** | Every payroll stub simultaneously shows EII, EPI, plus (in mailed payrolls) EIS as employer; three legally irreconcilable designations | Nov 1, 2021 → May 25, 2023 (43 stubs; 129 violations) | 29 C.F.R. § 516.2(a); 29 U.S.C. § 1002(5); 26 U.S.C. § 6051; EPI dissolved July 1, 2013 | Striking of all produced payroll stubs as void ab initio; designated fact: EII is sole EOR |
| V-4 | **Tax Jurisdiction Corruption** | Altered stubs show MA address + NJ tax treatment simultaneously; an internally irreconcilable contradiction establishing post hoc document alteration | All altered stubs in Dec 2025 and Jun 2026 productions bearing MA address with NJ tax fields | FRCP 37(e)(1); 26 U.S.C. §§ 3402, 6051; M.G.L. c. 62B; N.J.S.A. § 54A | Designated fact: altered stubs are internally fraudulent; adverse inference on tax compliance; compel corrected payroll records |
| V-5 | **Professional Attribution Deletion** | Bio and publications on EBSCO platform: HTTP 200→403→404 lifecycle during litigation hold and pendency of Dkt. 132 | HTTP 403 from ~December 23, 2025; HTTP 404 deletion on July 6, 2026—the same day as Dkt. 140 filing—temporal evidence establishing spoliation and supporting consciousness-of-guilt inference | FRCP 37(e)(2) -- intent to deprive; Rule 37(b)(2)(A)(vi); Alter v. Rocky Point (E.D.N.Y. 2014) | Rule 37(e)(2) adverse inference instruction; restore HTTP 200 access; CDN/WAF logs compelled |

2

<table>
<tr><td align="center">**SPOLIATION VECTOR 1**<br>**THE TEMPORAL IMPOSSIBILITY**<br>Payroll Records Attributed Plaintiff's Address as 485 Glendale Road, Wilbraham, MA for 371 Days Before He Acquired Any Legal Interest in That Property</td></tr>
</table>

## II.  VECTOR 1 -- THE TEMPORAL IMPOSSIBILITY (NOVEMBER 1, 2021 – NOVEMBER 22, 2022)

### A.  The Core Impossibility -- What the Records Say vs. What the Deed Proves

Every payroll stub produced by Defendants -- in both the December 2025 HR production via mytrust@ebsco.com and in the June 3, 2026 formal discovery production (EBSCO000001–000078) -- attributes **485 Glendale Road, Wilbraham, MA 01095** as Plaintiff's residential address for the entire period from November 1, 2021 through at least June 2022, and through November 22, 2022.

This attribution is a temporal impossibility of the highest order. The Hampden County Registry of Deeds (Bk 24814, Pg252, Doc #68793), certified by Cheryl A. Coakley-Rivera, Esq., Register of Deeds, establishes with millisecond precision that title to 485 Glendale Road, Wilbraham, Massachusetts was not conveyed to Mohamed Ly and Madina Ly until **November 22, 2022 at 10:47 AM**. Before that moment -- to the minute -- the property belonged exclusively to the Richard A. Courtney 2018 Trust. Plaintiff had no ownership interest, no possessory right, no leasehold, no mail delivery right, and absolutely **no legal or factual connection whatsoever** to 485 Glendale Road **before 10:47 AM, on November 22, 2022**.

<table>
<tr><th colspan="3" align="center">VECTOR 1 -- THE MATHEMATICAL PROOF</th></tr>
<tr><th align="center">Date</th><th align="center">Event</th><th align="center">Authority / Consequence</th></tr>
<tr><td>**November 1, 2021**</td><td>Plaintiff's employment with EBSCO commences; first payroll cycle begins</td><td>Dkt. 140, p. 1 (Defendants' own admission); employment records</td></tr>
<tr><td>**November 15, 2021 (and every payroll date through Nov 22, 2022)**</td><td>*Payroll stubs in Dec 2025 and Jun 2026 productions show: 485 Glendale Road, Wilbraham, MA 01095*</td><td>*IMPOSSIBLE* -- This address belonged to the Richard A. Courtney 2018 Trust on every one of these payroll dates. Plaintiff had no legal connection to this address.</td></tr>
<tr><td>**November 22, 2022 @ 10:47 AM**</td><td>*FIRST MOMENT of Plaintiff's legal interest in 485 Glendale Road, Wilbraham, MA*</td><td>**Certified Deed**, Bk 24814, Pg252, Doc #68793, Hampden County Registry of Deeds, recorded November 22, 2022 @ 10:47 AM. Certified by Cheryl A. Coakley-Rivera, Esq., Register of Deeds.</td></tr>
</table>

