# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS — WESTERN DIVISION

| | |
|---|---|
| **MOHAMED SOULEYMAN LY,**<br><br>Plaintiff,<br><br>v.<br><br>**EBSCO INDUSTRIES, INC.; EBSCO INFORMATION SERVICES; EBSCO PUBLISHING, INC.; TIM COLLINS; AND TIM LULL,**<br><br>Defendants. | **Civil Action No. 3:24-cv-30161-MGM**<br><br>District of Massachusetts, Western Division<br>Judge Mark G. Mastroianni<br>Magistrate Judge Christopher L. Morgan<br><br>Discovery Closure: July 22, 2026<br>ECF Nos. 138 and 139 |

## PLAINTIFF'S FORENSIC PRODUCTION LEDGER

### MODULE 1 OF 5

**GOVERNING FRAMEWORK · OPENING FORENSIC FINDINGS**

**IN RESPONSE TO DEFENDANTS' JUNE 3, 2026 PRODUCTION**

Transmitted to: Matthew Lynch, Esq. (mlynch@littler.com) and Melissa L. McDonagh, Esq. (mmcdonagh@littler.com), Littler Mendelson, P.C.

For Patrick Carroll, General Counsel, and Defendants' EBSCO Industries, Inc.

Boston College Law School Federal Court Clinic (bclawclinic@bc.edu)

From: Mohamed Souleyman Ly, Plaintiff Pro Se · June 26, 2026

---

### PART I — JUDICIAL SERVICE DOCUMENT
Service upon defense counsel
(Ready for submission to the Court).

---

### § 1.0  Governing Authority and Purpose of This Ledger

Defendants, through counsel, produced on June 3, 2026 a combined package comprising: (i) Defendants' Answers to Plaintiff's First Set of Interrogatories (ROG Nos. 1–25), verified under penalty of perjury by Patricia Carroll, Timothy Collins, and Timothy Lull; and (ii) Defendants' Responses to Plaintiff's First Request for Production of Documents (RFP Nos. 1–32), accompanied by documents Bates-labeled EBSCO000001 through EBSCO000060 and beyond (the **"June 3 Production"**). This Forensic Production Ledger is Plaintiff's formal, document-grounded, FRCP-anchored response to that production. It proceeds in five rounds, of which this is Round 1.

This Ledger is not a courtesy communication. It is a formal judicial record document. It serves simultaneously as: (a) notice to defense counsel of identified deficiencies, false statements, temporal impossibilities, and withheld materials; (b) predicate for Plaintiff's forthcoming motions under Federal Rules of Civil Procedure 37(c)(1), 37(b)(2), and 11; (c) a supplement to the record evidence in support of pending motions, including the Compel Motion at ECF No. 120; and (d) the formal response to the framework that defense counsel Lynch imposed as the condition for conferral. It requires a timely response.

## § 2.0  The Lynch Framework — Defense Counsel's Own Standard, Now Applied to Defense Counsel's Own Production

> **VERBATIM STATEMENT — MATTHEW J. LYNCH, ESQ. — JUNE 4, 2026 AND JUNE 18, 2026 CONFERRALS**
> "If you can [1] identify what it is, [2] why you believe it was deleted, [3] why you believe that was improper, and you can... [4] identify which mechanism of discovery relates to it, [5] we will confer and respond."

Defense counsel Lynch imposed this five-part framework as the operative standard for all discovery dispute conferrals in this action. Plaintiff accepted that standard. Plaintiff applied it with precision in the Rule 37 Supplemental Conferral Response of June 5, 2026, which satisfied every element and generated no substantive response from defendants. Plaintiff now applies the identical framework — Lynch's own words, Lynch's own standard — to defendants' June 3, 2026 production.

The application of this framework to defendants' own production is not rhetorical. It is methodological. Every finding in this Ledger is structured along the five Lynch criteria. Counsel should be advised that this document was drafted in express reliance on counsel's stated commitment that satisfying these five criteria would result in a conferral and response. That commitment is now invoked.

| Element | Lynch Criterion | What This Ledger Provides | Status |
|---|---|---|---|
| [1] | Identify what it is | Each finding identifies the specific document, statement, or omission at issue by Bates number, interrogatory number, or production reference. | **SATISFIED — PER FINDING** |
| [2] | Why you believe it was deleted / withheld | Each finding identifies specifically why the produced document is defective, fabricated, or withheld, with reference to the contradicting evidence. | **SATISFIED — PER FINDING** |
| [3] | Why you believe that was improper | Each finding identifies the applicable FRCP provision, statute, or prior court order that the conduct violates. | **SATISFIED — PER FINDING** |
| [4] | Which mechanism of discovery it relates to | Each finding is tagged to the specific ROG number, RFP number, or Rule 26(a) disclosure obligation. | **SATISFIED — PER FINDING** |
| [5] | We will confer and respond | Defense counsel's commitment, in counsel's own words, to confer and respond upon satisfaction of elements 1–4. | **INVOKED — RESPONSE DUE July 12, 2026** |

## § 3.0  Identification of the June 3, 2026 Production — What Was Served and What Was Not

On June 3, 2026, defense counsel served three contemporaneous discovery productions by electronic mail: (1) Defendants' Answers to Plaintiff's First Set of Interrogatories; (2) Defendants' Responses to Plaintiff's First Request for Production of Documents; and (3) a document production Bates-labeled EBSCO000001 through at least EBSCO000060. Although transmitted separately, these productions collectively comprise defendants' June 3, 2026 discovery responses and are treated throughout this Ledger as a single evidentiary record because the interrogatory answers repeatedly rely upon, reference, or are purportedly supported by the accompanying document production.

| Component | Pages (est.) | Bates / Reference | Certification Status |
|---|---|---|---|
| Defendants' Answers to Interrogatories (ROG Nos. 1–25) | pp. 1–28 | Signed June 3, 2026 | Verified under Rule 33(b)(5) by Carroll, Collins, and Lull — under penalties of perjury |
| Defendants' Responses to Requests for Production (RFP Nos. 1–32) | pp. 29–57 | Signed June 3, 2026 | Signed by Lynch under Rule 11 |
| Produced Documents | pp. 58–132+ | EBSCO000001– EBSCO000060+ | Produced as responsive documents — authentication implicitly represented per Rule 34 |

**CRITICAL OBSERVATION — DEFENDANTS FAILED TO CORRELATE THEIR DISCOVERY RESPONSES WITH THE DOCUMENTS ON WHICH THEY RELIED**

Whether considered individually or collectively, defendants' June 3, 2026 discovery productions fail to identify, with the specificity required by the Federal Rules, which documents support which interrogatory responses. Numerous answers invoke Federal Rule of Civil Procedure 33(d) by asserting that responsive information may be ascertained from documents produced, yet defendants do not identify the particular Bates-numbered records from which the requested information may be derived. Instead, they leave Plaintiff to determine for himself which portions of the document production purportedly correspond to each interrogatory answer.

That approach is not consistent with Rule 33(d)(1), which requires a responding party to "specify the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Defendants' own discovery responses therefore shift onto Plaintiff the burden that Rule 33(d) places squarely on the responding party. This threshold deficiency permeates ROG Nos. 1, 2, 3, 4, 5, 6, 7, 10, 13, 16, and 19, and is examined in detail in Round 2 of this Ledger.

## § 4.0  Forensic Finding No. 1 — The Address Temporal Impossibility: Fabricated Payroll Records Produced as Authentic

> **OPENING STATEMENT — THE SINGLE MOST SIGNIFICANT FINDING IN THIS PRODUCTION**
>
> The payroll stubs produced as Bates EBSCO000035 through EBSCO000060+ bear a recurring address — **485 Glendale Road, Wilbraham, Massachusetts 01095** — from the very first pay period of November 1–15, 2021. Plaintiff did not acquire the Wilbraham property until November 22, 2022 — thirteen months after the first stub bearing that address. Plaintiff did not relocate from Holmdel, New Jersey to Massachusetts until September 2022 — ten months after the first stub. This address appears in a property that did not exist in Plaintiff's life as of the date of each payroll instrument that bears it. The only explanation consistent with the evidence is that the payroll stubs produced in this litigation are not the original, contemporaneous instruments. They are retroactively generated or modified records in which a later-acquired address was inserted into earlier time periods. This is not a clerical error. A payroll system cannot populate a future address at the time of payroll processing. The Wilbraham address did not exist in Plaintiff's documented life until November 22, 2022. Every stub dated before November 22, 2022 bearing that address is therefore a record that was generated or modified after that date. Defendants produced these Federally controlled records as authentic personnel file documents under Rule 34. They are not authentic. They are reconstructed. Post-facto. Post hoc.

## § 4.1  The Documented Address Timeline — From Defendants' Own Production

| Date / Period | Address in Defendants' Records | Source Document | Evidentiary Status |
|---|---|---|---|
| October 14, 2021 | 6 Richards Way, Holmdel, NJ 07733 | Offer letter, EBSCO000022–000023 (produced by Defendants in this litigation) | AUTHENTIC — contemporaneous with hire date; Holmdel NJ is Plaintiff's correct pre-Massachusetts address |
| November 1–15, 2021 (Pay Period 1) | **485 GLENDALE RD, WILBRAHAM, MA 01095** | Payroll stub, Pay Period 11/01/2021–11/15/2021, Pay Date 11/15/2021, EBSCO000035 (produced by Defendants in this litigation) | **TEMPORAL IMPOSSIBILITY — Plaintiff did not acquire this property until November 22, 2022 — 371 days later** |
| November 30, 2021 (Pay Period 2) | **485 GLENDALE RD, WILBRAHAM, MA 01095** | Payroll stub, Pay Period 11/16/2021–11/30/2021, Pay Date 11/30/2021, EBSCO000036 | **TEMPORAL IMPOSSIBILITY — same analysis** |
| December 3, 2021 (Bonus Payment) | **485 GLENDALE RD, WILBRAHAM, MA 01095** | Payroll stub, Sign-on bonus $5,000, Pay Date 12/03/2021, EBSCO000037 | **TEMPORAL IMPOSSIBILITY — same analysis; the sign-on bonus check itself bears an impossibly prospective address** |
| Tax Year 2021 (W-2) | HOLMDEL NJ 07733 | IRS Form W-2 for tax year 2021, EBSCO000032 (produced by Defendants); Employee address field Box e | AUTHENTIC — W-2 correctly shows Holmdel NJ address, consistent with actual residence in 2021 |
| November 8, 2022 (Lull Email) | Massachusetts relocation described as FUTURE event | Lull email to Plaintiff, November 8, 2022 11:31 AM, EBSCO000002: "This falls at a tough time because it's right after the Thanksgiving break, and after your personal time off (the big move to Massachusetts)." | DISPOSITIVE — Defendants' own produced document confirms Massachusetts relocation had not yet occurred as of November 8, 2022 |

| September 2022 | Physical relocation: NJ → Massachusetts | Plaintiff's records; consistent with Lull email reference to move occurring around Thanksgiving 2022. Massachusetts is the destination, confirming Plaintiff was still in NJ through at least early November 2022. | DOCUMENTED — September 2022 relocation precedes property acquisition by approximately 8 weeks |
| November 22, 2022 | 485 Glendale Road, Wilbraham, MA 01095 — acquired | County property records (Hampden County, Massachusetts) — subpoena to be served; Plaintiff's own records; consistent with the reliance stack in the Master Integrated Damages Framework | PROPERTY ACQUISITION DATE — the EARLIEST date on which any payroll stub could legitimately bear this address |
| Tax Year 2022 (W-2) | 203 WASHINGTON ST 213, SALEM MA 01970 | IRS Form W-2 for tax year 2022, EBSCO000033. Employee address field Box e shows Salem, MA apartment address — not Wilbraham. | THIRD ADDRESS — a third distinct address appears. The 2022 W-2 shows Salem, not Wilbraham; yet the payroll stubs throughout 2022 show Wilbraham. The W-2 and the stubs for the same year are inconsistent. |
| Tax Year 2023 (W-2) | 485 GLENDALE RD, WILBRAHAM MA 01095 | IRS Form W-2 for tax year 2023, EBSCO000034. Employee address field Box e now correctly shows Wilbraham — consistent with Plaintiff having actually acquired and occupied the property. | AUTHENTIC — 2023 is the first year in which the Wilbraham address is chronologically possible. The W-2 is correct for 2023. |
| May 25, 2023 (Termination Letter) | 203 Washington St. #213, Salem, MA 01970 | Termination letter, EBSCO000010, addressed to '203 Washington St. #213, Salem, MA 01970' — the same Salem address appearing on the 2022 W-2, not the Wilbraham address | FOURTH INCONSISTENCY — the termination letter goes to Salem; the last paycheck (per ROG 20) goes to Wilbraham. On the same day. |

## § 4.2  The Mathematical Impossibility — What the Dates Prove

> **THE MATHEMATICAL PROOF**
>
> **Property acquisition date (485 Glendale Road, Wilbraham, MA): November 22, 2022**
>
> **Date of first payroll stub bearing that address (EBSCO000035): November 15, 2021**
>
> **Time gap between the date of the stub and the date of the property acquisition: 371 days**
>
> **Conclusion:** A payroll processing system cannot populate an address that does not yet exist in any record. The Wilbraham address could not have appeared on a payroll stub dated November 15, 2021. It was not Plaintiff's address. It was not in any EBSCO HR system associated with Plaintiff. The property did not exist in Plaintiff's life for another 371 days. The only mechanism by which this address could appear on a November 2021 stub is if the stub was generated, reprinted, or modified after November 22, 2022.

## § 4.3  Application of the Lynch Five-Part Framework to Finding No. 1

## FORENSIC FINDING 1:  THE ADDRESS TEMPORAL IMPOSSIBILITY

### [1] WHAT IT IS

The payroll stubs produced as EBSCO000035 through EBSCO000060+ bear the address '485 Glendale Road, Wilbraham, Massachusetts 01095' on instruments dated November 1, 2021 through at least mid-2022. This address corresponds to a property Plaintiff did not acquire until November 22, 2022, as documented by Hampden County property records, Plaintiff's own records, and defendants' own produced email (EBSCO000002) in which Lull describes the Massachusetts move as a future event as of November 8, 2022 — thirteen months after the first stub bearing the Wilbraham address.

### [2] WHY IT IS IMPROPER (fabricated or modified)

The payroll stubs bearing a prospective address are not contemporaneous originals. A payroll processing system generates stubs at the time of payroll processing using the employee address then on file. As of November 1–15, 2021 (the period of the first stub), Plaintiff's address on file with defendants was 6 Richards Way, Holmdel, New Jersey 07733 — as confirmed by the offer letter (EBSCO000022) dated October 14, 2021. The Wilbraham address did not become Plaintiff's address until property acquisition on November 22, 2022. Therefore, the stubs must have been retroactively generated or modified to show the later address. They are not authentic instruments as produced.

### [3] WHY IT IS IMPROPER (rule and doctrine)

Federal Rule of Civil Procedure 34 requires production of documents responsive to requests as they are kept in the usual course of business, or organized and labeled to correspond to the categories in the request. Producing retroactively modified or regenerated records as if they were original personnel file documents violates Rule 34. Federal Rule of Evidence 901(b)(1) requires authentication as a condition precedent to admissibility; the temporal impossibility defeats authentication. Federal Rule of Civil Procedure 26(g)(1) requires that discovery responses are

| | |
|---|---|
| | complete and correct as to matters of fact; signing discovery responses that rely on or attach these documents as authentic violates Rule 26(g)(1) and subjects counsel to sanctions under Rule 26(g)(3). Federal Rule of Civil Procedure 37(b)(2)(A) provides sanctions for failure to produce authentic, non-modified records in compliance with discovery obligations. |
| **[4] DISCOVERY MECHANISM** | ROG No. 20 (requesting identification of the date and address to which the final paycheck was mailed); ROG No. 5(c) (requesting gross compensation during all periods by calendar year); RFP No. 1 (requesting the complete personnel file including all hiring documents); RFP No. 13 (requesting documents relating to compensation plans and methods); RFP No. 27 (requesting all documents relied upon in drafting the Answer and interrogatory responses). All of these demands called for authentic, original personnel records. The records produced are not authentic originals. |
| **[5] REQUIRED CONFERRAL RESPONSE** | Pursuant to defense counsel Lynch's June 4 and June 18, 2026 commitment, defendants must now: (a) identify whether the payroll stubs were generated contemporaneously or retroactively; (b) identify the date on which the Wilbraham address was first entered into defendants' HR system as Plaintiff's address of record; (c) produce the SAP SuccessFactors audit log showing every modification to Plaintiff's address field during the employment period; and (d) explain the mechanism by which a November 2021 payroll stub bears an address Plaintiff did not acquire until November 2022. |

## § 5.0  Forensic Finding No. 2 — The Self-Defeating Address Quartet: Four Addresses, Four Instruments, One Employment Period

The temporal impossibility is compounded by a second, independent forensic failure: across the same single employment period (November 1, 2021 – May 25, 2023), defendants' produced documents reflect four distinct addresses for Plaintiff, with no coherent or consistent record of any transition between them. This is not a clerical variance. Each address appears in an authoritative document. Together they establish that

the payroll and HR records as produced are systemically inconsistent, reflecting either multiple generations of records produced at different times or systematic record alteration.

| Address No. | Address | Document(s) Where It Appears | Chronological Problem |
|---|---|---|---|
| 1 | 6 Richards Way, Holmdel, NJ 07733 | Offer letter (EBSCO000022), dated October 14, 2021 | CORRECT — the only address consistent with Plaintiff's actual November 2021 residence. Plaintiff was in Holmdel, NJ at the start of employment. |
| 2 | **485 Glendale Road, Wilbraham, MA 01095** | All payroll stubs (EBSCO000035– EBSCO000060+) beginning November 15, 2021 | TEMPORAL IMPOSSIBILITY — this address appears from the first pay period of employment, yet Plaintiff did not acquire this property for another 371 days. See §4.0 above. |
| 3 | 203 Washington St., Apt. 213, Salem, MA 01970 | W-2 for tax year 2022 (EBSCO000033, employee Box e); Termination letter dated May 25, 2023 (EBSCO000010); FMLA paperwork mailing (EBSCO000031) | UNEXPLAINED — this address appears on the 2022 W-2 (the same year the payroll stubs show Wilbraham) and on the termination letter in 2023. The stubs and the W-2 for the same year show different addresses. |
| 4 | EBSCO000024 — blank address page | Page produced as EBSCO000024 shows only 'Mo Ly / 203 WASHINGTON ST / Salem, MA 1970' — with a garbled ZIP code (1970 rather than 01970) | DATA INTEGRITY — the misprinted ZIP code (01970 omitting leading zero) on this produced page raises the question of whether this is a regenerated rather than original record. |

**THE CRITICAL INTERNAL CONTRADICTION — 2022 W-2 vs. 2022 PAYROLL STUBS**

The W-2 for tax year 2022 (EBSCO000033) lists Plaintiff's address as 203 Washington St., Apt. 213, Salem, MA 01970. The payroll stubs for 2022 (EBSCO000042 through EBSCO000060+) uniformly list Plaintiff's address as 485 Glendale Road, Wilbraham, MA 01095. These are different addresses. They appear in different documents covering the same tax year 2022, produced by the same defendants in the same discovery production. If the payroll system is the source of record for both the stubs and the W-2 — as it must be — then the same system produced two different addresses for the same employee in the same year. This is not a formatting difference. It is an irreconcilable internal inconsistency in defendants' own produced records that can only be explained by (a) modification of one set of records after the fact, (b) manual override of the address field in one document, or (c) generation of different versions of records from different snapshots of the HR/payroll system taken at different times.

## FORENSIC FINDING 2:  THE SELF-DEFEATING ADDRESS QUARTET

| *[1] WHAT IT IS* | Across defendants' June 3, 2026 production, four distinct addresses appear for Plaintiff across documents covering the same single employment period (November 2021 – May 2023): (1) Holmdel NJ (offer letter, 2021 W-2); (2) Wilbraham MA (all payroll stubs from November 2021 onward); (3) Salem MA (2022 W-2, termination letter, FMLA paperwork); and (4) a fourth variant (EBSCO000024 with garbled ZIP). The 2022 W-2 and the 2022 payroll stubs — from the same year, |
|---|---|

| | |
|---|---|
| | same entity, same payroll system — show two different addresses. |
| *[2] WHY IT IS IMPROPER (fabricated or modified)* | A functioning, unmodified payroll and HR system would contain a single address record for each employee at any given point in time. The same system that generates pay stubs generates W-2 forms. If the system address in 2022 was Salem (as the W-2 shows), the stubs should also show Salem. If the system address in 2022 was Wilbraham (as the stubs show), the W-2 should also show Wilbraham. The internal inconsistency between the 2022 W-2 and the 2022 stubs proves that at least one of these documents was generated at a different point in time than the other — meaning at least one set of documents reflects a modified or retroactively generated state of the payroll system, not the contemporaneous state. |
| *[3] WHY IT IS IMPROPER (rule and doctrine)* | Same as Finding No. 1: Rules 34, 26(g)(1), 37(b)(2)(A), and Federal Rules of Evidence 901 (authentication). Additionally, the address discrepancy is directly material to a fact asserted in the sworn interrogatory responses: ROG Answer No. 20 states that the final paycheck was sent to '485 Glendale Road, Wilbraham, MA 01095' on May 26, 2023, while the termination letter (produced in the same package) was addressed to '203 Washington St. #213, Salem, MA 01970.' Defendants certified ROG 20 as true under penalty of perjury while simultaneously producing a termination letter addressed to a different location. Both cannot be the operative address at termination. |
| *[4] DISCOVERY MECHANISM* | RFP No. 1 (personnel file); RFP No. 13 (compensation plan documents); ROG No. 20 (final check address); ROG No. 5 (employment history); Rule 26(a)(1)(B) (documents defendants may use to support their defenses — address records are foundational to the employer identity defense). |
| *[5] REQUIRED CONFERRAL RESPONSE* | Defendants must: (a) identify which address was in the HR/payroll system at each specific date: |

<table>
<tr><td></td><td>November 15, 2021 / January 1, 2022 / December 31, 2022 / May 25, 2023; (b) produce the complete SAP SuccessFactors address history log for Plaintiff's employee record from hire date through the present; (c) explain the discrepancy between the 2022 W-2 address (Salem) and the 2022 payroll stub address (Wilbraham); and (d) identify the date on which the Wilbraham address was first entered into the system.</td></tr>
</table>

## § 6.0  Forensic Finding No. 3 — The Same-Day Address Contradiction: ROG 20 vs. the Termination Letter

**VERBATIM — ROG ANSWER NO. 20 (Certified under Rule 33(b)(5), June 3, 2026)**
"Defendants state that on May 26, 2023, EBSCO sent a check in the amount of $9,361.39 via UPS Next Day Air delivery to Plaintiff's last known address, 485 Glendale Road, Wilbraham, MA 01095."

**VERBATIM — TERMINATION LETTER, EBSCO000010, DATED MAY 25, 2023 (produced in same package)**
"Mohamed Ly / 203 Washington St. #213 / Salem, MA 01970 / Dear Mohamed, The purpose of this letter is to anticipate and answer some questions you may have as you prepare to leave EBSCO on May 25, 2023. Home Address: Please confirm the home address we have on file for you (above)."

These two documents were produced in the same PDF. They were both certified or transmitted by defense counsel Lynch on June 3, 2026. They are irreconcilable. ROG Answer No. 20 certifies under penalty of perjury that Plaintiff's 'last known address' as of the date of termination was 485 Glendale Road, Wilbraham. The termination letter produced in the same document package shows that on May 25, 2023 — the day before — defendants' address on file was 203 Washington St. #213, Salem. The termination letter even directs Plaintiff to 'confirm the home address we have on file for you (above),' referring to the Salem address. This is not ambiguous. At the moment of termination, defendants believed Plaintiff's address was Salem. ROG 20 then certifies under perjury that the check was sent to Wilbraham as the 'last known address.' Both cannot be true simultaneously.

**FORENSIC FINDING 3:  THE SAME-DAY ADDRESS CONTRADICTION — ROG 20 VS. EBSCO000010**

| *[1] WHAT IT IS* | ROG Answer No. 20, certified under penalty of perjury on June 3, 2026, states that the final check was sent to '485 Glendale Road, Wilbraham, MA 01095' as Plaintiff's 'last known address' on May 26, 2023. The termination letter |

|  | produced as EBSCO000010 — dated May 25, 2023, the day before — is addressed to '203 Washington St. #213, Salem, MA 01970' and explicitly identifies this as 'the home address we have on file.' These are different addresses. Both cannot be 'the address on file' at essentially the same moment in time. |
|---|---|
| **[2] WHY IT IS IMPROPER** | One of these two statements is false: either the certified interrogatory answer (which says Wilbraham was the 'last known address') or the termination letter (which says Salem was 'the home address we have on file'). Since they were produced together as authentic records, defendants cannot disclaim either. This is an internal contradiction in the June 3, 2026 production that is irresolvable without disclosure of which document accurately reflects the state of defendants' HR system at the date of termination. |
| **[3] WHY IT IS IMPROPER (rule)** | A false statement in an interrogatory answer certified under Rule 33(b)(5) constitutes a violation of Rule 33(b)(5) and a false statement under penalty of perjury — regardless of whether the falsity was intentional or negligent. The certifying parties (Carroll, Collins, Lull) had both documents in their possession when they certified the interrogatory answers. The contradiction was either known (in which case the certification is deliberately false) or unknown (in which case the 'reasonable inquiry' required by Rule 33(b)(5) was not conducted). |
| **[4] DISCOVERY MECHANISM** | ROG No. 20 (final check address); RFP No. 1 (personnel file, including HR system address records); Rule 26(e) (duty to supplement if the response was incorrect when made or becomes incorrect). |
| **[5] REQUIRED CONFERRAL RESPONSE** | Defendants must: (a) identify which address was in the HR system as of May 25, 2023; (b) identify when the Salem address was in the system and when (if ever) it was replaced by the Wilbraham address; (c) supplement ROG Answer No. 20 if |

it is inaccurate; (d) produce the delivery confirmation for the final check to confirm whether it was in fact sent to Wilbraham on May 26, 2023 and received there; and (e) explain how the termination letter was addressed to Salem if the system showed Wilbraham as the operative address.

## § 7.0  Forensic Finding No. 4 — The Carroll Title Discrepancy: The Verifier's Identity Is Itself Contested

**VERBATIM — VERIFICATION STATEMENT, ROG ANSWER NO. 25, JUNE 3, 2026**
"Defendants state these responses are verified by Patricia Carroll, Executive Vice President, Human Resources, EBSCO Information Services; Timothy Collins; and Timothy Lull; all of whom may be contacted through counsel."

In every other filing and reference in this litigation — including the deposition binder package, the Carroll certification of June 3, 2026 itself (as referenced in depositions), and defendants' own communications — Patricia Carroll has been identified as **General Counsel of EBSCO Industries, Inc.** The verification in the interrogatory answers instead identifies her as **"Executive Vice President, Human Resources, EBSCO Information Services."** These are irreconcilably different titles at irreconcilably different entities. General Counsel is a legal function at the parent entity. EVP of Human Resources is an operational function at the subsidiary. These are not alternate names for the same role.

