UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MOHAMED LY,

    Plaintiff,

  v.

EBSCO INDUSTRIES, INC.; EBSCO
INFORMATION SERVICES; EBSCO
PUBLISHING, INC.; TIM COLLINS; and
TIM LULL,

    Defendants.

Civil Action No. 3:24-cv-30161-MGM

## **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR A PROTECTIVE ORDER LIMITING THE TIMING, SCOPE AND SEQUENCE OF DEPOSITIONS**

In their motion for a protective order, defendants EBSCO Industries, Inc., EBSCO Information Services, and EBSCO Publishing, Inc. (collectively, "EBSCO"), Tim Collins ("Collins"), and Tim Lull ("Lull") (EBSCO, Collins and Lull collectively, "Defendants") seek nothing more than an order that depositions in this matter proceed within the scope of permissible discovery and under the terms and conditions established by the Local Rules and by the usual practice in this jurisdiction. Specifically, Defendants move for an order that (1) plaintiff Mohamed Ly's ("Plaintiff") deposition of EBSCO's Rule 30(b)(6) designee be limited to the topics of Plaintiff's employment with and termination from EBSCO, for which EBSCO has already agreed to designate a witness; (2) Plaintiff not be permitted to depose David Hobbs, EBSCO's chief financial officer, who has no knowledge of or involvement in any aspect of Plaintiff's employment with EBSCO; (3) the four individuals Plaintiff intends to depose as fact witnesses testify only in that capacity, not as 30(b)(6) witnesses of EBSCO, and with no requirement to produce documents as requested in the deposition notice; and (4) depositions occur in the order in which they were

noticed, in the locations deemed convenient by the Local Rules, and subject to the usual stipulations.

Defendants expressly incorporate and adopt their motion for a protective order and memorandum of law in support thereof as their opposition to Plaintiff's deposition related motions (Dkt Nos. 142-146).

As to Plaintiff's 30(b)(6) deposition, EBSCO has already agreed to produce a designee or designees to testify about the following topics relevant to Plaintiff's claims under the Family and Medical Leave Act ("FMLA") and Massachusetts Wage Act:

> • EBSCO's compensation of Plaintiff during his employment with EBSCO (Topic No. 119[1]);
>
> • The personnel file records and other employment records of Plaintiff that have been produced by EBSCO in this litigation (Topic No. 120);
>
> • Plaintiff's work product and the publication thereof, if any, during his employment with EBSCO (Topic No. 126);
>
> • The projects on which Plaintiff worked during his employment with EBSCO, including the staffing of any such projects and the individuals who supervised Plaintiff in the course of his employment with EBSCO (Topic Nos. 127, 128, 129);
>
> • The complaints, if any, that Plaintiff reported to EBSCO during his employment with EBSCO, as well as EBSCO's response thereto (Topic Nos. 132, 133, 140);
>
> • The employment actions that EBSCO took regarding Plaintiff, and the grounds therefor, during Plaintiff's employment with EBSCO, including but not limited to any employment actions documented in the personnel records produced to Plaintiff in this matter (Topic Nos. 134, 135);
>
> • The FMLA leave that Plaintiff applied for and was granted by EBSCO, as well as EBSCO's decision to terminate Plaintiff's employment (Topic No. 141);

---

[1] The topic numbers refer to the topics listed in Plaintiff's 30(b)(6) deposition notice dated June15, 2026. Plaintiff listed numbered topics for all five notices. The topics in the 30(b)(6) notice begin at No. 115.

2

• The identity of Plaintiff's employing entity during his employment with EBSCO (Topic No. 142).

These proposed topics of examination satisfy EBSCO's obligations pursuant to Rules 26 and 30(b)(6) because they address the facts relevant to Plaintiff's FMLA and Wage Act claims. None of the other issues for which Plaintiff appears to seek 30(b)(6) testimony are within the scope of discovery, and good cause therefore exists to issue a protective order precluding Plaintiff from seeking 30(b)(6) testimony about these other topics.