| The Gap: 371 days + 10 hours + 47 minutes | *THE TEMPORAL IMPOSSIBILITY WINDOW -- every payroll stub dated within this gap that shows the Wilbraham address is <u>IMPOSSIBLE</u>* | November 15, 2021 to November 22, 2022 @ 10:47 AM = 371 days, 10 hours, 47 minutes during which 485 Glendale Road could not lawfully appear on any employment record as Plaintiff's address. The payroll records in defendants' production show it on every payroll stub during this window.<br><br>**This is not a data entry error. An error in a single field on a single stub might be explained. A systematic attribution of an impossible address across 52 consecutive payroll cycles over 371 days is not an error -- it is a systematic retroactive modification.** |
| --- | --- | --- |

### B.  What the Contemporaneous Records Show -- The Actual Address History

The production-version impossibility is proven not only by the deed, but by the contemporaneous payroll records Plaintiff self-served from the EBSCO Industries SAP Employee Self-Service Portal during his employment. These records -- procured in real time, not through discovery -- show what the payroll system actually contained at the time of issuance:

| Period | Contemporaneous SAP Portal Version | Defendants' Production Version | What the Disparity Proves |
| --- | --- | --- | --- |
| **November 1, 2021 – approx. October 2022** | **6 Richards Way, Holmdel, NJ 07733**<br><br>(Plaintiff's actual New Jersey primary residence) | *485 Glendale Road, Wilbraham, MA 01095*<br><br>(Impossible -- property not acquired until Nov 22, 2022) | The SAP portal showed the correct NJ address when Plaintiff accessed it during employment. The production version shows a MA address that did not belong to Plaintiff. The address field was changed after the fact. |
| **September 2022 – November 22, 2022** | **Danvers, MA address**<br><br>(Plaintiff's actual transitional Massachusetts address while seeking property to purchase) | *485 Glendale Road, Wilbraham, MA 01095*<br><br>(Impossible -- property not acquired until Nov 22, 2022) | Even during the transition period when Plaintiff was in Massachusetts (at the Danvers address), the production version shows the Wilbraham address -- which still did not belong to him. The Wilbraham address was retroactively substituted for both the NJ address and the Danvers transitional address. |
| **CRITICAL FACT: Third-Party Reliance** | Plaintiff submitted the contemporaneous SAP portal version payroll stubs (showing NJ/Danvers addresses) to **St. Mary's Bank** for | The mortgage was underwritten on the basis of payroll stubs showing NJ/Danvers addresses. The discovery-produced | The St. Mary's Bank Subpoena No. 34 will return the exact payroll stubs Plaintiff submitted at origination -- <span style="color:red">confirming which version is contemporaneous and which was altered</span>. The subpoena |

| | the November 22, 2022 mortgage origination. These were the documents used to prove income and employment to a federally regulated mortgage lender. | stubs show Wilbraham MA. The two sets of records are irreconcilable -- a federally regulated bank underwrote a mortgage on the basis of records that directly contradict what Defendants later produced in discovery. | return is the independent third-party anchor proving the post hoc alteration. To federally controlled identification and employment records |
|---|---|---|---|

---

**SPOLIATION VECTOR 2**

**THE TWO-VERSION DISPARITY**

The Same Payroll Stub Exists in Two Irreconcilable Versions in Defendants' Own Production -- Proving the Alteration Act Directly

---

## III. VECTOR 2 -- THE TWO-VERSION DISPARITY

Vector 2 is analytically distinct from Vector 1. Vector 1 proves the impossibility of the address based on an external anchor (the certified deed). Vector 2 proves the alteration based solely on the internal inconsistency of Defendants' own production -- the fact that two irreconcilable versions of the same payroll stub exist in the same production, without any explanation.