**FORENSIC FINDING 4:  THE CARROLL TITLE DISCREPANCY — WHICH ENTITY AND WHICH ROLE?**

| | |
|---|---|
| **[1] WHAT IT IS** | The verification statement in the June 3, 2026 interrogatory answers identifies Patricia Carroll as 'Executive Vice President, Human Resources, EBSCO Information Services.' All other references to Carroll in this litigation identify her as 'General Counsel, EBSCO Industries, Inc.' These are different titles at different entities. One of these identifications is incorrect. |
| **[2] WHY IT MATTERS** | The interrogatory answers purport to speak to facts about multiple entities — EBSCO Industries, EBSCO Information Services, EBSCO Publishing, Collins, and Lull. A person verifying these answers in her capacity as EVP of HR at |

|  | EBSCO Information Services does not necessarily have authority to verify facts about EBSCO Industries, Inc. Conversely, if Carroll is in fact the General Counsel of EBSCO Industries (as previously represented), her identification as an EIS HR officer in the verification statement is itself a false representation of her role. Either way, the verification is defective or falsely characterized. |
| --- | --- |
| **[3] WHY IT IS IMPROPER (rule)** | Rule 33(b)(5) requires that a corporate party verify interrogatory answers through 'an officer or agent.' The identity and capacity of the verifying officer must be accurately stated. A false statement of Carroll's title or entity affiliation in the verification renders the verification defective under Rule 33(b)(5). Separately, if Carroll holds simultaneous roles at EIS (as HR officer) and EII (as General Counsel) — as the discrepancy suggests — this overlap is itself relevant to the employer identity issue at the heart of this case: it demonstrates that the same individual exercises simultaneous authority across multiple entities that defendants claim are separate. |
| **[4] DISCOVERY MECHANISM** | ROG No. 25 (identify persons who provided information used in answering interrogatories); ROG No. 22 (corporate relationship between EBSCO entities); Rule 26(a)(1)(A)(i) (initial disclosure of persons likely to have discoverable information — Carroll's role and entity must be accurately stated). |
| **[5] REQUIRED CONFERRAL RESPONSE** | Defendants must: (a) state Carroll's accurate title and entity affiliation as of June 3, 2026; (b) identify whether Carroll holds or held simultaneous roles at EBSCO Industries and EBSCO Information Services; (c) if the verification title is incorrect, provide a corrected verification; (d) confirm whether Carroll's authority to verify on behalf of EBSCO Industries was based on her role at EIS or EII. |

## § 8.0  Forensic Finding No. 5 — The Intercompany Agreement That Has Never Existed in Any Prior Filing and Has Not Been Produced

> **VERBATIM — ROG ANSWER NO. 22 AND NO. 23, JUNE 3, 2026 (Certified under Rule 33(b)(5))**
> "EBSCO Industries issued Plaintiff's paychecks and W-2s as EBSCO Publishing's payor, not as Plaintiff's employing entity, pursuant to applicable Treasury regulations. EBSCO Publishing then reimbursed EBSCO Industries for these payments, pursuant to an intercompany agreement." — ROG Answer No. 23

For the first time in this litigation — in a document certified under penalty of perjury on June 3, 2026, approximately 37 months after the events in question — defendants introduce a new factual theory: that an **"intercompany agreement"** between EBSCO Publishing, Inc. and EBSCO Industries, Inc. governed the payor relationship for Plaintiff's wages. This intercompany agreement has never been referenced in any prior filing, any prior discovery response, any prior conferral, or any prior communication in this litigation. It was not included in Rule 26(a)(1) initial disclosures. It was not produced in response to RFP No. 19, which expressly requested 'all documents concerning Defendant's assertion in Paragraph One of their Answer that EBSCO Publishing, Inc. hired Mr. Ly, and all documents concerning Defendant's Twenty-Third and Twenty-Fourth Affirmative Defense.' It was not produced in response to RFP No. 27, which requested all documents relied upon in answering interrogatories. It does not exist in the June 3, 2026 production. It may not exist at all.

### FORENSIC FINDING 5:  THE UNPRODUCED INTERCOMPANY AGREEMENT

| | |
|---|---|
| **[1] WHAT IT IS** | ROG Answers 22 and 23 introduce, for the first time in this litigation, the assertion that 'an intercompany agreement' between EBSCO Publishing, Inc. and EBSCO Industries, Inc. governs the payor relationship for Plaintiff's wages and obligated EPI to reimburse EII for all payroll disbursements. This document has never been referenced in any prior filing and was not produced in the June 3, 2026 production despite being the sole stated legal basis for the payor/employer distinction that forms the backbone of Affirmative Defenses 23 and 24. |
| **[2] WHY IT IS IMPROPER (withheld)** | If this intercompany agreement exists, it is a document that: (a) defendants relied upon in answering interrogatories (ROG No. 25 demands identification of all such documents); (b) was required to be produced under RFP No. 19 ('all documents concerning... the payor relationship |

| | |
|---|---|
| | between EBSCO Publishing and EBSCO Industries'); (c) was required to be produced under RFP No. 27 ('all documents... relied on... in answering these Interrogatories'); and (d) constitutes a document 'that defendant may use to support its claims or defenses' under Rule 26(a)(1)(B). Its non-production is a Rule 34 violation, a Rule 26(g) violation, and a Rule 26(a) violation. If the agreement does not exist, the interrogatory answer citing it is false. |
| **[3] WHY IT IS IMPROPER** *(additional legal dimension)* | Even if an intercompany agreement exists, the 'payor on behalf of' theory advanced in ROG Answers 22 and 23 is legally deficient. Under 26 U.S.C. § 3401(d)(1), the 'person having control of the payment of wages' is the statutory employer — not the nominal 'employer of record' to whom that person acts as a purported agent. Defendants' invocation of 'applicable Treasury regulations' as the basis for this theory is conclusory. No Treasury regulation is identified. No regulatory citation is provided. The theory is asserted as fact under penalty of perjury without documentary support, without regulatory citation, and with the document that would substantiate it — the intercompany agreement — withheld from production. |
| **[4] DISCOVERY MECHANISM** | RFP No. 19; RFP No. 27; ROG No. 22; ROG No. 23; ROG No. 25; Rule 26(a)(1)(B); Rule 26(e) (duty to supplement if the intercompany agreement was identified after initial production). |
| **[5] REQUIRED CONFERRAL RESPONSE** | Defendants must: (a) produce the intercompany agreement identified in ROG Answers 22 and 23; (b) if no intercompany agreement exists, correct ROG Answers 22 and 23 under Rule 33(b)(5) and Rule 26(e); (c) identify the specific 'applicable Treasury regulations' referenced in the answers and produce any regulatory guidance or legal analysis relied upon; (d) identify all persons who participated in drafting the 'payor' theory first appearing in the June 3, 2026 production. |

## § 9.0  Round 1 Summary — Five Findings, Five Conferral Demands, One Compliance Deadline

| Finding | Subject | Document / Reference | Severity | Action Required |
|---|---|---|---|---|
| 1 | Address Temporal Impossibility — Wilbraham address on November 2021 stubs | EBSCO000035+; Lull email EBSCO000002; offer letter EBSCO000022 | CRITICAL — possible record fabrication | Produce SAP audit log; identify date Wilbraham address first entered system; identify who entered it |
| 2 | Four-address internal inconsistency — 2022 W-2 (Salem) vs. 2022 stubs (Wilbraham) | EBSCO000033 vs. EBSCO000042–000060+ | HIGH — irreconcilable internal contradiction | Identify which address was operative in 2022 Q1–Q4; produce address change history |
| 3 | ROG 20 (Wilbraham) vs. termination letter EBSCO000010 (Salem) — same date | ROG Answer 20; EBSCO000010 | HIGH — contradictory perjury-certified statement | Supplement ROG 20; produce final check delivery confirmation; identify operative address May 25–26, 2023 |
| 4 | Carroll title discrepancy — EVP HR at EIS (ROG) vs. General Counsel at EII (all other filings) | ROG Answer 25 verification | MEDIUM-HIGH — defective Rule 33 verification | Provide corrected verification with accurate title; disclose Carroll's complete role(s) |
| 5 | Unproduced intercompany agreement — cited in ROG 22/23, never produced | ROG Answers 22–23; RFP 19, 27 | HIGH — document withheld or assertion is false | Produce the agreement or correct the interrogatory answers |

---

**CONFERRAL RESPONSE DEADLINE**

Pursuant to defense counsel Lynch's express commitment on June 4 and June 18, 2026 — that satisfying the five-part framework would result in a conferral and response — Plaintiff demands a written response to each of the five findings above no later than July 2, 2026. Discovery in this action closes July 22, 2026 (ECF No. 139). Any motion required to be filed as a result of defendants' non-response or inadequate response to these findings will be filed with the Court before that deadline with notice that the Lynch framework was satisfied and no adequate response was received. Rounds 2 through 5 of this Ledger will be transmitted on a rolling basis during the same period.

---

Respectfully submitted,                                                                                   **Dated: June 26, 2026**

_____

**Mohamed Souleyman Ly**

Plaintiff, Pro Se and Whistleblower

mmmly7@gmail.com

**Certificate of Service:** I hereby certify that on June 26, 2026, a true and correct copy of the foregoing Forensic Production Ledger — Round 1 was transmitted via electronic mail to Matthew Lynch, Esq. (mlynch@littler.com) and Melissa L. McDonagh, Esq. (mmcdonagh@littler.com), Littler Mendelson, P.C), and to the Boston College Law School Federal Court Clinic (bclawclinic@bc.edu).

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS — WESTERN DIVISION

| | |
|---|---|
| **MOHAMED SOULEYMAN LY,**<br>v.<br>**EBSCO INDUSTRIES, INC. et al.,**<br>Defendants. | **Civil Action No. 3:24-cv-30161-MGM**<br>Judge Mark G. Mastroianni<br>Magistrate Judge Christopher L. Morgan<br>Discovery Closure: July 22, 2026 |

## PLAINTIFF'S FORENSIC PRODUCTION LEDGER
### MODULE 2 OF 5
### INTERROGATORY-BY-INTERROGATORY FORENSIC ANALYSIS — ROG NOS. 1 THROUGH 15
*In Response to Defendants' June 3, 2026 Interrogatory Answers*

Transmitted to: Ryan M. Lynch, Esq. (mlynch@littler.com) and Melissa L. McDonagh, Esq. (mmcdonagh@littler.com), Littler Mendelson, P.C.
From: Mohamed Souleyman Ly, Plaintiff Pro Se  ·  June 26, 2026

### PART I — JUDICIAL SERVICE DOCUMENT
This section is intended for service upon defense counsel and submission to the Court.

## § 1.0  Round 2 Context — Relationship to Round 1 and the Governing Lynch Framework

Round 1 of this Forensic Production Ledger (transmitted June 26, 2026) established the governing framework, identified the temporal impossibility in the payroll stub address records, and documented five opening forensic findings with full application of the Lynch five-part standard. Round 2 proceeds to the interrogatory responses themselves, analyzing each of ROG Nos. 1 through 15 against the record, the produced documents, and the applicable Federal Rules. Rounds 3 through 5 will address ROG Nos. 16–25, the document production responses, and the master integrated forensic findings respectively.

> **GOVERNING STANDARD — REAFFIRMED**
> Lynch, June 4 and June 18, 2026: "If you can [1] identify what it is, [2] why you believe it was deleted, [3] why you believe that was improper, and you can... [4] identify which mechanism of discovery relates to it, [5] we will confer and respond." Each finding in this Round is structured on these five criteria. Defense counsel's written response to each finding is now overdue. The conferral commitment stands.

## § 2.0  Master Interrogatory Response Status — ROG Nos. 1 Through 15

| ROG | Subject | Response Type | Key Produced Document | Primary Forensic Finding | Severity |
|---|---|---|---|---|---|
| 1 | Persons with knowledge of hiring, performance, FMLA, PIP, termination | Objection + Rule 33(d) deflection to initial disclosures | None identified beyond Rule 26(a) reference | Rule 33(d) election invalid — no specific document identified in combined 132-page PDF | HIGH |
| 2 | All persons with whom defendants communicated re: Plaintiff | Objection + Rule 33(d) deflection | None identified | Same Rule 33(d) deficiency — combined PDF deflection | HIGH |
| 3 | All persons with knowledge of complaint/answer allegations | Objection + Rule 33(d) deflection | None identified | Cumulative of ROG 1 — same deficiency; proportionality objection unsupported | HIGH |
| 4 | All communications re: allegations (exclusive of counsel) | Objection + Rule 33(d) deflection | None identified | Same Rule 33(d) deficiency; privilege assertion not particularized | HIGH |
| 5 | Employment facts — hire date, termination, compensation, duties, benefits | Partial answer — factual assertions made | Offer letter EBSCO000022; W-2s EBSCO000032–034; PIP EBSCO000006 | CRITICAL — multiple certified false statements; employer identified as EPI (dissolved 2013); termination date stated as May 31 (letter says May 25); compensation omits sign-on bonus | CRITICAL |
| 6 | All performance evaluations of Plaintiff | Objection + Rule 33(d) — 'annual and mid-year assessments and PIP' | FY22 Assessment EBSCO000014–17 (all objectives 'Completed'); FY23 Mid-Year EBSCO000018–21 | CRITICAL — produced FY22 assessment shows ALL objectives completed, Lull comment: 'Good first year.' ROG 6 answer implies performance problems predated PIP; produced documents prove otherwise | CRITICAL |
| 7 | All warnings, reprimands, discipline; basis for termination | Partial answer — identifies 'late 2022 and early 2023' verbal coaching | Lull email Nov. 8, 2022 (EBSCO000002); Lull email Nov. 9, 2022 (EBSCO000001) | HIGH — the two produced 'coaching' emails do not constitute formal warnings; ROG 7 characterizes them as documented performance issues; the documents themselves contradict this characterization | HIGH |
| 8 | All FMLA discrimination/retaliation complaints last 5 years | Complete refusal — 'will not respond' | None | IMPROPER REFUSAL — overbreadth/proportionality objection is unsupported where FMLA retaliation is a core claim; minimal burden to identify if any other complaints exist | HIGH |
| 9 | Which complaint allegations defendants knew pre-suit | Complete refusal — 'will not respond' | None | IMPROPER REFUSAL — assumes truth of allegations objection is improper; defendants cannot refuse to answer based on their own denial of facts | MEDIUM |
| 10 | All FMLA/employment policies in effect Nov 2021–present | Objection + Rule 33(d) — 'EBSCO Publishing' policies | Employee handbook (referenced, not yet produced in this package) | ENTITY INCONSISTENCY — refers to 'EBSCO Publishing' policies, but all produced documents identify employer as EIS/EII, not EPI | HIGH |
| 11 | All oral/written communications re: | Objection + Rule 33(d) deflection | None identified beyond other ROG references | Cumulative of prior ROGs; same 33(d) deficiency | MEDIUM |

| | | | | | |
|---|---|---|---|---|---|
| | complaint/answer allegations | | | | |
| 12 | Expert witnesses for trial | Objection + 'not yet determined' | None | Appropriate placeholder — subject to supplementation per scheduling order | **LOW** |
| 13 | Trial witnesses | Objection + 'not yet determined' | None | Appropriate placeholder — subject to supplementation | **LOW** |
| 14 | Individuals who participated in investigation of Plaintiff's FMLA claims | Partial answer — 'Plaintiff did not report complaints during employment' | FMLA Designation Notice EBSCO000025; FMLA paperwork letter EBSCO000031 | CRITICAL — the denial that Plaintiff ever reported FMLA concerns is directly contradicted by the FMLA documentation produced in the same package | **CRITICAL** |
| 15 | Individual complaints/concerns about Plaintiff's FMLA leave | Partial answer — 'no complaints existed' | Lull emails EBSCO000001–002; early-morning email pattern admitted in Dkt. 117 ¶¶35–36 | HIGH — FMLA leave dates correlate with Lull's early-morning emails; answer denies any concern about FMLA use while produced documents show supervisory contact on FMLA use dates | **HIGH** |

## § 3.0  Consolidated Forensic Finding — Rule 33(d) Election Deficiency Across ROG Nos. 1, 2, 3, 4, 10, and 11

> **RULE 33(d) TEXT — WHAT THE RULE ACTUALLY REQUIRES**
> Federal Rule of Civil Procedure 33(d)(1): "If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by: (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." [Emphasis added.] The rule requires specification. It does not permit deflection to an undifferentiated document production.

ROG Nos. 1, 2, 3, 4, 10, and 11 all respond with a variant of the same formula: 'Defendants refer to the individuals identified in their Rule 26 Initial Disclosures' and/or 'Defendants refer to the documents that have been or will be produced in response to Plaintiff's Rule 34 document requests.' This formula fails Rule 33(d) on its face for the following independent reasons, each of which applies to all six interrogatory answers:

| Defect | Rule 33(d) Requirement | Defendants' Failure |
|---|---|---|
| **A** | Must specify the records that must be reviewed — by name, Bates number, or sufficient description to locate them | Defendants deflect to a 132-page combined PDF. No specific document is identified for any interrogatory. 'The documents produced in response to Plaintiff's Rule 34 requests' is not a specification — it is a gesture at a multi-hundred-page universe. |
| **B** | Must enable the interrogating party to locate and identify them as readily as the responding party could | Plaintiff cannot identify which of the 60+ produced documents is responsive to ROG 1 (knowledge of hiring) versus ROG 2 (communications) versus ROG 3 (complaint/answer) when no cross-reference is provided. The |

| | | burden is squarely on Plaintiff — the opposite of what Rule 33(d) requires. |
|---|---|---|
| C | The burden of deriving or ascertaining the answer must be substantially the same for either party | Defendants, as the producing party, know exactly which documents they rely on to answer each interrogatory. Plaintiff does not. When defendants elect Rule 33(d) without specification, they shift the burden entirely to Plaintiff. This is the precise condition Rule 33(d) was designed to prevent. |
| D | The 'will be produced' qualifier is impermissible under Rule 33(d) | Defendants repeatedly respond: documents 'have been or will be produced.' Rule 33(d) requires specification of existing documents. A promise to produce future documents is not a Rule 33(d) election — it is a non-answer dressed in Rule 33(d) language. |
| E | Rule 26(a)(1) initial disclosures are not responsive to Rule 33 interrogatories | Deflecting to the Rule 26 initial disclosures to answer who has knowledge is legally insufficient. Initial disclosures are not interrogatory answers. They are governed by different rules, serve different purposes, and do not bind defendants as to the substance of the knowledge possessed by each person. |

## FORENSIC FINDING 6: CONSOLIDATED RULE 33(d) ELECTION DEFICIENCY — ROG NOS. 1, 2, 3, 4, 10, AND 11

| | |
|---|---|
| **[1] WHAT IT IS** | ROG Nos. 1, 2, 3, 4, 10, and 11 each elect Rule 33(d) without identifying specific documents by name, Bates number, or sufficient description. Each refers generically to initial disclosures and/or the combined Rule 34 production. |
| **[2] WHY IT IS IMPROPER** | Rule 33(d)(1) expressly requires specification of records 'in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could.' The combined 132-page PDF produced by defendants does not satisfy this standard. No cross-reference is provided between any specific interrogatory and any specific produced document. |
| **[3] RULE VIOLATIONS** | Federal Rule of Civil Procedure 33(d)(1) (specification requirement); Federal Rule of Civil Procedure 33(b)(3) (completeness requirement — each interrogatory must be answered separately and fully); Federal Rule of Civil Procedure 26(g)(1)(B) (counsel's certification that responses are complete and not interposed for improper purpose). See Covey Oil Co. v. Continental Oil Co., 340 F.2d 993 (10th Cir. 1965); Daiflon, Inc. v. Allied Chemical Corp., 534 F.2d 221 (10th Cir. |

| | |
|---|---|
| | 1976) (Rule 33(d) does not permit non-specific deflection to entire document production). |
| *[4] DISCOVERY MECHANISM* | ROG Nos. 1, 2, 3, 4, 10, and 11 directly; Rule 33(d)(1); Rule 26(g)(1); ECF No. 120 (pending Compel Motion — this deficiency supports the relief requested therein). |
| *[5] REQUIRED RESPONSE* | Defendants must supplement ROG Nos. 1, 2, 3, 4, 10, and 11 with specific document identification for each interrogatory: by Bates number and page range, or by document title and date, sufficient to identify which produced documents are responsive to each specific interrogatory. Supplementation is due within seven days of this transmission per Rule 26(e) obligations, consistent with the July 22, 2026 discovery closure. |

## § 4.0  ROG No. 5 — Forensic Finding — The Perjury-Certified Employment Narrative Contradicted by Defendants' Own Produced Documents

> **VERBATIM — ROG ANSWER NO. 5 (Certified June 3, 2026 under Rule 33(b)(5) under penalty of perjury)**
>
> *"Plaintiff held the title of Principal Product Manager throughout the course of his employment with EBSCO Publishing. On May 31, 2023, EBSCO Publishing terminated Plaintiff's employment because he failed to meet internal deadlines for significant projects, even though his direct supervisor, Timothy Lull, repeatedly extended the deadlines for Plaintiff, both before and during Plaintiff's leave; because the work product that Plaintiff did provide did not meet EBSCO's standards, despite repeated coaching and feedback from Lull and others; and because Plaintiff struggled to properly manage his direct reports."*
>
> *ROG Answer No. 5, Defendants' Answers to Plaintiff's First Set of Interrogatories, June 3, 2026*

## § 4.1  The Contradiction Table — What the Certified Answer Says vs. What Defendants' Own Documents Show

| DEFENDANTS CERTIFY UNDER PERJURY (ROG Answer) | DEFENDANTS' OWN PRODUCED DOCUMENTS SHOW |
|---|---|
| **"Plaintiff held the title of Principal Product Manager throughout the course of his employment with EBSCO Publishing."** <br> *ROG Answer No. 5* | **The W-2 for 2021, 2022, and 2023 (EBSCO000032, 000033, 000034) all identify the employer as 'EBSCO Industries, Inc.' — EIN 63-6014186 — not EBSCO Publishing. The PIP itself (EBSCO000006) states: 'EBSCO Information Services (EIS) and I value you as an employee.' The offer letter (EBSCO000022) is from 'EBSCO Information Services, a division of EBSCO Industries, Inc.' — not EBSCO Publishing.** <br> *EBSCO000022 (offer letter); EBSCO000032–034 (W-2s); EBSCO000006 (PIP body text)* |
| **"On May 31, 2023, EBSCO Publishing terminated Plaintiff's employment."** <br> *ROG Answer No. 5* | **The termination letter produced as EBSCO000010 is dated May 25, 2023 — not May 31, 2023. The letter states 'prepare to leave EBSCO on May 25, 2023' and is transmitted from 'myEBSCOHR@ebsco.com.' The final check per ROG 20 was sent May 26, 2023. The answer certifies May 31. The letter says May 25. The difference is six days.** <br> *EBSCO000010 (termination letter, dated May 25, 2023); ROG Answer No. 20 (check sent May 26, 2023)* |
| **"EBSCO Publishing terminated Plaintiff's employment" — EPI identified as the terminating entity.** <br> *ROG Answer No. 5* | **EBSCO Publishing, Inc. was dissolved effective July 1, 2013 per Delaware Certificate of Merger. EPI lost all legal capacity to act on July 1, 2016 under Del. Code Ann. tit. 8, § 278(b). EPI could not legally terminate employment in May 2023 — 9.9 years after dissolution and 6.9 years after capacity expired. Defendants' own W-9s (cited in RFAs) designate EPI as a disregarded entity with no separate legal existence.** <br> *Public Declaration of Merger, July 1, 2013; Del. Code § 278; Defendants' IRS W-9 filings* |
| **"he failed to meet internal deadlines for significant projects, even though his direct supervisor, Timothy Lull, repeatedly extended the deadlines"** <br> *ROG Answer No. 5* | **The FY22 Year-End Assessment (EBSCO000014–000017) — the most recent formal evaluation before the PIP — shows ALL THREE objectives marked 'Completed' at 100%. Lull's own comment: 'Good first year' and 'You've been a great addition to EBSCO, Mo.' No deadline** |

| | |
|---|---|
| | **failures appear in any evaluation produced for the period November 2021 through June 2022.**<br>*EBSCO000014–000017 (FY22 Year-End Assessment — all objectives 'Completed')* |
| **"the work product that Plaintiff did provide did not meet EBSCO's standards, despite repeated coaching and feedback from Lull and others"**<br>*ROG Answer No. 5* | **The only produced evidence of 'coaching' prior to the PIP are the November 8 and November 9, 2022 Lull emails (EBSCO000001–000002). The November 8 email acknowledges Plaintiff's work positively ('You have done a great job raising the expectations and awareness for the Globalization initiative') and provides operational direction on roadmap format — not discipline. No written performance warning was issued prior to the PIP on March 15, 2023.**<br>*EBSCO000001–000002 (Lull emails Nov. 8–9, 2022 — coaching in tone, not formal warning)* |
| **"Plaintiff struggled to properly manage his direct reports."**<br>*ROG Answer No. 5* | **The FY22 Year-End Assessment (EBSCO000014–000017) includes a separate objective: 'Merge & drive A11y & G11n domains' — marked 'Completed' at 100%. Lull's comment on FY22 management: 'Now that you know the lay of the EBSCO land, your going to be setup better for good collaboration.' The management concern regarding Amber (the subordinate) arose in November 2022 — 16 months into employment — and did not result in a formal warning.**<br>*EBSCO000014–000017 (management objective marked 'Completed'); EBSCO000001–000002 (Amber discussion framed as coaching, not formal action)* |

## FORENSIC FINDING 7: ROG ANSWER NO. 5 — SIX CERTIFIED FALSE OR CONTRADICTED STATEMENTS

| | |
|---|---|
| *[1] WHAT IT IS* | ROG Answer No. 5 contains six distinct factual assertions about Plaintiff's employment, performance, and termination, all certified under penalty of perjury on June 3, 2026. Five of the six are directly contradicted by documents produced in the same production package. The sixth (EPI as employer) is contradicted by public records. |
| *[2] WHY IT IS IMPROPER* | Each contradiction identified in the table above is between the certified interrogatory answer and a specific Bates-numbered document or public record. This is not a dispute about inference or interpretation. The produced documents say what they say. The certified answers say the opposite. Federal Rule of Civil Procedure 33(b)(5) requires that interrogatory answers be 'true and accurate' to the certifying parties' 'knowledge, information and belief.' Carroll, Collins, and Lull all certified |

| | |
|---|---|
| | Answer No. 5. All three had access to the produced documents. The contradictions were either known (making the certification willfully false) or not investigated (making the certification a failure of the reasonable inquiry required by Rule 33(b)(5)). |
| *[3] RULE VIOLATIONS* | Federal Rule of Civil Procedure 33(b)(5) (accuracy of certification); Federal Rule of Civil Procedure 26(e)(1) (duty to supplement if answer is materially incorrect); Federal Rule of Civil Procedure 11(b)(3) (factual contentions must have evidentiary support); 18 U.S.C. § 1001 (false statements in federal proceedings — applicable where interrogatory answers are filed in federal court). |
| *[4] DISCOVERY MECHANISM* | ROG No. 5 directly; RFP Nos. 1 and 7 (personnel file and employment documents); Rule 26(e) (supplementation obligation); ECF No. 120 (pending Compel Motion). |
| *[5] REQUIRED RESPONSE* | Defendants must supplement ROG Answer No. 5 to: (a) correct the employer identification from 'EBSCO Publishing' to the accurate legal entity; (b) correct the termination date from May 31 to May 25, 2023; (c) reconcile the performance narrative with the FY22 Year-End Assessment showing all objectives completed; (d) identify the specific deadline failures allegedly underlying the PIP, by project name, deadline date, and actual delivery date. If the supplemented answer differs materially from Answer No. 5, defendants must explain how Answer No. 5 was certified without the contradiction being identified. |

## § 5.0  ROG No. 6 — The FY22 Year-End Assessment: Defendants' Performance Narrative Inverted by Their Own Produced Evaluation

**VERBATIM — ROG ANSWER NO. 6 (Certified June 3, 2026)**

*"Defendants refer to the performance improvement plan and related documents from Plaintiff's personnel file produced herewith."*

*ROG Answer No. 6 (Rule 33(d) election — deflecting to personnel file documents)*

**VERBATIM — FY22 YEAR-END ASSESSMENT (EBSCO000014–000017, produced in the same package)**
Objective 1: '12-month Globalization Roadmap' — Status: COMPLETED — Weight: 40.0% — % Complete: 100.0%
Objective 2: 'Merge & drive A11y & G11n domains' — Status: COMPLETED — Weight: 40.0% — % Complete:
100.0% Objective 3: 'Move translation memory leverage from manual steps to automated process' — Status:
COMPLETED — Weight: 20.0% — % Complete: 100.0% Lull's Overall Comment: "You've been a great addition to
EBSCO, Mo. Great first year." "I do feel you have made a positive impact on the visibility and importance of
Globalization first, and now getting into Accessibility more formally."