Additionally, Plaintiff should be precluded from deposing Hobbs, a high-ranking corporate officer with no personal knowledge of any aspect of Plaintiff's claims, because this deposition exceeds the scope of permissible discovery and violates the apex deposition doctrine.

Lastly, there is good cause on the facts of this matter for this Court to issue a protective order setting the timing, sequencing and scope of depositions—including that any depositions will be conducted pursuant to the usual stipulations—to avoid annoyance, undue burden and unnecessary expense to any party or witness.

## I.    FACTUAL & PROCEDURAL BACKGROUND

EBSCO hired Plaintiff as its Principal Product Manager on November 1, 2021.  In March 2023, EBSCO placed Plaintiff on a performance improvement plan ("PIP") because, among other deficiencies, he repeatedly failed to provide Lull, his supervisor, with an adequate, draft "roadmap" for EBSCO's globalization update and engaged in unprofessional conduct towards other EBSCO employees. In April 2023, Plaintiff applied for intermittent leave pursuant to the Family and Medical Leave Act ("FMLA"), which EBSCO approved. Plaintiff continued to miss deadlines and submit substandard work product, and EBSCO terminated his employment on May 31, 2023.

Plaintiff alleges that Defendants interfered with his FMLA rights (Second Amended Compl., Count I, ¶¶ 43-50 (Dkt. No. 101)) and retaliated against him in violation of the FMLA

(*Id*., Count II, ¶¶ 51-55).  Plaintiff also alleges that EBSCO failed to timely pay him his final wages on the date of his termination, in violation of the Massachusetts Wage Act.  (*Id.,* Count III, ¶¶ 1-4 [sic]).

On February 11, 2026, EBSCO served Plaintiff with interrogatories and document requests.  (Aff. Matthew J. Lynch ("Lynch Aff." ¶ 4.)  On March 13, 2026, Plaintiff served his responses and objections.  (*Id.* ¶ 5.)  Plaintiff's responses were clearly deficient.  (*Id.*)  EBSCO refrained from initiating the meet-and-confer process because EBSCO and the Boston College Law School Federal Court Clinic (acting on Plaintiff's behalf) were discussing resuming settlement discussions.  (*Id.* ¶ 6.)  The parties then agreed to a stay of discovery while they engaged in settlement discussions.  (*Id.* ¶ 7.)  However, the parties were unable to resolve this matter.  (*Id.* ¶ 8.)  On May 12, 2026, EBSCO noticed Plaintiff's deposition for June 15, 2026, the first deposition notice served by any party in this matter.  (*Id.*)  EBSCO also began the meet-and-confer process regarding Plaintiff's deficient written discovery responses by serving a letter identifying specific insufficiencies in Plaintiff's responses.  (*Id.* ¶ 9.)  Defendants asked Plaintiff to respond to this letter by May 26, 2026.  (*Id.* ¶ 10.)

Plaintiff did not respond, and, after providing Plaintiff with an additional week, EBSCO e-mailed Plaintiff to initiate a Local Rule 37.1 discovery conference.  (*Id.* ¶ 10.)  On June 4, 2026, EBSCO conferred with Plaintiff pursuant to LR 37.1 regarding his discovery responses.  (*Id.* ¶ 11.)  When Plaintiff indicated that he had not spoken with the BC Law Clinic, which is assisting Plaintiff in this matter, EBSCO provided Plaintiff with an additional 14 days to confer with the Clinic.  (*Id.* ¶ 12.)  EBSCO therefore scheduled another LR 37.1 conference for June 18, 2026.  (*Id.*)  On June 9, 2026, Defendants notified Plaintiff that they would reschedule his deposition, which had

4

been noticed for June 15, 2026, to a later date so that the parties could address the insufficiencies in his written discovery responses. (*Id.* ¶ 13.)