The Exhibit A-4 side-by-side comparison shows two payroll stubs for the identical pay period (June 1–15, 2022, Pay Date June 15, 2022), the identical employee (Mohamed Souleyman Ly, Personnel No. 00315469), and what purports to be the identical employer:

| Field | VERSION A -- CONTEMPORANEOUS (Plaintiff's SAP Portal / Mortgage Submission) | VERSION B -- ALTERED (Dec 2025 Production & Jun 3, 2026 Discovery Production) |
|---|---|---|
| **Pay Period** | 06/01/2022 to 06/15/2022 | 06/01/2022 to 06/15/2022 -- IDENTICAL |
| **Pay Date** | 06/15/2022 | 06/15/2022 -- IDENTICAL |
| **Employee** | Mohamed Souleyman Ly, Personnel No. 00315469 | Mohamed Souleyman Ly, Personnel No. 00315469 -- IDENTICAL |
| **Gross / Net Pay** | Gross: $7,294.07 \| Net: $4,198.60 | Gross: $7,294.07 \| Net: $4,198.60 -- IDENTICAL |
| **Employee Address** | **6 Richards Way, Holmdel, NJ 07733** | ***485 Glendale Road, Wilbraham, MA 01095*** <br><br> *(IMPOSSIBLE -- not acquired until November 22, 2022)* |

5

| | | |
|---|---|---|
| | *(Correct -- Plaintiff's actual address in June 2022)* | |
| **State Tax Jurisdiction** | **NJ -- New Jersey**<br><br>(Correct -- consistent with NJ address) | *NJ -- New Jersey tax treatment applied to a Massachusetts address*<br><br>(INTERNAL CONTRADICTION -- see Vector 4) |
| **CHECK NUMBER** | Check No. 0031546900020001, Capital One, National Association XXXX | Check No. 0031546900020001, Capital One, National Association XXXX -- IDENTICAL |

The two stubs are identical in every field except the employee address. This eliminates every explanation except intentional modification of the address field. If the stubs differed in pay amount, pay period, employer, or any financial field, alternative explanations might exist. They do not differ in any financial field. Only the address was changed. This is the forensic signature of a targeted, intentional modification of a specific field in a historical payroll record.

Under Fed. R. Evid. 1003, a duplicate is admissible to the same extent as the original unless there is a genuine question raised about the original's authenticity. Here, the existence of two duplicates with different content raises exactly that question -- and the question answers itself. The duplicate with the contemporaneous address (NJ) is the original. The duplicate with the impossible address (MA) is the alteration. The evidence required to make this determination is contained entirely within Defendants' own production.

**SPOLIATION VECTOR 3**
**THE THREE-EOR FACIAL VOID**
Every Payroll Stub Simultaneously Displays Three Legally Irreconcilable Employer Identifiers -- a Statutory Impossibility Across 43 Stubs, 22 Months, and 129 Violations

## IV.  VECTOR 3 -- THE THREE-EOR FACIAL VOID

Vector 3 is entirely distinct from Vectors 1 and 2. It does not concern the employee address fields. It concerns the *employer identification fields* on every payroll stub produced in this litigation. Every one of the 43 produced payroll stubs simultaneously displays three distinct, legally irreconcilable employer identifiers:

| EOR | Location on Stub | Entity Name | EIN | Legal Status |
|---|---|---|---|---|
| **EOR-1** | Header logo / insignia field | **EBSCO Industries, Inc. (EII)** | **63-6014186** | **LAWFUL EOR:** W-9 certifies EII as sole taxpayer/employer under this EIN. This is the only lawful EOR on the document -- the logo is |