The most recent formal performance evaluation produced by defendants — for the 12-month period ending June 30, 2022 — shows all three objectives at 100% completion with 'Completed' status. The manager's own comment is an unambiguous positive assessment. ROG Answer No. 6 deflects to 'the performance improvement plan and related documents' as if a continuous record of performance problems existed from the beginning of employment. The FY22 Year-End Assessment, produced in the same package, refutes that narrative.

**FORENSIC FINDING 8:  ROG ANSWER NO. 6 — RULE 33(d) DEFLECTION CONCEALS EXCULPATORY PERFORMANCE RECORD**

| | |
|---|---|
| *[1] WHAT IT IS* | ROG Answer No. 6 elects Rule 33(d) and deflects to 'the performance improvement plan and related documents' — implicitly framing the performance record as consistently problematic. The same production package contains the FY22 Year-End Assessment (EBSCO000014–000017) showing all three objectives completed at 100% with a positive manager comment. |
| *[2] WHY IT IS IMPROPER* | The Rule 33(d) election, as applied here, selectively identifies the PIP as the responsive document while omitting the FY22 Year-End Assessment — the most recent formal evaluation before the PIP, which tells the opposite story. This selective identification violates Rule 33(b)(3)'s requirement of a full and complete answer. The FY22 Assessment is squarely within the scope of ROG No. 6 ('all evaluations conducted by EBSCO concerning Mr. Ly's job performance'). The Rule 33(d) election must specify it. |
| *[3] RULE VIOLATIONS* | Rule 33(b)(3) (must answer fully and completely); Rule 33(d)(1) (specification must include all |

|  |  |
|---|---|
|  | responsive records, not just those favorable to the responding party); Rule 26(g)(1)(B)(ii) (certification that response is complete and not interposed for improper purpose). |
| *[4] DISCOVERY MECHANISM* | ROG No. 6; RFP No. 14 (performance reviews and evaluations); the FY22 Assessment is EBSCO000014–000017, already in the production. |
| *[5] REQUIRED RESPONSE* | Defendants must supplement ROG Answer No. 6 to specifically identify the FY22 Year-End Assessment (EBSCO000014–000017) as a responsive document and acknowledge that it shows all objectives completed at 100% for the FY22 evaluation period. If defendants contend the FY22 Assessment is not responsive to ROG No. 6, they must explain why a formal annual evaluation does not constitute an 'evaluation conducted by EBSCO concerning Mr. Ly's job performance.' |

## § 6.0  ROG No. 7 — The Coaching Emails Mischaracterized as Performance Warnings: What the Produced Documents Actually Show

**VERBATIM — ROG ANSWER NO. 7 (Certified June 3, 2026)**

"in late 2022 and early 2023, Lull discussed several of Plaintiff's performance issues with Plaintiff in one-on-one meetings and by e-mail. Plaintiff's issues included missing internal deadlines for key projects, poor work product, and unprofessional behavior towards individuals who reported to him. Plaintiff's performance did not improve, and, in consultation with Gar Sydnor, Executive Vice President – Library Management Systems and Software, and Liz Milligan, Human Resources & Engagement Business Partner, Lull placed Plaintiff on a performance improvement plan ('PIP') on or about March 15, 2023."

*ROG Answer No. 7 (certified June 3, 2026 under Rule 33(b)(5))*

## § 6.1  What the Produced 'Warning' Documents Actually Say

| Document | ROG 7 Characterization | What the Document Actually Says |
|---|---|---|
| Lull email Nov. 8, 2022 (EBSCO000002) | Implied formal performance discussion re: 'performance issues' — 'missing deadlines, poor work product, unprofessional behavior' | The email explicitly says: 'You have done a great job raising the expectations and awareness for the Globalization initiative at EBSCO.' It addresses: (1) a hiring communication issue re: a new subordinate; (2) roadmap format preference; (3) communication channel guidance. Lull writes: 'My only goal is to help make you |

|  |  | the most successful EBSCO employee.' This is mentorship and operational coaching. It is not a formal performance warning. |
|---|---|---|
| Lull email Nov. 9, 2022 (EBSCO000001) | Implied continuation of 'performance issues' discussion | This is a follow-up to the November 8 email. Lull provides operational direction on specific work items: 'Due to my concerns over your management of people, Amber will begin reporting to me.' The management structure change is noted. However: (1) no formal disciplinary action is taken; (2) no written warning is issued; (3) the email closes with continued coaching direction on product deliverables. The email itself acknowledges: 'I have not seen anything that warrants a Performance Improvement Plan for Amber' — the opposite of a formal performance warning for Plaintiff. |
| FY23 Mid-Year Assessment (EBSCO000018–000021) '2/7' meeting | ROG Answer 7 references '2/7 during mid-year review' as a performance counseling session | The FY23 Mid-Year Assessment (EBSCO000018–000021) shows mixed assessments — not pure failure. Lull's comment acknowledges: 'I recognize you are driven, and customer focused.' The 'Areas of Concern' noted are Talent Development, Execution, and Trust & Respect. Critically, the assessment does not identify any specific missed deadline or 'poor work product' by project name. It is evaluative, not disciplinary. No formal warning is issued. |

**THE CRITICAL EVIDENTIARY GAP — WHERE ARE THE DOCUMENTED DEADLINE FAILURES?**

ROG Answer No. 7 asserts that Plaintiff missed 'internal deadlines for key projects' as a basis for the PIP and termination. The produced documents — including the PIP itself (EBSCO000006–000009) — do not identify a single specific project, a single specific deadline, and a single specific delivery failure by date. The PIP outlines future objectives and due dates (3/22/2023, 6/5/2023). It does not document past failures with specificity. No project name, no deadline date, no actual delivery date, and no documented gap appears anywhere in the produced record.

**FORENSIC FINDING 9: ROG ANSWER NO. 7 — PERFORMANCE NARRATIVE UNSUPPORTED BY PRODUCED DOCUMENTARY RECORD**

| **[1] WHAT IT IS** | ROG Answer No. 7 certifies that Plaintiff missed deadlines, produced poor work product, and behaved unprofessionally toward direct reports as the basis for the PIP and termination. The only produced evidence of pre-PIP performance concerns are the November 8 and November 9, 2022 Lull emails. Those emails do not document any specific missed deadline, do not identify poor work product by project, and expressly acknowledge Plaintiff's positive contributions to globalization. |
|---|---|
| **[2] WHY IT IS IMPROPER** | The performance narrative certified in ROG Answer No. 7 is not supported by the produced documentary record. Specifically: (a) no produced document identifies a specific project, deadline, |

and failure-to-deliver by Plaintiff prior to March 15, 2023; (b) the FY22 Year-End Assessment (the only formal annual evaluation) shows all objectives completed; (c) the coaching emails characterize the supervisory communications as development-focused, not disciplinary; (d) the PIP itself sets future objectives rather than documenting past failures with specificity.

| | |
|---|---|
| **[3] RULE VIOLATIONS** | Rule 33(b)(5) (accuracy of certification — the certified performance narrative must be supportable by documentary evidence); Rule 26(e)(1) (if the narrative lacks documentary support, the answer must be supplemented or corrected); Rule 11(b)(3) (factual contentions must have evidentiary support). The absence of specific documentary support for specific alleged deadline failures is also directly relevant to the FMLA retaliation claim: a performance narrative constructed after the FMLA event without specific contemporaneous documentation is textbook pretext evidence. |
| **[4] DISCOVERY MECHANISM** | ROG No. 7; RFP No. 14 (performance evaluations); RFP No. 7 (terms and conditions of employment, including warnings); RFP No. 29 (Lull communications regarding performance, PIP, FMLA, and termination). |
| **[5] REQUIRED RESPONSE** | Defendants must supplement ROG Answer No. 7 to identify, for each alleged deadline failure: (a) the specific project name; (b) the specific deadline that was missed; (c) the actual delivery date; (d) the form of written documentation created at the time of the alleged failure; and (e) whether any written record of the alleged deadline failure predates February 20, 2023 (the FMLA qualifying event). If no specific documentary support exists, defendants must state that the performance narrative in Answer No. 7 is based on the recollection of the certifying individuals rather than contemporaneous written records. |

## § 7.0  ROG Nos. 8 and 9 — Consolidated Analysis of Improper Complete Refusals

| ROG | Question | Stated Basis for Refusal | Why the Refusal Is Improper |
|---|---|---|---|
| 8 | Identify all persons who have made FMLA discrimination/retaliation complaints against Defendants in the last 5 years | 'Overbroad, not proportional, not limited to Plaintiff or his employment period, seeks personal and confidential information of non-parties.' Complete refusal: 'Defendants will not respond to this Interrogatory.' | The proportionality objection is unsupported where FMLA retaliation is the core claim. Evidence of a pattern of FMLA retaliation is directly relevant to the willfulness analysis (liquidated damages), the pretext analysis, and the punitive damages calculation. The 5-year scope is reasonable. Defendants cannot refuse entirely; they may narrow but must answer. Identity of prior complainants may be produced under a protective order. Complete refusal violates Rule 33(b)(3). |
| 9 | Which allegations in the Complaint did Defendants know about prior to service, and which employees knew them | 'Assumes truth of allegations Defendants deny, not proportional, not limited to employment period, seeks attorney-client privilege.' Complete refusal. | The 'assumes truth of allegations' objection is legally invalid. An interrogatory asking what facts Defendants knew before suit is a factual question, not an invitation to admit wrongdoing. Defendants can identify the facts they knew while denying any legal violation. The attorney-client privilege objection is improperly blanket — factual knowledge of events is not privileged; only the content of attorney communications is. Complete refusal is improper. |

### FORENSIC FINDING 10:  CONSOLIDATED IMPROPER COMPLETE REFUSALS — ROG NOS. 8 AND 9

| | |
|---|---|
| **[1] WHAT IT IS** | ROG Nos. 8 and 9 received complete refusals — 'Defendants will not respond.' Not a partial answer, not a qualified answer, not a specific privilege assertion. A total refusal. |
| **[2] WHY IT IS IMPROPER** | A complete refusal to answer a discovery interrogatory is permissible only when the interrogatory is wholly outside the scope of Rule 26(b)(1) — relevance, proportionality, or privilege. Neither ROG 8 nor ROG 9 meets that threshold. ROG 8 asks about a pattern of FMLA conduct directly relevant to the retaliation claim and the willfulness/liquidated damages analysis. ROG 9 asks about factual pre-suit knowledge — a core |

| | |
|---|---|
| | discovery category that does not implicate privilege (facts known are not privileged; communications about those facts may be). |
| **[3] RULE VIOLATIONS** | Rule 33(b)(3) (must answer each interrogatory separately and fully); Rule 33(b)(4) (grounds for objection must be stated with specificity; blanket proportionality objections are improper); Rule 26(b)(1) (scope of discovery includes any non-privileged matter relevant to any party's claim or defense). See Fed. R. Civ. P. Advisory Committee Notes (2015): 'the objecting party has the burden to show that the information sought is outside the scope permitted under Rule 26(b)(1)'). |
| **[4] DISCOVERY MECHANISM** | ROG Nos. 8 and 9 directly; ECF No. 120 (pending Compel Motion — complete refusals are the paradigm case for Rule 37(a)(3)(B)(iii) motions to compel). |
| **[5] REQUIRED RESPONSE** | As to ROG No. 8: defendants must answer — at minimum — whether any FMLA-related complaints were filed against EBSCO entities in the last 5 years by any employee. Identity may be protected by a protective order but existence cannot be withheld entirely. As to ROG No. 9: defendants must identify which facts they were aware of before suit, with specific privilege assertions (by date, communication, and holder) for any information defendants contend is protected. |

## § 8.0  ROG No. 14 — The Most Consequential Misrepresentation: 'Plaintiff Did Not Report Any Complaints of FMLA Interference'

> **VERBATIM — ROG ANSWER NO. 14 (Certified June 3, 2026 under penalty of perjury)**
> *"Defendants state that Plaintiff did not report any complaints of FMLA interference and retaliation during his employment with EBSCO and that Defendants did not receive notice of any alleged complaints until EBSCO received Plaintiff's Charge of Discrimination from the Equal Employment Opportunity Commission, at which time Plaintiff's allegations were investigated by the office of EBSCO's General Counsel."*
> ROG Answer No. 14 (certified by Carroll, Collins, and Lull under Rule 33(b)(5))

## § 8.1  The Three Independent Contradictions to ROG Answer No. 14

| DEFENDANTS CERTIFY UNDER PERJURY (ROG Answer) | DEFENDANTS' OWN PRODUCED DOCUMENTS SHOW |
|---|---|
| **"Plaintiff did not report any complaints of FMLA interference and retaliation during his employment."** *ROG Answer No. 14 (certified under penalty of perjury, June 3, 2026)* | **The FMLA Designation Notice (EBSCO000025, produced in this package) confirms that defendants received Plaintiff's FMLA request and processed it. The letter from EBSCO Benefits Coordinator Caitlin DeFeo (EBSCO000031) states: 'Carolina let me know that you were in need of time away from work due to medical reasons. I wanted to send along our FMLA paperwork.' Plaintiff's request for FMLA leave is the foundational act of asserting FMLA rights — it is by definition a communication to defendants about FMLA.** *EBSCO000025 (Designation Notice); EBSCO000031 (FMLA paperwork transmittal letter)* |
| **"Defendants did not receive notice of any alleged complaints until EBSCO received Plaintiff's Charge of Discrimination from the EEOC."** *ROG Answer No. 14* | **Defendants admit in Dkt. 117 ¶¶ 34, 35, and 36 (their own Answer) that Plaintiff used FMLA leave on specific dates, that Lull emailed Plaintiff at 7:39 a.m. on April 12, 2023 (an FMLA use date), and at 6:36 a.m. on April 27, 2023 (another FMLA use date). Supervisory contact on FMLA leave dates was itself a form of notice that FMLA leave was being invoked and monitored. Defendants admitted this in their own pleading.** *Dkt. 117 ¶¶ 34–36 (defendants' own Answer — admissions re: FMLA use dates and early-morning emails)* |
| **"Defendants did not receive notice of any alleged complaints until [the EEOC Charge]."** *ROG Answer No. 14* | **The FMLA medical certification (EBSCO000026–000030) was submitted to EBSCO's Benefits Department before the EEOC Charge was filed. The certification constitutes formal notice of a serious health condition and the invocation of FMLA rights. Receiving and processing an FMLA certification is receipt of notice of FMLA-related circumstances — not a 'complaint' in the litigation sense, but unquestionably notice of the protected activity. Characterizing this as 'no notice until the EEOC Charge' requires ignoring the FMLA certification in defendants' own possession.** *EBSCO000026–000030 (FMLA medical certification — submitted to EBSCO Benefits)* |

## FORENSIC FINDING 11: ROG ANSWER NO. 14 — MATERIAL MISREPRESENTATION ABOUT FMLA NOTICE

| | |
|---|---|
| **[1] WHAT IT IS** | ROG Answer No. 14 certifies under penalty of perjury that 'Plaintiff did not report any complaints of FMLA interference and retaliation during his employment' and that defendants received no notice until the EEOC Charge. This statement, as applied to the produced documents, is materially false. |
| **[2] WHY IT IS IMPROPER** | Three categories of produced or admitted evidence contradict the certification: (1) the FMLA Designation Notice (EBSCO000025) proves defendants received and processed Plaintiff's FMLA request during employment; (2) defendants' own Answer (Dkt. 117 ¶¶34–36) admits awareness of FMLA use dates and supervisory contact on those dates; (3) the FMLA medical certification (EBSCO000026–000030) was received by defendants' Benefits Department before any EEOC Charge. The assertion that 'Plaintiff did not report any complaints' conflates a formal written complaint with the act of invoking FMLA rights, which itself constitutes notice of protected activity under the FMLA. |
| **[3] RULE VIOLATIONS** | Rule 33(b)(5) (certification of accuracy); Rule 26(e)(1) (duty to supplement materially incorrect answers); Rule 11(b)(3) (factual contentions must have evidentiary support). Additionally, the denial that defendants received notice of FMLA-related concerns is directly contrary to the FMLA's notice framework: 29 C.F.R. § 825.300 requires employers to designate leave as FMLA-protected when they have sufficient information — which defendants evidently had, since they issued the Designation Notice. Their own compliance with the FMLA notice protocol is evidence that they received notice. |

| | |
|---|---|
| **[4] DISCOVERY MECHANISM** | ROG No. 14; ROG No. 15; RFP No. 8 (FMLA leave documents); RFP No. 10 (FMLA application and utilization); Dkt. 117 ¶¶34–36 (defendants' prior admissions). |
| **[5] REQUIRED RESPONSE** | Defendants must supplement ROG Answer No. 14 to acknowledge: (a) that Plaintiff invoked FMLA rights during employment by submitting the FMLA medical certification; (b) that defendants received and processed the FMLA request; (c) that the Designation Notice was issued on May 1, 2023, during Plaintiff's employment; and (d) the identity of all persons at EBSCO who had knowledge of Plaintiff's FMLA leave at any point before the termination on May 25, 2023. |

## § 9.0  ROG No. 15 — The Accommodation Narrative and the Temporal Sequence It Cannot Survive

> **VERBATIM — ROG ANSWER NO. 15 (Certified June 3, 2026)**
> *"Defendants state that there were no 'complaint[s]' or 'expression[s] of concern' regarding Plaintiff's FMLA leave. Rather, Plaintiff applied for, and was granted, intermittent FMLA leave. After Plaintiff's leave was approved, Lull notified Plaintiff that if any internal deadlines fell on a day that Plaintiff used his intermittent FMLA leave, the deadline would be extended to account for each day of Plaintiff's leave."*
> ROG Answer No. 15 (certified under Rule 33(b)(5), June 3, 2026)

## § 9.1  The Sequence That the Accommodation Narrative Cannot Explain

| Date | Event | Significance |
|---|---|---|
| February 20, 2023 | **FMLA qualifying medical event** | Per FMLA medical certification (EBSCO000026–000030), the health condition onset date. This is 23 days before the PIP. Defendants' FMLA designation (EBSCO000025) designates leave retroactive only to April 11, 2023 — leaving 49 days undesignated. |
| March 15, 2023 | **Performance Improvement Plan issued (EBSCO000006)** | The PIP is issued 23 days after the qualifying medical event. The PIP itself references only future performance objectives — no specific past deadline failure is documented by project name, deadline date, and actual delivery date. |
| April 11, 2023 | **FMLA designation retroactive start date (EBSCO000025)** | The Designation Notice covers leave from April 11, 2023 onward — 49 days after the February 20 qualifying event. The 49-day gap between the qualifying event and the designation start date is unexplained in any produced document. |

| April 12, 2023 | **Lull emails Plaintiff at 7:39 a.m. (admitted — Dkt. 117 ¶35)** | Defendants admit this email occurred on an FMLA leave date. The accommodation narrative says Lull extended deadlines. The early-morning email suggests supervisory monitoring on leave dates. |
| April 27, 2023 | **Lull emails Plaintiff at 6:36 a.m. (admitted — Dkt. 117 ¶36)** | Second documented early-morning email on an FMLA use date. Defendants admit this in their own Answer. |
| May 19, 2023 | **Plaintiff's last FMLA use date (admitted — Dkt. 117 ¶34)** | Six days before termination. ROG Answer 15 says defendants were accommodating. The termination six days after the last FMLA use date contradicts the accommodation narrative. |
| May 25, 2023 | **Termination (EBSCO000010)** | 76 days after the PIP, 14 days before the June 5, 2023 PIP completion date, 6 days after the last FMLA use date. The termination occurs before the PIP period expires. |

---

**THE ACCOMMODATION NARRATIVE STRUCTURAL FAILURE**

ROG Answer No. 15 asserts that defendants accommodated Plaintiff's FMLA leave by extending deadlines. This assertion does not address the two most powerful evidentiary facts in the FMLA retaliation timeline: (1) the PIP was issued 23 days after the FMLA qualifying medical event — the first formal written performance action in 16 months of employment; and (2) Plaintiff was terminated on May 25, 2023 — 6 days after his last FMLA use date and 14 days before the PIP's own stated June 5, 2023 completion deadline. An accommodation narrative cannot explain why the only formal performance action in 16 months occurred 23 days after the FMLA event, or why termination occurred before the PIP period ended.

---

**FORENSIC FINDING 12:  ROG ANSWER NO. 15 — ACCOMMODATION NARRATIVE INCONSISTENT WITH TEMPORAL RECORD**

| *[1] WHAT IT IS* | ROG Answer No. 15 presents a narrative of full accommodation: FMLA leave approved, deadlines extended, no concerns expressed. This narrative does not account for: (a) the 23-day gap between the FMLA qualifying event and the PIP; (b) the 49-day designation gap (February 20 – April 10, 2023); (c) the early-morning emails on FMLA use dates; (d) the termination 6 days after the last FMLA use; (e) the termination 14 days before the PIP completion date. |
| *[2] WHY IT IS IMPROPER* | An interrogatory answer certified under penalty of perjury that presents a selective accommodation narrative while omitting the documented sequence contradicting that narrative violates Rule 33(b)(5)'s accuracy requirement. Defendants had access to all the dates — the FMLA certification, the Designation Notice, Dkt. 117 ¶¶34–36, and the PIP itself — when they certified Answer No. 15. The omission of the timeline is not inadvertence. |

| | |
|---|---|
| *[3] RULE VIOLATIONS* | Rule 33(b)(5) (accuracy); Rule 26(e) (supplementation required when answer is materially incomplete). Additionally, the failure to address the 49-day designation gap is independently significant: 29 C.F.R. § 825.301(a) requires employers to provide written designation within 5 business days of having sufficient information. Defendants had the certification by April 28, 2023 (per the Designation Notice) — and yet the designation runs only from April 11, not February 20. This gap, unexplained in any produced document or interrogatory answer, is itself a separate FMLA interference claim. |
| *[4] DISCOVERY MECHANISM* | ROG No. 15; RFP No. 8 (FMLA documents); Dkt. 117 ¶¶34–36 (admitted facts re: FMLA dates); EBSCO000025 (Designation Notice covering only April 11 – August 1); EBSCO000031 (FMLA paperwork letter dated April 20, 2023). |
| *[5] REQUIRED RESPONSE* | Defendants must supplement ROG Answer No. 15 to: (a) identify who was aware of the FMLA qualifying event on or around February 20, 2023; (b) explain why the FMLA designation does not cover the February 20 – April 10, 2023 period; (c) identify what, if any, FMLA-related communications occurred between February 20 and April 11, 2023; (d) explain the decision to terminate on May 25, 2023, which is 14 days before the PIP's own stated June 5 completion date; and (e) identify whether the termination decision was made before or after Plaintiff's May 19, 2023 FMLA leave date. |

## § 10.0  Round 2 Summary — ROG Nos. 1–15: Findings, Required Responses, and Compliance Deadline

| Finding | ROG(s) | Subject | Severity | Required Response |
|---|---|---|---|---|
| | | | | |

| 6 | 1, 2, 3, 4, 10, 11 | Rule 33(d) election deficiency — no specific document identification | HIGH | Supplement all six ROGs with specific Bates number or document identification for each; due within 7 days |
| 7 | 5 | Six certified false or contradicted statements — employer identity, termination date, performance narrative | CRITICAL | Supplement ROG 5 to correct employer, date, and performance basis; reconcile with FY22 Assessment |
| 8 | 6 | FY22 Year-End Assessment omitted from Rule 33(d) election — all objectives completed | CRITICAL | Supplement ROG 6 to specifically identify EBSCO000014–000017 as responsive; acknowledge completed objectives |
| 9 | 7 | Coaching emails mischaracterized as performance warnings; no documented deadline failures produced | HIGH | Supplement ROG 7 with specific project names, deadline dates, and delivery dates for each alleged failure |
| 10 | 8, 9 | Improper complete refusals to answer entire interrogatories | HIGH | Answer ROG 8 (at minimum: existence of other complaints); answer ROG 9 (factual pre-suit knowledge) |
| 11 | 14 | Material misrepresentation — 'Plaintiff reported no FMLA complaints' — contradicted by FMLA documentation in same package | CRITICAL | Supplement ROG 14; acknowledge FMLA request, certification, and Designation Notice; identify all persons with knowledge |
| 12 | 15 | Accommodation narrative omits 23-day PIP gap, 49-day designation gap, early-morning emails, premature termination | HIGH | Supplement ROG 15 to address the chronological sequence; explain 49-day designation gap; identify pre-termination decision timeline |

---

**CONFERRAL RESPONSE DEADLINE — MODULE 2**

Although a shorter response period would ordinarily be appropriate given the approaching discovery deadline, Plaintiff is providing Defendants fourteen (14) days from service of this Ledger as a matter of professional courtesy. Accordingly, all supplemental responses to the findings set forth herein shall be served no later than **July 12, 2026**. This deadline affords Defendants a reasonable opportunity to investigate, confer, and supplement their discovery responses while still permitting Plaintiff sufficient time to evaluate any supplementation before the July 22, 2026 discovery closure (ECF No. 139).

Any failure to supplement by **July 12, 2026** will be incorporated into Plaintiff's resulting Rule 37 motion and any other appropriate requests for relief filed before the close of discovery.

Respectfully submitted,                                                                 **Dated: June 26, 2026**

_____

**Mohamed Souleyman Ly**

Plaintiff, Pro Se and Whistleblower

mmmly7@gmail.com

**Certificate of Service:** I hereby certify that on June 26, 2026, a true and correct copy of the foregoing Forensic Production Ledger — Round 1 was transmitted via electronic mail to Matthew Lynch, Esq. (mlynch@littler.com) and Melissa L. McDonagh, Esq. (mmcdonagh@littler.com), Littler Mendelson, P.C), and to the Boston College Law School Federal Court Clinic (bclawclinic@bc.edu).

**UNITED STATES DISTRICT COURT**

**DISTRICT OF MASSACHUSETTS — WESTERN DIVISION**

| | |
|---|---|
| **MOHAMED SOULEYMAN LY,**<br>v.<br>**EBSCO INDUSTRIES, INC. et al.,**<br>Defendants. | **Civil Action No. 3:24-cv-30161-MGM**<br>Judge Mark G. Mastroianni<br>Magistrate Judge Christopher L. Morgan<br>Discovery Closure: July 22, 2026 |

# PLAINTIFF'S FORENSIC PRODUCTION LEDGER

## MODULE 3 OF 5

### INTERROGATORY-BY-INTERROGATORY FORENSIC ANALYSIS — ROG NOS. 16 THROUGH 25

*Including: The Payor Theory Dismantlement · The ROG 21 W-2 Inversion · The Damages Refusal · The Verification Defect*

---

Transmitted to: Ryan M. Lynch, Esq. (mlynch@littler.com) and Melissa L. McDonagh, Esq. (mmcdonagh@littler.com), Littler Mendelson, P.C.

From: Mohamed Souleyman Ly, Plaintiff Pro Se  ·  June 26, 2026

> **PART I — JUDICIAL SERVICE DOCUMENT**
> This section is intended for service upon defense counsel and submission to the Court.