On June 15, 2026, Plaintiff served a purported "Omnibus Deposition Notice" ("the Omnibus Notice") in which he attempted to notice the deposition of four individuals who are current and/or former EBSCO employees and officers, as well as a purported 30(b)(6) designee. (*Id.* ¶ 14., Ex. A.) In his 30(b)(6) notice, Plaintiff listed 30 different "Topics for Examination," many of which were vague and incomprehensible. (*Id.* pp. 14-16.) Several of the proposed topics appear to relate to issues regarding which the EBSCO entity reported or was responsible for reporting Plaintiff's wages on his W-2 form and other payroll documents (*Id.* pp. 14-15.), something that this Court has already determined is outside the scope of this litigation. (Dkt. No. 110.)

For example, Plaintiff's topics included:

> • The employer-entity designation fields maintained in those [enterprise] systems, including how employer-entity names and employer identification numbers are entered, modified, and controlled, and the field(s) used to record work-location and home-address designations. (Topic No. 116.)
>
> • The persons or roles with authority to configure, modify, or override employer-entity, company-code, work-location, or home-address designation fields in human-resources and payroll systems. (Topic No. 117)
>
> • The data sources used to populate employer-entity fields on payroll instruments issued to Plaintiff. (Topic No. 119)

(*Id.* p. 14.)

Several other topics appeared to be related to how EBSCO manages content on its public website, an issue that also has nothing to do with either party's claims or defenses. (*Id.* pp. 14-15, Topic Nos. 121-126.) Some topics included a time period beginning January 1, 2024, nearly nine full months *after* Plaintiff's employment with EBSCO ended:

5

4918-9578-3870.6 / 059376.1067

• The content-management system(s) and publication workflows used to create, publish, modify, and manage content on the domain ebsco.com and its subdomains during the Relevant Period, including any third-party content-delivery or access-control providers. (Topic No. 121)

• The workflow and approval processes governing publication, modification, restriction, or removal of content on ebsco.com, including content located at or under the path /about/our-team and any language-variant versions thereof. (Topic No. 122)

• Any change to the access-control figuration of ebsco.com or any path thereof resulting in an HTTP 403 (forbidden) response, made during the period of January 1, 2024 through the present, including the date of each change, the identity of the user account or credential used, and the prior and new configuration values. (Topic No. 123)

• Any difference in access-control configuration applied to different language-variant versions of the same path on ebsco.com during the period January 1, 2024 through the present, and the basis for any such difference. (Topic No. 124)

• The audit logs or version-control records maintained for content modifications, restrictions, or removals on ebsco.com. (Topic No. 125)

• Any content on ebsco.com that referenced Plaintiff by name, including the creation, publication, modification, restriction, or removal of such content, the timeline of any such action, and the persons who authorized, directed, or executed it. (Topic No. 126)

(*Id.*)

On June 25, 2026, EBSCO responded to Plaintiff's 30(b)(6) notice, identified the topics from Plaintiff's list for which EBSCO agreed to designate a witness, and explained, topic-by-topic, its objections to the remaining scope of Plaintiff's notice. *(Id*. ¶ 15, Ex. B.)

EBSCO also notified Plaintiff that it would not produce Hobbs, the CFO, for a deposition and further identified numerous technical deficiencies and inconsistencies in the Omnibus Notice:

• Plaintiff referred to 30(b)(6) and "Topics for Examination" for all deponents, not just 30(b)(6) notice, and EBSCO asked Plaintiff to clarify the scope of testimony sought;

6

• On the final page, Plaintiff identified documents that he apparently intended to use as exhibits, and EBSCO asked Plaintiff to clarify if he was merely listing potential exhibits or seeking production of those documents; and

• Plaintiff identified Springfield as the location for all depositions, without regard for Local Rule 30.1, which identifies the specific locations deemed convenient for any witness, based upon where they reside.