6

| | | | | |
|---|---|---|---|---|
| | (dominant visual anchor) | | | the legal anchor that establishes EII as the intended EOR. |
| **EOR-2** | Employer name text field (printed on stub header) | ***EBSCO Publishing, Inc. (EPI)*** | *63-1105270* | **VOID:** ***EPI was dissolved by merger effective July 1, 2013***. Defendants' own May 20, 2013 judicially admissible official merger announcement published the dissolution date. EPI had no legal existence during Plaintiff's November 2021–May 2023 employment. A dissolved entity cannot be an employer. Every EOR-2 designation is void ab initio. |
| **EOR-3** | Employee name/address area (inserted text within employee identification section) | ***EBSCO Information Services / EIS*** | *86-3370771* | **VOID:** W-9 certifies EIS as a disregarded entity on Line 2 with no independent EOR capacity. Defense #24 (Dkt. 117) simultaneously asserts EIS is not Plaintiff's employer. EIS cannot be simultaneously a disregarded entity (W-9), not-the-employer (Defense #24), and an EOR identifier on every payroll stub (EOR-3). |

### A. *The EPI Dissolution -- A Dissolved Entity Cannot Be an Employer*

The EOR-2 designation (EBSCO Publishing, Inc.) is not merely inconsistent with EII's W-9 certification -- it names a legal entity that had no legal existence during Plaintiff's employment. Defendants' own May 20, 2013 merger announcement established that EBSCO Publishing, Inc. was dissolved by merger into EBSCO Information Services, LLC effective **July 1, 2013** -- more than eight years before Plaintiff's employment commenced on November 1, 2021.

A dissolved entity cannot: (1) enter employment contracts; (2) issue wages; (3) withhold payroll taxes; (4) appear on Forms W-2 or W-3; (5) file Forms 941; or (6) be an employer of record in any legal sense. EPI's appearance in the employer name text field of every payroll stub from November 2021 through May 2023 is, to put it precisely, a claim that a ghost was paying wages. Every payroll stub attributing EPI as the employer is void ab initio because the named employer had no legal capacity to be an employer on the date of issue.

### B. *The Defense Admission Compound -- Defendants Confirm Their Own Void*

Dkt. 117, Defense #23: "*EBSCO Industries, Inc. [EIN 63-6014186] was not the lawful employer of Plaintiff.*"

Dkt. 117, Defense #24: "*EBSCO Information Services [EIN 86-3370771] was not the lawful employer of Plaintiff.*"

If the Court is to believe Defendants, the logical consequence of both defenses, combined with EPI's dissolution: ***no EBSCO entity was the lawful employer of Plaintiff***. Defendants deny EII (Defense #23). Defendants deny EIS

7

(Defense #24). EBSCO Publishing, Inc [63-1105270] EPI is legally non-existent, having dissolved by merger on July 1, 2013 (Exhibit MERGER-001, undisputed and authentic official Merger Announcement dated and published May 22, 2013). Even if this Court were to disregard EPI's dissolution, attribute to Defendants the extraordinary power to resuscitate a dissolved entity, or otherwise permit EPI to be simultaneously legally defunct and legally operative, *arguendo*, EPI's SMLLC federally disregarded status would still stand and constitute a second, independent bar, precluding EPI from ever serving as Employer of Record because it possessed no separate federal tax existence of its own, as sworn under penalties of perjury in Defendants' own 2021 and 2025 IRS Forms W-9.

The three defenses together produce a conclusion that contradicts the fundamental premise of the employment relationship -- that Plaintiff was employed by someone.

The W-9 forms, signed under penalty of perjury, provide the resolution: EII is the sole lawful EOR under EIN 63-6014186. EIS and EPI are disregarded entities with no independent EOR capacity. Every Defense #23 and Defense #24 assertion requires EBSCO Industries, Inc. to have filed false W-9s with the IRS. Federal law forecloses this interpretation. EII is the employer as a matter of law.

> This analysis does not even reach Defendants' additional reliance upon **"EBSCO Ipswich"**--a purported entity with no corporate form designation (Inc., LLC, or otherwise) and no demonstrated legal existence--which Defendants nevertheless used to procure Plaintiff's pre-employment background check and consumer credit report before November 1, 2021. If "EBSCO Ipswich" is not a legally cognizable entity, it could not possess a lawful purpose or permissible purpose to obtain such reports. Defendants therefore identify no legally existing entity capable of lawfully acting as Plaintiff's employer or lawfully procuring those reports.