## § 1.0  Round 3 Context — Completing the Interrogatory Ledger and Establishing the Damages Refusal Record

---

Rounds 1 and 2 of this Forensic Production Ledger established the governing framework, the temporal impossibility in the address records, and the forensic findings for ROG Nos. 1 through 15. Round 3 completes the interrogatory analysis, addressing ROG Nos. 16 through 25. This round contains the most structurally significant findings in the interrogatory production: the direct W-2 inversion of the perjury-certified employer identity claim (ROG 21); the complete and improper refusal to answer the economic damages interrogatory (ROG 19); the payor theory's statutory conflict with 26 U.S.C. § 3401(d)(1) (ROGs 22–23); the Collins entity designation maneuver (ROG 24); and the Lull verification defect that undermines the foundational validity of all 25 certified answers (ROG 25).

> **GOVERNING STANDARD — REAFFIRMED FOR MODULE 3**
> Lynch, June 4 and June 18, 2026: "If you can [1] identify what it is, [2] why you believe it was deleted, [3] why you believe that was improper, and you can... [4] identify which mechanism of discovery relates to it, [5] we will confer and respond." All five criteria are satisfied for every finding in this Round. The conferral commitment is again invoked. Supplemental responses to Rounds 1 and 2 remain outstanding. The July 22, 2026 discovery closure is 26 days from the date of this transmission.

## § 2.0  Master Interrogatory Response Status — ROG Nos. 16 Through 25

| ROG | Subject | Response Type | Key Produced Document | Primary Forensic Finding | Severity |
|---|---|---|---|---|---|
| 16 | All documents EBSCO used to investigate Plaintiff's allegations | Objection + partial answer — Carroll's office conducted the investigation | None produced | Conflict of interest: investigator (Carroll) is also the Rule 33(b)(5) certifier; investigation materials not produced | HIGH |
| 17 | All communications between EBSCO and any government agency re: Plaintiff | Complete refusal — 'will not respond' | None | IMPROPER REFUSAL — EEOC charge response, NLRB/DOL filings, state agency communications, Form 941 filings, and W-2C correspondence are all within scope; Rule 26(a)(1)(A)(iv) independently requires disclosure | HIGH |
| 18 | All insurance policies potentially covering Plaintiff's claims | Complete refusal — 'will not respond' | None | IMPROPER REFUSAL — Rule 26(a)(1)(A)(iv) requires automatic disclosure of insurance agreements; complete refusal violates a mandatory Rule 26 obligation, not a discretionary one | HIGH |
| 19 | All wages and benefits Plaintiff would have earned post-termination | Complete refusal — 'will not respond' | None | IMPROPER REFUSAL — defendants possess all wage data; refusal to answer the back-pay/front-pay damages interrogatory directly prejudices Plaintiff's ability to quantify statutory damages | CRITICAL |
| 20 | Final check: amount, date, and address sent | Partial answer — May 26, 2023; $9,361.39; to Wilbraham address | EBSCO000010 (termination letter — Salem address, same date) | Already addressed as Finding No. 3 in Round 1; Round 3 adds: the $9,361.39 amount requires reconciliation against the wage obligation through the stated termination date | HIGH |
| 21 | Identify Plaintiff's employer during employment | Answer: 'Plaintiff was at all times employed by EBSCO Publishing, Inc.' | EBSCO000032–034 (W-2s for 2021, 2022, 2023 — all show EII/EIN 63-6014186 as employer) | CRITICAL — the purest documented false statement in the production: perjury-certified employer claim directly inverted by perjury-certified W-2s in the same package | CRITICAL |
| 22 | Identify the entity that paid Plaintiff's wages and describe the payment structure | Answer: 'EBSCO Industries as payor for EBSCO Publishing pursuant to Treasury regulations' | No Treasury regulation identified; no produced document supports the payor structure | HIGH — the payor theory directly conflicts with 26 U.S.C. § 3401(d)(1) (payer = statutory employer); Treasury regulation cited but not identified | HIGH |
| 23 | Identify the intercompany agreement between EPI and EII re: payor relationship | Answer: 'pursuant to an intercompany agreement' | No intercompany agreement produced | CRITICAL — binary trap: if the agreement exists, it was withheld (Rule 34 violation); if it does not exist, the certified answer is false | CRITICAL |

| 24 | Identity and authority of the person(s) who decided to terminate Plaintiff | Answer: 'Tim Collins, CEO of EBSCO Information Services, and Tim Lull' | EBSCO000010 (termination letter — signed on behalf of EBSCO Information Services by HR department) | HIGH — Collins is identified as CEO of EIS, not EII; first appearance of this entity designation; self-defeating: if Collins leads EIS, EIS has its own CEO and independent authority — destroying EIS separateness argument | HIGH |
| 25 | Identify all persons who provided information used to answer these interrogatories | Verification statement — Carroll, Collins, Lull; 'not based on personal knowledge of any single individual' | Verification pages at end of ROG answers | CRITICAL — Lull's verification disclaims personal knowledge while signing under perjury; Carroll's title is incorrect; the verification itself is constitutionally defective under Rule 33(b)(5) | CRITICAL |

## § 3.0  Consolidated Forensic Finding — Three Improper Complete Refusals: ROG Nos. 17, 18, and 19

ROG Nos. 17, 18, and 19 each received the identical response: 'Defendants will not respond to this Interrogatory.' No narrowed answer, no privilege log, no proportionality analysis, no case citation. Three complete refusals on three categories of information that are either automatically required by Rule 26(a) or directly central to the claims in this action. Each is addressed separately below.

## § 3.1  ROG No. 17 — Communications with Government Agencies

> **VERBATIM — ROG ANSWER NO. 17 (Certified June 3, 2026 under Rule 33(b)(5))**
> *"Defendants object to this Interrogatory on the grounds that it is overbroad, not proportional to the needs of the case, and not reasonably calculated to lead to the discovery of admissible evidence. Defendants will not respond to this Interrogatory."*
> *ROG Answer No. 17 — Complete Refusal*

| Category of Government Communication | Why It Is Within ROG 17 Scope | Why It Cannot Be Withheld |
|---|---|---|
| **EEOC Charge Response and Position Statement** | ROG 17 asks for all communications between EBSCO and any government agency **concerning Plaintiff**. The EEOC charge was the event defendants cite in ROG Answer No. 14 as the first notice they received of Plaintiff's concerns. The position statement defendants filed with the EEOC in response to that charge is directly within scope. | The EEOC position statement is a non-privileged factual document submitted to a government agency. Defendants have no basis to withhold it. It was either consistent with the ROG answers (in which case producing it costs nothing) or inconsistent (in which case its suppression is dispositive evidence of fabrication). |
| **IRS Form 941 Quarterly Filings** | ROG 17 encompasses IRS communications. The Forms 941 for Q1 2021 through Q2 2023 are government submissions concerning Plaintiff's wages, employer identification, and payroll tax withholding. Defendants certified these forms under penalty of perjury — they are squarely within scope. | The Forms 941 independently establish the employer of record under 26 U.S.C. § 6011. Defendants cannot refuse to identify them while simultaneously relying on the payor theory in ROGs 22–23 without producing the forms that define who filed as employer. |
| **Massachusetts DUA / State Wage Agency Communications** | If any state wage, unemployment, or employer registration communications exist concerning Plaintiff's employment or termination, they are within scope of ROG 17 and independently subject to Rule 26(a)(1)(B). | State agency communications may contain employer designations that are inconsistent with both the W-2 records and the litigation position — particularly given the address and entity inconsistencies already documented in Rounds 1 and 2. |
| **W-2C Non-Issuance Communications** | Any communications with the IRS or Plaintiff regarding the W-2C demand (ROG 10) are within scope. | Defendants' refusal to issue W-2Cs and any accompanying IRS communications are directly relevant to the tax obstruction and tax filing prejudice claims. |

## § 3.2  ROG No. 18 — Insurance Policies: A Mandatory Rule 26(a) Disclosure

> **FEDERAL RULE OF CIVIL PROCEDURE 26(a)(1)(A)(iv) — MANDATORY AUTOMATIC DISCLOSURE**
>
> "A party must, without awaiting a discovery request, provide to the other parties: ... (iv) for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment." [Emphasis added.] This is not a discretionary disclosure. It is mandatory, automatic, and required without any discovery request. ROG No. 18 asks for what Rule 26(a)(1)(A)(iv) already requires. Defendants' complete refusal to answer ROG 18 is therefore simultaneously a violation of Rule 33 (refusal to answer interrogatory) and a continuing violation of Rule 26(a)(1)(A)(iv) (failure to automatically disclose).

## § 3.3  ROG No. 19 — The Economic Damages Refusal: The Most Prejudicial Withholding in This Production

> **VERBATIM — ROG ANSWER NO. 19 (Certified June 3, 2026 under Rule 33(b)(5))**
>
> *"Defendants object to this Interrogatory on the grounds that it is overbroad, calls for speculation, is not proportional to the needs of the case, and is not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object that this Interrogatory calls for a legal conclusion and expert opinion. Defendants will not respond to this Interrogatory."*
>
> *ROG Answer No. 19 — Complete Refusal*

| Objection Asserted | Why the Objection Fails |
|---|---|
| **"overbroad"** | ROG 19 asks for wages and benefits Plaintiff would have earned post-termination. This is a precisely bounded factual question: what was Plaintiff's salary, what were the benefits, and what would the continuation have been. It is not overbroad — it mirrors the standard back-pay calculation in every employment case. |
| **"calls for speculation"** | The question does not call for speculation. Defendants possess Plaintiff's salary data, the compensation structure, the benefits enrollment records, and the rate of compensation as of termination. These are historical facts in defendants' systems, not predictions. FMLA back pay is calculated from the date of violation to the date of judgment at the rate of compensation the employee would have received. 29 U.S.C. § 2617(a)(1)(A). That calculation requires exactly the information ROG 19 seeks. |
| **"not proportional to the needs of the case"** | The back-pay and front-pay calculation is the single largest quantifiable component of Plaintiff's damages. In an action where Plaintiff seeks in excess of thirty-five million dollars, the wage and benefits data underlying the damages calculation is among the most proportionally essential information in the entire case. Proportionality cannot be invoked to block production of the foundational damages data. |
| **"calls for a legal conclusion and expert opinion"** | The question asks what salary and benefits would have been earned. That is a factual question about a compensation structure that existed as of May 25, 2023. Defendants know what Plaintiff was paid. They know what benefits he had. Neither fact requires legal analysis or expert opinion. The legal characterization of damages is Plaintiff's task; the factual basis for that calculation is defendants' exclusive possession. |

> **THE PREJUDICE — WHAT DEFENDANTS' REFUSAL ACTUALLY ACCOMPLISHES**
>
> Defendants are the only parties who possess: (a) Plaintiff's exact compensation rate as of May 25, 2023; (b) the benefit plan values (health insurance, retirement contributions, life insurance, disability insurance) as of that date; (c) any merit increase schedule or anticipated compensation growth; (d) the compensation structure for Plaintiff's level and function. By refusing to answer ROG 19, defendants force Plaintiff to reconstruct all of this from third-party sources — subpoenas to Regions Bank, IRS filings, Benefits plan documents — while

simultaneously claiming that Plaintiff's damages figures are speculative. The refusal is designed to create the very speculation defendants then invoke as a basis for objection. This is the paradigm case for Rule 37(d)(1)(A)(ii) sanctions: a party's complete failure to answer an interrogatory that goes to the foundational damages calculation.

## FORENSIC FINDING 13: CONSOLIDATED IMPROPER COMPLETE REFUSALS — ROG NOS. 17, 18, AND 19

| | |
|---|---|
| **[1] WHAT IT IS** | ROG Nos. 17 (government agency communications), 18 (insurance policies), and 19 (post-termination wages and benefits) each received complete refusals. ROG 18 in particular asks for information that Rule 26(a)(1)(A)(iv) requires to be disclosed automatically, without any discovery request. ROG 19 asks for the foundational damages calculation data that is exclusively in defendants' possession. |
| **[2] WHY IT IS IMPROPER** | As to ROG 17: 'overbroad and not proportional' objections cannot support a complete refusal where at least some responsive documents (EEOC position statement, Form 941 filings, IRS correspondence) are clearly within scope and clearly not privileged. As to ROG 18: the insurance disclosure is mandatory under Rule 26(a)(1)(A)(iv). A complete refusal to answer an interrogatory seeking mandatory disclosure information is simultaneously a Rule 33 violation and a continuing Rule 26(a) violation. As to ROG 19: the back-pay/front-pay calculation is the most proportionally essential damages information in the case. Defendants cannot invoke proportionality to block production of data they exclusively possess and Plaintiff necessarily requires. |
| **[3] RULE VIOLATIONS** | Rule 33(b)(3) (must answer each interrogatory separately and fully); Rule 26(a)(1)(A)(iv) (mandatory automatic disclosure of insurance agreements — violated independently of ROG 18); Rule 37(d)(1)(A)(ii) (party's complete failure to serve answers subjects it to sanctions); Rule 26(g)(1)(B) (objection must not be interposed for |

| | |
|---|---|
| | an improper purpose). For ROG 19 specifically: 29 U.S.C. § 2617(a)(1)(A) (FMLA back pay is a statutory entitlement calculated from the rate of compensation the employee would have received — defendants possess this rate). |
| **[4] DISCOVERY MECHANISM** | ROG Nos. 17, 18, and 19 directly; Rule 26(a)(1)(A)(iv) (mandatory disclosure independently violated by ROG 18 refusal); ECF No. 120 (pending Compel Motion — complete refusals are the paradigm case for Rule 37(a)(3)(B)(iii) motions to compel with cost-shifting). |
| **[5] REQUIRED RESPONSE** | As to ROG 17: defendants must identify all government agency communications concerning Plaintiff, with specific privilege assertions (by document, date, and privilege holder) for any withheld item. As to ROG 18: defendants must disclose all insurance agreements pursuant to Rule 26(a)(1)(A)(iv). As to ROG 19: defendants must identify Plaintiff's salary rate as of May 25, 2023, the value of all benefits in which Plaintiff was enrolled as of that date, and the compensation structure applicable to Plaintiff's position. If defendants contend that any element of ROG 19 requires expert analysis, they must nevertheless provide the underlying factual data from which the calculation would be made. |

## § 4.0  ROG No. 21 — The W-2 Inversion: The Purest Documented False Statement in the Production

---

**THE SINGLE MOST DOCUMENTABLE FALSE STATEMENT IN THE JUNE 3, 2026 PRODUCTION**

ROG Answer No. 21 certifies under penalty of perjury that 'Plaintiff was at all times employed by EBSCO Publishing, Inc.' The W-2s for tax years 2021, 2022, and 2023 — produced in the same document package on the same date by the same counsel — identify the employer in Box c as 'EBSCO Industries, Inc.' under EIN 63-6014186. Both the interrogatory answer and the W-2 forms were certified under penalty of perjury. They state opposite facts about the same question. One is definitionally false. The W-2s cannot be false: they were separately certified to the IRS under 26 U.S.C. § 6051 at the time of issuance, and defendants have not produced any W-2C corrections. ROG Answer No. 21 is false.

---

**VERBATIM — ROG ANSWER NO. 21 (Certified June 3, 2026 under Rule 33(b)(5) under penalty of perjury)**

*"Defendants state that Plaintiff was at all times employed by EBSCO Publishing, Inc. EBSCO Publishing hired Plaintiff as its employee and was responsible for his work, his compensation, and his benefits. EBSCO Industries issued Plaintiff's paychecks and W-2s as EBSCO Publishing's payor, not as Plaintiff's employing entity, pursuant to applicable Treasury regulations. EBSCO Publishing then reimbursed EBSCO Industries for these payments, pursuant to an intercompany agreement."*

*ROG Answer No. 21 (certified under Rule 33(b)(5), June 3, 2026)*

| ROG ANSWER NO. 21 CERTIFIES (Under Penalty of Perjury, June 3, 2026) | DEFENDANTS' OWN W-2s CERTIFY (Under Penalty of Perjury, Tax Years 2021–2023) |
|---|---|
| **"Plaintiff was at all times employed by EBSCO Publishing, Inc."** *ROG Answer No. 21 — June 3, 2026* | **IRS Form W-2, Box c, Employer's name: 'EBSCO Industries, Inc.' — Tax Year 2021 (EBSCO000032)** *W-2 issued to Plaintiff, signed under 26 U.S.C. § 6051, Tax Year 2021* |
| **"EBSCO Publishing, Inc." — identified as the employing entity responsible for Plaintiff's work, compensation, and benefits** *ROG Answer No. 21* | **IRS Form W-2, Box c: 'EBSCO Industries, Inc.' — EIN 63-6014186 — Tax Year 2022 (EBSCO000033). Note: Box e (Employee's address) shows Salem, MA — further confirming the address inconsistency documented in Round 1, Finding No. 2.** *W-2 for Tax Year 2022 — EBSCO000033* |
| **"EBSCO Publishing, Inc." — same assertion for Tax Year 2023** *ROG Answer No. 21 (covers entire employment period)* | **IRS Form W-2, Box c: 'EBSCO Industries, Inc.' — EIN 63-6014186 — Tax Year 2023 (EBSCO000034). Note: Box e now shows 485 Glendale Rd, Wilbraham — the first year in which the Wilbraham address is chronologically possible.** *W-2 for Tax Year 2023 — EBSCO000034* |
| **"EBSCO Industries issued Plaintiff's paychecks and W-2s as EBSCO Publishing's payor, not as Plaintiff's employing entity"** *ROG Answer No. 21 — the payor theory* | **The W-2 forms do not contain an 'issued as payor' designation. Box c on a Form W-2 identifies the employer — not a payment intermediary. The IRS W-2 instructions for Box c state: 'Enter your name as shown on your Form 941.' Form 941 is the Employer's Quarterly Federal Tax Return. The W-2 employer box identifies the employer of record — definitionally.** *IRS Form W-2 Instructions, Box c; IRS Publication 15 (Employer's Tax Guide)* |

## § 4.1  Why the 'Payor' Theory Cannot Save ROG Answer No. 21

| Defendants' Theory | Why It Fails — Legal and Documentary |
|---|---|
| "EBSCO Industries issued paychecks as EBSCO Publishing's payor pursuant to applicable Treasury regulations" | No Treasury regulation is identified in ROG Answers 21, 22, or 23. No regulatory citation is provided. The theory invokes unnamed 'applicable Treasury regulations' without identifying a single section, subsection, or revenue ruling. This is a conclusory assertion dressed as a factual certification. Under Rule 33(b)(5), a certification must be based on 'knowledge, information, and belief' — not on unnamed regulatory authority. The verifying parties (Carroll, Collins, Lull) are not identified as having legal expertise, and the legal theory underlying the payor designation is not disclosed. |
| The W-2 Box c designates EII as employer — defendants say EII was merely the 'payor' | IRS Form W-2 Box c instructions require the employer to enter the name as shown on Form 941 (Employer's Quarterly Federal Tax Return). Form 941 is filed by the employer. If EII filed the Form 941 — as the payor theory implies — then EII is the employer for IRS purposes. The W-2 Box c and the Form 941 cannot both show EII if EII is merely a payment agent. The structure defendants describe does not exist within the W-2/941 framework: the entity in Box c is the employer of record, not the payment processor. |
| 26 U.S.C. § 3401(d)(1) — the statutory employer definition | 26 U.S.C. § 3401(d)(1) provides: 'if the person for whom the individual performs or performed the services does not have control of the payment of the wages for such services, the term employer means the person having control of the payment of such wages.' (Emphasis added.) Defendants have admitted that EII controlled the payment of wages (ROG 22: 'EBSCO Industries issued Plaintiff's paychecks'). Under § 3401(d)(1), the entity that controls payment of wages is the statutory employer — not an optional or alternative employer. The statute is mandatory. |
| The intercompany reimbursement theory does not transfer employer status | Even if an intercompany agreement existed — and no such agreement has been produced — the reimbursement of payroll costs from EPI to EII would not change who was the employer under § 3401(d)(1). The control-of-payment test is not altered by downstream cost reimbursement between related entities. If EII controlled all 43 payments, EII is the statutory employer under federal tax law, regardless of any subsequent intercompany accounting entry. |

**FORENSIC FINDING 14:**  ROG ANSWER NO. 21 — PERJURY-CERTIFIED EMPLOYER CLAIM DIRECTLY INVERTED BY PERJURY-CERTIFIED W-2s IN THE SAME PRODUCTION

| *[1] WHAT IT IS* | ROG Answer No. 21, certified under penalty of perjury on June 3, 2026, states that 'Plaintiff was at all times employed by EBSCO Publishing, Inc.' The W-2s for all three tax years of employment — produced in the same package on the same date — identify the employer in Box c as 'EBSCO Industries, Inc.' under EIN 63-6014186. Both certifications were made under penalty of perjury. They are contradictory on the single most material fact in this litigation. |
|---|---|
| *[2] WHY IT IS IMPROPER* | The contradiction between ROG Answer No. 21 and the W-2s is not a matter of interpretation. The W-2 employer box is a specific designated field that identifies the employer of record under IRS |

| | |
|---|---|
| | standards. Defendants produced both documents in the same package. The certifying parties (Carroll, Collins, Lull) had both in their possession when they certified. The inconsistency was either known (willfully false certification) or unidentified (failure of the reasonable inquiry required by Rule 33(b)(5)). |
| **[3] RULE VIOLATIONS** | Rule 33(b)(5) (accuracy of certification — the certified employer claim is contradicted by defendants' own co-produced documents); Rule 26(e)(1) (duty to supplement materially incorrect answers); 26 U.S.C. § 6051 (accuracy of W-2 forms — both the W-2 and the ROG answer cannot simultaneously be accurate); 26 U.S.C. § 3401(d)(1) (statutory employer definition — the entity controlling wage payment is the employer, and ROG 22 admits EII controlled payment). |
| **[4] DISCOVERY MECHANISM** | ROG No. 21 directly; EBSCO000032–000034 (the W-2s that contradict it); Rule 26(e)(1) (supplementation obligation); RFA No. 9 (pending admission that W-2s identified EPI in employer box — this ROG answer now contradicts even EPI employer theory by relying on 'EPI' while produced W-2s show 'EII'). |
| **[5] REQUIRED RESPONSE** | Defendants must: (a) supplement ROG Answer No. 21 to explain the inconsistency between the certified employer identification and the employer listed on all three produced W-2 forms; (b) identify the specific Treasury regulation under which the 'payor' designation appears in Box c of a Form W-2; (c) if defendants contend that EII issued the W-2s 'as payor for EPI,' produce documentation showing this arrangement was disclosed to the IRS at the time of issuance; and (d) identify whether any IRS filing, any state filing, or any government document in defendants' possession identifies EPI — not EII — as the employer during Plaintiff's employment period. |

## § 5.0  ROG Nos. 22 and 23 — The Payor Theory and the Phantom Intercompany Agreement: The Binary Trap Completed

The payor theory and the intercompany agreement were introduced in Round 1 of this Ledger as Forensic Finding No. 5. Round 3 completes the analysis with the statutory argument, the structural argument, and the binary trap formalized as a discovery obligation.

| ROG ANSWER NO. 22 (Verbatim) | ROG ANSWER NO. 23 (Verbatim) |
|---|---|
| *"EBSCO Industries issued Plaintiff's paychecks and W-2s as EBSCO Publishing's payor, not as Plaintiff's employing entity, pursuant to applicable Treasury regulations."* | *"EBSCO Industries issued Plaintiff's paychecks and W-2s as EBSCO Publishing's payor, not as Plaintiff's employing entity, pursuant to applicable Treasury regulations. EBSCO Publishing then reimbursed EBSCO Industries for these payments, pursuant to an intercompany agreement."* |

| Element | Analysis |
|---|---|
| **Treasury Regulation — Not Identified** | Both ROG Answers 22 and 23 cite 'applicable Treasury regulations' as the legal basis for the payor structure. Neither answer identifies a specific regulation, section, subsection, or revenue ruling. This is a conclusory invocation of unnamed legal authority in a perjury-certified fact answer. Rule 33(b)(5) requires that the answer be based on the certifying parties' knowledge, information, and belief. Citing unidentified 'applicable Treasury regulations' is not a factual statement — it is a legal conclusion without citation, certified as fact. |
| **26 U.S.C. § 3401(d)(1) — The Controlling Statute** | The statutory employer definition directly addresses the payor structure: 'if the person for whom the individual performs or performed the services does not have control of the payment of the wages for such services, the term employer means the person having control of the payment of such wages.' ROG Answers 22 and 23 admit that EII had control of payment ('EBSCO Industries issued Plaintiff's paychecks'). Under § 3401(d)(1), EII is therefore the statutory employer — not a payment agent for EPI. The statute forecloses the payor theory on its own terms. |
| **The Intercompany Agreement — The Binary Trap** | ROG Answer No. 23 states that EBSCO Publishing 'reimbursed EBSCO Industries for these payments, pursuant to an intercompany agreement.' This agreement has never been produced. It did not appear in the Rule 26(a) initial disclosures. It was not produced in response to RFP Nos. 19 or 27. It does not exist anywhere in the 132-page June 3 production. The binary trap is now fully set: (A) If the agreement exists: it was required to be produced under RFP Nos. 19 and 27, and its non-production is a Rule 34 violation subject to sanctions. Production will be compelled. (B) If the agreement does not exist: the perjury-certified interrogatory answer citing it is a false statement. There is no third option. |
| **First Appearance in This Litigation** | The payor theory and the intercompany agreement have never been referenced in any prior filing, any prior interrogatory response, any prior Rule 26 disclosure, or any prior conferral. They appear for the first time in a perjury-certified interrogatory answer filed 37 months after the events in question, 18 months after this litigation commenced, and after all other discovery channels have been exhausted. The timing is not incidental. A factual theory that first appears in sworn discovery responses — without contemporaneous documentation — after extensive litigation is a strong indicator of post-hoc construction. |
| **The EPI Incapacity Problem** | The payor theory requires EPI to have had legal existence sufficient to enter into an intercompany agreement with EII, to hire Plaintiff, and to direct his work. EPI was dissolved effective July 1, 2013. Under Del. Code Ann. tit. 8, § 278(b), a dissolved corporation retains no capacity beyond the three-year wind-up period, which expired July 1, 2016. EPI could not have entered into a valid intercompany agreement after July 1, 2016. The agreement defendants describe — governing an |

| | employment relationship from 2021 through 2023 — is legally impossible for EPI to have been a party to. |
|---|---|

### FORENSIC FINDING 15:  ROG ANSWERS 22 AND 23 — THE PAYOR THEORY CONFLICTS WITH THE STATUTORY EMPLOYER DEFINITION AND THE PHANTOM INTERCOMPANY AGREEMENT

| | |
|---|---|
| **[1] WHAT IT IS** | ROG Answers 22 and 23 introduce a 'payor' theory — EII issued wages as a payment agent for EPI — supported by an 'intercompany agreement' that has never been produced. Both answers are certified under penalty of perjury. No Treasury regulation is identified. The theory first appears in this litigation in these answers, 37 months after the events it purports to describe. |
| **[2] WHY IT IS IMPROPER** | The payor theory is directly refuted by 26 U.S.C. § 3401(d)(1), which makes the entity controlling wage payment the statutory employer. Defendants admit EII controlled all 43 payments. Under § 3401(d)(1), that makes EII the statutory employer — regardless of any intercompany agreement. The intercompany agreement itself was never produced, violating RFP Nos. 19 and 27. The unnamed 'applicable Treasury regulations' have not been identified, making the certification factually incomplete under Rule 33(b)(5). |
| **[3] RULE VIOLATIONS** | Rule 33(b)(5) (accuracy and completeness of certification — citing unidentified Treasury regulations as a factual basis is insufficient); Rule 34 (production of the intercompany agreement required by RFP Nos. 19 and 27); Rule 26(a)(1)(B) (documents defendants may use to support their defenses must be disclosed); 26 U.S.C. § 3401(d)(1) (the statutory employer definition forecloses the payor theory as stated). |
| **[4] DISCOVERY MECHANISM** | ROG Nos. 22 and 23; RFP Nos. 19 and 27 (demanding the intercompany agreement and all documents supporting the employer identity defense); Rule 26(a)(1)(B); the pending RFA No. |

| | |
|---|---|
| | 4 (requesting admission of the text of § 3401(d)(1)). |
| **[5] REQUIRED RESPONSE** | Defendants must: (a) identify the specific Treasury regulation(s) underlying the payor theory by section and subsection; (b) produce the intercompany agreement between EPI and EII or confirm in writing that no such agreement exists; (c) if the agreement exists, identify its execution date, the signatories, and the period it covers; (d) explain how EPI — dissolved since 2013 — was a legally capable party to any intercompany agreement executed for the purpose of governing an employment relationship from 2021 through 2023; and (e) reconcile the payor theory with the § 3401(d)(1) statutory employer definition. |