*(Id.)*

Between June 25, 2026, when EBSCO served its correspondence identifying its proposed 30(b)(6) topics and other deficiencies in Plaintiff's deposition notices, and July 13, 2026, when Plaintiff filed several motions to compel related to depositions in this matter, Plaintiff did not respond directly to EBSCO's questions or to the specific 30(b)(6) topics for which EBSCO agreed to produce a 30(b)(6) designee. *(Id.* ¶ 16.)  Instead, in the span of less than three weeks, he served at least seven different deposition- and discovery-related communications, totaling more than 300 pages, which included, but were not limited to

- communications in which he appeared to rephrase his original 30(b)(6) topics, in the form of more than 70 different topics (35 pages);

- more than 20 subpoenas to third parties, including current and former EBSCO employees (81 pages);

- re-notices of depositions that again did not comply with the federal and local rules (5 pages); and

- a "forensic ledger" of alleged deficiencies in EBSCO written discovery responses (91 pages).

*(Id.* ¶ 17, Ex. C.)  Plaintiff demanded a response to this correspondence by Sunday, July 12, 2026. *(Id.* ¶ 18.)  When Plaintiff did not receive a response by that date, Plaintiff filed several motions to compel, including as to the 30(b)(6) deposition notice. (Dkt. Nos. 142-146.)  However, Plaintiff has not at any time since June 25, 2026 articulated a reasonable basis for how or why the topics for which EBSCO has already agreed to produce a 30(b)(6) witness are insufficient, nor has

7

4918-9578-3870.6 / 059376.1067

Plaintiff requested a telephone conference to discuss EBSCO's proposed topics and objections to the overbroad 30(b)(6) notice.  (Lynch Aff. ¶ 16.)

As a result, EBSCO files this instant motion for a protective order limiting the scope of Plaintiff's 30(b)(6) notice of EBSCO; precluding Plaintiff from deposing Hobbs; and setting the timing, sequence and terms for the depositions that this Court permits in this matter.

## II.   <u>DISCUSSION</u>

Upon good cause shown, this Court may issue a protective order limiting or preventing discovery.  *See* Fed. R. Civ. P. 26(c)(1).  Upon doing so, a court must "balance the burden of proposed discovery against the likely benefit." *Gill v. Gulfstream Park Racing Ass'n*, *Inc.,* 399 F.3d 391, 400 (1st Cir. 2005).  Rule 26(c)(1) specifically permits this Court to forbid certain discovery; specify the terms, including time and place, of any discovery; and forbid inquiry into certain matters or otherwise limit the scope of discovery to certain matters.  *See* Fed. R. Civ. P. 26(c)(1)(A), (B), (D).  Here, good cause exists for this Court to enter a protective order (1) limiting the scope of Plaintiff's 30(b)(6) deposition of EBSCO to the topics identified by EBSCO on June 25, 2026; (2) precluding Plaintiff from deposing Hobbs; and (3) establishing the timing, sequence and terms of the depositions to be conducted in this matter in order to avoid annoyance, undue burden or unnecessary expense and reduce the likelihood of additional motion practice.  *See Fed. Ins. Co. v. Delta Mech. Contractors, LLC*, No. 11-048ML, 2013 WL 1343528, at *4-5 (D.R.I. Apr. 2, 2013); *Prokosch v. Catalina Lighting, Inc*., 193 F.R.D. 633, 638 (D. Minn. 2000).

    A.    <u>This Court Should Enter a Protective Order Limiting the Scope of Plaintiff's 30(b)(6) Deposition of EBSCO</u>

Good cause exists to limit the scope of EBSCO's 30(b)(6) deposition to EBSCO's proposed topics (from the long list included in Plaintiff's notice) because preparing for all of the topics in Plaintiff's vague and overly broad notice would cause EBSCO to suffer significant undue burden