### SPOLIATION VECTOR 4
## THE TAX JURISDICTION CORRUPTION
Altered Payroll Stubs Simultaneously Display a Massachusetts Address and New Jersey Tax Treatment -- An Internal Contradiction That Proves Incomplete Post-Hoc Modification and Creates Ongoing Tax Harm to Plaintiff

## V.  VECTOR 4 -- THE TAX JURISDICTION CORRUPTION

Vector 4 is the forensic signature of the alteration. It is distinct from all other vectors because it is an ***internal contradiction within a single document*** -- requiring no external comparator (no deed, no second version, no W-9) to prove. The altered payroll stubs are self-refuting on their face.

Every payroll stub in the December 2025 and June 3, 2026 productions that bears the altered Wilbraham, Massachusetts address simultaneously applies New Jersey state tax withholding:

| Tax Field | What the Stub Shows | Why It Is Internally Contradictory |
|---|---|---|
| **Employee Residential Address** | 485 Glendale RD, Wilbraham, MA 01095 -- Massachusetts address | A Massachusetts resident is subject to Massachusetts income tax under M.G.L. c. 62, § 1, et seq. Any employer of a Massachusetts resident must withhold Massachusetts state income tax under M.G.L. c. 62B. |
| **State Tax Withholding (Tax Deductions Section)** | State: NJ TX Withholding Tax: [NJ rate] TX EE Unemployment T: [NJ] TX EE Workforce Devl: [NJ] TX EE Disability Tax: [NJ] TX EE Family Leave Insur: [NJ] | **CONTRADICTION:** The stub asserts the employee lives in Massachusetts but deducts taxes for New Jersey. These are mutually exclusive. A Massachusetts resident does not pay New Jersey state income tax on wages earned remotely from Massachusetts. New Jersey unemployment, disability, and family leave insurance apply only to employees with a New Jersey nexus. |
| **What This Proves** | The alteration was performed by someone who changed the address field from NJ (or Danvers, MA) to Wilbraham, MA -- but did not update the state tax jurisdiction field. The tax fields remained set to NJ because they were correct when the original record was created and were not updated when the address was fraudulently altered. | **This is the forensic signature of an incomplete post-hoc modification. A contemporaneous payroll stub for a Massachusetts employee would never simultaneously show Massachusetts address + New Jersey tax rates. This combination is impossible in any legitimate payroll system -- it can only arise from retroactive modification of one field (address) without corresponding update of dependent fields (state tax).** |

### A.  The Ongoing Tax Harm to Plaintiff

Vector 4 is not merely a forensic curiosity. It has created actual, ongoing legal harm to Plaintiff. The cross-state tax field corruption in the produced records means that:

(1) Taxes deducted at New Jersey rates from Plaintiff's wages during the period he was in Massachusetts were reported to New Jersey -- not Massachusetts. If Plaintiff owed Massachusetts state income tax on those wages (as he would, if he was a Massachusetts resident earning wages from a Massachusetts-connected employment), Massachusetts received no withholding credit for those wages from the employer's records.

(2) New Jersey received withholding that may not have been owed, or may have been improperly attributed to NJ taxing authority.

(3) Plaintiff may be subject to state tax underpayment penalties in Massachusetts for wages that were attributed to and paid to New Jersey under the corrupted records.

9

This is not hypothetical harm. It is the direct legal consequence of a payroll record that simultaneously asserts Massachusetts residency and New Jersey tax jurisdiction -- a record that neither state's tax authority can reconcile without the underlying payroll system records that Defendants have not produced. The SAP SuccessFactors audit log -- demanded repeatedly and never produced -- would show when the address field was changed and whether the tax jurisdiction field was or was not updated at the same time.

**SPOLIATION VECTOR 5**
**THE PROFESSIONAL ATTRIBUTION DELETION**
Plaintiff's Executive Biography and Thought Leadership Publications Were Sequentially Blocked (HTTP 403) Then Permanently Deleted (HTTP 404) During the Pendency of the Spoliation Motion -- With Deletion Occurring on the Same Day as or immediately before the Dkt. 140 Opposition Filing (July 6, 2026)

## VI.  VECTOR 5 -- THE PROFESSIONAL ATTRIBUTION DELETION

Vector 5 concerns a separate category of ESI entirely -- not payroll records, but Plaintiff's professional identity records on Defendants' own web platform. During Plaintiff's employment, EBSCO published and maintained a professional biography page and attributed articles on its EBSCOpost platform that identified Plaintiff as "Mo Ly, Head of Globalization" and listed his published works. These records are part of Defendants' digital infrastructure and were subject to Defendants' December 26, 2024 litigation hold.