## § 6.0  ROG No. 24 — The Collins Entity Maneuver: A Self-Defeating Corporate Designation

> **VERBATIM — ROG ANSWER NO. 24 (Certified June 3, 2026 under Rule 33(b)(5))**
> *"Defendants state that Tim Collins, in his capacity as Chief Executive Officer of EBSCO Information Services, could terminate Plaintiff's employment but was not a decisionmaker in the termination. Instead, the decision to terminate Plaintiff's employment was made by Tim Lull, Gar Sydnor, and Liz Milligan, in consultation with EBSCO's Human Resources and Legal Departments."*
> ROG Answer No. 24 (certified under Rule 33(b)(5), June 3, 2026)

ROG Answer No. 24 contains a corporate designation that is new to this litigation and structurally self-defeating. Throughout this litigation — in the Answer, in all prior filings, in the deposition notice scope, and in all public records — Tim Collins has been identified as the Chief Executive Officer of EBSCO Industries, Inc. ROG Answer No. 24 now identifies him as 'Chief Executive Officer of EBSCO Information Services.' These are different entities. The entity designation has legal consequences that defendants do not appear to have considered.

| The Consequence Defendants Created | Why It Is Self-Defeating |
|---|---|
| **Collins identified as CEO of EBSCO Information Services** | If Tim Collins is the Chief Executive Officer of EBSCO Information Services, then EIS has its own CEO. A company with its own CEO is not a division, a department, or a conduit — it is a legally and operationally distinct entity with independent executive leadership. This designation directly contradicts any argument that EIS lacks independent corporate existence or is merely a cost center within EII. Defendants |

| | cannot simultaneously argue that EIS is not a separate employer (Defense No. 24) and that Collins exercises the authority of CEO within EIS. |
|---|---|
| **Collins as EIS CEO contradicts Defense No. 24** | Affirmative Defense No. 24 states: 'EBSCO Information Services was not Plaintiff's employer.' If EIS has its own CEO — and that CEO 'could terminate Plaintiff's employment' (ROG Answer 24's language) — then EIS exercised employment authority over Plaintiff. A company that has the authority to terminate an employee's employment is, by definition, an employer of that employee. ROG Answer No. 24 directly contradicts Defense No. 24 in the same certified answer package. |
| **First appearance of Collins/EIS designation** | In all prior filings, including Defendants' own Answer (ECF No. 117), Collins is identified in connection with EBSCO Industries, Inc. — not EIS. The Collins/EIS designation appears for the first time in the June 3, 2026 ROG answers. Like the payor theory, this new entity designation first surfaces in sworn discovery responses after extensive litigation, without contemporaneous documentation to support it. |
| **Decision-maker list is itself incomplete** | ROG Answer No. 24 identifies Lull, Sydnor, and Milligan as the termination decision-makers. Sydnor is identified as 'Executive Vice President — Library Management Systems and Software' — a business unit executive. Milligan is identified as 'Human Resources and Engagement Business Partner.' Neither appears in the deposition notice for the five designated witnesses. If either Sydnor or Milligan participated in the termination decision, defendants may need to supplement their initial disclosures and the deposition notice does not currently include them. |

### FORENSIC FINDING 16: ROG ANSWER NO. 24 — THE COLLINS/EIS CEO DESIGNATION: A SELF-DEFEATING CORPORATE ATTRIBUTION

| *[1] WHAT IT IS* | ROG Answer No. 24 identifies Tim Collins as 'Chief Executive Officer of EBSCO Information Services' — a designation that has not appeared in any prior filing. Collins has been identified throughout this litigation as the senior executive of EBSCO Industries, Inc. The EIS CEO designation is new, first appears in a certified interrogatory answer, and is unsupported by any produced organizational chart, governance document, or corporate resolution. |
|---|---|
| *[2] WHY IT IS IMPROPER* | If Collins is CEO of EIS, then EIS has independent executive leadership and operational authority. This directly contradicts Affirmative Defense No. 24, which asserts EIS was not Plaintiff's employer. A company with a CEO who has authority to terminate employees is an employer. The ROG answer and the affirmative defense cannot coexist. Additionally, the Collins/EIS designation has never appeared in any prior Rule 26 disclosure — if it is accurate, the initial disclosures must be supplemented. |

| | |
|---|---|
| **[3] RULE VIOLATIONS** | Rule 26(e)(1) (duty to supplement initial disclosures if Collins's role has been accurately identified for the first time in ROG 24); Rule 33(b)(5) (accuracy — if Collins is CEO of EII, not EIS, the certified answer is false); Rule 11(b)(3) (factual contention must have evidentiary support — the EIS CEO designation must be supported by corporate records). |
| **[4] DISCOVERY MECHANISM** | ROG No. 24; Rule 26(a)(1)(A)(i) (initial disclosures must identify persons with discoverable information — Collins's entity role is material); Deposition of Collins (this designation now frames Matter 4 of the 30(b)(6) examination and the Collins individual deposition scope). |
| **[5] REQUIRED RESPONSE** | Defendants must: (a) confirm Collins's accurate title and entity affiliation as of May 25, 2023 and as of June 3, 2026; (b) produce organizational charts or corporate governance documents identifying Collins's role within each entity; (c) identify whether Collins held simultaneous titles at EII and EIS; (d) supplement initial disclosures if the Collins/EIS designation is accurate and was not previously disclosed; and (e) explain how the Collins/EIS CEO designation is consistent with Affirmative Defense No. 24. |

## § 7.0  ROG No. 25 — The Lull Verification Defect: A Hollow Foundation for 25 Perjury-Certified Answers

**VERBATIM — LULL VERIFICATION STATEMENT (Appearing at End of ROG Answers, June 3, 2026)**

*"I, Timothy Lull, state that I have read the foregoing Answers to Interrogatories and that the statements contained herein are not based on the personal knowledge of any single individual, but rather are based on information obtained from the records of EBSCO and from various employees thereof. Subject to the foregoing, and based on the information currently available to me, I verify and affirm under the penalties of perjury that the facts contained therein are true and accurate to the best of my knowledge, information and belief."*

*Lull Verification Statement, Defendants' Answers to Plaintiff's First Set of Interrogatories, June 3, 2026*

| Defect in the Lull Verification | Legal Analysis |
|---|---|
| **Disclaimer of personal knowledge while certifying under perjury** | Rule 33(b)(5) requires the signing party to verify that the answers are true and correct 'to the best of their knowledge, information, and belief.' Lull's verification states the answers 'are not based on the personal knowledge of any single individual.' These two propositions cannot coexist. Perjury requires personal knowledge of the truth or falsity of the statement made. Lull cannot certify under penalty of perjury that statements are true while simultaneously disclaiming that they are based on his personal knowledge. A perjury certification without personal knowledge is either a meaningless formality or an impossibility. |
| **'Various employees thereof' — unidentified sources** | The verification states answers were 'based on information obtained from the records of EBSCO and from various employees thereof.' The 'various employees' are not identified. Under Rule 33(b)(5), the corporation must verify through 'an officer or agent' — a specific identified person who can be held accountable for the accuracy of the statement. Verification based on unnamed 'various employees' has no identified accountable person. If the answers are wrong, there is no identifiable perjurer beyond the nominal signatory who has disclaimed personal knowledge. |
| **Carroll's verification — title remains incorrect** | Carroll's verification identifies her as 'Executive Vice President, Human Resources, EBSCO Information Services.' As documented in Round 1, Finding No. 4, this is inconsistent with her identification in all other litigation filings as General Counsel of EBSCO Industries, Inc. The verification therefore contains an inaccurate identification of the verifying party's role and entity — an independent ground of deficiency under Rule 33(b)(5). |
| **Collins's verification — accuracy not addressed separately** | Collins's verification does not contain the same personal knowledge disclaimer as Lull's. Collins simply verifies that 'the facts contained herein are true and accurate to the best of my knowledge, information and belief.' This is technically compliant in form — but Collins is simultaneously a named defendant and a named witness in this action, and his certification of ROG Answers 21–24 (which address his own entity designation and decision-making role) raises the question of whether his self-serving certifications warrant greater scrutiny at deposition. |

**THE SYSTEMIC CONSEQUENCE — WHAT A DEFECTIVE VERIFICATION DOES TO 25 CERTIFIED ANSWERS**

If Lull's verification is legally defective — because it simultaneously disclaims personal knowledge and certifies under penalty of perjury — then every interrogatory answer purportedly verified by Lull lacks a valid Rule 33(b)(5) certification. This does not automatically make the answers deemed admitted (Rule 36 operates differently from Rule 33). But it does mean: (a) defendants cannot rely on the certified answers as sworn evidence at summary judgment or trial without producing a corrected verification; (b) the verification defect is grounds for a Rule 37 motion to deem the answers unverified and to compel proper re-verification; and (c) the defect is independently relevant to the credibility of the certifying parties as witnesses at deposition and trial.

## FORENSIC FINDING 17:  THE LULL VERIFICATION — DISCLAIMER OF PERSONAL KNOWLEDGE WITHIN A PERJURY CERTIFICATION

| | |
|---|---|
| **[1] WHAT IT IS** | The Lull verification accompanying Defendants' June 3, 2026 interrogatory answers states that the answers 'are not based on the personal knowledge of any single individual, but rather are based on information obtained from the records of EBSCO and from various employees thereof.' Lull then certifies under 'penalties of perjury' that the facts are 'true and accurate to the best of my knowledge, information and belief.' |
| **[2] WHY IT IS IMPROPER** | A perjury certification requires the certifying party to know the truth or falsity of the statement made — which requires personal knowledge of the underlying facts or a good-faith belief based on identified sources. Lull's verification disclaims personal knowledge and attributes the answers to unnamed 'various employees.' This is internally contradictory: Lull cannot certify personal belief in the truth of statements while stating those statements are not based on personal knowledge. Federal Rule of Civil Procedure 33(b)(5) requires the signatory to verify on behalf of the corporation — but verification requires an identified accountable person with a defined basis of knowledge. |
| **[3] RULE VIOLATIONS** | Rule 33(b)(5) (verification must be by an officer or agent with sufficient knowledge to certify accuracy); Rule 33(b)(3) (each interrogatory must be answered fully by a person with sufficient knowledge to do so); 28 U.S.C. § 1746 (unsworn declaration under penalty of perjury requires personal knowledge of the declarant). |
| **[4] DISCOVERY MECHANISM** | ROG No. 25 (identification of persons providing information — Lull's verification itself is the predicate for this interrogatory); the Lull verification pages at the end of the June 3 production; ECF No. 120 (pending Compel |

| | |
|---|---|
| | Motion — verification deficiency supports the motion). |
| **[5] REQUIRED RESPONSE** | Defendants must: (a) provide a corrected verification from Lull, or remove Lull as a verifying party and identify which officer or agent with personal knowledge replaces him; (b) provide a corrected verification from Carroll with her accurate title and entity affiliation; (c) identify the 'various employees' whose information was incorporated into the interrogatory answers, consistent with ROG Answer No. 25 (identifying all persons who provided information used to prepare the answers); and (d) supplement ROG Answer No. 25 to specifically identify each employee who contributed factual information used in preparing each answer. |

## § 8.0  ROG No. 16 — The Carroll Investigation: The Same Person Who Investigated Is the Same Person Who Certified

> **VERBATIM — ROG ANSWER NO. 16 (Certified June 3, 2026 under Rule 33(b)(5))**
> *"Defendants state that upon receiving Plaintiff's Charge of Discrimination, the matter was investigated by EBSCO's General Counsel's office. Carroll and others in the General Counsel's office conducted the investigation, including reviewing relevant documents and conducting interviews. The results of this investigation were privileged, but Defendants will disclose that they did not find any merit in Plaintiff's claims."*
> *ROG Answer No. 16*

| Issue | Analysis |
|---|---|
| **Carroll investigated and Carroll certified** | Carroll is identified in ROG Answer No. 16 as conducting the investigation into Plaintiff's EEOC charge. Carroll is also one of the three Rule 33(b)(5) certifying parties for all 25 interrogatory answers. The same individual who conducted the investigation (whose results she characterized as finding 'no merit') is the same individual who certified under penalty of perjury that the company's litigation positions are accurate. The certifier's investigative conclusion is not independent — it is self-ratifying. |
| **Investigation materials not produced** | ROG Answer No. 16 asserts that investigation results are 'privileged.' This blanket privilege assertion requires a privilege log under Rule 26(b)(5)(A). No privilege log has been produced as of this transmission. The investigation documents — including interview summaries, document review notes, and the final report — must be logged if they exist and defendants intend to withhold them. |
| **The 'no merit' conclusion is not responsive** | ROG No. 16 asks for documents used to investigate. The answer provides Carroll's legal conclusion ('no merit') rather than an inventory of documents. These are different |

| | | | | |
|---|---|---|---|---|
| | | things. The interrogatory asks what was reviewed; the answer tells us what was concluded. This is non-responsive under Rule 33(b)(3). | | |

## § 9.0  Round 3 Summary — ROG Nos. 16–25: All Findings, Required Responses, and the Consolidated Deadline

| Finding | ROG(s) | Subject | Severity | Required Response |
|---|---|---|---|---|
| 13 | 17, 18, 19 | Three improper complete refusals — government communications, insurance, and economic damages | CRITICAL (ROG 19) HIGH (ROGs 17, 18) | Answer all three; produce insurance under Rule 26(a)(1)(A)(iv); provide wage and benefits data for ROG 19 |
| 14 | 21 | Perjury-certified employer claim (EPI) directly inverted by perjury-certified W-2s (EII) in same package | CRITICAL | Supplement ROG 21; reconcile employer designation with W-2 Box c; identify specific Treasury regulation for payor theory |
| 15 | 22, 23 | Payor theory conflicts with § 3401(d)(1); phantom intercompany agreement never produced | CRITICAL | Produce the intercompany agreement or correct ROG 23; identify specific Treasury regulation; address § 3401(d)(1) conflict |
| 16 | 24 | Collins designated as CEO of EIS — self-defeating; contradicts Defense No. 24 | HIGH | Confirm Collins's accurate title and entity; produce organizational documentation; supplement initial disclosures |
| 17 | 25 | Lull verification disclaims personal knowledge while certifying under perjury | CRITICAL | Provide corrected Lull verification or replace Lull as certifier; correct Carroll title; identify 'various employees' |
| — | 16 | Carroll investigated and certified; investigation materials withheld without privilege log | HIGH | Produce privilege log per Rule 26(b)(5)(A); supplement ROG 16 with document inventory; answer what documents were reviewed |

## § 9.1  Consolidated Findings Across All Three Rounds — Complete Inventory

| Finding | Round | Subject | Severity | Status |
|---|---|---|---|---|
| 1 | 1 | Address temporal impossibility — Wilbraham address on November 2021 stubs | CRITICAL | Response Overdue |
| 2 | 1 | Four-address internal inconsistency — 2022 W-2 vs. 2022 payroll stubs | HIGH | Response Overdue |
| 3 | 1 | ROG 20 (Wilbraham) vs. termination letter (Salem) — same-day contradiction | HIGH | Response Overdue |
| 4 | 1 | Carroll title discrepancy — EVP HR at EIS vs. General Counsel at EII | HIGH | Response Overdue |
| 5 | 1 | Phantom intercompany agreement — cited in ROG 22/23, never produced | CRITICAL | Response Overdue |
| 6 | 2 | Rule 33(d) deficiency — ROGs 1, 2, 3, 4, 10, 11 — no specific document identification | HIGH | Response Due July 12 |
| 7 | 2 | ROG 5 — six certified false or contradicted statements | CRITICAL | Response Due July 12 |

| 8 | 2 | ROG 6 — FY22 Assessment (all objectives completed) omitted from Rule 33(d) election | CRITICAL | Response Due July 12 |
| 9 | 2 | ROG 7 — coaching emails mischaracterized as warnings; no documented deadline failures | HIGH | Response Due July 12 |
| 10 | 2 | ROGs 8, 9 — improper complete refusals | HIGH | Response Due July 12 |
| 11 | 2 | ROG 14 — 'no FMLA complaints reported' directly contradicted by produced FMLA documents | CRITICAL | Response Due July 12 |
| 12 | 2 | ROG 15 — accommodation narrative inconsistent with temporal record | HIGH | Response Due July 12 |
| 13 | 3 | ROGs 17, 18, 19 — three improper complete refusals including mandatory insurance disclosure | CRITICAL | Response Due July 5 |
| 14 | 3 | ROG 21 — EPI employer claim inverted by produced W-2s naming EII | CRITICAL | Response Due July 5 |
| 15 | 3 | ROGs 22, 23 — payor theory conflicts with § 3401(d)(1); intercompany agreement not produced | CRITICAL | Response Due July 5 |
| 16 | 3 | ROG 24 — Collins/EIS CEO designation contradicts Defense No. 24 | HIGH | Response Due July 5 |
| 17 | 3 | ROG 25/Verification — Lull disclaimer of personal knowledge in perjury certification | CRITICAL | Response Due July 5 |

**CONSOLIDATED CONFERRAL RESPONSE DEADLINE — MODULES 1 THROUGH 3**
**CONSOLIDATED CONFERRAL RESPONSE DEADLINE — MODULES 1 THROUGH 5**

Plaintiff is serving all five rounds of this Forensic Production Ledger simultaneously on June 28, 2026. Although shorter response periods would ordinarily be warranted given the approaching discovery deadline, Plaintiff is providing Defendants fourteen (14) days from service as a matter of professional courtesy. Accordingly, all supplemental responses to the findings contained in Rounds 1 through 5 shall be served no later than **July 12, 2026**.

Discovery in this action closes on **July 22, 2026** (ECF No. 139). The July 12 deadline affords Defendants a reasonable opportunity to investigate, confer, and supplement their discovery responses while preserving sufficient time for Plaintiff to evaluate any supplementation before the close of discovery. If Defendants fail to provide adequate supplemental responses by **July 12, 2026**, Plaintiff will incorporate those deficiencies into a consolidated Rule 37 motion, supported by this Forensic Production Ledger (Rounds 1 through 5) as the factual and procedural record.

Respectfully submitted,                                                                 **Dated: June 26, 2026**

_____
**Mohamed Souleyman Ly**
Plaintiff, Pro Se and | Whistleblower | mmmly7@gmail.com

**Certificate of Service:** I hereby certify that on June 26, 2026, a true and correct copy of the foregoing Forensic Production Ledger — Round 1 was transmitted via electronic mail to Matthew Lynch, Esq. (mlynch@littler.com) and Melissa L. McDonagh, Esq. (mmcdonagh@littler.com), Littler Mendelson, P.C), and to the Boston College Law School Federal Court Clinic (bclawclinic@bc.edu).

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS — WESTERN DIVISION

| | |
|---|---|
| **MOHAMED SOULEYMAN LY,**<br>v.<br>**EBSCO INDUSTRIES, INC. et al.,**<br>Defendants. | **Civil Action No. 3:24-cv-30161-MGM**<br>Judge Mark G. Mastroianni<br>Magistrate Judge Christopher L. Morgan<br>Discovery Closure: July 22, 2026 |

# PLAINTIFF'S FORENSIC PRODUCTION LEDGER

### MODULE 4 OF 5

### DOCUMENT PRODUCTION FORENSIC ANALYSIS — RFP NOS. 1 THROUGH 32

*Withholding Log · Spoliation Markers · Rule 34 Deficiency Analysis*

Transmitted to: Ryan M. Lynch, Esq. (mlynch@littler.com) and Melissa L. McDonagh, Esq. (mmcdonagh@littler.com), Littler Mendelson, P.C.

From: Mohamed Souleyman Ly, Plaintiff Pro Se · June 26, 2026

### PART I — JUDICIAL SERVICE DOCUMENT
This section is intended for service upon defense counsel and submission to the Court.

## § 1.0  Round 4 Context — The Document Production: What Was Demanded, What Was Produced, What Was Withheld

Rounds 1 through 3 of this Forensic Production Ledger addressed the governing framework, the address temporal impossibility, and the complete interrogatory response analysis across ROG Nos. 1–25. Round 4 addresses the document production: Defendants' Responses to Plaintiff's First Request for Production of Documents (RFP Nos. 1–32), and the produced documents Bates-labeled EBSCO000001 through EBSCO000060 and beyond. This round constructs a complete forensic inventory of what was demanded, what was produced, what was withheld without a privilege log, and what is conspicuously absent from a production that should be far more comprehensive than what was delivered.

**THE THRESHOLD DEFICIENCY — PRODUCTION SCOPE AND FORMAT**
Defendants' 32 document production responses were bundled into a single 132-page combined PDF alongside the interrogatory answers. Rule 34(b)(2)(E)(i) requires that documents be produced either as they are kept in the usual course of business, or organized and labeled to correspond to the categories in the request. A single undifferentiated PDF combining interrogatory answers, document production responses, and produced documents does not satisfy either standard. The burden of sorting which produced document responds to which RFP has been shifted entirely to Plaintiff — the precise inversion of Rule 34's purpose. This threshold deficiency applies to every RFP response in this Round.

## § 2.0  Master Document Production Status — RFP Nos. 1 Through 32

| RFP | What Was Demanded | What Was Produced | What Was Withheld / Missing | Bates (Produced) | Severity |
|---|---|---|---|---|---|
| 1 | Complete personnel file — all employment documents from hire through separation | Offer letter; FY22/FY23 assessments; PIP; W-2s; payroll stubs; termination letter; FMLA documents | Background check; onboarding forms; signed acknowledgments; disciplinary file (complete); separation agreement; benefits enrollment; all HR system entries | EBSCO000006–034 | HIGH |
| 2 | Organizational charts showing Plaintiff's position and all reporting lines | NONE PRODUCED | Complete refusal — objection only. No org chart produced for any EBSCO entity at any date during employment | None | HIGH |
| 3 | Documents establishing corporate structure of all EBSCO entities | NONE PRODUCED | Complete refusal. No corporate structure documents, articles of incorporation, operating agreements, or governance records produced | None | CRITICAL |
| 4 | Insurance policies potentially covering Plaintiff's claims | NONE PRODUCED | Complete refusal — mirrors ROG 18 refusal; violates Rule 26(a)(1)(A)(iv) independently | None | HIGH |
| 5 | All communications regarding Plaintiff's hiring | Offer letter only (EBSCO000022–023) | Recruiting records; hiring committee communications; job posting; background check report; compensation authorization | EBSCO000022–023 | HIGH |
| 6 | All compensation plans, policies, and structures applicable to Plaintiff | NONE PRODUCED | No compensation structure document, salary band, or bonus plan produced | None | HIGH |
| 7 | All performance management and disciplinary policies | PIP document produced (EBSCO000006–009) | The underlying performance management policy document referenced in PIP not produced; corrective action policy not produced | EBSCO000006–009 | MEDIUM |
| 8 | All FMLA-related documents including applications, approvals, and communications | Designation Notice; FMLA certification; DeFeo letter (EBSCO000025–031) | Internal FMLA tracking records; HR system FMLA entries; communications about the 49-day designation gap; any FMLA denial records | EBSCO000025–031 | HIGH |
| 9 | All reasonable accommodation requests and responses | NONE PRODUCED | No accommodation request documents; no accommodation analysis; no interactive process records | None | HIGH |
| 10 | All FMLA leave records including tracking and utilization | FMLA Designation Notice only | FMLA leave tracking records from HR system; absence management entries; leave calendar records | EBSCO000025 | HIGH |
| 11 | All employee benefit plans and enrollment records | W-2s showing deductions (EBSCO000032–034) | ERISA plan documents; Summary Plan Descriptions; benefits enrollment records; COBRA election/notice; retirement plan records | EBSCO000032–034 | HIGH |
| 12 | All complaints, charges, or grievances filed against Defendants by any employee | NONE PRODUCED | No complaint records; no EEOC charge history; objection only | None | HIGH |
| 13 | All compensation data including pay rates, increases, and bonus payments | Payroll stubs (EBSCO000035+); W-2s (EBSCO000032–034) | IRS Forms 941; payroll registers; compensation authorization records; merit increase documentation; sign-on bonus authorization | EBSCO000032–060+ | HIGH |
| 14 | All performance reviews and evaluations | FY22 Year-End Assessment (EBSCO000014–017); FY23 Mid-Year (EBSCO000018–021) | FY21 Year-End Assessment (if any); FY22 Mid-Year Assessment; FY23 Year-End (partial); any pre-hire or 90-day review | EBSCO000014–021 | HIGH |
| 15 | All Performance Improvement Plans including drafts and approval records | Final PIP (EBSCO000006–009) | All PIP drafts; PIP approval chain documentation; legal review of PIP; HR approval records; any prior PIP for any EBSCO employee | EBSCO000006–009 | HIGH |

| # | Request | Produced | Outstanding / Deficiency | Bates | Priority |
|---|---------|----------|--------------------------|-------|----------|
| 16 | All documents relating to the decision to terminate Plaintiff | Termination letter (EBSCO000010) | Termination approval chain; termination authorization records; HR termination form; separation agreement if any; legal review of termination decision; communications about termination | EBSCO000010 | CRITICAL |
| 17 | All communications between Defendants and Plaintiff | Lull emails Nov. 8–9, 2022 (EBSCO000001–002); separation documents | Complete email thread history between Lull and Plaintiff; Collins communications to/from Plaintiff; HR communications; any communications after ROG 14 events | EBSCO000001–002 | HIGH |
| 18 | All communications among Defendants about Plaintiff | Lull Nov. 8–9 emails (EBSCO000001–002) only | Carroll-to-Lull communications; HR-to-Legal communications; Collins communications about Plaintiff; Sydnor communications; any communications referencing Plaintiff's FMLA leave | EBSCO000001–002 | CRITICAL |
| 19 | Documents re: payor relationship between EPI and EII, and any intercompany agreement | NONE PRODUCED | The intercompany agreement cited in ROG Answer No. 23 not produced; no payor relationship documents; no Treasury regulation identification; no EPI-EII financial arrangement documents | None | CRITICAL |
| 20 | All payroll records — registers, disbursements, authorizations, bank records | 43 payroll stubs (EBSCO000035–060+) | Payroll registers; bank disbursement records; Regions Bank account statements; payroll authorization records; payroll system configuration records | EBSCO000035–060+ | CRITICAL |
| 21 | All tax records — W-2s, Form 941s, state filings, EIN records | W-2s (EBSCO000032–034) | IRS Forms 941 (Q1 2021 – Q2 2023); state unemployment tax filings; Massachusetts wage reporting filings; W-9 certifications (Rice/Ballard); EIN registration records | EBSCO000032–034 | CRITICAL |
| 22 | All documents establishing legal and corporate status of EBSCO entities | NONE PRODUCED | Articles of incorporation; operating agreements; dissolution records; merger certificates; Alabama and Delaware corporate filings; annual reports | None | CRITICAL |
| 23 | All documents pertaining to EPI — existence, capacity, dissolution | NONE PRODUCED | Delaware Certificate of Merger (July 1, 2013); EPI corporate records post-2013; any documents establishing EPI's claimed authority to employ Plaintiff | None | CRITICAL |
| 24 | All documents pertaining to EIS — formation, governance, authority | NONE PRODUCED | EIS formation documents; operating agreement; organizational authority records | None | HIGH |
| 25 | All documents pertaining to EII — formation, governance, payroll authority | NONE PRODUCED | EII articles of incorporation; Regions Bank account authorization records; signatory authority documentation | None | CRITICAL |
| 26 | All documents concerning any merger, dissolution, or restructuring of EBSCO entities | NONE PRODUCED | May 22, 2013 merger press release (on defendants' own website but not produced); Delaware Certificate of Merger; merger agreement; restructuring records | None | CRITICAL |
| 27 | All documents relied upon in drafting the Answer and interrogatory responses | Selected documents from personnel file only | All documents reviewed by Carroll's office in the investigation; documents forming basis for payor theory; documents reviewed before certifying ROG answers; any legal research underlying the employer identity defense | EBSCO000001–060+ | CRITICAL |
| 28 | Litigation hold notice and all preservation records | NONE PRODUCED | Defendants' internal litigation hold notice (issued by Carroll); compliance confirmations from each department; preservation instructions to IT; any ESI preservation reports | None | HIGH |

| 29 | All communications among Defendants, their agents, and counsel about this litigation (non-privileged factual layer) | NONE PRODUCED | Non-privileged factual communications between executives and HR/legal about Plaintiff's status; Carroll's factual communications with HR about the FMLA-to-PIP sequence (non-privileged factual layer) | None | HIGH |
| 30 | All electronically stored information (ESI) responsive to any RFP | Selected documents as above | SAP SuccessFactors audit logs; email metadata; payroll system audit logs; HR system change logs; CDN/website configuration logs for HTTP 403 implementation | Limited | CRITICAL |
| 31 | Privilege log for all withheld documents | NONE PRODUCED | No privilege log produced despite active withholding across multiple RFPs. Rule 26(b)(5)(A) requires a log describing the nature, date, author, recipient, and privilege basis for each withheld document | None | CRITICAL |
| 32 | All deleted, modified, or inaccessible ESI responsive to any RFP | NONE PRODUCED | SAP SuccessFactors profile access/modification records post-November 14, 2024; payroll system records showing address field history; any HR system records modified after litigation hold | None | CRITICAL |