4918-9578-3870.6 / 059376.1067

and expense and because EBSCO's proposed topics address the relevant, discoverable categories of information in this litigation. *See Fed. Ins. Co.*, *LLC*, 2013 WL 1343528, at \*4. EBSCO's proposed topics also address Plaintiff wholesale and recurring failure to meet his burden to identify the topics of testimony with reasonable particularity, a burden that requires Plaintiff to "designate, with <u>painstaking specificity</u>, the particular subject areas that are intended to be questioned, and that are <u>relevant to the issues in dispute</u>." *See Prokosch*, 193 F.R.D. at 638 (emphasis added); *see also Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1058 n.5 (7th Cir. 2000) (same, quoting *Prokosch*, 193 F.R.D. at 638); *Fed. Ins. Co.*, 2013 WL 1343528, at \*4 (finding twenty-four topics "sufficiently broad and amorphous as to run afoul of the requirement that Rule 30(b)(6) topics must be described with reasonable particularity"); *Ardolino v. Metro. Life Ins. Co.*, No. Civ.A. 00-12115-DPW, 2001 WL 34563168, at \*3 (D. Mass. July 2, 2001) (" … this court may limit and deny relevant discovery where it is '. . . obtainable from some other source that is more convenient, less burdensome and less expensive'") (citation omitted).

This Court should permit Plaintiff to conduct a 30(b)(6) deposition narrowed to Plaintiff's 30(b)(6) topics as agreed to in EBSCO's June 15, 2026 letter because the topics are described with reasonable particularity and satisfy EBSCO's obligations under Rules 26 and 30(b)(6). Specifically, EBSCO agreed to the following narrowed list of 30(b)(6) topics:

> • EBSCO's compensation of Plaintiff during his employment with EBSCO (Topic No. 119);
>
> • The personnel file records and other employment records of Plaintiff that have been produced by EBSCO in this litigation (Topic No. 120);
>
> • Plaintiff's work product and the publication thereof, if any, during his employment with EBSCO (Topic No. 126);
>
> • The projects on which Plaintiff worked during his employment with EBSCO, including the staffing of any such projects and the individuals who

supervised Plaintiff in the course of his employment with EBSCO (Topic Nos. 127, 128, 129);

• The complaints, if any, that Plaintiff reported to EBSCO during his employment with EBSCO, as well as EBSCO's response thereto (Topic Nos. 132, 133, 140);

• The employment actions that EBSCO took regarding Plaintiff, and the grounds therefor, during Plaintiff's employment with EBSCO, including but not limited to any employment actions documented in the personnel records produced to Plaintiff in this matter (Topic Nos. 134, 135);

• The FMLA leave that Plaintiff applied for and was granted by EBSCO, as well as EBSCO's decision to terminate Plaintiff's employment (Topic No. 141);

• The identity of Plaintiff's employing entity during his employment with EBSCO (Topic No. 142).

(Lynch Aff. ¶ 15, Ex. B.)

These topics address every issue relevant to the actual claims and defenses in this matter: (1) the identity of Plaintiff's employer; (2) EBSCO's compensation of Plaintiff during his employment; (3) any employment actions EBSCO took in regards to Plaintiff during his employment, including the decision to place him on a Performance Improvement Plan and to then terminate his employment; (4) Plaintiff's application for, and receipt of, intermittent FMLA leave beginning in April 2023; and (5) Plaintiff's work product and job performance during his employment with EBSCO. Plaintiff has not identified any specific insufficiencies in these topics or identified any relevant issues for which he sought testimony that are not addressed by these topics.