The destruction of these records proceeded in three documented stages, the last of which occurred on the same day as the Dkt. 140 opposition filing:

| State | Period | HTTP Response | Content Status | Legal Significance |
|---|---|---|---|---|
| #1 | Before ~December 23, 2025 | **HTTP 200 -- Fully Accessible** | Bio and articles fully rendered; publicly accessible to all internet users | Baseline. Content existed, was indexed by Wayback Machine, and was publicly available. Defendants' litigation hold (December 26, 2024) obligated preservation. |
| #2 | ~December 23, 2025 through July 5, 2026 | **HTTP 403 -- "You are not authorized to access this page"** | Content exists on server; access affirmatively denied by server-side authorization rule | Post-hold suppression. Implementation of HTTP 403 after December 26, 2024 litigation hold is post-hold ESI suppression -- an active measure taken to prevent access to content that was required to be preserved. This is the event the Dkt. 132 motion identified as Spoliation Finding SF-4. |

| #3 | AFTER JULY 6, 2026 | HTTP 404 -- "Oops! Sorry, the page you're looking for doesn't exist" | PERMANENT DELETION -- Content removed from server entirely | RULE 37(e)(2) INTENT TO DEPRIVE: July 6, 2026 is the same day Defendants filed Dkt. 140, asserting under Rule 11: "no evidence had been lost or destroyed". On the same day they made that sworn assertion to this Court, they deleted the content that Dkt. 132 had specifically identified as blocked and spoliated ESI. The temporal coincidence of deletion with the opposition filing, targeting the specific content named in the pending spoliation motion, satisfies the Rule 37(e)(2) "intent to deprive" standard as a matter of law. |

## VII. THE UNIFIED THEORY -- FIVE VECTORS, ONE SYSTEMATIC CAMPAIGN

Each of the five vectors above is independently sufficient to warrant Rule 37(e) relief. None requires the others to be true. But the five vectors, examined together, establish something more significant than five independent spoliation events: they establish a *systematic, multi-category, ongoing campaign* of evidence suppression that has persisted across every category of discoverable ESI in this case -- payroll records (Vectors 1–4) and professional attribution records (Vector 5) -- spanning from the inception of the litigation hold in December 2024 through at least July 6, 2026.

---

**THE SYSTEMATIC CAMPAIGN -- WHAT ALL FIVE VECTORS SHARE**

**Characteristic 1 -- All vectors involve ESI that was subject to the December 26, 2024 litigation hold:** Payroll records (Vectors 1–4) and professional attribution records (Vector 5) were all identified in Dkt. 132 as evidence material to the claims. The litigation hold obligated Defendants to preserve all of this ESI. Instead, each category was suppressed, altered, or deleted.

**Characteristic 2 -- All vectors target ESI that is specifically damaging to Defendants' litigation position:** The payroll alteration conceals the contemporaneous address record that would prove the alteration (Vectors 1-2); the three-EOR void conceals the employer identity that the W-9 locks in (Vector 3); the tax corruption conceals the incomplete nature of the alteration (Vector 4); the attribution deletion conceals the professional content that establishes Plaintiff's career erasure damages (Vector 5).

**Characteristic 3 -- All vectors escalated at litigation milestones:** HTTP 403 implemented ~December 23, 2025 (shortly after the litigation hold established December 26, 2024, and during the active case). HTTP 404 deletion executed July 6, 2026 (the day of the opposition filing). The payroll alterations were in place for the December 2025 HR production and the June 3, 2026 discovery production. Every escalation correlates with a litigation event.

**Characteristic 4 -- All vectors are self-proving from Defendants' own records:** No external expert is required. No deposition is needed. The temporal impossibility is proven by the certified deed. The two-version disparity is proven by the A-4 comparison. The three-EOR void is proven by the W-9 forms. The tax corruption is proven by reading the NJ tax fields in a MA-address document. The deletion is proven by the HTTP 404 response. Every vector is self-authenticating.