## § 3.0  Critical Withholding Analysis — Five Categories of Non-Production

The 32 RFP responses reveal five distinct categories of non-production, each addressed by a separate forensic finding. Together they establish a systematic pattern of selective disclosure: defendants produced the documents most helpful to the performance narrative (the PIP, selected Lull emails) while withholding the documents most harmful to their positions (corporate structure records, the intercompany agreement, Form 941 filings, communications about the termination decision, the SAP audit log, and the no-privilege-log withholding).

| Category | RFPs Affected | Documents Withheld | Core Legal Violation |
|---|---|---|---|
| A | RFPs 3, 22, 23, 24, 25, 26 | Corporate structure, entity formation, dissolution records, merger documents | Rule 34 — required production of documents establishing the corporate relationships at the center of Defenses 23 and 24; Rule 26(a)(1)(B) — documents defendants may use to support their defenses must be disclosed |
| B | RFPs 19, 27 | The intercompany agreement cited in ROG 23; all documents underlying the payor theory | Rule 34 — specific demand for payor relationship documents; Rule 26(g)(1) — certification that response is complete; Rule 26(e) — supplementation obligation when answer relies on produced documents |
| C | RFPs 13, 20, 21 | IRS Forms 941; payroll registers; W-9 certifications; state tax filings | Rule 34 — these are business records in defendants' possession; Rule 26(a)(1)(B) — government filings defendants may use to support their positions must be produced |
| D | RFPs 16, 17, 18, 29 | Termination decision records; communications among defendants about Plaintiff; HR-Legal communications; Carroll-Lull communications | Rule 34 — direct demand for these communications; Rule 26(a)(1)(A)(i) — persons with discoverable information (Sydnor, Milligan, Carroll) must be identified with their communications |
| E | RFPs 30, 31, 32 | ESI — SAP SuccessFactors audit logs; payroll system change logs; HR system modification records; no privilege log produced despite active withholding | Rule 34(b)(2)(E)(iii) — ESI must be produced in a reasonably usable form; Rule 26(b)(5)(A) — privilege log mandatory when documents are withheld on privilege grounds |

## § 4.0  Forensic Finding No. 18 — The Corporate Identity Blackout: RFP Nos. 2, 3, 22, 23, 24, 25, and 26

RFP Nos. 2, 3, 22, 23, 24, 25, and 26 collectively demand all documents establishing the corporate structure, legal status, entity relationships, and merger/dissolution history of every EBSCO entity involved in this litigation. Not a single document was produced in response to any of these seven requests. Defendants' employer identity defenses (Defenses 23 and 24) rest entirely on the assertion that EII and EIS are distinct legal entities with no employer relationship to Plaintiff. The corporate structure documents that would establish — or contradict — that assertion have been systematically withheld.

| RFP | Specific Demand | Why These Documents Must Exist | Why Non-Production Is Improper |
|---|---|---|---|

| | | | |
|---|---|---|---|
| 2 | Organizational charts showing Plaintiff's reporting lines and position | Every company maintains organizational charts. EBSCO, with thousands of employees across multiple subsidiaries, necessarily maintains organizational charts. Plaintiff's personnel file (offer letter, PIP) references reporting lines to Lull within 'EBSCO Information Services.' An organizational chart would establish exactly which entity Plaintiff reported through. | Rule 34 requires production of documents responsive to a specific request. Defendants cannot object to an organizational chart request on the grounds that such documents are irrelevant — the employer identity defense makes the corporate hierarchy the central factual dispute. Rule 26(a)(1)(B) requires defendants to disclose documents they may use to support their defenses. |
| 3 / 22 | Documents establishing corporate structure and EII's relationship to EIS and EPI | Articles of incorporation, operating agreements, and corporate governance documents exist for every legal entity. EII, EIS, and EPI each have a state of incorporation with filing records. EBSCO's corporate counsel (Carroll) necessarily maintains these records. | The corporate structure is the factual foundation for Defenses 23 and 24. Defendants cannot assert an employer identity defense based on corporate separateness while withholding the corporate records that would establish (or destroy) that separateness. |
| 23 | Documents pertaining to EPI — corporate existence, dissolution, and claimed authority to employ Plaintiff | The Delaware Certificate of Merger (July 1, 2013) is a public record, but defendants should also possess their own internal records of the dissolution. Any document in which EPI is represented as a currently active employer during 2021–2023 must exist if the interrogatory answers are accurate. | ROG Answer No. 21 certifies that EPI employed Plaintiff 'at all times.' The documents establishing EPI's corporate existence and capacity are the foundational proof of that claim. Withholding them while making the assertion is precisely the selective disclosure Rule 26(g) prohibits. |
| 26 | Merger, dissolution, and restructuring records — including the May 2013 EPI/EIS merger | Defendants' own press release (May 22, 2013) announced the merger. The Delaware Certificate of Merger is a public record. Defendants' internal merger documents — board resolutions, merger agreement, transition records — necessarily exist and are in Carroll's files. | The merger is the event that destroyed EPI's capacity to employ Plaintiff. Producing no merger documents while certifying that EPI employed Plaintiff is a selective disclosure that misleads as to the foundational corporate history of the entities at issue. |

## FORENSIC FINDING 18: CORPORATE IDENTITY BLACKOUT — SEVEN RFPs, ZERO CORPORATE DOCUMENTS PRODUCED

| | |
|---|---|
| **[1] WHAT IT IS** | RFP Nos. 2, 3, 22, 23, 24, 25, and 26 collectively demanded organizational charts, corporate formation documents, entity structure records, merger and dissolution records, and governance documents for all EBSCO entities. Zero documents were produced in response to any of these seven requests. |
| **[2] WHY IT IS IMPROPER** | Corporate structure documents are business records maintained in the ordinary course by any corporation of EBSCO's size and complexity. Carroll, as General Counsel, necessarily possesses articles of incorporation, operating agreements, board resolutions, and merger records for every entity under her jurisdiction. The blanket non-production of every corporate structure document — across seven separate specific RFP demands — is not an oversight. It is systematic suppression of the documents that would establish which entity |

| | |
|---|---|
| | actually exercised employer authority over Plaintiff. |
| **[3] RULE VIOLATIONS** | Rule 34(b)(1) (must produce all responsive documents within the party's possession, custody, or control); Rule 26(a)(1)(B) (documents defendants may use to support their defenses must be disclosed — corporate structure documents are the foundation of Defenses 23 and 24); Rule 26(g)(1)(B)(ii) (certification that response is complete — certifying completeness while withholding all corporate structure documents violates Rule 26(g)); Rule 11(b)(3) (factual contentions in defenses must have evidentiary support — Defenses 23 and 24 rest on corporate separateness that defendants have not documented). |
| **[4] DISCOVERY MECHANISM** | RFP Nos. 2, 3, 22, 23, 24, 25, and 26; Rule 26(a)(1)(B); ECF No. 120 (pending Compel Motion); the pending subpoena to the Delaware Secretary of State (for EPI Certificate of Merger) independently provides some of this material, but defendants' own records must be produced under Rule 34. |
| **[5] REQUIRED RESPONSE** | Defendants must produce: (a) organizational charts for all EBSCO entities showing Plaintiff's reporting lines as of November 2021 and May 2023; (b) articles of incorporation or equivalent formation documents for EII, EIS, and EPI; (c) the Delaware Certificate of Merger for the July 2013 EPI/EIS merger; (d) any corporate governance document establishing the relationship between EII and EIS during 2021–2023; (e) any document establishing EPI's authority to act as an employer during 2021–2023. |

## § 5.0  Forensic Finding No. 19 — The Termination Decision Black Box: RFP Nos. 16, 17, 18, and 29

RFP Nos. 16, 17, 18, and 29 collectively demanded all documents and communications relating to the termination decision: the approval chain, the decision-makers' communications, HR-Legal communications, and inter-defendant communications about Plaintiff. The production in response to these four RFPs consists of: the termination letter itself (EBSCO000010) and two November 2022 emails from Lull (EBSCO000001–002). Nothing else. No approval chain. No Carroll-Lull communications. No Collins communications. No HR termination form. No Sydnor communications. No legal review records. For a termination that defendants describe as the product of months of performance concerns reviewed by HR, Legal, and executive leadership, the documentary record produced is essentially empty.

| Document That Should Exist | Why It Must Exist | Produced? |
|---|---|---|
| **Termination approval chain — who authorized the termination and when** | ROG Answer No. 24 identifies three decision-makers (Lull, Sydnor, Milligan) 'in consultation with HR and Legal.' A decision involving three named individuals plus two departments necessarily generated written approvals. | **NO — only termination letter produced. No approval chain, no authorization record, no HR termination form.** |
| **Carroll legal review of termination** | ROG Answer No. 16 states that Carroll's office 'investigated' Plaintiff's claims. Carroll is identified as having oversight of employment legal matters. The decision to terminate during an active FMLA period necessarily triggered legal review. | **NO — no Carroll-to-Lull communications, no termination legal review memorandum, no privilege-logged legal advice record.** |
| **Sydnor communications about Plaintiff's termination** | ROG Answer No. 24 identifies Gar Sydnor as a termination decision-maker. Sydnor is an EVP-level executive. His communications about the termination decision are responsive to RFP Nos. 18 and 29. | **NO — not a single Sydnor communication of any kind was produced. Sydnor is not identified in Rule 26(a) initial disclosures as a person with discoverable information.** |
| **Milligan (HR) communications about Plaintiff's termination** | ROG Answer No. 24 identifies Liz Milligan (HR Business Partner) as a termination decision-maker. HR Business Partners necessarily create written records of termination decisions, particularly where FMLA is involved. | **NO — not a single Milligan communication was produced. No HR termination form. No HR system termination entry.** |
| **HR termination form / separation paperwork** | Every HR department generates written termination documentation — separation forms, final pay calculation records, COBRA election notices, equipment return tracking. The termination letter is one page. A complete termination generates substantially more paperwork. | PARTIAL — EBSCO000011–013 appear to be equipment return documents. No HR termination form, COBRA notice, or separation documentation produced. |
| **PIP completion assessment — was Plaintiff evaluated against PIP objectives at termination?** | The PIP (EBSCO000006–009) sets objectives with a June 5, 2023 completion date. Plaintiff was terminated May 25, 2023 — 11 days before completion. Any assessment of Plaintiff's PIP performance at the point of termination — formal or informal — would exist. | **NO — no PIP progress assessment, no mid-PIP review, no written evaluation of Plaintiff's PIP performance between March 15 and May 25, 2023.** |

**FORENSIC FINDING 19: TERMINATION DECISION BLACK BOX — FOUR RFPs, ONE TERMINATION LETTER, NOTHING ELSE**

| *[1] WHAT IT IS* | RFP Nos. 16, 17, 18, and 29 collectively demanded all records and communications surrounding the |
|---|---|

| | |
|---|---|
| | termination decision. The production responsive to these four RFPs is: the termination letter (EBSCO000010) and the November 2022 Lull emails (EBSCO000001–002). No termination approval chain, no Carroll legal review, no Sydnor communications, no Milligan HR records, no HR termination form, no PIP progress assessment. |
| **[2] WHY IT IS IMPROPER** | A termination decision involving three named decision-makers plus HR and Legal review necessarily generates written records. EBSCO, as a large organization using SAP SuccessFactors for HR management, would have digital records of every step of the termination process. The absence of these records from the production is not consistent with production 'as they are kept in the usual course of business' under Rule 34(b)(2)(E)(i). The production of one termination letter and nothing else is facially incomplete. |
| **[3] RULE VIOLATIONS** | Rule 34(b)(2)(E)(i) (production in usual course of business — a single termination letter is not the complete termination record); Rule 34(b)(2)(C) (objection must state whether any responsive materials are being withheld — no such statement appears); Rule 26(a)(1)(A)(i) (Sydnor and Milligan as decision-makers must be identified in initial disclosures); Rule 26(g)(1)(B)(ii) (certification that response is complete — the termination production is not complete). |
| **[4] DISCOVERY MECHANISM** | RFP Nos. 16, 17, 18, and 29; ROG Answer No. 24 (identifying the decision-makers whose communications must be produced); Deposition of Lull (Binder 3, Round 3 — the termination sequence is the primary examination focus); 30(b)(6) Matter 4 (Affirmative Defense No. 23 basis — the records reviewed in forming the employer identity defense are required to be identified). |
| **[5] REQUIRED RESPONSE** | Defendants must produce: (a) all communications between Lull, Sydnor, Milligan, Carroll, and Collins about the termination decision from January 2023 through May 25, 2023; (b) the HR |

| | |
|---|---|
| | termination form or equivalent SAP SuccessFactors termination entry; (c) any legal review memorandum or notes related to the termination decision (with specific privilege assertions for each withheld document); (d) any PIP progress assessment created between March 15 and May 25, 2023; (e) a privilege log for any attorney-client communications about the termination decision. |

## § 6.0  Forensic Finding No. 20 — Government Filings Withheld: IRS Forms 941, W-9 Certifications, and State Filings — RFP No. 21

**THE DOCUMENTARY FOUNDATION OF THE EMPLOYER IDENTITY DISPUTE — ALL WITHHELD**

The employer identity question at the center of this litigation is resolvable by a specific, finite set of government documents: IRS Forms 941 (identifying the employer under penalty of perjury for each quarter of Plaintiff's employment), W-9 certifications (identifying the entity and tax classification for payments), and state employer registration and wage reporting filings. These are not speculative documents — they are mandatory government submissions that EBSCO was legally required to file and necessarily possesses. RFP No. 21 demanded all such tax records. The only documents produced in response were the three W-2 forms for tax years 2021–2023. Every other government filing category is absent.

| Document | Mandatory Filing Obligation | Forensic Significance | Produced? |
|---|---|---|---|
| **IRS Form 941 (10 quarterly filings — Q1 2021 through Q2 2023)** | 26 U.S.C. § 6011 — mandatory quarterly employer payroll tax return; identifies employer by EIN in Box 1; signed under penalty of perjury under 26 U.S.C. § 6065 | The Form 941 employer designation is the most authoritative government-record identification of who was the employer for each quarter of employment. The EIN in Box 1 either is EII (63-6014186) — confirming the W-2 employer and destroying ROG 21 — or is EPI (63-1105270) — confirming a dissolved entity filed under perjury for 6.9 years after capacity expired. | **NOT PRODUCED. Required by RFP No. 21 and ROG No. 17. Complete refusal on ROG 17. Partial production on RFP 21 (W-2s only).** |
| **W-9 Certifications (Michael Rice, July 21, 2025; Tracey Ballard, July 6, 2021)** | 26 C.F.R. § 301.7701-3 — disregarded entity elections; certify tax classification of each entity; signed under penalty of perjury | The W-9s are referenced in Plaintiff's RFAs (RFA No. 3). They certify whether EPI and EIS are disregarded entities under EII. If they designate EPI/EIS as disregarded, that certification directly contradicts the employer identity defense. They must be produced under RFP No. 21 and Rule 26(a)(1)(B). | **NOT PRODUCED in June 3 production. The W-9s are defendants' own documents certifying their own tax classification. Their absence from the production while the employer identity defense is asserted is unexplained.** |
| **Massachusetts DUA Employer Registration and Quarterly Wage Reports** | M.G.L. c. 151A — employers must register and file quarterly wage reports identifying the employer and all employees | Massachusetts quarterly wage reports would identify the entity filing as Plaintiff's employer for state unemployment purposes during 2021–2023. Consistency or inconsistency with the federal W-2 employer designation is directly material. | **NOT PRODUCED. No state filing of any kind was produced in the June 3 production.** |
| **IRS Form W-9 / W-8 — Entity Classification Records** | 26 C.F.R. § 301.7701-2 through 3 — classification elections for all EBSCO entities | The W-9 filings for all three entities (EII, EIS, EPI) would establish the tax classification of each entity — particularly whether any entity is a disregarded entity, a partnership, or a separate corporation for IRS purposes. This directly determines the employer analysis under § 3401(d)(1). | NOT PRODUCED. Referenced in Plaintiff's RFAs but not produced by defendants. |

**FORENSIC FINDING 20:**  **GOVERNMENT FILINGS WITHHELD — FORMS 941, W-9 CERTIFICATIONS, AND STATE FILINGS NOT PRODUCED**

| *[1] WHAT IT IS* | RFP No. 21 demanded all tax records including W-2s, Forms 941, state filings, and EIN records. Only the three W-2 forms (EBSCO000032–034) |
|---|---|

|  |  |
|---|---|
|  | were produced. IRS Forms 941 for all 10 quarters of Plaintiff's employment, W-9 certifications from Michael Rice and Tracey Ballard, and all state employer filings were withheld without a privilege log or specific objection to each category. |
| *[2] WHY IT IS IMPROPER* | Government tax filings are not privileged. They are mandatory submissions to public agencies. EBSCO possesses copies of all filings made under its EIN. Forms 941 identify the employer of record for each quarter — they are the quarterly public certification of who was the employer, made under penalty of perjury. Withholding them while asserting an employer identity defense is selective production designed to suppress the most authoritative government-record evidence on the central disputed fact. |
| *[3] RULE VIOLATIONS* | Rule 34(b)(1) (possession, custody, or control — defendants necessarily have copies of their own mandatory government filings); Rule 26(a)(1)(B) (documents defendants may use to support their defenses must be disclosed — the Form 941s either support or contradict the employer identity defense); Rule 26(g)(1)(B)(ii) (certification of completeness — the RFP 21 production is not complete). |
| *[4] DISCOVERY MECHANISM* | RFP No. 21 directly; ROG No. 17 (refusal to identify government agency communications — the Form 941s are government filings); RFA Nos. 3, 9, 19, and 20 (pending admissions on W-9s and Form 941s); IRS subpoena (Form 4506-C) independently obtainable but defendants must also produce their own file copies. |
| *[5] REQUIRED RESPONSE* | Defendants must produce: (a) IRS Forms 941 for all 10 quarters from Q1 2021 through Q2 2023; (b) the W-9 certifications executed by Michael Rice (July 21, 2025) and Tracey Ballard (July 6, 2021); (c) all state unemployment tax filings (Massachusetts DUA) for the employment period; (d) any IRS Form W-8 or W-9 establishing the tax classification of EII, EIS, and |

| | EPI; and (e) EIN registration records for all three entities. |
|---|---|

## § 7.0  Forensic Finding No. 21 — The ESI Non-Production: No SAP Audit Log, No Payroll System Records, No HR System Data — RFP Nos. 30 and 32

RFP Nos. 30 and 32 demanded all electronically stored information responsive to any prior RFP, and specifically all ESI that has been deleted, modified, or rendered inaccessible. The entire June 3 production consists of scanned PDFs of paper-format documents (emails, assessments, letters, payroll stubs, W-2s). Not a single native-format ESI document was produced. Not a single system log was produced. Not a single database export, metadata record, or audit trail was produced. The SAP SuccessFactors HR system that governed every aspect of Plaintiff's employment — his hire, his records, his performance reviews, his FMLA designations, his termination entry — has produced exactly zero system-level records.

| ESI Category | Why It Must Exist | Significance of Non-Production |
|---|---|---|
| **SAP SuccessFactors audit log — Plaintiff's employee profile** | Every SAP SuccessFactors implementation generates an immutable audit log recording every access event, every field change, the user ID making each change, and the timestamp. This is a core system function, not an optional feature. Plaintiff's profile in the system would show every change to his address, employer designation, and employment status from hire through deletion. | The audit log would prove or disprove the temporal impossibility finding (Round 1, Finding No. 1): if the address field was not populated with the Wilbraham address until after November 22, 2022, the log will confirm it. If the log has been deleted after the litigation hold (December 26, 2024), that is textbook Rule 37(e) spoliation. |
| **Payroll system records — employer designation field history** | The payroll system (linked to SAP or a separate platform) contains the employer entity field as it was set for each payroll run. This field determines whose name appears on each payroll stub as the employer. The history of this field — what it showed on November 1, 2021 versus December 1, 2022 — is the definitive evidence of whether the produced stubs reflect contemporaneous designations. | If the payroll system records show EII as the employer designation in the employer field throughout 2021–2023, that is conclusive proof that the 'EPI as employer' certification in ROG 21 is false. If the records show EPI, that is proof of an ongoing tax violation (filing W-2s under EII while designating EPI internally). |
| **Email system metadata and complete email threads** | The two Lull emails produced (EBSCO000001–002) are individual emails stripped of their thread context. A complete email archive would show: the full email threads between Lull and Plaintiff; all emails from Lull referencing Plaintiff to Carroll, Sydnor, Milligan, or Collins; and the timestamps and recipients that establish the communication sequence around the FMLA event, PIP, and termination. | The partial production of two isolated emails without their thread context is selective — it gives the Court and Plaintiff the emails most favorable to defendants' narrative while withholding the surrounding context that might show what else was being communicated at the same time. |
| **CDN/website access logs — HTTP 403 implementation date** | The HTTP 403 restriction on Plaintiff's professional biography pages on EBSCO's public platform was implemented at a specific date, by a specific user, through a specific CDN configuration change. This generates a system log entry. The date of implementation relative to the litigation hold notice (December 26, 2024) determines whether it is a post-hold spoliation act. | If the CDN log shows the restriction was implemented after December 26, 2024, it is a post-hold suppression of evidence about Plaintiff's professional identity — directly relevant to the professional prejudice and employment verification failure damages. |
| **HR system FMLA tracking entries** | EBSCO's HR system (SAP SuccessFactors or equivalent) tracks FMLA designations, leave balances, and absence records. The entry creating | The 49-day designation gap (February 20 – April 10, 2023) identified in Round 2, Finding No. 12 would be confirmed by the HR system |

| | the FMLA designation (covering only April 11 – August 1, 2023) would be timestamped and user-attributed. | records showing when the FMLA designation was first entered and what period it was entered for. |
|---|---|---|

## FORENSIC FINDING 21:  THE ESI NON-PRODUCTION — ZERO SYSTEM-LEVEL RECORDS IN A 132-PAGE PRODUCTION GOVERNED BY DIGITAL HR SYSTEMS

| | |
|---|---|
| *[1] WHAT IT IS* | The June 3, 2026 production is entirely composed of scanned PDF versions of paper-format documents. Not a single native ESI record, system audit log, database export, or metadata record was produced in response to RFP Nos. 30 and 32. The SAP SuccessFactors HR system that managed Plaintiff's entire employment lifecycle has produced zero system-level records. |
| *[2] WHY IT IS IMPROPER* | Federal Rule of Civil Procedure 34(b)(2)(E)(ii) requires that ESI be produced in the form in which it is ordinarily maintained or in a reasonably usable form unless the parties agree otherwise. SAP SuccessFactors audit logs, payroll system records, and email metadata are electronically maintained. Producing scanned PDFs of selected printed documents is not production of ESI in a reasonably usable form — it suppresses the metadata and system context that give the documents their evidentiary meaning. The temporal impossibility in the payroll stub addresses (Round 1, Finding No. 1) can only be definitively resolved by SAP SuccessFactors audit log data — which has been withheld. |
| *[3] RULE VIOLATIONS* | Rule 34(b)(2)(E)(ii) (ESI in reasonably usable form); Rule 37(e) (if ESI that should have been preserved has been lost, the Court may impose sanctions including adverse inference instructions); Rule 26(b)(5)(A) (any withheld ESI must be logged with privilege assertion — no privilege log produced); the litigation hold notice (December 26, 2024) established a preservation obligation for all ESI responsive to Plaintiff's claims. |

| | |
|---|---|
| **[4] DISCOVERY MECHANISM** | RFP Nos. 30 and 32 directly; the pending SAP SuccessFactors subpoena (Deposition 5, Matter 5); ECF No. 120 (pending Compel Motion — ESI non-production is a core issue). |
| **[5] REQUIRED RESPONSE** | Defendants must: (a) produce the SAP SuccessFactors audit log for Plaintiff's employee profile, showing every access, modification, and deletion event from hire through the present; (b) produce the payroll system records showing the employer designation field history for Plaintiff's payroll account from November 2021 through May 2023; (c) produce the complete email archives for Lull, Carroll, Milligan, Sydnor, and Collins relating to Plaintiff in native format with metadata; (d) produce the CDN/website configuration logs showing the date and user of the HTTP 403 implementation; and (e) identify any ESI that has been deleted, modified, or rendered inaccessible since the December 26, 2024 litigation hold, consistent with Rule 37(e) preservation obligations. |

## § 8.0  Forensic Finding No. 22 — The Absent Privilege Log: Withholding Without Identification — RFP No. 31

> **FEDERAL RULE OF CIVIL PROCEDURE 26(b)(5)(A) — MANDATORY PRIVILEGE LOG REQUIREMENT**
> "When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed — and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." A privilege log is not optional when documents are withheld on privilege grounds. It is mandatory.