Although Rule 26(b)(1) permits a party to obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense, courts have limited discovery where "the breadth of subjects and number of topics identified in a [Rule] 30(b)(6) deposition notice renders a responding party's efforts to designate a knowledgeable person unworkable." *Reno v. W. Cab*

10

*Co.*, Case No. 2:18-cv-00840-APG-NJK, 2020 WL 5902318, at \*2 (D. Nev. Aug. 31, 2020) (quoting *Luken v. Christensen Grp. Inc.*, No. C16-5214 RBL, 2018 WL 1994121, at \*2 (W.D. Wash. Apr. 27, 2018)); *Bowers v. Mortg. Elec. Registration Sys., Inc.*, No. 10-4141-JTM, 2011 WL 6013092, at \*6-7 (D. Kan. Dec. 2, 2011) (allowing motion for protective order, holding that Rule 30(b)(6) deposition notice with 22 topics was improperly excessive based on the circumstances of that case). Here, nearly all of Plaintiff's topics are either impermissibly vague or wildly overbroad. *See id.* Despite these failures by Plaintiff, EBSCO has made a good-faith effort to identify the relevant topics in Plaintiff's notice and has offered to designate a witness as to the topics that are relevant to his claims and/or EBSCO's defenses and within the scope of permissible discovery. *See id.* As such, good cause exists to enter a protective order limiting Plaintiff's 30(b)(6) deposition of EBSCO to the narrowed list of topics proposed by EBSCO. *See id.*

B.    This Court's Protective Order Should Preclude Plaintiff From Deposing Hobbs

Good cause exists to enter a protective order preventing Plaintiff from deposing David Hobbs, EBSCO's acting Chief Financial Officer, because Hobbs does not possess the type of unique, first-hand knowledge that could even potentially justify compelling the deposition of a senior corporate executive. *See Bassett v. Tempur Retail Stores, LLC*, Nos. 22-CV-11127-NMG, 22-cv-12883-NMG, 2024 WL 3415981, at \*2 (D. Mass. July 15, 2024). Further, Hobbs will suffer significant undue burden, harassment and unnecessary expense if he is forced to prepare for and testify at a deposition in which (1) he has no personal knowledge of any relevant facts, (2) the intended topics are outside the scope of this litigation, and (3) the relevant information about the identity of Plaintiff's employer can be obtained from the 30(b)(6) EBSCO deposition and other documents and depositions. *See id.*; *see also Race v. Cambridge Health Alliance*, No. 1:23-CV-

11

10143-JEK, 2024 WL 2330741, at *6 (D. Mass. May 22, 2024) (precluding executive deposition where proposed areas of inquiry were duplicative of Rule 30(b)(6) testimony and other discovery); *Gonzalez Berrios v. Mennonite Gen. Hosp., Inc.*, No. CV 18-1146 (RAM), 2019 WL 4785701, at *5-6 (D.P.R. Sept. 30, 2019) (recognizing Rule 30(b)(6) discovery as an appropriate mechanism for obtaining organizational information before resorting to an apex deposition).

Additionally, the topics of examination Plaintiff listed in his deposition of Hobbs make clear that Plaintiff intends to disregard the orders of this Court by deposing Hobbs about matters that this Court has already held are irrelevant and outside the scope of the litigation. (Dkt. No. 110.) In April 2026, this Court held that the question of "which, if any, EBSCO entity was required to report Plaintiff's income on a W-2 form" is an issue that is "outside the scope of this litigation." (*Id.*)

In violation of this imperative, Plaintiff seeks sweeping testimony concerning company-wide payroll architecture, treasury operations, tax reporting, banking relationships, benefits administration, intercompany accounting practices, and financial recordkeeping. For example, Plaintiff seeks testimony regarding "[a]ll bank accounts held by or in the name of any EBSCO entity from which employee wages were paid," the individuals with signature authority over those accounts, intercompany payroll-funding transfers, the employer identification numbers used on Forms W-2, W-3, 941, and 940, the IRS tax classification of EBSCO entities, payroll-cost allocations among multiple corporate entities, and employer contributions to employee benefit plans. (Lynch Aff. ¶ 14, Ex. A., pp. 10-11, Dep. Notice No. 3, Topics 71-87.) These topics are not directed to any alleged conduct by Hobbs, nor do they reflect any claimed involvement by Hobbs in Plaintiff's employment, compensation, termination, or the purported Wage Act violation.