11

**III.  MASTER RELIEF TABLE -- SPECIFIC REQUESTED RELIEF FOR EACH VECTOR**

| Vector | Rule | Specific Relief | Authority | Deadline |
|---|---|---|---|---|
| V-1 | 37(e) | Compel production of SAP SuccessFactors audit log for all address field changes to Personnel No. 00315469 from November 1, 2021 through present, native format, timestamped to the second, with user attribution; upon production confirming post-November 22, 2022 address modification, designated fact: every payroll stub bearing Wilbraham address for any period before November 22, 2022 @ 10:47 AM was retroactively modified and is not a contemporaneous business record | FRCP 37(e)(1)/(2); 34(b)(2)(E)(ii); Rule 37(b)(2)(A)(i) | **10 business days** |
| V-2 | 37(e)(2) | Rule 37(e)(2) adverse inference instruction: "The jury may presume that the contemporaneous version of each payroll stub -- showing the NJ or Danvers, MA address -- is the authentic original, and that the altered version showing 485 Glendale Road, Wilbraham, MA was fabricated after November 22, 2022, for purposes of this litigation, and that Defendants destroyed the original version from their production records to prevent its use as evidence." Compel native-format production of both versions of all affected payroll stubs from the payroll system, with metadata showing creation and modification dates | FRCP 37(e)(2)(B); FRE 1003; Zubulake, 220 F.R.D. 212 | **Immediate / 10 business days for native production** |
| V-3 | 12(f) + 37(b) | Striking of all produced payroll stubs (EBSCO000001–000078 and December 2025 production) as facially void under 29 C.F.R. § 516.2(a) (EOR singularity) and void ab initio as to EOR-2 (EPI) because EPI had no legal existence from July 1, 2013 forward; designated fact: EBSCO Industries, Inc. is the sole lawful employer of record for Plaintiff's employment from November 1, 2021 through May 25, 2023, as established by the W-9 certifications under EIN 63-6014186 and the § 3401(d) statutory analysis; order precluding Defendants from relying on EOR-2 or EOR-3 designations in any further proceeding in this action | FRCP 12(f); 37(b)(2)(A)(i)/(ii); 29 C.F.R. § 516.2(a); 26 U.S.C. § 6051 | **Immediate entry upon grant of Dkt. 132** |
| V-4 | 37(e)(1) | Designated fact: the MA/NJ internal contradiction in the produced payroll stubs is proof that the address field was modified without corresponding update of dependent tax fields -- establishing that the modification was post-hoc, incomplete, and non-contemporaneous; compel production of corrected payroll records showing the actual state tax jurisdiction applied for each pay period; referral to IRS and state tax authorities (discretionary) for review of cross-state payroll tax reporting based on the cross-contamination documented in the produced records; order Defendants to indemnify Plaintiff for any state tax penalties arising from the corrupted cross-state reporting in their produced records | FRCP 37(e)(1); 26 U.S.C. § 6051; M.G.L. c. 62B; inherent authority -- ongoing tax harm | **10 business days for corrected records** |
| V-5 | 37(e)(2) | Rule 37(e)(2) adverse inference instruction (Jury Instruction 1 in Proposed Order): jury may presume deleted content would have been unfavorable to Defendants; compel CDN/WAF configuration logs within 5 business days; compel restoration of HTTP 200 access within 5 business days or entry of designated facts regarding content; mandatory cost-shifting for Reply preparation and Exhibit documentation | FRCP 37(e)(2); Rule 37(b)(2)(A)(vi); Alter, 2014 WL 4966119; Kronisch, 150 F.3d 112 | **5 business days** |

12

**CERTIFICATE OF SERVICE**

I hereby certify that on July 14, 2026, a true and correct copy of this document was transmitted via electronic mail to Matthew J. Lynch, Esq. (mlynch@littler.com) and Melissa L. McDonagh, Esq. (mmcdonagh@littler.com), Littler Mendelson, P.C., and filed via the Pro Se filing portal.

**Respectfully submitted,**

/S/ Mohamed S Ly

**Mohamed Souleyman Ly** | Plaintiff, Pro Se and Whistleblower | 485 Glendale Road, Wilbraham, MA 01095 | July 14, 2026