Defendants withheld the following categories of documents on grounds of privilege or protection, based on the objections stated across RFP Nos. 12, 16, 17, 18, 19, 27, 28, and 29: investigation materials from Carroll's office (RFP 12, ROG 16 answer); communications between Carroll and HR or business unit leadership about Plaintiff's employment (RFP 18, 29); communications with outside counsel about the termination decision (RFP 16); and documents used to draft the Answer and interrogatory responses (RFP 27). Not a single withheld document has been logged under Rule 26(b)(5)(A). There is no privilege log in the June 3 production. There is no privilege log anywhere in this litigation.

| Category of Withheld Documents | RFP Demanding Production | Basis for Witholding Claimed | What the Privilege Log Must Show |
|---|---|---|---|
| Carroll investigation materials — documents reviewed and interviews conducted (ROG 16 answer) | RFP Nos. 12, 18, 27 | 'Privileged' — blanket assertion | Date of each document; author; recipient; privilege basis (attorney-client vs. work product); whether investigation was conducted as legal advice or as business investigation |
| Communications between Carroll and Lull/Sydnor/Milligan about Plaintiff | RFP Nos. 17, 18, 29 | Implied — not produced, no privilege claimed specifically | Factual communications between Carroll (in her HR capacity per her ROG title) and business unit personnel are not attorney-client privileged. Any such communications must be logged or produced. |
| Documents reviewed in forming the payor theory and employer identity defense | RFP No. 27 | Not stated — documents simply not produced | The factual layer of documents reviewed in forming a legal position is not protected by attorney-client privilege (only the advice itself is). The documents reviewed must be logged. |
| Litigation hold notice issued by Carroll to EBSCO personnel | RFP No. 28 | Not stated — document simply not produced | The litigation hold notice itself is not privileged — it is a business communication directing document preservation. Its content (scope of preservation, departments notified) is factual, not legal advice. |
| Outside counsel communications about termination decision | RFP No. 16 | Implied by non-production | Legitimate attorney-client privilege may apply to the legal advice layer — but defendants must log the existence of each communication with date, author, recipient, and privilege basis. |

## FORENSIC FINDING 22: THE ABSENT PRIVILEGE LOG — DOCUMENTS WITHHELD WITHOUT IDENTIFICATION IN VIOLATION OF RULE 26(b)(5)(A)

**[1] WHAT IT IS**

Defendants withheld documents across at least eight RFP categories (RFP Nos. 12, 16, 17, 18, 19, 27, 28, 29) on grounds of privilege or protection. No privilege log has been produced identifying any withheld document by date, author, recipient, subject matter, and privilege basis. Rule 26(b)(5)(A) makes the privilege log mandatory whenever documents are withheld on privilege grounds.

**[2] WHY IT IS IMPROPER**

The absence of a privilege log is not a technical deficiency — it prevents Plaintiff from assessing any privilege claim and prevents the Court from ruling on any claim of privilege. When defendants assert 'privileged' as an objection and produce nothing else, they have effectively asserted a blanket, unchallengeable privilege claim over an unidentified universe of documents. This is

| | |
|---|---|
| | precisely what Rule 26(b)(5)(A) was designed to prevent. See Fed. R. Civ. P. 26(b)(5) Advisory Committee Notes (1993): 'The description must be sufficient to enable other parties to assess the applicability of the privilege or protection.' |
| *[3] RULE VIOLATIONS* | Rule 26(b)(5)(A)(i) and (ii) (mandatory privilege log when documents are withheld on privilege grounds); Rule 34(b)(2)(C) (objection must state whether responsive materials are being withheld on the basis of the objection); Rule 37(b)(2)(A) (failure to comply with discovery obligations subjects the party to sanctions). |
| *[4] DISCOVERY MECHANISM* | RFP No. 31 (expressly demanding the privilege log); RFP Nos. 12, 16, 17, 18, 19, 27, 28, 29 (each of which involves withheld documents for which no log has been produced); ECF No. 120 (pending Compel Motion). |
| *[5] REQUIRED RESPONSE* | Defendants must produce a privilege log within seven days of this transmission that: (a) identifies each withheld document by date, author, all recipients, and general subject matter; (b) states the specific privilege or protection claimed for each document (attorney-client privilege vs. attorney work product vs. other); (c) identifies the attorney whose advice is sought or conveyed for each attorney-client privilege claim; and (d) identifies whether the factual (non-legal-advice) layer of any withheld communication has been segregated and produced. |

## § 9.0  Spoliation Marker Inventory — Documents That Should Exist and Do Not Appear in the Production

The following table identifies documents that must exist — based on defendants' own produced documents, their own certified interrogatory answers, their own standard business practices, or mandatory legal obligations — but that do not appear anywhere in the June 3, 2026 production. For each, the table identifies the basis for the expectation that the document exists, and the significance of its absence. The litigation hold notice was transmitted December 26, 2024. Any document that existed as of that date and does not appear in the production is a potential spoliation item under Rule 37(e).

| Missing Document | Basis for Expectation It Exists | Significance of Absence | Action Required |
|---|---|---|---|
| **SAP SuccessFactors address history log — showing Wilbraham address entry date** | SAP generates immutable audit logs for every profile field change. The address field would show exactly when '485 Glendale Road, Wilbraham' was first entered. This log necessarily exists unless it was deleted after the hold. | Establishes or refutes the temporal impossibility. If deleted after December 26, 2024 hold: Rule 37(e) spoliation. Adverse inference available. | Motion to compel SAP audit log; Rule 37(e) spoliation motion if destroyed |
| **FY21 performance evaluation or 90-day new hire review** | EBSCO produced FY22 and FY23 mid-year assessments. Standard HR practice includes a 90-day review or annual evaluation for the first year of employment (November 2021 – October 2022). | If a FY21 evaluation existed and was favorable, its absence from production is selective. If it was negative, it is the only pre-FMLA documented performance concern — and its non-production is a Rule 34 violation. | Demand supplemental production; if none exists, demand certification |
| **PIP drafts — pre-March 15 versions** | The PIP issued March 15, 2023 was drafted before it was issued. Draft documents with earlier creation dates would establish whether the PIP was in preparation before or after the February 20, 2023 FMLA qualifying event. | A PIP draft dated before February 20, 2023 would undermine the retaliation inference. A PIP draft dated after February 20 would confirm it. The metadata of the final PIP document should show its creation date. | Demand all PIP drafts with metadata; compel native format production |
| **Carroll's litigation hold notice to EBSCO personnel** | Carroll, as General Counsel, issued the internal litigation hold. Her communications directing preservation are the source documents for Hold compliance. They are not privileged (factual preservation instructions). | Without the hold notice and compliance confirmations, it is impossible to assess whether any department failed to preserve responsive documents. | Compel production of hold notice and compliance records under RFP 28 |
| **Regions Bank account authorization records** | The Regions Bank account (1817259794 / 062005690) was used for 43 payroll disbursements. Account opening documents, signatory authority records, and authorization documents exist in defendants' bank records and internal finance files. | These documents establish which entity owns and controls the payroll account — the central fact for the § 3401(d)(1) statutory employer analysis. | Regions Bank subpoena if defendants will not produce; demand under RFP 20 and 25 |
| **EEOC position statement filed by EBSCO in response to Plaintiff's charge** | ROG Answer No. 14 references the EEOC charge as the triggering event. Defendants filed a position statement with the EEOC in response. This is a non-privileged factual document submitted to a government agency. | The EEOC position statement is Carroll's own narrative of the employment events, prepared at a time when defendants had to be accurate to a government agency. Any inconsistency between the EEOC position statement and the litigation positions is direct evidence of a post-hoc revision of the factual narrative. | Demand under RFP 17; EEOC FOIA request available as independent source |
| **Background screening records — FCRA-required authorization and report** | Plaintiff's hiring necessarily included a background check (standard practice; referenced in FCRA analysis in deposition binders). FCRA requires written authorization before any background check is run and requires retention of authorization forms. | The background check authorization shows which entity initiated the screening and under what entity designation — directly relevant to the 'EBSCO Ipswich' entity question and the employer identity analysis. | Demand under RFP 1 (personnel file); background screening vendor subpoena |
| **The intercompany agreement between EPI and EII** | ROG Answer No. 23 certifies under penalty of perjury that EBSCO Publishing 'reimbursed EBSCO Industries pursuant to an intercompany agreement.' This agreement either exists or it does not. | If it exists: Rule 34 violation for non-production (demanded by RFP Nos. 19 and 27). If it does not exist: ROG Answer No. 23 is a false perjury-certified statement. | Compel production or demand correction of ROG Answer No. 23 |

## § 10.0  Round 4 Summary — Production Findings, Withholding Log, and Consolidated Compliance Demands

| Finding | RFP(s) | Subject | Severity | Required Response |
|---|---|---|---|---|
| 18 | 2, 3, 22–26 | Corporate identity blackout — 7 RFPs, zero corporate documents produced | CRITICAL | Produce org charts, corporate formation documents, Delaware Certificate of Merger, EPI dissolution records |
| 19 | 16, 17, 18, 29 | Termination decision black box — approval chain, Carroll review, Sydnor/Milligan communications not produced | CRITICAL | Produce termination approval chain; Carroll-Lull-Sydnor-Milligan communications; HR termination form; PIP progress assessment |
| 20 | 21 | Government filings withheld — Forms 941, W-9 certifications, state tax filings not produced | CRITICAL | Produce Forms 941 (Q1 2021–Q2 2023); W-9 certifications (Rice, Ballard); state DUA filings |
| 21 | 30, 32 | ESI non-production — SAP audit logs, payroll system records, email metadata, CDN logs not produced | CRITICAL | Produce SAP SuccessFactors audit log; payroll system records; native email archives; CDN logs |
| 22 | 31 | No privilege log produced despite active withholding across 8+ RFPs | CRITICAL | Produce privilege log within 7 days identifying each withheld document per Rule 26(b)(5)(A) |
| — | 1, 5–8, 10–18 | Incomplete personnel file — background check, onboarding, HR system entries, PIP drafts, PIP approval chain not produced | HIGH | Supplement RFP 1 production with complete personnel file; produce PIP drafts with creation metadata |

**CONSOLIDATED PRODUCTION COMPLIANCE DEADLINE — MODULE 4**

Plaintiff is providing Defendants fourteen (14) days from service of this Ledger to supplement all document productions identified in Round 4. Accordingly, all supplemental productions shall be served no later than **July 12, 2026**. This deadline affords Defendants a reasonable opportunity to cure the identified deficiencies while preserving sufficient time before the July 22, 2026 discovery deadline (ECF No. 139).

To the extent Defendants withhold responsive documents on the basis of privilege, any required privilege log shall likewise be served by **July 12, 2026**. Failure to timely provide a privilege log may support Plaintiff's request that any asserted privilege be deemed waived.

If Defendants fail to provide the required supplemental productions by **July 12, 2026**, Plaintiff will seek appropriate relief under Rule 37, including by filing a consolidated motion to compel and for sanctions before the close of discovery.

Respectfully submitted,                                                                 **Dated: June 26, 2026**

_____

**Mohamed Souleyman Ly**

Plaintiff, Pro Se and | Whistleblower | mmmly7@gmail.com

**Certificate of Service:** I hereby certify that on June 26, 2026, a true and correct copy of the foregoing Forensic Production Ledger — Round 1 was transmitted via electronic mail to Matthew Lynch, Esq. (mlynch@littler.com) and Melissa L. McDonagh, Esq. (mmcdonagh@littler.com), Littler Mendelson, P.C), and to the Boston College Law School Federal Court Clinic (bclawclinic@bc.edu).

Case 3:24-cv-30161-MGM   Document 158   Filed 07/15/26   Page 76 of 91

Ly v. EBSCO Industries et al.  ·  No. 3:24-cv-30161-MGM  ·  Forensic Production Ledger — Round 5: Master Integration  ·  Page 1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS — WESTERN DIVISION**

| | |
|---|---|
| **MOHAMED SOULEYMAN LY,**<br>v.<br>**EBSCO INDUSTRIES, INC. et al.,**<br>Defendants. | **Civil Action No. 3:24-cv-30161-MGM**<br>Judge Mark G. Mastroianni<br>Magistrate Judge Christopher L. Morgan<br>Discovery Closure: July 22, 2026<br>ECF Nos. 138 and 139 |

## PLAINTIFF'S FORENSIC PRODUCTION LEDGER
## MODULE 5 OF 5 — MASTER INTEGRATION

Rule 37 Motion Predicate  ·  Master Withholding Log  ·  Spoliation Registry  ·  Relief Demand

### 22 Forensic Findings Across Five Rounds
In Response to Defendants' June 3, 2026 Production

Ly v. EBSCO Industries, Inc. et al.  ·  No. 3:24-cv-30161-MGM
U.S. District Court, District of Massachusetts, Western Division
Mohamed Souleyman Ly, Plaintiff Pro Se  ·  June 26, 2026

### PART I — JUDICIAL SERVICE DOCUMENT
This section constitutes the formal judicial record of all forensic findings and the predicate for Rule 37 relief.

## § 1.0  Introduction — The Ledger Is Complete:
## The Lynch Confer & Respond Obligation [Step 5] Is Now Fully Invoked

This document constitutes Round 5 of Plaintiff's Forensic Production Ledger — the master integration of twenty-two forensic findings documented across four prior rounds, each transmitted to defense counsel on June 26, 2026. This Round establishes the complete Rule 37 motion predicate, the master withholding log, the spoliation registry, and the formal demand for specific relief from the Court.

Rounds 1 through 4 were transmitted to defense counsel Ryan M. Lynch, Esq. and Melissa L. McDonagh, Esq., Littler Mendelson, P.C., on June 26, 2026, with courtesy copies to Patricia Carroll, General Counsel, EBSCO Industries, Inc., and the Boston College Law School Federal Court Clinic. Each round satisfied — in detail — the five-part framework that Lynch himself imposed as the condition for conferral. No adequate response to any finding in any round has been received.

Case 3:24-cv-30161-MGM    Document 158    Filed 07/15/26    Page 77 of 91

Ly v. EBSCO Industries et al.  ·  No. 3:24-cv-30161-MGM  ·  Forensic Production Ledger — Round 5: Master Integration  ·  Page 2

> **THE LYNCH FRAMEWORK — DEFENSE COUNSEL'S OWN WORDS — NOW FULLY SATISFIED ACROSS ALL 22 FINDINGS**
> *"If you can [1] identify what it is, [2] why you believe it was deleted, [3] why you believe that was improper, and you can... [4] identify which mechanism of discovery relates to it, [5] we will confer and respond."*
> *Matthew J. Lynch, Esq., June 4, 2026 and June 18, 2026*

Every element of the Lynch framework has been satisfied for every finding across all five rounds. The conferral commitment — Lynch's own words, made on the record on two separate occasions — is now invoked in full. The record is established. The deadlines have been set. Round 5 is the formal judicial record that Lynch's commitment was made, that it was satisfied, and that no adequate conferral or supplemental response was received.

## § 2.0  Master Consolidated Finding Table — All 22 Forensic Findings Across Five Rounds

| No. | Round | Finding | Evidence Basis | FRCP Violation | Severity |
|---|---|---|---|---|---|
| 1 | 1 | Address Temporal Impossibility — Wilbraham address on November 2021 payroll stubs; property not acquired until November 22, 2022 | EBSCO000035+; Lull email EBSCO000002; offer letter EBSCO000022; Hampden County property records | Rules 34, 26(g)(1), 37(b)(2)(A); Fed. R. Evid. 901 | CRITICAL |
| 2 | 1 | Four-Address Internal Inconsistency — 2022 W-2 (Salem) vs. 2022 payroll stubs (Wilbraham) from same payroll system | EBSCO000033 vs. EBSCO000042–060+ | Rules 34, 26(g)(1), Fed. R. Evid. 901 | CRITICAL |
| 3 | 1 | Same-Day Address Contradiction — ROG 20 certifies Wilbraham as 'last known address' on May 26, 2023; termination letter (same day) shows Salem | ROG Answer 20; EBSCO000010 | Rules 33(b)(5), 26(e)(1), 11(b)(3) | CRITICAL |
| 4 | 1 | Carroll Title Discrepancy — 'EVP Human Resources, EIS' in ROG verification vs. 'General Counsel, EII' in all other filings | ROG Answer 25 verification | Rule 33(b)(5) defective verification | HIGH |
| 5 | 1 | Phantom Intercompany Agreement — cited in ROG 23 under perjury; never produced; not referenced in any prior filing | ROG Answers 22–23; RFP 19, 27 | Rules 34, 26(g)(1), 33(b)(5) | CRITICAL |
| 6 | 2 | Rule 33(d) Deficiency — ROGs 1, 2, 3, 4, 10, 11: deflection to undifferentiated 132-page PDF with no specific document identification | ROG Answers 1–4, 10, 11 | Rule 33(d)(1) specification requirement | HIGH |
| 7 | 2 | ROG 5 — Six Certified False or Contradicted Statements: EPI as employer, May 31 termination date, performance narrative | ROG Answer 5 vs. EBSCO000032–034, EBSCO000010, EBSCO000014–017 | Rules 33(b)(5), 26(e)(1), 11(b)(3) | CRITICAL |
| 8 | 2 | ROG 6 — FY22 Year-End Assessment (all objectives 100% completed) omitted from Rule 33(d) election that points only to PIP | ROG Answer 6; EBSCO000014–017 (produced in same package) | Rules 33(b)(3), 33(d)(1), 26(g)(1)(B)(ii) | CRITICAL |
| 9 | 2 | ROG 7 — Coaching Emails Mischaracterized as Performance | ROG Answer 7; EBSCO000001–002 | Rules 33(b)(5), 26(e)(1), 11(b)(3) | HIGH |

Case 3:24-cv-30161-MGM    Document 158    Filed 07/15/26    Page 78 of 91

Ly v. EBSCO Industries et al.  ·  No. 3:24-cv-30161-MGM  ·  Forensic Production Ledger — Round 5: Master Integration  ·  Page 3

| | | | | | |
|---|---|---|---|---|---|
| | | Warnings; no specific deadline failure documented anywhere in production | | | |
| 10 | 2 | ROGs 8 and 9 — Improper Complete Refusals: FMLA complaint history and pre-suit knowledge | ROG Answers 8, 9 | Rules 33(b)(3), 33(b)(4), 37(d)(1)(A)(ii) | HIGH |
| 11 | 2 | ROG 14 — 'Plaintiff reported no FMLA complaints' directly contradicted by FMLA Designation Notice, DeFeo letter, and defendants' own Answer admissions | ROG Answer 14; EBSCO000025, 000031; Dkt. 117 ¶¶34–36 | Rules 33(b)(5), 26(e)(1), 11(b)(3) | CRITICAL |
| 12 | 2 | ROG 15 — Accommodation narrative fails temporal sequence: PIP issued 23 days after FMLA event; termination 6 days after last FMLA use; 49-day designation gap unaddressed | ROG Answer 15; EBSCO000025; Dkt. 117 ¶¶34–36 | Rules 33(b)(5), 26(e)(1); 29 C.F.R. § 825.301(a) | HIGH |
| 13 | 3 | ROGs 17, 18, 19 — Three Improper Complete Refusals: government communications (ROG 17); insurance (ROG 18 — mandatory under Rule 26(a)(1)(A)(iv)); economic damages (ROG 19) | ROG Answers 17, 18, 19 | Rules 33(b)(3), 37(d)(1)(A)(ii); Rule 26(a)(1)(A)(iv) | CRITICAL |
| 14 | 3 | ROG 21 — Perjury-Certified 'EPI at all times' Employer Claim Directly Inverted by Perjury-Certified W-2s (EII) in Same Production Package | ROG Answer 21 vs. EBSCO000032–034 | Rules 33(b)(5), 26(e)(1); 26 U.S.C. §§ 6051, 3401(d)(1) | CRITICAL |
| 15 | 3 | ROGs 22–23 — Payor Theory Conflicts with 26 U.S.C. § 3401(d)(1); Phantom Intercompany Agreement Cited but Not Produced | ROG Answers 22, 23; RFP 19, 27 | Rules 34, 33(b)(5); 26 U.S.C. § 3401(d)(1) | CRITICAL |
| 16 | 3 | ROG 24 — Collins Designated as CEO of EIS for First Time: Self-Defeating; Directly Contradicts Defense No. 24 | ROG Answer 24; Dkt. 117 Defense No. 24 | Rules 26(e)(1), 26(a)(1)(A)(i), 11(b)(3) | HIGH |
| 17 | 3 | ROG 25/Verification — Lull Verification Disclaims Personal Knowledge While Certifying Under Penalty of Perjury | Lull verification statement; Carroll verification (wrong title) | Rule 33(b)(5); 28 U.S.C. § 1746 | CRITICAL |
| 18 | 4 | Corporate Identity Blackout — 7 RFPs (2, 3, 22–26), Zero Corporate Documents Produced | RFP Nos. 2, 3, 22–26 responses | Rules 34(b)(1), 26(a)(1)(B), 26(g)(1)(B)(ii) | CRITICAL |
| 19 | 4 | Termination Decision Black Box — 4 RFPs (16, 17, 18, 29), Only Termination Letter Produced; No Approval Chain, No Decision-Maker Communications | RFP Nos. 16, 17, 18, 29 responses | Rules 34(b)(2)(E)(i), 26(a)(1)(A)(i), 26(g)(1)(B)(ii) | CRITICAL |
| 20 | 4 | Government Filings Withheld — Forms 941, W-9 Certifications, State Tax Filings Not Produced Under RFP 21 | RFP No. 21; ROG No. 17 refusal | Rules 34(b)(1), 26(a)(1)(B); 26 U.S.C. §§ 6011, 6051 | CRITICAL |
| 21 | 4 | ESI Non-Production — Zero System-Level Records: No SAP Audit Log, No Payroll System Records, No Email Metadata, No CDN Logs | RFP Nos. 30, 32; entire production is scanned PDFs only | Rules 34(b)(2)(E)(ii), 37(e) | CRITICAL |
| 22 | 4 | Absent Privilege Log — Documents Withheld Across 8+ RFPs Without Identification in Violation of Rule 26(b)(5)(A) | RFP No. 31; no privilege log in any filing to date | Rule 26(b)(5)(A)(i) and (ii); Rule 34(b)(2)(C) | CRITICAL |

| | | | |
|---|---|---|---|
| CRITICAL Findings: 16 | HIGH Findings: 6 | Total Findings: 22 | Rounds Completed: 5 of 5 |

## § 3.0  Rule 37 Legal Framework — Applicable Provisions and Standards

Federal Rule of Civil Procedure 37 provides multiple, independently sufficient bases for the relief Plaintiff seeks. Each applicable subsection is identified below, with the specific findings that trigger it. The provisions operate cumulatively — satisfaction of any single provision is independently sufficient to support the corresponding relief.

| FRCP Provision | What It Addresses | Findings That Trigger It |
|---|---|---|
| Rule 37(a)(3)(B)(iii) and (iv) | Motion to compel where a party fails to answer an interrogatory or fails to produce documents as requested under Rule 34 | Findings 10, 13 (complete refusals on ROGs 8, 9, 17, 18, 19); Findings 18–22 (complete non-production under seven categories of RFP demands). Grounds for compelled supplemental answers on all 22 findings. |
| Rule 37(a)(5)(A) | If a motion to compel is granted, the Court must require the party whose conduct necessitated the motion to pay the movant's reasonable expenses, including attorney's fees, unless the nondisclosure was substantially justified | All 22 findings. Every finding was communicated to defense counsel through the Lynch framework; no adequate response was received; no justification for non-response has been offered. |
| Rule 37(b)(2)(A) | Sanctions for failure to comply with a court order regarding discovery — available where defendants have failed to comply with obligations established by prior court orders or the governing scheduling order | The ECF No. 138 Electronic Order and ECF No. 139 Amended Scheduling Order govern this discovery period. Non-production in violation of the scheduling order's deadline framework triggers Rule 37(b)(2)(A) sanctions. |
| Rule 37(c)(1) | A party that fails to provide information required by Rule 26(a) may not use that information at trial unless the failure was substantially justified or harmless | Finding 13 (insurance not disclosed per Rule 26(a)(1)(A)(iv)); Finding 16 (Sydnor and Milligan not identified in initial disclosures despite being named as termination decision-makers in ROG 24); Finding 18 (corporate structure documents not produced per Rule 26(a)(1)(B)). |
| Rule 37(c)(2) | If a party fails to admit a matter requested under Rule 36 and the requesting party later proves the matter, the Court may award expenses for proving it | Applies to all 25 pending Requests for Admission (Plaintiff's First Set of RFAs, June 26, 2026). Any RFA denied by defendants that is subsequently proven at trial triggers mandatory cost-shifting. See §7.0 below. |
| Rule 37(d)(1)(A)(ii) | A party's failure to serve answers to interrogatories subjects the party to sanctions, including striking pleadings, adverse inferences, and dismissal | Findings 10 and 13: complete refusals on ROG Nos. 8, 9, 17, 18, and 19. Five complete refusals on substantive interrogatories is a textbook Rule 37(d) violation. |
| Rule 37(e) | If ESI that should have been preserved in anticipation of litigation is lost because a party failed to take reasonable steps to preserve it, the Court may: (1) order remedial measures; (2) upon finding intent to deprive, presume the information was unfavorable, instruct the jury it may assume the information was unfavorable, or dismiss the action | Finding 21: the SAP SuccessFactors audit log, payroll system records, email metadata, and CDN logs were not produced. The litigation hold was served December 26, 2024. Any ESI lost after that date triggers Rule 37(e)(1) remedial measures. Evidence of selective production (documents produced; system logs withheld) supports Rule 37(e)(2) intent finding. |

## § 4.0  The Penalty of Perjury Dimension — Certified Statements That Are Contradicted by <u>Defendants' Own Produced Documents</u>

> **GOVERNING PRINCIPLE**

Case 3:24-cv-30161-MGM    Document 158    Filed 07/15/26    Page 80 of 91

Ly v. EBSCO Industries et al.  ·  No. 3:24-cv-30161-MGM  ·  Forensic Production Ledger — Round 5: Master Integration  ·  Page 5

Federal Rule of Civil Procedure 33(b)(5) requires that interrogatory answers be verified by a person who certifies they are true and correct under penalty of perjury. Where a certified interrogatory answer is directly contradicted by a document produced in the same production package — such that both cannot simultaneously be true — one of the two perjury-certified statements is false. This Ledger has identified six such contradictions across the June 3, 2026 production.

| Finding | What Was Certified Under Perjury (ROG Answer) | What Defendants' Own Document Shows | Why Only One Can Be True |
|---|---|---|---|
| 7 | ROG 5: 'On May 31, 2023, EBSCO Publishing terminated Plaintiff's employment' | EBSCO000010 (termination letter): 'prepare to leave EBSCO on May 25, 2023'; ROG 20: check sent May 26, 2023 | Two dates certified in the same document package for the same event. May 25, May 26, and May 31 cannot all be the termination date. At least one certification is false. |
| 7 | ROG 5: 'Plaintiff was employed by EBSCO Publishing, Inc.' | EBSCO000032–034 (W-2s for 2021, 2022, 2023): employer name = 'EBSCO Industries, Inc.' — EIN 63-6014186 | The W-2 employer box certifies the employer under 26 U.S.C. § 6051. The ROG certifies the opposite. Both are under penalty of perjury. One is definitionally false. |
| 8 | ROG 6 (Rule 33(d) election): deflects to 'PIP and related documents' as performance record | EBSCO000014–017 (FY22 Year-End Assessment, produced in same package): all three objectives 'Completed' at 100%; Lull comment: 'Great first year' | The Rule 33(d) election omits the most recent formal evaluation, which shows the opposite of the performance narrative the election implies. |
| 11 | ROG 14: 'Plaintiff did not report any complaints of FMLA interference and retaliation during his employment' | EBSCO000025 (FMLA Designation Notice); EBSCO000031 (DeFeo FMLA letter); Dkt. 117 ¶¶34–36 (defendants' Answer admitting FMLA use dates) | Defendants processed Plaintiff's FMLA request during employment. Their own compliance with the FMLA notice protocol proves they received notice. |
| 14 | ROG 21: 'Plaintiff was at all times employed by EBSCO Publishing, Inc.' | EBSCO000032–034 (W-2s for all three tax years): employer = 'EBSCO Industries, Inc.' — EIN 63-6014186 | This is the single cleanest documented false certification in the production. The W-2 and the ROG answer cannot both be true. Both were certified under penalty of perjury and produced by the same counsel on the same date. |
| 15 | ROG 23: EPI 'reimbursed EBSCO Industries for these payments, pursuant to an intercompany agreement' | No intercompany agreement produced in 132-page production; no such agreement referenced in any prior filing in 18 months of litigation | Either the agreement exists (Rule 34 violation — not produced) or it does not (ROG 23 is false). No third possibility exists. |

The existence of multiple perjury-certified false statements in a single discovery production — each contradicted by documents in the same production — is cognizable under Federal Rule of Civil Procedure 11(b)(3) (factual contentions must have evidentiary support when signed), Rule 33(b)(5) (accuracy of certification), and, where the certifications are submitted to a federal court, 18 U.S.C. § 1001 (false statements in a federal proceeding). Plaintiff does not seek criminal referral in this document; however, this dimension of the record is preserved and may be presented to the Court in connection with the Rule 37 motion.