12

Even if Plaintiff's attempt to depose Hobbs were not a transparent attempt to circumvent this Court's prior rulings, Plaintiff cannot satisfy the "threshold" requirement of showing that Hobbs has "unique personal knowledge related to the claim being litigated that cannot be provided by another witness." *See Bassett*, 2024 WL 3415981, at *2. Plaintiff cannot clear this threshold merely by alleging that Hobbs has generalized, high-level knowledge of EBSCO's financial structure and operation. *See Fiske v. MeYou Health, Inc.*, No. 13-10478-DJC, 2014 WL 2818588, at *10 (D. Mass. June 20, 2014) (quashing subpoena directed to corporate officer absent a showing of particularized knowledge). Plaintiff's own pleadings and discovery documents make clear that Hobbs does not possess any knowledge relevant to Plaintiff's actual claims, let alone the kind of "unique personal knowledge" required to justify his deposition. *See Bassett,* 2024 WL 3415981, at *2; *see also Gonzalez Berrios*, 2019 WL 4785701, at *3-5. Plaintiff did not mention Hobbs so much as once in his Second Amended Complaint and did not allege any conduct by Hobbs related to Plaintiff's employment, compensation, termination, or the claims at issue. In fact, Plaintiff did not even identify Hobbs in his Rule 26 Initial Disclosures as an individual Plaintiff believes has relevant knowledge, even though Plaintiff identified 43 other people.

There is also no evidence that Hobbs supervised Plaintiff, participated in the decisions underlying Plaintiff's claims, communicated with Plaintiff regarding compensation, or has any particularized knowledge of the alleged Wage Act violation. Plainly, Hobbs does not possess the "unique first-hand, non-repetitive knowledge of the facts at issue" that Plaintiff must show to justify a deposition of this nature. *See Apple Inc. v. Samsung Elecs. Co.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012); *see also Gonzalez Berrios*, 2019 WL 4785701, at *3-5. In *Gonzalez Berrios*, the court declined to permit the deposition of a hospital CEO where neither the pleadings nor the plaintiff's submissions demonstrated that the executive possessed firsthand, unique knowledge

13

relevant to the claims, emphasizing that a senior officer's position alone is not a sufficient basis for discovery. *Gonzalez Berrios*, 2019 WL 4785701, at \*4-5. The same is true here. *See id.*

Because Hobbs lacks unique, non-duplicative, relevant knowledge and because Plaintiff can obtain relevant information regarding the identity of his employer from other, alternative means of discovery, this Court should enter a protective order precluding Plaintiff from deposing Hobbs. *See Bassett*, 2024 WL 3415981, at \*2.

C.      This Court Should Limit Plaintiff's Deposition Notices of Non-30(b)(6) Witnesses

This Court's protective order should also preclude Plaintiff from attempting to impermissibly exceed the scope of fact witness depositions by requiring non-30(b)(6) designees to prepare for testimony regarding certain topics and/or requiring them to produce documents that Plaintiff should properly obtain through Rule 34 document requests to EBSCO and the individual defendants. *See Bernardi Ortiz v. Cybex Int'l, Inc.*, No. CV 15-2989 (PAD), 2018 WL 2448130, at \*8 (D.P.R. May 30, 2018). The federal rules do not allow a party to "unilaterally" circumvent the limits of Rules 33 and 34 or orders of this Court by requiring individuals to produce corporate records in response to notices served after the deadline to serve interrogatories and document requests in this matter. *See id.*; *see also Layman v. Junior Players Golf Acad., Inc.*, 314 F.R.D. 379, 385 (D.S.C. 2016) (federal rules do not permit a party to "obtain pretrial production of documents or things, or inspection of premises, from a party in circumvention of discovery rules or orders"); *Carter v. United States*, 164 F.R.D. 131, 133 (D. Mass. 1995) (deposition notices improper when heavily laden with document requests and merely means to avoid expiration of right to written discovery).