Case 3:24-cv-30161-MGM    Document 158    Filed 07/15/26    Page 81 of 91

Ly v. EBSCO Industries et al.  ·  No. 3:24-cv-30161-MGM  ·  Forensic Production Ledger — Round 5: Master Integration  ·  Page 6

## § 5.0  Master Withholding Log — All Documents Demanded and Not Produced

The following table constitutes Plaintiff's complete withholding log — every category of document demanded across RFP Nos. 1–32 that was not produced in the June 3, 2026 production. For each category, the table identifies the specific RFP demand, the basis for concluding the document exists, and the legal authority requiring its production.

| # | Document Category | RFP Demand | Basis for Expectation | Production Authority |
|---|---|---|---|---|
| 1 | SAP SuccessFactors audit log — Plaintiff's employee profile | 30, 32 | Every SAP implementation generates immutable audit logs; required by litigation hold (Dec. 26, 2024) | Rule 34(b)(2)(E)(ii); Rule 37(e) |
| 2 | Organizational charts — Plaintiff's reporting lines (Nov. 2021 and May 2023) | 2 | Every company of EBSCO's size maintains org charts; referenced in offer letter and PIP | Rules 34(b)(1), 26(a)(1)(B) |
| 3 | Corporate formation documents — EII, EIS, EPI | 3, 22–25 | Three legal entities; necessarily have articles of incorporation, operating agreements, governance records | Rules 34(b)(1), 26(a)(1)(B) |
| 4 | Delaware Certificate of Merger — July 1, 2013 | 26 | Public record; defendants possess their own copy; foundational to employer identity defense | Rules 34(b)(1), 26(a)(1)(B); Del. public record |
| 5 | Insurance policies covering Plaintiff's claims | 4 | Required automatic disclosure per Rule 26(a)(1)(A)(iv); mandatory without discovery request | Rule 26(a)(1)(A)(iv); Rule 37(c)(1) |
| 6 | Background check report and FCRA authorization | 1 | Plaintiff was hired through standard EBSCO process; FCRA requires authorization and report retention | Rule 34(b)(1); 15 U.S.C. § 1681b |
| 7 | IRS Form 941 — all 10 quarters (Q1 2021 – Q2 2023) | 21 | Mandatory quarterly filing under 26 U.S.C. § 6011; defendants possess their own copies | Rules 34(b)(1), 26(a)(1)(B); 26 U.S.C. § 6011 |
| 8 | W-9 certifications — Michael Rice (July 21, 2025) and Tracey Ballard (July 6, 2021) | 21 | Defendants executed these forms; referenced in Plaintiff's RFAs; in defendants' possession | Rules 34(b)(1), 26(a)(1)(B) |
| 9 | Massachusetts DUA quarterly wage reports | 21 | Mandatory state employer filing; defendants possess their copies | Rules 34(b)(1); M.G.L. c. 151A |
| 10 | Termination approval chain documentation | 16 | ROG 24 identifies three decision-makers and two departments; written approvals necessary | Rules 34(b)(2)(E)(i), 26(a)(1)(A)(i) |
| 11 | All communications among Lull, Sydnor, Milligan, Carroll, Collins about Plaintiff (Jan. – May 2023) | 18, 29 | Five named individuals communicated about the termination decision; email archives exist | Rules 34(b)(1), 26(a)(1)(A)(i) |
| 12 | PIP drafts — all pre-March 15, 2023 versions with metadata | 15 | The final PIP was drafted before issuance; draft versions with creation dates show pre/post-FMLA timing | Rule 34(b)(2)(E)(ii); native format with metadata |
| 13 | HR termination form / SAP SuccessFactors termination entry | 16 | Every HR system generates a termination record; SAP SuccessFactors creates an audit-trail entry for terminations | Rule 34(b)(2)(E)(i) and (ii) |
| 14 | PIP progress assessment — March 15 through May 25, 2023 | 14, 15 | 70 days of PIP; standard practice includes progress reviews; ROG 7 implies ongoing assessment | Rule 34(b)(1) |
| 15 | Benefits plan documents and enrollment records — | 11 | Plaintiff was enrolled in EBSCO's benefits during employment per W-2 | Rules 34(b)(1), 26(a)(1)(B); 29 U.S.C. § 1024(b) (ERISA disclosure) |

| | | | | |
|---|---|---|---|---|
| | health, dental, vision, retirement, life, disability | | deductions and Dkt. 117 ¶22 (plan sponsor admission) | |
| 16 | EEOC position statement / Charge response | 17 | ROG 14 references the EEOC charge as the triggering notice event; defendants filed a response; non-privileged government submission | Rules 34(b)(1), 26(a)(1)(B) |
| 17 | Intercompany agreement between EPI and EII | 19, 27 | ROG Answer No. 23 certifies its existence under penalty of perjury; required by RFP Nos. 19 and 27 | Rules 34(b)(1), 26(g)(1), 33(b)(5) |
| 18 | Payroll system records — employer designation field history | 20, 30 | Payroll system contains field-level history for every payroll run; directly resolves the temporal impossibility | Rule 34(b)(2)(E)(i) and (ii) |
| 19 | Regions Bank account authorization / signatory authority documents | 20, 25 | Account opening documents identify the legal entity owner; necessary for §3401(d)(1) analysis | Rule 34(b)(1); third-party subpoena available |
| 20 | CDN/website access control logs — HTTP 403 implementation date | 30, 32 | CDN platforms (Cloudflare/Akamai/AWS) generate immutable configuration change logs; relevant to professional prejudice damages | Rule 34(b)(2)(E)(i)/(ii); Rule 37(e) |
| 21 | Privilege log — all documents withheld on privilege grounds | 31 | Rule 26(b)(5)(A) makes the privilege log mandatory; multiple categories of documents withheld without logging | Rule 26(b)(5)(A); Rule 34(b)(2)(C) |
| 22 | FY21 year-end evaluation or 90-day new hire review | 14 | EBSCO produced FY22 and FY23 reviews; standard HR practice includes first-year evaluation | Rule 34(b)(1); selective production doctrine |
| 23 | Carroll's litigation hold notice and compliance confirmations | 28 | Carroll, as General Counsel, issued the internal hold; compliance confirmations are factual, non-privileged documents | Rule 34(b)(1); preservation of non-privileged factual communications |
| 24 | FMLA tracking records and HR system FMLA entries | 8, 10 | The FMLA designation was processed in SAP SuccessFactors; system entries record designation dates, leave balances, and absence tracking | Rule 34(b)(2)(E)(i) and (ii) |
| 25 | Non-privileged communications between Carroll's office and HR/operations about Plaintiff's employment | 18, 29 | Carroll's ROG title (EVP HR, EIS) indicates dual legal/HR capacity; factual communications in HR capacity are not attorney-client privileged | Rule 34(b)(1); privilege does not extend to factual communications |

Case 3:24-cv-30161-MGM    Document 158    Filed 07/15/26    Page 83 of 91

Ly v. EBSCO Industries et al.  ·  No. 3:24-cv-30161-MGM  ·  Forensic Production Ledger — Round 5: Master Integration  ·  Page 8

## § 6.0  Spoliation Registry — Rule 37(e) Analysis for Each At-Risk Document

The following registry applies the Rule 37(e) analysis to each ESI category that was required to be preserved under the December 26, 2024 litigation hold and that has not been produced. For each item, the registry identifies: the ESI; whether it existed as of the hold date; the preservation obligation; and the appropriate Rule 37(e) remedy.

| ESI Category | Hold Date Status | Preservation Required | Significance if Lost | Rule 37(e) Remedy |
|---|---|---|---|---|
| **SAP SuccessFactors audit log — Plaintiff's employee profile** | Existed as of Dec. 26, 2024: YES — SAP audit logs are continuous records that exist as long as the instance is active | Rule 37(e) — anticipated litigation required preservation; the temporal impossibility finding makes this log directly relevant | This log definitively resolves or confirms Finding No. 1 (temporal impossibility). Its absence is the most prejudicial ESI gap in the case. | Rule 37(e)(2) adverse inference if intent to deprive shown; Rule 37(e)(1) prohibition on using payroll stubs that cannot be authenticated |
| **Payroll system employer designation field history** | Existed as of Dec. 26, 2024: YES — payroll system field histories persist unless manually purged or system migrated | Anticipated litigation holds required preservation of payroll system records from December 2024 | Resolves the ROG 21 / W-2 contradiction: if the system shows EII in the employer field throughout 2021–2023, the ROG 21 EPI certification is definitively false. | Rule 37(e)(1) remedial measures; prohibition on disputed employer designation evidence |
| **Email archives — Lull, Carroll, Milligan, Sydnor, Collins re: Plaintiff** | Existed as of Dec. 26, 2024: YES — email archives are standard IT infrastructure | Email preservation is typically the first step of any litigation hold | These emails would show the communications between decision-makers in the FMLA-to-PIP-to-termination sequence — the most critical evidentiary gap in the record. | Rule 37(e)(1) measures; if emails deleted post-hold, Rule 37(e)(2) adverse inference on termination motivation |
| **CDN/website logs — HTTP 403 implementation records** | Existed as of Dec. 26, 2024: LIKELY — CDN platforms retain access logs for at least 90 days to several years | Post-hold suppression of professional attribution content would be a separate preservation violation | The date of the HTTP 403 implementation relative to the hold date determines whether it was a deliberate post-hold suppression of evidence relevant to professional prejudice damages. | Rule 37(e)(1) remedial measures; third-party subpoena to CDN provider independently available |
| **HR system FMLA tracking entries** | Existed as of Dec. 26, 2024: YES — FMLA processing entries are generated in real time in HR systems | HR system records are core employment records subject to retention obligations under applicable law | The FMLA tracking entries show exactly when the FMLA designation was entered, by whom, and for what period — directly resolving the 49-day designation gap (Finding No. 12). | Rule 37(e)(1) measures; compelled production of all remaining system records |

Case 3:24-cv-30161-MGM    Document 158    Filed 07/15/26    Page 84 of 91

Ly v. EBSCO Industries et al.  ·  No. 3:24-cv-30161-MGM  ·  Forensic Production Ledger — Round 5: Master Integration  ·  Page 9

## § 7.0  Relief Demanded — Five Categories, Specific Remedies, Applicable Authority

Plaintiff demands the following specific relief across five categories. Each category is supported by the forensic findings documented in this Ledger and the applicable provisions of the Federal Rules of Civil Procedure. The relief demanded is the minimum necessary to cure the prejudice to Plaintiff and to ensure that the remaining discovery period produces a complete and accurate record.

### CATEGORY A: COMPELLED SUPPLEMENTAL INTERROGATORY RESPONSES

| | |
|---|---|
| **Findings Triggering** | Findings Nos. 3–17 (Rounds 1–3): deficient, false, or evasive ROG answers; incomplete Rule 33(d) elections; complete refusals on ROGs 8, 9, 17, 18, and 19; the verification defect on ROG 25. |
| **Relief Requested** | The Court should order defendants to serve fully supplemented, individually verified interrogatory responses for ROG Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 14, 15, 17, 18, 19, 21, 22, 23, 24, and 25 within ten (10) days of the Court's order. |
| **Specific Obligations** | ROG 5: correct employer entity, correct termination date, reconcile performance narrative with FY22 Assessment. ROG 6: identify EBSCO000014–000017 as responsive. ROG 8: identify existence or non-existence of other FMLA complaints. ROG 9: answer factual pre-suit knowledge without privilege as to facts. ROG 17: identify all government agency communications. ROG 18: disclose insurance agreements per Rule 26(a)(1)(A)(iv). ROG 19: provide wage rate, benefits values, and compensation structure as of May 25, 2023. ROG 21: reconcile EPI employer claim with W-2s. ROG 23: produce the intercompany agreement or correct the answer. |
| **Authority** | Rules 33(b)(3), 33(b)(5), 37(a)(3)(B)(iii), 37(a)(5)(A), 37(d)(1)(A)(ii); Rule 26(e)(1). |

| CATEGORY B:  COMPELLED DOCUMENT PRODUCTION | |
|---|---|
| **Findings Triggering** | Findings Nos. 5, 15, 18, 19, 20, 21 (Rounds 1 and 4): wholesale non-production across 18+ document categories; the intercompany agreement; termination decision records; government filings; ESI. |
| **Relief Requested** | The Court should order defendants to produce all documents in the Master Withholding Log (§5.0 above) within fourteen (14) days of the Court's order, in native format with metadata where the documents are ESI, consistent with Rule 34(b)(2)(E)(ii). |
| **Priority Items** | (1) SAP SuccessFactors audit log — Plaintiff's employee profile, all entries from hire through present. (2) All PIP drafts in native format with creation/modification metadata. (3) All Forms 941 (Q1 2021 – Q2 2023). (4) W-9 certifications (Rice and Ballard). (5) All communications among Lull, Sydnor, Milligan, Carroll, and Collins about Plaintiff (January 2023 – May 2023). (6) The intercompany agreement cited in ROG 23 — or a sworn certification that no such agreement exists. (7) Corporate formation documents for EII, EIS, and EPI. (8) Organizational charts as of November 2021 and May 2023. |
| **Authority** | Rules 34(b)(1), 34(b)(2)(E)(i) and (ii), 37(a)(3)(B)(iv), 37(a)(5)(A); Rule 26(a)(1)(B). |

| CATEGORY C:  PRIVILEGE LOG — MANDATORY IMMEDIATE PRODUCTION | |
|---|---|
| **Findings Triggering** | Finding No. 22 (Round 4): no privilege log has been produced despite active withholding across at least eight RFP categories, in violation of Rule 26(b)(5)(A). |
| **Relief Requested** | The Court should order defendants to produce a complete privilege log within seven (7) days of the Court's order, identifying every withheld |

|  |  |
|---|---|
|  | document by: (a) date; (b) author; (c) all recipients; (d) general subject matter (without revealing privileged content); (e) specific privilege or protection claimed; and (f) the attorney whose advice is conveyed or sought, for each attorney-client privilege claim. |
| *Waiver Consequence* | Failure to produce a privilege log within the ordered period should result in waiver of all privilege claims asserted with respect to the withheld documents, consistent with the principle that the failure to timely assert privilege may constitute waiver. See In re Grand Jury Subpoena, 274 F.3d 563, 576 (1st Cir. 2001). |
| *Authority* | Rule 26(b)(5)(A)(i) and (ii); Rule 34(b)(2)(C); Rule 37(b)(2)(A) (failure to comply with discovery obligations). |

## CATEGORY D:  ESI PRESERVATION AND SPOLIATION REMEDIES

| | |
|---|---|
| *Findings Triggering* | Finding No. 21 (Round 4): zero native ESI produced; SAP SuccessFactors audit log not produced; payroll system records not produced; email metadata not produced; CDN logs not produced. Litigation hold notice served December 26, 2024. |
| *Rule 37(e)(1) Measures Requested* | (1) An order prohibiting defendants from relying on any payroll stub produced in this litigation as proof of the employer designation on the face of that stub, unless defendants first produce the SAP SuccessFactors audit log confirming the employer field value in the system at the time of payroll processing. (2) An order directing defendants to certify under oath the current status of Plaintiff's SAP SuccessFactors employee profile (active, archived, or deleted) and the date of any deletion or archival action taken after December 26, 2024. (3) An order directing |

Case 3:24-cv-30161-MGM    Document 158    Filed 07/15/26    Page 87 of 91

Ly v. EBSCO Industries et al. · No. 3:24-cv-30161-MGM · Forensic Production Ledger — Round 5: Master Integration · Page 12

| | defendants to produce all responsive ESI in native format within fourteen (14) days. |
|---|---|
| *Rule 37(e)(2) Inference Requested* | Upon a showing that ESI was lost after December 26, 2024 due to defendants' failure to preserve it, Plaintiff requests an adverse inference instruction permitting the jury to assume that the lost information was unfavorable to defendants, including an instruction that the SAP audit log would have shown that the payroll stub addresses were retroactively modified after the property acquisition date. |
| *Authority* | Rules 34(b)(2)(E)(ii), 37(e)(1), 37(e)(2); the litigation hold notice (December 26, 2024). |

## CATEGORY E: SANCTIONS AND COST-SHIFTING

| | |
|---|---|
| *Rule 37(a)(5)(A) — Motion to Compel Expenses* | Upon granting any relief under Categories A through D above, the Court must require defendants to pay Plaintiff's reasonable expenses in bringing the motion to compel, including attorney's fees equivalent calculated at the pro se hourly rate or any other appropriate measure, unless the Court finds the non-disclosure was substantially justified. No justification has been offered for any of the 22 findings. |
| *Rule 37(c)(2) — Failure to Admit* | Plaintiff has propounded 25 Requests for Admission (Plaintiff's First Set of RFAs, June 26, 2026). If defendants deny any matter that Plaintiff subsequently proves at trial, the Court must order defendants to pay: (a) the reasonable expenses Plaintiff incurred in making the proof, including any expert fees; (b) all costs associated with subpoenas served to obtain evidence defendants should have produced in discovery (Hampden County Registry of Deeds, Regions Bank, IRS Form 4506-C, SAP SuccessFactors vendor, CDN provider); (c) any filing fees and court reporter |

Case 3:24-cv-30161-MGM    Document 158    Filed 07/15/26    Page 88 of 91

Ly v. EBSCO Industries et al.  ·  No. 3:24-cv-30161-MGM  ·  Forensic Production Ledger — Round 5: Master Integration  ·  Page 13

| | |
|---|---|
| | costs associated with the depositions that prove denied matters. |
| *Rule 37(d)(1)(A)(ii) — Complete Refusal Sanctions* | Five complete refusals on substantive interrogatories (ROGs 8, 9, 17, 18, 19) expose defendants to the full range of Rule 37(d) sanctions, including striking the corresponding affirmative defenses, precluding testimony on the refused subjects, and adverse inference instructions. Plaintiff reserves all rights under Rule 37(d) pending the Court's ruling on the motion to compel. |
| *Rule 26(g)(3) — Certification Violation Sanctions* | Defense counsel Lynch signed the Rule 34 responses certifying they were complete and consistent with Rule 26(g)(1). The production of 60 Bates-labeled documents across 32 RFPs — while withholding the categories documented in this Ledger — is not a complete production under any reasonable reading of Rule 26(g)(1)(B). Rule 26(g)(3) provides that an improper certification may result in sanctions on the attorney, the party, or both. |
| *Authority* | Rules 26(g)(3), 37(a)(5)(A), 37(c)(2), 37(d)(1)(A)(ii), 37(d)(3). |

## § 8.0  Enforcement Timeline — Deadlines, Consequences, and Escalation Schedule

| Deadline | What Is Due | If Not Received | Legal Basis |
|---|---|---|---|
| July 2, 2026 | Conferral response to Round 1 Findings 1–5 (transmitted June 26, 2026) | Included in consolidated Rule 37 motion; no further meet-and-confer required beyond this Ledger | Lynch framework satisfied June 26; conferral commitment invoked |
| July 3, 2026 | Privilege log (per Rule 26(b)(5)(A) and Finding No. 22; Supplemental responses to Round 2 Findings 6–12 | Waiver argument on privilege log; separate motion to compel if needed | Rule 26(b)(5)(A); Rule 33(b)(3) |
| July 5, 2026 | Supplemental responses to Round 3 Findings 13–17 | Consolidated in Rule 37 motion with all prior findings | Rules 33(b)(5), 37(d) |
| July 8, 2026 | Supplemental document production per Round 4 Findings 18–22 (withholding log categories 1–25) | Consolidated in Rule 37 motion; Regions Bank, IRS, SAP, and CDN subpoenas filed simultaneously | Rule 34(b)(1); Rule 37(a)(3)(B)(iv) |
| July 10, 2026 | Responses to Plaintiff's First Set of RFAs (served June 26, 2026 — 30-day period runs to July 26; but responsive documents needed before depositions) | RFAs not responded to within 30 days are deemed admitted under Rule 36(a)(3); Plaintiff will file motion to deem admitted | Rule 36(a)(3); Rule 37(c)(2) |
| July 14–21, 2026 | Deposition window — Collins, Carroll, Lull, Hobbs, 30(b)(6) — per Deposition Scheduling Transmittal (June 25, 2026) | Motion to compel depositions under Rule 37(a)(3)(B)(i); sanctions motion for wasting the discovery period | Rules 30, 37(a)(3)(B)(i); ECF Nos. 138–139 |
| July 18, 2026 (target) | Plaintiff files consolidated Rule 37 Motion to Compel, for Sanctions, and for ESI Remedies | N/A — filing initiates Court's jurisdiction over all 22 findings | Rules 37(a), 37(b), 37(c), 37(d), 37(e) |
| July 22, 2026 | Discovery closure (ECF Nos. 138–139) | All outstanding production obligations fixed; no further production accepted without Court order | ECF No. 139 (Amended Scheduling Order) |

> **THE CONSOLIDATED RULE 37 MOTION — FILING NOTICE**
> Unless all required supplemental responses, document productions, and the privilege log are received by July 8, 2026, Plaintiff will file a consolidated Rule 37 Motion to Compel, for Sanctions, and for ESI Remedies on or before July 18, 2026. That motion will incorporate this Forensic Production Ledger (all five rounds) as its factual predicate and will seek the specific relief identified in §7.0 of this document. The motion will note that the Lynch framework was expressly satisfied across all 22 findings beginning June 26, 2026, that the conferral commitment was invoked, and that no adequate response was received. This transmittal, and all five rounds of this Ledger, constitute Plaintiff's pre-filing conferral record under Local Rule 37.1.

## § 9.0  The Complete Ledger — What Defendants Produced vs. What Was Required

The following table provides the complete before-and-after accounting of the June 3, 2026 production: what was demanded by Plaintiff, what was produced by defendants, and the gap between them. It constitutes the definitive forensic record of the production and will be incorporated by reference into the Rule 37 motion.

Case 3:24-cv-30161-MGM    Document 158    Filed 07/15/26    Page 90 of 91

Ly v. EBSCO Industries et al. · No. 3:24-cv-30161-MGM · Forensic Production Ledger — Round 5: Master Integration · Page 15

| What Was Produced | Volume | What Was Not Produced |
|---|---|---|
| Selected performance documents (assessments, PIP) | **EBSCO000006–021 (16 pages)** | PIP drafts; PIP approval chain; FY21 evaluation; FY23 Year-End Assessment |
| Offer letter and hiring documents | **EBSCO000022–023 (2 pages)** | Recruiting records; background check; compensation authorization; hiring committee communications |
| Address-related HR document (garbled ZIP) | **EBSCO000024 (1 page)** | Complete address history from SAP; explanation of four-address discrepancy |
| FMLA designation, certification, and DeFeo letter | **EBSCO000025–031 (7 pages)** | Internal FMLA tracking records; HR system FMLA entries; communications about 49-day designation gap |
| W-2 forms (three tax years) | **EBSCO000032–034 (3 pages)** | IRS Forms 941; W-9 certifications; state DUA filings; IRS entity classification records |
| 43 payroll stubs (with temporal impossibility) | **EBSCO000035–060+ (26+ pages)** | Payroll registers; bank records; payroll system employer designation field history; Regions Bank account authorization |
| Two Lull emails (Nov. 8–9, 2022) | **EBSCO000001–002 (2 pages)** | Complete email archive for Lull, Carroll, Milligan, Sydnor, Collins; all communications about Plaintiff Jan.–May 2023; native format with metadata |
| Termination letter and separation documents | **EBSCO000010–013 (4 pages)** | Termination approval chain; Carroll legal review; HR termination form; delivery confirmation for final check |
| Zero corporate structure or entity documents | **None** | Org charts; corporate formation documents; Delaware Certificate of Merger; articles of incorporation; intercompany agreement |
| Zero government tax filings beyond W-2s | **None** | IRS Forms 941 (10 quarters); W-9 certifications; Massachusetts DUA filings |
| Zero native ESI / system-level records | **None** | SAP SuccessFactors audit logs; payroll system records; email metadata; CDN logs; HR system FMLA entries |
| Zero privilege log | **None** | Every withheld document must be logged; approximately 8+ categories actively withheld without identification |

## § 10.0  Formal Closing Statement — The Record Is Complete

> ### THE FORENSIC PRODUCTION LEDGER IS COMPLETE
>
> Twenty-two forensic findings have been documented across the five rounds of this Ledger. Each finding is grounded in the documentary record, supported by specific Bates-numbered documents produced by Defendants and, where applicable, corroborating public records, and structured in accordance with the five-part conferral framework that defense counsel Lynch established on June 4 and June 18, 2026. Plaintiff has applied that framework consistently to every identified deficiency, thereby invoking Defendants' commitment to confer and respond.

Plaintiff Pro Se: Mohamed Souleyman Ly · 485 Glendale Road, Wilbraham, MA 01095 · mmmly7@gmail.com · June 26, 2026

Case 3:24-cv-30161-MGM    Document 158    Filed 07/15/26    Page 91 of 91

Ly v. EBSCO Industries et al.  ·  No. 3:24-cv-30161-MGM  ·  Forensic Production Ledger — Round 5: Master Integration  ·  Page 16

As documented throughout this Ledger, Defendants' June 3, 2026 discovery responses remain materially deficient. The production omits numerous categories of responsive information, including documents requested under Plaintiff's First Requests for Production, native ESI and system-level audit records where placed at issue by Defendants' responses, a privilege log where withholding is asserted, and supplemental verified interrogatory responses necessary to correct incomplete, unsupported, or internally inconsistent answers. The disparity between the discovery served and the discovery required under the Federal Rules is documented throughout the twenty-two forensic findings contained in Rounds 1 through 5.

The record has now been established. The deficiencies have been identified. The requested supplementation has been specified. Plaintiff is providing Defendants fourteen (14) days from service of this Ledger, until **July 12, 2026**, to provide supplemental responses and productions. If Defendants fail to cure the identified deficiencies by that date, Plaintiff will seek appropriate relief under the Federal Rules of Civil Procedure, including through a consolidated Rule 37 motion supported by this Forensic Production Ledger, without further notice.

Respectfully submitted,                                                                              **Dated: June 26, 2026**

_____

**Mohamed Souleyman Ly**

Plaintiff, Pro Se and | Whistleblower | mmmly7@gmail.com

**Certificate of Service:** I hereby certify that on June 26, 2026, a true and correct copy of the foregoing Forensic Production Ledger — Round 1 was transmitted via electronic mail to Matthew Lynch, Esq. (mlynch@littler.com) and Melissa L. McDonagh, Esq. (mmcdonagh@littler.com), Littler Mendelson, P.C), and to the Boston College Law School Federal Court Clinic (bclawclinic@bc.edu).