Moreover, this is not a situation in which EBSCO refused to produce a corporate designee. *Cf. Bernardi Ortiz*, 2018 WL 2448130, at \*8. Rather, EBSCO has already agreed to produce a

14

witness to testify as to the topics it has identified, to which Plaintiff never articulated any objection. As such, this Court should enter a protective order precluding Plaintiff from treating the deposition of any fact witness as a 30(b)(6) deposition, meaning no fact witness is bound to prepare for and testify to the topics Plaintiff listed in each respective notice and no fact witness's testimony is binding on EBSCO. *See id.* To the extent EBSCO designates as one of its 30(b)(6) designees any person identified by Plaintiff as a fact witness, EBSCO will do so well in advance to the deposition. The parties can then conduct both depositions on the same day, by first deposing the individual as a fact witness, closing that deposition, and then immediately beginning a 30(b)(6) deposition (or vice versa, should Plaintiff so choose).

> D.      This Court's Protective Order Should Set Specific Terms and Conditions of Depositions Conducted in This Matter

This Court has broad discretion to manage discovery, including depositions, and this discretion extends even to setting the conditions under which objections may be made. *See In re San Juan Dupon Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1019 (1st Cir. 1988). This broad discretion is established by the plain language of Rule 26(c), which permits this Court to establish protective orders "specifying terms, including time and place" of discovery. Fed. R. Civ. P. 26(c). Here, this Court should exercise its discretion by including in any protective order that (1) depositions will occur in the order in which they were noticed, with EBSCO first deposing Plaintiff and Plaintiff then conducting his depositions in his preferred sequence; (2) depositions will occur after this Court has resolved any pending motions regarding written discovery and EBSCO has made its ESI production; (3) depositions will take place at a location deemed convenient for the witness pursuant to Local Rule 30.1; and (4) depositions will be conducted subject to the usual stipulations, meaning all motions to strike and objections except as to form are reserved until the time of trial. *See In re San Juan Dupon Plaza Hotel Fire Litigation*, 859 F.2d at 1019-20. No

15

party will be prejudiced by these terms, which will allow depositions to proceed upon a full record, after this Court has resolved the pending disputes regarding the scope of depositions and discovery. *See id.* Moreover, this protective order will likely reduce the prospect of further motion practice—in a matter that has already seen its fair share of such motions—about these issues. For example, if depositions were to proceed in this matter as though they were trial depositions, it is highly likely that additional, extensive and unnecessary motion practice would arise and depositions would not be timely completed.

Thus, for the above reasons, this Court's protective order should further (1) establish the sequence of depositions, with Plaintiff's deposition occurring first, after all pending written discovery disputes have been resolved and Defendants have made their ESI production; (2) set the location for any deposition as the city deemed convenient for the witness in LR 30.1; and (3) order that all depositions are conducted pursuant to the usual stipulations.

Respectfully submitted,

EBSCO INDUSTRIES, INC.; EBSCO INFORMATION SERVICES; EBSCO PUBLISHING, INC.; TIM COLLINS; and TIM LULL,

By their attorneys,

*/s/ Matthew J. Lynch*
Melissa L. McDonagh, Bar No. 569023
mmcdonagh@littler.com
Matthew J. Lynch, Bar No. 689363
mlynch@littler.com

LITTLER MENDELSON, P.C.
One International Place, Suite 2700
Boston, MA  02110
Telephone:    617.378.6000
Facsimile:     617.737.0052

DATED:  July 22, 2026

16

4918-9578-3870.6 / 059376.1067

## CERTIFICATE OF SERVICE

I hereby certify that on this 22 day of July 2026, a true copy of the foregoing document was filed electronically through the Court's CM/ECF system, is available for viewing and downloading from the ECF system, will be sent electronically to counsel of record as registered participants identified on the Notice of Electronic Filing and via first class mail to all non-registered participants identified on the Notice of Electronic Filing.

/s/ Matthew J. Lynch
Matthew J. Lynch

17

4918-9578-3870.6 / 059376.1067